IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| AARON MCCROY, #N-51882, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 02-3171 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS, et al. ) | |
| ) | |
| Defendants. ) | |

**RESPONSE TO PLAINTIFF'S POSITION BRIEF**
**REGARDING PRELIMINARY INJUNCTIVE HEARING**

NOW COME the Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS, TARA BARR, DEBRAH FUQUA, DENNIS HOCKADAY, DAVID SCHNEPEL, DONALD N. SNYDER, JR., NANCY TUCKER, and GREGORY KENT VOREIS, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and in response to Plaintiff's Position Regarding Preliminary Injunctive Hearing submit the following:

**Background**

Plaintiff originally asked this Court to issue a preliminary injunction ordering the Illinois Department of Corrections to transfer him to Dixon Correctional Center, to give him a corneal transplant, and to pay for the transplant.  Plaintiff's own testimony and the Deposition of Dr. Zeh, as well as the over one-thousand pages of Plaintiff's medical records already before the court establish that Plaintiff received the corneal transplant and abundant care for the keractoconus present in both eyes.  Plaintiff has filed a position brief filled with unsubstantiated statements regarding the treatment Plaintiff has received ("a failure to meet minimal standards of adequacy," and a "denial of minimum access to health

1

care," Brief, p. 3) and adds the unsubstantiated allegation that the deliberate indifference of the defendants led to the loss of one eye. It misrepresents the motives and actions of the various defendants, and concludes with the assertion that Plaintiff should be housed at Taylorville Correctional Center to be in proper proximity to Springfield where he could receive care for his eye condition. Currently, because of a disciplinary violation, Plaintiff is housed at Menard Correctional Center and is receiving care for his remaining eye at Marion Eye Center in Carbondale, Illinois.

## The Law

In order to prevail on a motion for preliminary injunction, the plaintiff must show that he has a reasonable likelihood of success on the merits, that he has no adequate remedy at law, that he will suffer irreparable harm, that the threatened injury to the plaintiff outweighs the harm the preliminary injunction will cause the defendants if it is granted, and that the granting of the injunction will not disserve the public interest. Godinez v. Lane, 733 F.2d 1250, 1257 (7th Cir. 1984). However, a plaintiff can obtain injunctive relief when he shows an ongoing violation of federal law. Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991). In this case, the law that Plaintiff alleges is being violated is the Eighth Amendment to the Constitution, which prohibits deliberate indifference to serious medical needs and provides the state has "an affirmative obligation under the Eighth Amendment to provide persons in its custody with a medical care system that meets *minimal standards of adequacy*," (Meriwether v. Faulkner, 821 F.2d 408, 4ll (7th Cir. 1987)(emphasis added). The Supreme Court drew a distinction between an "inadvertent failure to provide adequate medical care," Estelle v. Gamble, 429 U.S. 97, 105 (1976), and an unnecessary and wanton infliction of pain that is "repugnant to the conscience of mankind." Estelle at 106. The Court went on to discuss medical malpractice, or the negligence of a physician in

diagnosing or treating a medical condition, and concluded that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. "Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment such as whether one course of treatment is preferable to another' are beyond the Amendment's purview." Snipes v. Detella, 95 F.3d 586, 591 (7th Cir. 1996).

"While a prison official who *intentionally* delays or denies a prisoner's access to medical care might be evidence of deliberate indifference to serious medical needs," Estelle v. Gamble, 429 U.S. 987, 104 (1976) (emphasis added), that official must have a "sufficiently culpable state of mind," Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996) and the "deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. citing Farmer v. Brennan, 511 U.S. 825 (1994).

## The Facts and Argument

As a preliminary matter, the only issue before the Court regarding the injunctive relief is Plaintiff's right eye, as his left eye was removed after a traumatic injury and there could be no ongoing violation as relates to that eye[1]. Therefore, Plaintiff is entitled to injunctive relief only if he can show that the defendants are continuing to be deliberately indifferent to his serious medical needs of his right eye. Despite the allegations of Plaintiff's position brief, he cannot show any of these Defendants are deliberately indifferent to the serious medical needs of his right eye.

---

[1] Defendants deny there was any deliberate indifference as to the care for Plaintiff's left eye that was subsequently removed or his remaining right eye.

3

Plaintiff first alleges in his position brief that the status quo has been "systematically and unilaterally eroded by Defendants, both before and after the filing of this action." He alleges as "fact" that plaintiff received a corneal transplant but the recommendation for contact lens fittings were ignored. The truth is that Plaintiff received a corneal transplant, and follow-up care for that transplant by specialists, including Dr. Zeh, who Plaintiff asked to be deposed as an expert. However, even assuming, arguendo, that there is any basis for Plaintiff's assertions, he cannot receive injunctive relief as there is no ongoing care relating to the eye that received the corneal transplant.

Plaintiff also alleges as "fact" that "DOC repeatedly refused to schedule medical appointments because of the inconvenience and logistical problems of transporting McCroy to Springfield to see Dr. Fedor." (Brief p. 3). Plaintiff has cited no authority for this belief, and has no basis of fact for this belief. Plaintiff's medical records outline the number of times Plaintiff was seen by physicians in Springfield and elsewhere. In fact, Plaintiff's failure to attend a scheduled appointment on at least one occasion was due to his refusal to go to the doctor's appointment in Springfield without first taking a shower, even though there was no time for a shower and security concerns prohibit telling inmates of appointments outside of the prison prior to the date of the appointment. The only mention by any "expert" of the failure of Plaintiff to be seen when recommended, was a delay for Plaintiff to have the contact lens fitting in his left eye. Dr. Zeh testified that he did not know the reason the lens fitting was not performed, but stated there was no permanent damage to his eye as a result of the delay (Zeh Dep., p. 64, l. 3 - 14). Moreover, Dr. Zeh admitted that at the time the contact lens fitting was recommended, there was no specific date or time that he was supposed to have that fitting (Zeh Dep., p. 66, l. 13 - 22). Additionally, and more relevant to the issue of the care of Plaintiff's remaining eye, Dr. Zeh testified that

Plaintiff was seen by physicians when recommended, including recommendations to see other physicians, except for the contact lens fitting discussed above (Zeh Dep., p. 66, l. 6 - 12). As Plaintiff has continued to see specialists for his eye, even while housed at Menard, there is no basis for any assertion that the defendants deliberately "refused" to take Plaintiff to appointments for whatever reason or that they might continue to do so in the future.

Since Plaintiff lost his left eye, he has continued to receive care for the keractoconus of his right eye, including a contact lens fitting at Marion Eye (Testimony of Pam Grubman and Dr. Williams). This is the care outlined by the expert requested by Plaintiff, Dr. Kass, and cannot serve as a basis for injunctive relief requested by Plaintiff.

## CONCLUSION

Plaintiff has received abundant care for both of his eyes while incarcerated at Western Illinois Correctional Center and Menard Correctional Center. His medical needs have been addressed. The only testimony regarding the housing of Plaintiff was a letter by Dr. Kass which opined that Plaintiff should be housed near qualified professionals. Dr. Kass admitted he did not review Plaintiff's medical records and only was in contact with Plaintiff, but even then, would not commit himself to a determination as to whether any of the care received by Plaintiff was insufficient. He was not subject to any questioning or cross examination by any of the defendants' counsel. Therefore, he was only parroting Plaintiff's "wish list" of housing assignments. It should be noted that Plaintiff's list of desired housing assignments continues to evolve; first Dixon, then Taylorville. Plaintiff is currently housed at Menard Correctional Center because of a disciplinary infraction. Nonetheless, he has received the care cited by Dr. Kass as required for the condition in his right eye, and Plaintiff can show no deliberate indifference as to any of his medical care or any basis for his assertion that his placement is not correct. Finally, as stated in

Defendants' response to plaintiff's motion for preliminary injunction, inmates are not entitled to choose where they are housed. See <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976). Nor are they entitled to any specific medical treatment. <u>Forbes v. Edgar</u>, 112 F.3d 262, 266 (7th Cir. 1997). The irreparable harm in this case, should the court enter injunction against the Illinois Department of Corrections or any of the defendants, would be to the Department which would lose its ability to house inmates based on security, space needs, or any other myriad factors that come into play in the administration of prisons. The harm would also be to the physicians, vendors, and the Department should the court undertake to determine what specific treatment an inmate is entitled.

WHEREFORE, Plaintiff's motion for injunctive relief should be denied and the Illinois Department of Corrections dismissed as a party to this case.

Respectfully submitted,

ILLINOIS DEPARTMENT OF CORRECTIONS, TARA BARR, DEBRAH FUQUA, DENNIS HOCKADAY, DAVID SCHNEPEL, DONALD N. SNYDER, JR., NANCY TUCKER, and GREGORY KENT VOREIS,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois

Kelly R. Choate, #6269533
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 782-9026

Of Counsel.

Attorney for Defendants,

By:  s/ Kelly R. Choate
KELLY R. CHOATE
Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| AARON MCCROY, #N-51882, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )    No. 02-3171 |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2005, I electronically filed a Response to Plaintiff's Position Brief Regarding Preliminary Injunctive Hearing with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Thomas Londrigan
Londrigan, Potter & Randle, P.C.
tom@lprpc.com

Theresa Powell
Heyl, Royster, Voelker & Allen
tpowell@hrva.com

Carl J. Tenney
Hughes, Hill & Tenney, L.L.C.
ctenney@hhtlaw.com

and I hereby certify that on March 22, 2005, I mailed by United States Postal Service, the document(s) to the following non-registered participant(s):

None

Respectfully Submitted,
 s/ Kelly R. Choate
Kelly R. Choate, #6269533
Assistant Attorney General
Attorney for Defendants
500 South Second Street
Springfield, Illinois  62706
Telephone:  (217) 782-9026
Facsimile:   (217) 524-5091
E-Mail:  kchoate@atg.state.il.us