**E-FILED**
Friday, 30 March, 2007  10:19:15 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON MCCROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02-cv-3171 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, ROGER E. | ) | |
| WALKER, JR., (in his official | ) | |
| capacity only), DENNIS HOCKADAY, | ) | |
| KEVIN WINTERS, SANDRA FUNK, | ) | |
| DEBORAH FUQUA, LIEUTENANT BRYON | ) | |
| LAW,  KENNETH KELLERMAN, JULIUS | ) | |
| FLAGG, all in their official and | ) | |
| individual capacities, WEXFORD | ) | |
| HEALTH SOURCES, Inc., | ) | |
| Dr. LOWELL BROWN, MD., | ) | |
| Dr. HUGHES LOCHARD, MD., and | ) | |
| RHONDA MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

Plaintiff, AARON MCCROY, by his attorneys, THOMAS F. LONDRIGAN,
DOUGLAS J. QUIVEY, anc CARISSA HANING of LONDRIGAN, POTTER, &
RANDLE, P.C., complaining of Defendants state:

## JURISDICTION

1.  This action is brought pursuant to the First, Eighth, Fourteenth Amendments
of the United States Constitution as allowed by 42 U.S.C. §1983,  Title II of 42 U.S.C.
§ 12101, and 29 U.S.C. § 794.  Jurisdiction is invoked pursuant to 28 U.S.C. §§1331
and 1343.                                                                          Exhibit A

2.  At all relevant times, Plaintiff is and has been an inmate committed to the custody of Defendant Illinois Department of Corrections, hereinafter "IDOC."  During all relevant times herein, he has been incarcerated at Western Illinois Correctional Center, hereinafter "WICC," Menard Correctional Center, hereafter, "Menard," or Pinckneyville Correctional Center, hereinafter, "Pinckneyville."

3.  Defendant IDOC is an agency of the State of Illinois and a public entity within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.  IDOC also receives federal funds and is a covered entity pursuant to the Rehabilitation Act, 29 U.S.C. § 794 et seq.

4.  Defendant Roger E. Walker, Jr., sued in his official capacity, is the current Director of IDOC.

5.  Defendant Dennis Hockaday, sued in both his official and individual capacities, is a former Warden at WICC and was Warden at WICC during the time of some of the allegations complained about herein.

6.  Defendant Kevin Winters, sued in both his official and individual capacities, is a former Assistant Warden of Operations at WICC and was Warden at WICC during the time of some of the allegations complained about herein.

7.  Defendant Sandra Funk, sued in both her official and individual capacities, was the Assistant Warden of Programs for WICC during the time of some of the allegations complained about herein.

Exhibit A

8.  At all relevant times herein, Defendant <u>Deborah</u> Fuqua, sued in both her official and individual capacities, was the Health Care Unit Administrator at WICC.

9.  Defendant Lieutenant <u>Bryon</u> Law, sued in both his official and individual capacities, was a <u>correctional</u> supervisor at WICC during the time of some of the allegations complained about herein.

10.  Defendant Kenneth Kellerman, sued in both his official and individual capacities, was a correctional officer at WICC during the time of some of the allegations complained about herein

11. Defendant Wexford Health Sources, Inc., hereinafter "Wexford", is a Florida corporation doing business in Illinois who, at all relevant times, contracted with Defendant IDOC to provide health care services for inmates.  Based upon information and belief, at all relevant times,  Defendant Wexford also receives federal funds and is a covered entity pursuant under the Rehabilitation Act,  29 U.S.C. § 794 et seq.

12.  Defendant Dr. Lowell Brown is a Wexford employee who practiced medicine at WICC during the time of some of the allegations complained about herein.

13.   Defendant Dr. <u>Hughes</u> Lochard is a Wexford employee who practiced medicine at WICC during the time of some of the allegations complained about herein.

14.  Defendant Rhonda Mills is a Wexford employee who is a nurse practitioner and worked at WICC during all relevant times.

15. Defendant Julius Flagg, sued in both his individual and official capacities, was

Exhibit A

Facility ADA Coordinator and Acting Warden for Pinckneyville.

## FACTS

16.  While in the custody of the IDOC, Plaintiff developed a serious eye condition known as Keratoconus in both eyes.  Keratoconus is a progressive condition with decreased vision or visual distortion caused by an irregular protrusion of the cornea. Because of the Keratoconus and a subsequent injury, Plaintiff does not have his left eye and he has only 20/400 vision in his right eye, <u>corrected when able to wear a specifically fitted contact lens.</u>

17.  At all relevant times, Plaintiff's eye condition substantially limited his ability to see, lift over five pounds, and perform manual tasks and he is disabled within the meaning of both the Americans With Disabilities Act and the Rehabilitation Act. Plaintiff has also been diagnosed as being bipolar and suffers from depression.

18.  On July 1, 2002, Plaintiff filed a Petition to Proceed ***In Forma Pauperis*** with a complaint, motion for appointment of counsel, and a motion requesting a temporary restraining order along with a memorandum in support.

19.  On August 9, 2002, after filing numerous grievances with the IDOC, Plaintiff filed a ***pro se*** Complaint alleging that various Defendants violated the American's With Disabilities Act, the Rehabilitation Act, and the First and Eighth  Amendments to the United States Constitution.

20.  The basis for the grievances and the August 9, 2002 Complaint was that the

4                              Exhibit A

various Defendants knowingly and recklessly disregarded his Keratoconus condition and the serious health risks it presented by refusing to provide him with the on-going specialized opthomological care he needs. Plaintiff also grieved and complained about the Defendants denying him privileges, opportunities and programs that non-disabled inmates were allowed. Additionally, he grieved and complained about various Defendants retaliating against him for exercising his First Amendment rights and his rights under the American With Disabilities Act and Rehabilitation Act.

21. On multiple occasions after July 1, 2002, Plaintiff has filed additional grievances concerning his medical care, privileges denied because of his disability, retaliation, and other aspects of his confinement. None of the grievances have been allowed.

22. Because Plaintiff has been denied <u>necessary</u> on-going specialized opthomological care he needs, his underlying Keratoconus condition has worsened and Plaintiff has experienced serious and unnecessary pain and loss of vision.

23. In the ***pro se*** Complaint, Plaintiff also asked for a preliminary injunction that would enable his vision to be preserved. Specifically, Plaintiff requested that he be transferred to a facility that would allow him to receive the <u>specialized</u> eye care he needs and that he be given a corneal transplant.

24. For a long time both before after Plaintiff filed his grievances and ***pro se*** Complaint, IDOC refused to allow Plaintiff to have a transplant and instead provided

Exhibit A

him "conservative treatment" <u>while transferring his care to new opthomologists</u>.

25.   During the period of "conservative treatment,"  Plaintiff was confined to the infirmary, prevented from working, forced to drop out of the Early Release Program Vocational Training, and denied other privileges given non-disabled inmates.

26.  After a long delay, on February 3, 2003, Plaintiff was finally allowed to have <u>a corneal </u>transplant for his left eye.

27.  A large part of the delay and unnecessary suffering resulting from the delay was caused by Defendant Wexford's and Defendant IDOC's policies that no inmates are allowed <u>"organ</u> transplants" unless they <u>can</u> pay for the procedure.

28.  Based upon information and belief, Plaintiff is the only IDOC inmate ever allowed a <u>corneal</u> transplant that was not paid for by the inmate.

29.  On or about April 8, 2003, <u>after the corneal transplant</u>, Plaintiff's surgeon recommended a special contact lens that required a series of fittings.   The need for specialized contact lens was ratified by at least two of Plaintiff's subsequent treating opthomologists.

30.  The recommendations for specialized contact lens fittings in the number required have been and continue to be repeatedly ignored and/or delayed by IDOC and Wexford employees.  IDOC and Wexford employees also <u>continue to change </u>Plaintiff's treating opthomologists.

31.  Because Plaintiff is not allowed to have contact lens fittings when required,

Exhibit A

the lenses he uses have caused and continue to cause pain, scarring, and <u>further disability</u>.

32.   On or about November 6, 2003, Dr. Zeh, one of Plaintiff's treating opthomologists from Springfield, prescribed Plaintiff: "Maxitrol OS OID x 3 days" and then stop.

33.   Instead of giving Plaintiff Maxitrol for three days and then stopping, agents and employees of IDOC and Wexford gave Plaintiff Maxitrol daily until December 23, 2003.

34.   The steroids intentionally and repeatedly given Plaintiff by IDOC and/or Wexford employees caused steroid induced glaucoma in Plaintiff's left eye.

35.   When Plaintiff filed a grievance about excessive steroid treatments, <u>this</u> grievance was <u>also</u> denied because Defendant Fuqua claimed that the November 6, 2003 order was not clear as written.

36.   As it relates to Maxitrol, the November 6, 2003 Report of Consultation signed by both Dr. Zeh and Dr. Ghosh, a Wexford doctor, clearly states in full: "Maxitrol OS OID x 3 days" then stop.

37.   While in the infirmary, Plaintiff was denied the ability to participate in the Early Release Program Vocational Training, shop in the commissary so he could buy personal hygiene items, shower, exercise in the yard, and participate in other activities to the same extent allowed non-disabled inmates.

Exhibit A

38.   On or about November 6, 2003, agents and employees of IDOC and or Wexford asked Dr. Zeh if Plaintiff could be moved to general population and Dr. Zeh indicated that Plaintiff needed to stay in the infirmary due to his restrictions and because he did not want Plaintiff "to get poked in the eye."

39.   Nevertheless, on November 11, 2003, Defendant Dr. Lochard classified Plaintiff as "medically unassigned" with said classification to last until November 29, 2004.

40.   Because of his medical condition, during the first five months of 2004, Plaintiff continued to be housed in the infirmary.

41.   On June 7, 2004, Plaintiff filed two more grievances, again complaining of retaliation.  In one of the grievances, Plaintiff specifically complained about being denied commissary privileges that would allow him to buy personal hygiene items.   In the grievance, Plaintiff specifically stated that he was out of soap, toothpaste, and deodorant.  In the other grievance, among other things, Plaintiff again asked to be fitted with contact lenses per his doctor's orders.  He also asked to be allowed indoor and outdoor recreation, to have his TV placed on his table, and for all harassment to stop.

42.   On June 8, 2004, Dr. Anderson, an optometrist, wrote in a report that Plaintiff had a lifetime restriction of no contact sports and no weight lifting over "five pounds."

43.  Between November 6, 2003 and June 8, 2004, Plaintiff's eye sight worsened

Exhibit A

because of the steroid induced glaucoma and Keratoconus.  During this period, <u>his</u> <u>medical</u> situation also continued to deteriorate because of Defendants' refusal to allow the needed lens fittings.

44.   On June 8, 2004, over Plaintiff's objections, Plaintiff was <u>physically</u> transferred from the infirmary <u>and assigned cell mates from</u> the general population.

45.   On June 15, 2004, Plaintiff filed an emergency grievance regarding his placement in general population.

46.   Defendant Winters denied emergency status to the grievance and Plaintiff was forced to re-submit the grievance at the institutional level.  Based upon information and belief, that grievance was never adjudicated.

47.   Between November 6, 2003 and June 8, 2004, employees and agents of IDOC and/or Wexford did not receive any medical information regarding Plaintiff that gave them cause to believe his eye condition had substantially improved and that he was medically able to be transferred to general population.

48.   When Defendants placed Plaintiff in the general population, they knew he was functionally blind, suffering from mental illness, unable to protect himself, and at a very high risk for sustaining injury to his eyes caused by incidental contact or infection.

49.   On or about August 9, 2004, yet another opthomologist in Springfield, Dr. Lee,  "instructed" that Plaintiff be fitted for a contact lens and see Dr. Butler "for intraocular pressure control from his glaucoma."  Dr. Lee also instructed that Plaintiff

Exhibit A

should continue using Cosopt, Travatan, and Alphagan.  IDOC and Wexford employees <u>again</u> ignored the "instruction" as it relates to the contact lens fitting.

50.  On or about August 21, 2004, IDOC employees assigned an able-bodied, young, <u>and aggressive </u>inmate to Plaintiff's cell, Inmate <u>Brandon</u> Durham.  Based upon information and belief, Inmate Durham had just been released from segregation for fighting with his prior cell mate and had previously been given disciplinary tickets for fighting.

51.  After Inmate Durham was moved into the cell, Plaintiff asked <u>Security Officers </u>Law and Kellerman for a transfer.  Defendants Law and Kellerman told Plaintiff that it was WICC policy that he would have to refuse housing and go to segregation <u>as punishment </u>for refusing housing, if he wanted a transfer.

52.  Based upon information and belief, IDOC follows a "fight first" policy and prisoner requests to be transferred away from cell mates are not granted absent a physical incident.

53.  On September 23, 2004, Durham punched Plaintiff in the left eye causing Plaintiff to permanently lose his left eye.

54.  As a result of being punched in the eye, Plaintiff was given 30 days in segregation.  Based upon information and belief, Durham <u>was</u> released from IDOC custody <u>shortly thereafter.</u>

55.  On or about December 8, 2004, Plaintiff received <u>an independent </u>court-

Exhibit A

ordered eye evaluation by Dr. Kass. In the evaluation, Dr. Kass stated that Plaintiff needed to be fitted with a special contact lens to improve his vision in his right eye that would require multiple new visits to a provider near the correctional facility and that he needed a prosthesis for his <u>missing</u> left eye.

56.   To date, Plaintiff has not been provided with the multiple follow-up fittings. As a result, Plaintiff continues to experience severe pain and discomfort caused by the contact lens.

57.   Shortly after the court-ordered evaluation, on or about December 16, 2004, Plaintiff was supposedly given a "random" <u>urine</u> test. According to Defendants, Plaintiff failed to provide a large enough urine sample <u>to test for drugs</u>.

58.   Based upon information and belief, a medical doctor did not review Plaintiff's medical history to see if the medication he was taking included diuretics <u>or consider</u> whether he should have been given additional time to hydrate before providing the sample.

59.   Because of the <u>foregoing urine</u> test, on or about January 12, 2005, Plaintiff was again transferred, this time to Menard and placed in segregation far from his treating opthomologists in Springfield. The transfer occurred just prior to a hearing on the preliminary injunction and counsel for Plaintiff was not notified of the transfer. <u>No named defendants from WICC gave testimony at the hearing.</u>

60.   The entire time Plaintiff was in the infirmary at WICC, Defendant IDOC

Exhibit A

employees harassed Plaintiff and subjected him to conditions of confinement that they did not subject other inmates.  The harassment included but was not limited to: refusing to provide Plaintiff his prescribed medicine and personal hygiene articles, giving Plaintiff medicine that was not prescribed, intentionally leaving lights on that shined in Plaintiff's eyes, refusing Plaintiff's requests to go to the commissary, excessively searching Plaintiff's personal belongings, refusing Plaintiff the opportunity to shower before his outside medical visits, not allowing Plaintiff recreation, and waking Plaintiff early in the morning and making him clean dirt he could not see and making him empty out his locker and dresser.

61.  On or about August 24, 2005, Plaintiff was again transferred, this time to Pinckneyville and for the first time placed in an ADA cell reserved for disabled prisoners, cell number: R2-B16.

62.  On or about December 29, 2005, Plaintiff was forced to vacate R2-B16 because Defendant Flagg concluded Plaintiff was "not disabled."

63.  Based upon information and belief, R2-B16 was not immediately occupied by another inmate and remained vacant for a period of time after Plaintiff was removed from it on December 29, 2005.

64.  Defendant Flagg deemed Plaintiff non-disabled, despite Dr. Feinerman and Nurse Ferrari explicitly authorizing Plaintiff to remain in a ADA cell.

**COUNT I**
**42 U.S.C. § 1983**

Exhibit A

## FIRST AMENDMENT/RETALIATION
### (Defendants Walker, Hockaday, Winters, Funk, Fuqua, Law, Kellerman, Brown, Lochard, & Mills)

65-128.  Plaintiff reallages Paragraphs 1-64 as Paragraphs 65-128 of Count I.

129.  In retaliation against Plaintiff for exercising his First Amendment right to file grievances and seek redress in a court of law, Defendants have retaliated against Plaintiff by, but not limited to, committing one or more of the following acts and/or omissions:

a.    Refusing to follow Plaintiff's doctor's orders in a timely manner;

b.    Refusing to transfer Plaintiff to a facility that would allow him to receive the medical care he needs;

c.    Constantly changing Plaintiff's treating <u>opthomologist</u>;

d.    Refusing to provide Plaintiff prescribed medicine;

e.    Administering medicine that was not prescribed;

f.    Delaying Plaintiff's needed corneal transplant;

g.    Trying to make Plaintiff pay for the needed corneal transplant;

h.    Refusing to allow Plaintiff to be fitted for special contact lenses in both eyes as directed by his treating <u>opthomologists</u> in a timely and regular manner;

i.    Refusing to schedule needed medical appointments;

j.    Denying Plaintiff access to programs and privileges provided non-disabled inmates;

k.    Harassing Plaintiff as alleged in Paragraph 60;

Exhibit A

l.    Arbitrarily changing Plaintiff's medically unassigned classification;

m.    Refusing to allow Plaintiff to go to the commissary and denying him recreation;

n.    Transferring Plaintiff to the general population;

o.    Assigning Plaintiff a <u>violent</u> cell mate that had recently been sent to segregation for fighting his former cell mate;

p.    Refusing to place Plaintiff in another cell unless he first agreed to a disciplinary infraction and serving time in segregation;

q.    Punishing Plaintiff for getting hit in the eye;

r.    Punishing Plaintiff for not providing enough urine without first checking with a medical doctor to see if there was a medical reason for him not providing a large enough sample;

s.    <u>Suddenly and without cause</u> considering Plaintiff a much higher security risk than he actually is;

t.    Transferring Plaintiff to Menard.

130.  As a direct and proximate result of Defendants retaliation, Plaintiff has suffered and will continue to suffer great pain and suffering, the permanent loss of his left eye, permanent loss of vision in his right eye, the opportunity to earn good time credit that would have allowed him to already be released from confinement, the loss of commissary, recreation, and other privileges, <u>and the future loss of earnings.</u>

WHEREFORE, Plaintiff prays for damages against Defendants as follows:

A.    An injunction requiring IDOC to transfer Plaintiff to a facility that will allow him to receive on-going and timely treatment by the qualified opthomologists that have treated him in the Springfield area;

Exhibit A

B.    In the alternative to A, an injunctive order requiring IDOC and Wexford to strictly follow a treatment plan provided by a qualified opthomologist wherever Plaintiff is housed to include strict adherence to a timely contact lens fitting schedule;

C.    An injunction requiring IDOC to provide Plaintiff with the same access to good time credit programs, employment, and other privileges given to non-disabled inmates;

D.    Credit for good time credits he would have received absent the retaliatory acts;

E.    Compensatory damages in the amount to be determined at trial;

F.    Punitive damages in the amount to be determined at trial;

G.    Reasonable attorney fees and costs;

H.    Such other relief as this Court deems fit;

I.    An injunction requiring Defendant to place Plaintiff in a <u>single</u> cell that limits the potential for further injury to his <u>remaining</u> eye.

## COUNT II
## ADA & REHABILITATION RETALIATION
### (Defendants IDOC & Wexford)

131-164.  Plaintiff reallages Paragraphs 1-64 as Paragraphs 131-164 of Count II.

165.   In retaliation against Plaintiff for him complaining about disability discrimination,  Defendants IDOC and Wexford, by and through their agents and employees, have retaliated against Plaintiff by, but not limited to, committing one or more of the following acts and/or omissions:

Exhibit A

a.      Refusing to follow Plaintiff's doctor's orders in a timely manner;

b.      Refusing to transfer Plaintiff to a facility that would allow him to receive the medical care he needs;

c.      Constantly changing Plaintiff's treating <u>ophthalmologist</u>;

d.      Refusing to provide Plaintiff prescribed medicine;

e.      Administering medicine that was not prescribed;

f.      Delaying Plaintiff's needed corneal transplant;

g.      Trying to make Plaintiff pay for the needed corneal transplant;

h.      Refusing to allow Plaintiff to be fitted for special contact lenses in both eyes as directed by his treating <u>opthomologists</u> in a timely and regular manner;

i.      Refusing to schedule needed medical appointments;

j.      Denying Plaintiff access to programs and privileges provided non-disabled inmates;

k.      Harassing Plaintiff as alleged in Paragraph 60;

l.      Arbitrarily changing Plaintiff's medically unassigned classification;

m.      Refusing to allow Plaintiff to go to the commissary and denying him recreation;

n.      Transferring Plaintiff to the general population;

o.      Assigning Plaintiff a <u>violent</u> cell mate that had recently been sent to segregation for fighting his former cell mate;

p.      Refusing to place Plaintiff in another cell unless he first agreed to a disciplinary infraction and serving time in segregation;

Exhibit A

q.    Punishing Plaintiff for getting hit in the eye;

r.    Punishing Plaintiff for not providing enough urine without first checking with a medical doctor to see if there was a medical reason for him not providing a large enough sample;

s.    <u>Suddenly and without cause</u> considering Plaintiff a much higher security risk than he actually is;

t.    Transferring Plaintiff to Menard;

u.    Removing Plaintiff from an ADA cell.

166.  As a direct and proximate result of Defendants retaliation, Plaintiff has suffered and will continue to suffer great pain and suffering, the permanent loss of his left eye, permanent loss of vision in his right eye, the opportunity to earn good time credit that would have allowed him to already be released from confinement, the loss of commissary and other privileges, <u>and future loss of earnings.</u>

WHEREFORE, Plaintiff prays for damages against Defendants as follows:

A.    An injunction requiring IDOC to transfer Plaintiff to a facility that will allow him to receive on-going and timely treatment by the qualified opthomologists that have treated him in the Springfield area;

B.    In the alternative to A, an injunctive order requiring IDOC and Wexford to strictly follow a treatment plan provided by a qualified opthomologist wherever Plaintiff is housed to include strict adherence to a timely contact lens fitting schedule;

C.    An injunction requiring IDOC to provide Plaintiff with the same access to good time credit programs, employment, and other privileges given to non-disabled inmates;

D.    Credit for good time credits he would have received absent the retaliatory acts;

Exhibit A

E.      Reasonable attorney fees and costs;

F.      Such other relief as this Court deems fit.

G.      An injunction requiring Defendant to place Plaintiff in a <u>single</u> cell that limits the potential for further injury to his <u>remaining</u> eye.

**COUNT III**
**42 U.S.C. § 1983**
**EIGHTH AMENDMENT FAILURE TO PROTECT**
**(Defendants Walker, Hockaday, Winters, Funk, Fuqua,**
**Law, Kellerman, Brown, Lochard, & Mills)**

167–230.  Plaintiff reallages Paragraphs 1-64 as Paragraphs 167-230 of Count III.

231.  Given Plaintiff's physical and psychological condition, Defendants acted with deliberate indifference to Plaintiff's safety when they transferred him from the infirmary to general population on or about June 8, 2004 <u>and/or helped facilitate the transfer.</u>

232.  Given Plaintiff's physical and psychological condition, Defendants acted with deliberate indifference to Plaintiff's safety when they assigned him a cell mate, Inmate Durham, who had a known history of physical violence towards his cell mates.

233.  Defendants Law and Kellerman acted with deliberate indifference to Plaintiff's safety when they refused to transfer Plaintiff out of the cell with Inmate Durham when Plaintiff requested unless Plaintiff agreed to go to segregation as a result of the transfer.

234.  IDOC's "fight first policy" as applied by its agents and employees created

Exhibit A

an unnecessarily unsafe atmosphere for Plaintiff while he was housed in general population.

235.  As a direct and proximate result of Defendants' deliberate indifference to Plaintiff's safety, Plaintiff was attacked by Inmate Durham and he has suffered, and will continue to suffer, great pain and suffering and the permanent loss of his left eye.

WHEREFORE, Plaintiff prays for damages against Defendants as follows:

A.    An injunction requiring IDOC to end the "fight first policy";

B.    Compensatory damages in the amount to be determined at trial;

C.    Punitive damages in the amount to be determined at trial;

D.    Reasonable attorney fees and costs;

E.    Such other relief as this Court deems fit.

## COUNT IV
## 42 U.S.C. § 1983
## EIGHTH AMENDMENT DELIBERATE
## INDIFFERENCE TO SERIOUS MEDICAL NEED
### (Defendants Walker, Hockaday, Winters, Funk, Fuqua, Law, Kellerman, Flagg, Brown, Lochard, & Mills)

236–299.  Plaintiff realleges Paragraphs 1-64 as Paragraphs 236-299 of Count IV.

300.  Defendants have acted and continue to act with deliberate indifference to Plaintiff's serious eye condition by, but not limited to, committing one or more of the following acts and/or omissions:

a.    Refusing to follow Plaintiff's doctors' orders in a timely manner;

b.    Refusing to transfer Plaintiff to a facility that would allow him to

19                                    Exhibit A

receive the medical care he needs;

c.     Constantly changing Plaintiff's treating <u>opthomologist</u>;

d.     Refusing to provide Plaintiff prescribed medicine;

e.     Administering medicine that was not prescribed;

f.     Delaying Plaintiff's needed corneal transplant;

g.     Trying to make Plaintiff pay for the needed corneal transplant;

h.     Refusing to allow Plaintiff to be fitted for special contact lenses in both eyes as directed by his treating <u>ophthalmologists</u> in a timely and regular manner;

i.     Refusing to schedule needed medical appointments;

j.     Transferring Plaintiff to the general population;

k.     Assigning Plaintiff a <u>violent</u> cell mate that had recently been sent to segregation for fighting his former cell mate;

l.     Refusing to place Plaintiff in another cell unless he first agreed to a disciplinary infraction and serving time in segregation;

m.     Removing Plaintiff from an ADA cell.

301.  As a direct an proximate result of Defendants' deliberate indifference to Plaintiff's serious eye condition, Plaintiff has suffered, and will continue to suffer, great pain and suffering, the permanent loss of his left eye, permanent loss of vision in his right eye, the opportunity to earn good time credit that would have led to him already being released from confinement, the loss of commissary and other privileges, <u>and future loss of earnings.</u>

Exhibit A

WHEREFORE, Plaintiff prays for damages against Defendants as follows:

A.    An injunction requiring IDOC to transfer Plaintiff to a facility that will allow him to receive on-going and timely treatment by the qualified opthomologists that have treated him in the Springfield area;

B.    In the alternative to A, an injunctive order requiring IDOC and Wexford to strictly follow a treatment plan provided by a qualified opthomologist wherever Plaintiff is housed to include strict adherence to a timely contact lens fitting schedule;

C.    An injunction requiring IDOC to provide Plaintiff with the same access to good time credit programs, employment, and other privileges given to non-disabled inmates;

D.    Credit for good time credits he would have received absent the retaliatory acts;

E.    Compensatory damages in the amount to be determined at trial;

F.    Punitive damages in the amount to be determined at trial;

G.    Reasonable attorney fees and costs;

H.    Such other relief as this Court deems fit;

I.    An injunction requiring Defendant to place Plaintiff in a <u>single</u> cell that limits the potential for further injury to his <u>remaining</u> eye.

## COUNT V
## ADA & REHABILITATION ACT
### (Defendants IDOC & Wexford)

302–365.  Plaintiff realleges Paragraphs 1-64 as Paragraphs 302-365 of Count V.

366.    Defendant IDOC denied Plaintiff the same privileges and public accommodations, in nature and extent, as allowed similarly situated non-disabled inmates <u>at WICC</u> to include but not limited to:

Exhibit A

    a.      Access to employment and programs that would allow Plaintiff to earn credit towards his release;

    b.      Access to the commissary, exercise facilities, and all other facilities and activities to the same extent that non-disabled inmates were and are allowed.

367.  Defendants IDOC and Wexford, by and through its agents and employees, discriminated against Plaintiff because of his disability when they moved him to general population with no cell restrictions at WICC and housed him in a cell with Inmate Durham, an inmate with a history of violence, knowing that Plaintiff was unable to protect himself.

368.  Defendant IDOC discriminated against Plaintiff while in Pinckneyville when it refused to accommodate Plaintiff's disability and removed him from an ADA cell.

369.  As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered, and will continue to suffer, great pain and suffering, the permanent loss of his left eye, the opportunity to earn good time credit that would have led to him already being released from confinement, the loss of commissary and other privileges, and future loss of earnings.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

A.      An injunction requiring IDOC to provide Plaintiff with the same access to good time credit programs, employment, and other privileges given to non-disabled inmates;

B.      Credit for good time credits he would have received absent the discriminatory acts;

Exhibit A

C.    Compensatory damages in the amount to be determined at trial;

D.    Punitive damages in the amount to be determined at trial;

E.    Reasonable attorney fees and costs;

F.    Such other relief as this Court deems fit;

G.    An injunction requiring Defendant to place Plaintiff in a <u>single</u> cell that limits the potential for further injury to his <u>remaining</u> eye.

Respectfully submitted,

AARON MCCROY, Plaintiff

By:     <u>s/Thomas F. Londrigan</u>
THOMAS F. LONDRIGAN,  Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com

23                          Exhibit A

### Certificate of Service

The hereby certify that on March 22, 2007,  I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification to such filing to the following;

Ms. Theresa Powell
Heyl, Royster, Voelker & Allen
National City Center, Ste. 575
1 North Old State Capitol Plaza
PO Box 1687
Springfield, IL 62705-1687

Mr. Carl J. Tenney
Hughes, Hill & Tenney, L.L.C.
236 N. Water Street
P. O. Box 560
Decatur, IL   62525-0560

Lisa Madigan, Illinois Attorney General
Attn: Kelly Choate, A.A.G. &
Julie L. Morgan. A.A.G.
500 South Second Street
Springfield, IL 62706

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Aaron McCroy, Reg. #N51882
P.O. Box 999
Pinckneyville, IL 62274

By:     s/Thomas F. Londrigan
THOMAS F. LONDRIGAN,  Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com

Exhibit A