**E-FILED**
Friday, 30 March, 2007  10:58:07 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| AARON MCCROY, #–51882, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 02-3171 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS</u>

NOW COMES the Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS, ROGER E. WALKER, JR., DENNIS HOCKADAY, KEVIN WINTERS, TERRY POLK, DAVID SCHNEPEL, SANDRA FUNK, DEBRAH FUQUA, BYRON LAW, KENNETH KELLERMAN, JUDITH WILSON, PAMELA A. GRUBMAN, and JULIUS FLAGG, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, hereby submit their response to Plaintiff's Request for Admissions as follows:

1.     Each of the following attached as an Exhibit to these Request for Admission is a true copy kept in the normal course of business by Defendants the Illinois Department of Corrections and Roger E. Walker, Jr. in his official capacity:

| Exhibit | Description |
|---|---|
| A | Criminal History Record Information (as of 7/24/02) (BATES #00035-00036) |
| B | Executive Summary (as of 7/25/02) (BATES #00088) |
| C | Transfer in Review Sheet for Institution Hill (7/29/02) (BATES #00087) |

PLAINTIFF'S EXHIBIT
B

| | | |
|---|---|---|
| D | IDOC Internal Classification Form (7/30/02) (BATES #00083-00084) | |
| E | Adjustment Committee Final Summary Report on 1/18/03 Disciplinary Report (BATES #00153-00154) | |
| F | 1/28/03 Disciplinary Report (BATES #00151) | |
| G | 2/4/03 Adjustment Committee Final Summary Hearing Report (BATES #00149-00150) | |
| H | 6/4/03 Disciplinary Report (BATES # 00145-00146) | |
| I | 3/11/04 Disciplinary Report (BATES #00068) | |
| J | 3/17/04 Adjustment Committee Final Summary Hearing Report (BATES #00066-00067) | |
| K | 3/24/04 IDOC Transfer Report (BATES #00054-00055) | |
| L | 7/23/04 Incident Report (BATES #00123) | |
| M | 7/25/04 Incident Report (BATES #00124-00125) | |
| N | 8/2/04 Incident Report (BATES #00120) | |
| O | 8/2/04 Disciplinary Report (BATES #001117-00118) | |
| P | 8/5/04 Adjustment Committee Final Summary Hearing Report (BATES #00119) | |
| Q | 9/23/04 Incident Report of Officer Lindsey (BATES #00108) | |

| | |
|---|---|
| R | 9/23/04 Incident Report of D. Drennen regarding Inmate McCroy (BATES #00107) |
| S | 9/23/04 Incident Report of Sgt. Vancil (BATES #00102-00103) |
| T | 9/23/04 Disciplinary Report (BATES #00099) |
| U | 10/8/04 Adjustment Committee Final Summary Hearing Report (BATES #00101) |
| V | 10/20/04 Good time Revocation and new Projected Release Date (BATES #00003-00004) |
| W | 11/24/04 Offender Count Adjustment Release Form from WICC (BATES #00019) |
| X | 9/9/93 Optometry Clinic Note (BATES #00988) |
| Y | 4/7/95 Prescription Order (BATES #01058) |
| Z | 9/21/95 Optometry Clinic Note (BATES #00989) |
| AA | 1/23/96 Ltr. to Dr. Elyea from McCroy (BATES #00948) |
| BB | 2/6/96 Prescription Order (BATES #01051) |
| CC | 2/16/96 Ophthalmology Note (BATES #00979) |
| DD | 2/23/96 Prescription Order (BATES #01052) |
| EE | 3/14/96 Optometry Clinic Note (BATES #00990) |

| | | |
|---|---|---|
| FF | 7/29/96 | Ophthalmology Note (BATES #00980) |
| GG | 7/29/96 | Prescription Order (BATES #01053) |
| HH | 8/30/96 | Ophthalmology Note (BATES #00982) |
| II | 8/30/96 | Prescription Order (BATES #01059) |
| JJ | 9/27/96 | Ophthalmolgy Note (BATES #00981) |
| KK | 10/8/96 | Memorandum from Dr. Elyea to McCroy (BATES #01094) |
| LL | 12/16/94 | Health Status Form for Transfer (BATES #00955) |
| MM | 1/6/97 | Medical Consultation Report (BATES #00991) |
| NN | 1/6/97 | Prescription Order (BATES #01060) |
| OO | 2/3/97 | Consultation Note (BATES #00993) |
| PP | 4/14/97 | Consultation Note (BATES #00995) |
| QQ | 4/14/97 | Optical Prescription Order (BATES #00997) |
| RR | 5/5/97 | Receipt for Eyeglasses (BATES #01100) |
| SS | 6/9/97 | Consultation Report (BATES #00999) |
| TT | 7/14/97 | Consultation Report (BATES #01001) |

UU    11/22/97  Health Status Form for Transfer
(BATES #00966)

VV    5/21/98    Optometry Clinic Note
(BATES #00744)

WW    7/23/98    Optometry Clinic Note
(BATES #00743)

XX    7/23/98    Prescription Order
(BATES #01063)

YY    3/6/99     Health Status Form for Transfer
(BATES #00978)

ZZ    6/28/99    Consultation Report
(BATES #00730)

AAA    7/99      Contact Lenses Order
(BATES #00745)

BBB    7/5/99     Prescription Order
(BATES #00814)

CCC    2/2/00     Prescription Order
(BATES #00816)

DDD    9/27/00    Prescription Order
(BATES #00817)

EEE    10/2/00    Referral Request Form
(BATES #00747)

FFF    10/5/00    Contact Lens Order
(BATES #00746)

GGG    10/19/00  Prescription Order
(BATES #00818)

HHH    3/01      Contact Lens Order
(BATES #00650 and #00649)

III    5/3/01     Prescription Order
(BATES #00819)

JJJ          7/22/01    Prescription Order
             (BATES #00820)

KKK          10/01      Contact Lens Order
             (BATES #00648 and 00647)

LLL          10/30/01   Health Status Form for Transfer
             (BATES #00727)

MMM          11/1/01    WICC Personal Property Inventory Record
             (No BATES #)

NNN          11/2/01    Memorandum from Deborah Fuqua to McCroy
             (BATES #00903)

OOO          12/17/01   Correspondent to Warden Schnepel and Nurse
             Fuqua from McCroy
             (2 pages, no BATES number)

PPP          12/18/01   Optometrist Note
             (BATES #00479)

QQQ          1/9/02     Invoice for glass prescription
             (BATES #00590)

RRR          1/27/02    Grievance Report
             (3 pages, no BATES numbers)

SSS          1/29/02    Receipt for eyeglasses
             (BATES #00589)

TTT          2/26/02    Consultation Report
             (BATES #00535)

UUU          3/5/02     Referral Request Form
             (BATES #00536)

VVV          3/11/02    Grievance Report
             (2 pages, no BATES numbers)

WWW          3/11/02    Grievance Report
             (2 pages, no BATES numbers)

XXX          3/26/02    Correspondents from Dr. Plattner to WICC
             and Medical Progress Note (BATES #00539 and
             #00487)

YYY             4/2/02    Prescription Order
                (BATES #00621)

ZZZ             4/12/02   Consultation Report
                (BATES #00541)

AAAA            4/16/02   Referral Request Form
                (BATES #00544)

BBBB            5/3/02    Memo to Record Office re: Emergency
                Medical Furlough (BATES #00546)

CCCC            5/13/02   Consultation Report
                (BATES #00548)

DDDD            5/13/02   Prescription Order
                (BATES #00622)

EEEE            5/14/02   Referral Request Form
                (BATES #00550)

FFFF            5/20/02   Fax Memo from Dr. Rayford to Wexford
                (BATES #00551)

GGGG            6/6/02    Grievance Report
                (no BATES number)

HHHH            8/19/02   Referral Request Form
                (BATES #00553)

IIII            8/21/02   Fax memo from Dr. Rowe to Wexford
                (BATES #00554)

JJJJ            8/21/02   Referral Request Form
                (BATES #00556)

KKKK            9/4/02    Referral Request Form
                (BATES #00560)

LLLL            9/9/02    Fax memo from Wexford to Lynn/Lori
                (BATES #00562)
MMMM            9/23/02   Fax memo from Wexford to Lynn/Lori
                (BATES #00564 and 00565)

NNNN            9/30/02   Referral Request Form
                (BATES #00568)

OOOO            11/20/02  Consultation Report
                (BATES #0572)

PPPP            12/4/02   Referral Request Form
                (BATES #00573)

QQQQ            12/10/02  Pre-Certification Fax Notification
                (BATES #00575)

RRRR            12/30/02  History & Physical for Outpatients
                (BATES #00581)

SSSS            1/6/03    Progress Note from St. John's Hospital
                (BATES #00379)

TTTT            1/7/03    Consultation Report
                (BATES #00381)

UUUU            1/7/03    Referral Request Form
                (BATES #00382)

VVVV            1/8/03    WICC Memo admitting McCroy to Infirmary
                (BATES #00468)

WWWW            1/13/03   WICC Memo discharging McCroy from
                infirmary
                (BATES #00469)

XXXX            2/3/03    WICC Memo admitting McCroy to infirmary
                (BATES #00470)

YYYY            2/3/03    Operative Report and Discharge Instructions
                from St. John's Hospital
                (BATES #00473-474, and #00388)

ZZZZ            2/3/03    Outpatient Prescription from St. John's
                (BATES #00389)

a               2/4/03    Consultation Report
                (BATES #00393)

b               2/6/03    Consultation Report
                (BATES #00399)

c                  2/11/03    Optometrist Progress Note
(BATES #00272)

d                  3/6/03     Consultation Report
(BATES #00406)

e                  3/17/03    WICC Memo from Dr. Sims to McCroy
(BATES #00476)

f                  4/8/03     Consultation Report
(BATES #00411)

g                  4/16/03    Referral Request Form
(BATES #00412)

h                  5/9/03     Consultation Report
(BATES #00415)

I                  5/22/03    Referral Request
(BATES #00416)

j                  6/25/03    Fax Note from Prairie Eye Center
(BATES #00420)

k                  7/28/03    Referral Request
(BATES #00425)

l                  8/29/03    Prescription Orders
(BATES #00091 and #00092)

m                10/21/03  Medical Progress Note
(BATES #00048)

n                10/21/03  Referral Request
(BATES #00093)

o                10/22/03  WICC Memo re: medical furlough and WICC
Medical Services Refusal Form
(BATES #00094 and #00095)

p                11/6/03    Consultation Report
(BATES #00102 and 00097)

q                11/21/03  WICC Memo re: McCroy infirmary placement
(BATES #00179)

r          11/29/03  WICC Memos re: medically unassigned and
           Restrictions (BATES #00180 and #00181)

s          12/23/02  Consultation Report
           (BATES #00101)

t          1/8/04    Consultation Report
           (BATES #ATTYG10210)

u          4/12/04   Consultation Report
           (BATES #AATYG10200)

v          5/21/04   Consultation Report
           (BATES #ATTYG10204)

w          6/18/04   Progress Note by Dr. Steahly
           (BATES #ATTYG10218)

x          8/9/04    Progress Note by Dr. Lee
           (BATES #ATTYG10223)

y          9/27/04   Correspondence from Dr. Farris to Dr.
           Diesselar
           (BATES #ATTYG10330)

z          11/21/03  Nurse's Note
           (BATES #00071)

aa         11/21/03  Infirmary Progress Notes
           (BATES #00073)

bb         11/6/03   Prescription Order
           (BATES #00103)

cc         12/9/03   Prescription Order
           (no BATES number)

dd         10/11/04  Surgical Report
           (BATES #ATTYG1003 and #ATTYG1008)

ee         12/8/04   Consultation Report
           (No BATES number)

ff         12/16/04  Incident Report
           (BATES #P82)

| | | |
|---|---|---|
| gg | 12/16/04 | Disciplinary Report (BATES #P81 and P80) |
| hh | 12/17/04 | WICC Disciplinary Segregation Double Celling Screening Form  (BATES #P87) |
| ii | 2/1/05 | Disciplinary Segregation Double Celling Screening Form  (BATES #P86) |
| jj | 4/15/05 | IDOC Hearing of Administrative Review Board Video Conference (BATES #P71) |
| kk | 9/6/05 | Medical Permission Form for low bunk (no BATES number) |
| ll | 9/8/05 | IDOC Memo from Warden Evans to McCroy re: safety glasses (BATES number illegible) |
| mm | 9/8/05 | IDOC Memo from Warden Evans to McCroy re: safety glasses  (no BATES number) |
| nn | 1/16/06 | Medical Permission Form for ADA cell (no BATES number) |
| oo | 1/30/06 | IDOC Memo from Sue Ferrari to McCroy re: ADA cell (No BATES number |

**Response:  Defendants admit Exhibits B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, BB, CC, DD, EE, FF, GG, HH, II, JJ, KK, LL, MM, NN, OO, PP, QQ, RR, SS, TT, UU, VV, WW, XX, YY, ZZ, BBB, CCC, DDD, EEE,  GGG, III, JJJ, LLL, MMM, NNN, PPP, QQQ, SSS, TTT, UUU, YYY, ZZZ, AAAA, BBBB, CCCC, DDDD, EEEE, HHHH, JJJJ, KKKK, NNNN, PPPP, TTTT, UUUU, VVVV, WWWW, XXXX, a, b, c, d, e, f, g, h, m, o, p, q, r, w, t, u, v, z, aa, cc, ff, gg, hh, ii, jj, kk, ll, mm, nn, oo are maintained in the usual and ordinary course of business in the Illinois Department of Corrections.  Defendants deny the remainder of allegations in this paragraph.**

2.    The Criminal History Record Information dated 7/24/02 (Exhibit A) was produced by the Illinois State Police in response to a request by Defendant IDOC.

**Response:  Defendants lack knowledge to either admit or deny the allegations in paragraph 2.**

3.    The Criminal History Record Information dated 7/24/02 (Exhibit A)

accurately reflects the known criminal history of Mr. Durham in Kane County, Illinois,

prior to his incarceration, including charges of resisting an officer on 2/13/00, violating

an order of protection on 4/25/01 and 4/27/01, and armed robbery on 3/27/02.

**Response:   Defendants lack sufficient knowledge to either admit or deny the**

**allegations in paragraph 3, as they did not author the document.**

4.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr.

had access to the information contained in Exhibit A on 7/24/02 and throughout Inmate

Durham's incarceration at all IDOC facilities.

**Response:   Defendants admit Defendant Roger Walker had access to the**

**information in the noted exhibit, but deny he accessed the information.**

**Defendants lack knowledge as to what the entity, Illinois Department of**

**Corrections (hereinafter IDOC), had "access" to but admit the information in this**

**exhibit was maintained in IDOC files.**

5.    Exhibit B is the Executive Summary dated 7/25/02 which indicates Inmate

Durham was admitted to the Stateville Reception Center on 7/24/02 directly from court

with a sentence of six (6) years.

**Response:   Defendants admit the allegations in paragraph 5.**

6.    Exhibit C is a Transfer in Review sheet dated 7/29/02 which indicates

Inmate Durham was transferred from the Stateville Reception Center to the Hill

Correctional Center on 7/29/02.

**Response:   Defendants admit the allegations in paragraph 6.**

7.    At the time of transfer review on 7/30/02, the special concerns listed included the violation of an order of protection and drug and alcohol abuse.  (Exhibit C)

**Response:    Defendants admit the allegations in paragraph 7.**

8.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit C on 7/29/02 and throughout Inmate Durham's incarceration at all IDOC facilities.

**Response:    See response to paragraph 4.**

9.    Employees of the IDOC at the Hill Correctional Center completed an internal classification form for maximum security facilities on 7/30/02 regarding Inmate Durham.  (Exhibit D)

**Response:    Defendants admit the allegations in paragraph 9.**

10.    Inmate Durham's criminal and background factors on 7/30/02 included the fact that his current offense involved "violence against others".  (Exhibit D, II.B)

**Response:    Defendants admit the allegations in paragraph 10.**

11.    On 7/30/02, Inmate Durham was classified as having a moderate aggression level.  (Exhibit D, IV.B)

**Response:    Defendants admit the allegations in paragraph 11.**

12.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit D on 7/30/02 and throughout Inmate Durham's incarceration at all IDOC facilities.

**Response:    See response to paragraph 4.**

13.    There was a disciplinary hearing on 1/23/03 regarding an incident involving Inmate Durham on 1/18/03.

**Response:  Defendants admit the allegations in paragraph 13.**

14.    On 1/23/03, Inmate Durham pled guilty to the offenses of unauthorized movement and disobeying a direct order which occurred on 1/18/03.  (Exhibit E)

**Response:  Defendants admit the allegations in paragraph 14.**

15.    On 1/23/03, the Hearing Committee noted that Inmate Durham stated he was refusing housing on 1/18/03 due to a conflict with his cell mate, that he feared for his safety on 1/18/03, and that he wished to avoid a fight on 1/18/03.  (Exhibit E)

**Response:  Defendants deny Exhibit E attributes a statement by Durham that he refused housing due to a conflict with his cell mate.  Defendants admit the committee's "Basis for Decision" states there was a conflict.  Defendants admit the remaining allegations in paragraph 15.**

16.    On 1/23/03, Inmate Durham received the following disciplinary action for the incident of 1/18/03: demotion to C Grade for one month, segregation for one month, and loss of commissary for one month.  (Exhibit E)

**Response:  Defendants admit the Adjustment Committee recommended disciplinary as stated in paragraph 16, but deny that the exhibit shows what discipline was actually received.**

17.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit E from the date of occurrence, 1/18/03, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:   Defendants admit Defendant Roger Walker, Jr. had the authority to access the information contained in Exhibit E, but deny he accessed that information.  Defendants lack sufficient knowledge to either admit or deny to what information the Illinois Department of Corrections as an entity had "access" to, but admit the information in Exhibit E was contained in files maintained within the Illinois Department of Corrections.

18.    Per the disciplinary Report marked as Exhibit F, there was an incident on 1/28/03 involving Inmate Durham and another inmate.  (Exhibit F)

Response:   Defendants admit inmate Durham received a disciplinary ticket (Exhibit F) and that the employee's observations are as found on that exhibit.

19.    Officer E. Anderson, an employee of defendant IDOC, completed the disciplinary report on 1/28/03 and charged Inmate Durham with intimidation or threats and insolence on 1/28/03.  (Exhibit F)

Response:   Defendants admit the allegations in paragraph 19.

20.    The disciplinary report indicates Inmate Durham was threatening another inmate on 1/28/03.  (Exhibit F)

Response:   Defendants admit the observations of the reporting employee are as reported on Exhibit F.

21.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit F from the date of occurrence, 1/28/03, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:   Defendants admit that Defendant Roger Walker had access to the records, but deny he accessed them.  Defendants lack knowledge to either admit

15

or deny to what the entity, Illinois Department of Corrections, had "access" to but admit the information was contained in Illinois Department of Corrections' files.

22.    There was a disciplinary hearing on 2/4/03 regarding the incident involving Inmate Durham and his cell mate on 1/28/03. (Exhibit G)

Response:  Defendants admit the allegations in paragraph 22.

23.    On 2/4/03, Inmate Durham pled guilty to the offenses of intimidation or threats towards his cell mate and insolence which occurred on 1/28/03. (Exhibit G)

Response:  Defendants admit the allegations in paragraph 23.

24.    The Hearing Committee noted that the reporting Officer observed "a heated verbal exchange" on 1/28/03 between Inmate Durham and his cell mate. (Exhibit G)

Response:  Defendants admit the allegations in paragraph 24.

25.    The Hearing Committee noted that Inmate Durham admitted he and his cell mate "had words and would have fought" on 1/28/03. (Exhibit G)

Response:  Defendants admit the Hearing Committee noted in its Basis for Decision that Durham admitted he and his cell mate had heated words and would have fought.  Defendants lack knowledge as to whether this statement was made by Durham or paraphrased by the Committee.

26.    On 2/4/03, Inmate Durham received the following disciplinary action for the incident on 1/28/03:  demotion to C Grade for two months, segregation for one month, and loss of commissary for two months. (Exhibit G)

Response:  Defendants admit Exhibit G reflects the Committee recommended the discipline alleged and that the CAO or his designee signed off on the

16

recommendation. **Defendants deny this exhibit shows whether the discipline was actually applied, as Plaintiff could have grieved the ticket.**

27.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit G from the date of the incident on 1/28/03 throughout Inmate Durham's incarceration at all IDOC facilities.

Response:    **See response to paragraph 4.**

28.    There was a disciplinary report issued on 6/4/03 for an incident occurring on 6/4/03 involving Inmate Durham and a corrections officer.  (Exhibit H)

Response:    ~~Defendants admit Durham received a disciplinary report on 6/4/03,~~ **but deny the incident involved a correctional officer.  The report was written by a Correctional Lieutenant and involved him and Durham.**

29.    Lt. Hornbaker, an employee of defendant IDOC, completed the disciplinary report on 6/4/03 and charged Inmate Durham with disobeying a direct order, insolence, and intimidation or threats on 6/4/03.  (Exhibit H)

Response:    **Defendants admit the allegations in paragraph 29.**

30.    On 6/4/03, Lt. Hornbaker was investigating behavior of Inmate Durham which suggested he was concealing something in his clothing.  When confronted, Durham became belligerent and words were exchanged with Lt. Hornbaker. Subsequently, Durham was cuffed and taken to the segregation unit on 6/4/03.  (Exhibit H)

Response:    **Defendants admit the incident is as reported in the disciplinary report, Exhibit H.**

31.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit H from the date of the incident, 6/4/03, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:    See response to paragraph 4.

32.    There was a disciplinary report issued on 3/11/04 for an incident involving Inmate Durham and another inmate which occurred on 3/11/04 in the gymnasium. (Exhibit I)

Response:    Defendants admit Durham was issued a disciplinary report on 3/11/04 and that the substance of the incident is as reported in the report.

33.    On 3/11/04, Lt. D. Price, an employee of defendant IDOC, completed the disciplinary report and charged Inmate Durham with fighting, aiding and abetting, attempt solicitation or conspiracy.  (Exhibit I)

Response:    Defendants admit the allegations in paragraph 33.

34.    The disciplinary report of 3/11/04 (Exhibit I) indicates Inmate Durham was fighting with Inmate "K" on 3/11/04 while on the basketball court.

Response:    Defendants admit the incident occurred as reported in Exhibit K.

35.    The 3/11/04 altercation was confirmed by witnesses identified only as "Confidential Sources."  (Exhibit I)

Response:    Defendants admit the allegations in paragraph 35.

36.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit I from the date of occurrence, 3/11/04, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:    See response to paragraph 4.

37.    There was a disciplinary hearing on 3/17/04 regarding the incident involving Inmate Durham on 3/11/04.  (Exhibit J)

**Response:    Defendants admit the allegations in paragraph 37.**

38.    On 3/17/04, Inmate Durham pled not guilty to the offenses of fighting and conspiracy which occurred on 3/11/04.  (Exhibit J)

**Response:    Defendants admit the allegations in paragraph 38.**

39.    On 3/17/04, the Hearing Committee noted that Internal Affairs provided testimony from "Confidential Sources" which confirmed the verbal and physical fighting between Inmate Durham and Inmate "K" on 3/11/04.  (Exhibit J)

**Response:    Defendants admit the Hearing Committee comments are as reflected in Exhibit J.**

40.    The Hearing Committee noted that at the 3/17/04 hearing Inmate Durham admitted hitting Inmate "K" on 3/11/04.  (Exhibit J)

**Response:    Defendants admit the allegations in paragraph 40.**

41.    On 3/17/04, Inmate Durham received the following disciplinary action for the incident of 3/11/04:  demotion to C Grade for one months(sic), segregation for one month, revocation of one month's GCC, and transfer to another facility.  (Exhibit J)

**Response:    Defendants admit that the discipline recommended was as alleged in paragraph 41, but lack knowledge to either admit or deny whether the discipline was imposed.**

42.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit J from the date of the incident, 3/11/04, throughout Inmate Durham's incarceration at all IDOC facilities.

**Response:    See response to paragraph 4.**

43.    On 3/24/04, Inmate Durham was transferred from the Hill Correctional Center to Western Illinois Correctional Center.  (Exhibit K)

Response:  Defendants deny the allegations in paragraph 43.

44.    The transfer of Inmate Durham on 3/24/04 was a "Disciplinary Level 2 Transfer" because he "provoked a confrontation and fight" with Inmate "K" on 3/11/04. (Exhibit K)

Response:  Defendants deny Durham has transferred on 3/24/04, but admit Exhibit K indicates Durham was being "submitted for a disciplinary level 2 transfer to Western Illinois CC.  IM provoked a confrontation and fight with IM 'K'".

45.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit K from the date of incident, 3/11/04, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:  See response to paragraph 4.

46.    On 7/23/04, Officer Jennings, an employee of the IDOC, completed an incident report concerning an altercation occurring on 7/23/04 between Inmate Durham and Inmate "S" at Western Illinois Correctional Center (WICC).  (Exhibit L)

Response:  Defendants admit an incident report was written by C/O Jennings and that the content is as reflected in Exhibit L.

47.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit L from the date of the incident, 7/23/04, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:  See response to paragraph 4.

48.    Officer Jennings, an IDOC employee, completed a disciplinary report on 7/25/04 regarding the incident which occurred at WICC on 7/23/04.  (Exhibit M)

**Response:  Defendants admit the allegations in paragraph 48.**

49.    On 7/25/04, Officer Jennings charged Inmate Durham with fighting with his cell mate, Inmate "S," on 7/23/04 based upon information received from a "confidential source."  (Exhibit M)

**Response:  Defendants admit Jennings wrote a disciplinary report and that the incident is as reflected in Exhibit M.**

50.    Both inmates admitted they were preparing for a fight on 7/23/04 before the IDOC staff intervened.  (Exhibit M)

**Response:  Defendants admit the allegations in paragraph 50 and that the admissions of the inmates are as reflected in Exhibit M.**

51.    On 7/25/04, Inmate Durham received the penalty of temporary confinement for the incident occurring on 7/23/04.  (Exhibit M)

**Response:  Defendants deny Durham received a "penalty" of temporary confinement, but admit the disciplinary ticket reflects Durham was placed in temporary confinement.**

52.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit M from the date of the incident, 7/23/04, throughout Inmate Durham's incarceration at all IDOC facilities.

**Response:  See response to paragraph 4.**

53.    On 8/2/04, Officer DeWitt, an employee of the IDOC, completed an incident report regarding an altercation between Inmate Durham and his cell mate, Inmate "R," which occurred on 8/2/04 at WICC.  (Exhibit N)

Response:   **Defendants admit C/O DeWitt completed the incident report attached as Exhibit N, and that the facts of the incident are as reflected in Exhibit N.**

54.    On 8/2/04, Inmate Durham stated that he could not "live with his cellie" and that he and Inmate "R" were about to "go to blows" if they were not separated. Inmate Durham further stated on 8/2/04 that he was tired of his cell mate telling him what he could and could not do.  (Exhibit N)

Response:   **Defendants admit Exhibit N reads, in part, as alleged in paragraph 54.**

55.    After a discussion with Lt. Bigley, an employee of the IDOC, Officer DeWitt cuffed Inmate Durham and moved him to another cell on 8/2/04.  (Exhibit N)

Response:   **Defendants admit the allegations in paragraph 55.**

56.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit N from the date of the incident, 8/2/04, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:   **See response to paragraph 4.**

57.    On 8/2/04, Officer DeWitt, an employee of the IDOC, completed a disciplinary report regarding the 8/2/04 incident between Inmate Durham and Inmate "R" in their cell.  (Exhibit O)

Response:   **Defendants admit the allegations in paragraph 57.**

58.    Officer DeWitt charged Inmate Durham with intimidation or threats against his cell mate on 8/2/04. (Exhibit O)

Response:  Defendants admit the allegations in paragraph 58.

59.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit O from the date of the incident, 8/2/04, throughout Inmate Durham's incarceration at all IDOC facilities.

Response:  See response to paragraph 4.

60.    A disciplinary hearing was held on 8/5/04 regarding the incident which occurred on 8/2/04. (Exhibit P)

Response:  Defendants admit Exhibit P reflects as alleged in paragraph 60.

61.    Inmate Durham was charged with threatening his cell mate in segregation on 8/2/04. (Exhibit P)

Response:  Defendants deny Plaintiff was charged with "threatening his cell mate in segregation." Defendants admit Plaintiff was charged with Intimidation or Threats.

62.    One basis for the Adjustment Committee's decision on 8/5/04 was Inmate Durham's admission that he did not get along with his cell mate. (Exhibit P)

Response:  Defendants admit Exhibit P reflects the allegations in paragraph 62.

63.    Another basis for the Adjustment Committee's decision on 8/5/04 was documentation that Inmate Durham told Officer DeWitt on 8/2/04 that if he wasn't moved, he and his cell mate would "come to blows." (Exhibit P)

Response:  Defendants admit Exhibit P reflects the allegations in paragraph 63.

64.    The Adjustment Committee noted on 8/5/04 that Inmate Durham had two prior intimidation/threat charges.  (Exhibit P)

**Response:  Defendants admit that Exhibit P reflects the statement, "Inmate has two prior 206 charges," and that a 206 charge is Intimidation or Threats.**

65.    On 8/5/04, Inmate Durham received the following penalties for the incident of 8/2/04:  on month C grade and 15 days of segregation.  (Exhibit P)

**Response:  Defendants admit the discipline recommended is as reflected in number 65, however, Defendants lack knowledge to either admit or deny, based on Exhibit P, whether that discipline was imposed.**

66.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. had access to the information contained in Exhibit P from the date of the original incident, 8/2/04, throughout Inmate Durham's incarceration at all IDOC facilities.

**Response:  See response to paragraph 4.**

67.    On 9/23/04, Inmate Durham struck his cell mate, Inmate McCroy, in the left eye while they were in their shared cell.

**Response:  Defendants lack knowledge to either admit or deny the allegations in number 67.**

68.    On 9/23/04, Officer Lindsey, an employee of the IDOC, responded to the emergency call button from the cell occupied by Inmate Durham and Inmate McCroy. (Exhibit Q)

**Response:  Defendants admit the allegations in paragraph 68.**

69.     Officer Lindsey noted that on 9/23/04 Inmate Durham told him his cell mate needed medical attention.  (Exhibit Q)

**Response:   Defendants admit the allegations in paragraph 69.**

70.     Officer Lindsey noted that on 9/23/04 Inmate McCroy told him that his cell mate, Inmate Durham, hit him in the eye.  (Exhibit Q)

**Response:   Defendants admit Exhibit Q contains the statement alleged in number 70.**

71.     Sgt. Vancil, an employee of the IDOC, was called and he restrained and removed Inmate Durham from the cell on 9/23/04.  (Exhibit Q)

**Response:   Defendants admit the allegations in paragraph 71 and admit the incident is as reflected in Exhibit Q.**

72.     D. Drennen of the health care unit at Western Illinois Correctional Center completed an incident report on 9/23/04 evaluating Inmate McCroy following the altercation with his cell mate.  Drennen noted bleeding from the left eye with a thick clear substance.  An area on the right side of the foot by the little toe had torn skin and minimal bleeding as well.  Dr. Brown was called and he gave the order to send Inmate McCroy to Blessing Hospital Emergency Room for treatment on 9/23/04. (Exhibit R)

**Response:   Defendants admit Drennen's report of the incident is as reflected in Exhibit R.**

73.     Sgt. Vancil, an employee of the IDOC, completed an incident report on 9/23/04 wherein he noted statements made by Inmate McCroy regarding the altercation in the cell.  (Exhibit S)

**Response:   Defendants admit Sgt. Vancil completed an incident report and that his report is as reflected in Exhibit S.**

74.     Sgt. Vancil noted on 9/23/04 that Inmate McCroy had a history of problems with his left eye and that McCroy indicated he became blind in the left eye during the altercation on 9/23/04.  (Exhibit S)

**Response:   Defendants admit Sgt. Vancil's statements are as reflected in Exhibit S.**

75.     St. Vancil completed a disciplinary report on 9/23/04 stating that Inmate Durham placed in a segregation unit under investigative status due to the altercation with Inmate McCroy on 9/23/04.  (Exhibit T)

**Response:   Defendants admit St. Vancil completed a disciplinary report (Exhibit T) and that the contents of the report are as reflected in Exhibit T.**

76.     A hearing was held before the Adjustment Committee on 10/8/04 regarding the altercation which occurred on 9/23/04 involving Inmate Durham and Inmate McCroy.  (Exhibit U)

**Response:   Defendants admit the allegations in paragraph 76.**

77.     At the 10/8/04 hearing, Inmate Durham pled guilty, admitting to having "a struggle" with his cell mate on 9/23/04.  (Exhibit U)

**Response:   Defendants admit Exhibit U reflects as alleged in paragraph 77.**

78.     On 10/8/04, Inmate Durham received the following penalties for the incident of 9/23/04: 1 month of C grade, 1 month of segregation, 1 month revocation of GCC.  (Exhibit U)

**Response:  Defendants admit the penalties alleged in paragraph 78 were recommended, but Exhibit U does not show if the discipline was imposed.**

79.    Inmate McCroy lost the use of hi left eye as a result of the incident which occurred on 9/23/04.

**Response:  Defendants admit the allegations in paragraph 79.**

80.    Defendants Illinois Department of Corrections and Roger E. Walker, Jr. Had access to the information contained in Exhibits A through P from the date of Inmate Durham's incarceration prior to the incident which occurred on 9/23/04.

**Response:  See response to paragraph 4.**

81.    On 9/23/04, Defendants IDOC and Roger E. Walker, Jr. Knew, or should have known, of Inmate Durham's violent tendencies and history of altercations with cell mates.

**Response:  Defendants deny the allegations in paragraph 81.**

82.    Defendants IDOC and Roger E. Walker, Jr., through the actions of their employees, placed Inmate McCroy together in a cell with Inmate Durham despite documentation of Durham's history of violence which resulted in the altercation of 9/23/04 in which Inmate McCroy lost his left eye.

**Response:  Defendants deny the allegations in paragraph 82.**

83.    Inmate Durham originally received 90 days good time credit on 7/29/03. (Exhibit V)

**Response:  Defendants deny the allegation in paragraph 83, but admit Exhibit V indicates Durham received 90 days of meritorious good time and 90 days of supplemental meritorious good time.**

84. Inmate Durham received 30 days revocation of good time credit on 3/29/04. (Exhibit V)

**Response: Defendants admit Exhibit V indicates as alleged in paragraph 84.**

85. Inmate Durham received 30 days revocation of good time credit on 10/20/04. (Exhibit V)

**Response: Defendants admit Exhibit V indicates as alleged in paragraph 85.**

86. Inmate Durham was discharged from Western Illinois Correctional Center on 11/24/04. (Exhibit W)

**Response: Defendants admit Exhibit W indicates Durham was released on MSR on November 24, 2004, but deny he was discharged from the Department of Corrections.**

## Medical Care

87. On September 9, 1993, while in the custody of Illinois Department of Corrections, a note from the Optometry Clinic states that the plaintiff has keratoconus in both eyes. (Exhibit X)

**Response: Defendants admit Exhibit X reflects as alleged.**

88. Plaintiff had been given soft lenses to teat his keratoconus, on April 7, 1995, a prescription was written by J. Land RN for Renu soft lens cleaner. (Exhibit Y)

**Response: Defendants lack knowledge to either admit or deny whether Plaintiff was given soft lenses to treat his keratoconus. Defendants admit that Exhibit Y indicates, in part, that a prescription was written by Dr. Elyea and noted by J. Lang, R.N.**

89.    On September 21, 1995, the plaintiff visited the Optometry Clinic at Stateville Correctional Center where the doctor stated that the plaintiff should be referred to an ophthalmologist to evaluate his corneas.  (Exhibit Z)

**Response:  Defendants admit Exhibit Z reflects a plan of the physician to refer to an ophthalmologist to evaluate his corneas.**

90.    On January 23, 1996, Plaintiff wrote a letter to a Dr. Elyea requesting, among other things, to see a specialist due to his left cornea deteriorating further. (Exhibit AA)

**Response:  Defendants admit Exhibit AA is a letter from Aaron McCroy addressed to Dr. Elyea, and that the contents of the letter are, in part, as reflected in the exhibit.**

91.    On February 6, 1996, Plaintiff was given a prescription for hard contact lens solution for two months.  (Exhibit BB)

**Response:  Defendants admit a prescription for hard contact lens solution was written for McCroy on 2/6/96.**

92.    On February 16, 1996, Plaintiff was seen by ophthalmologist, James W. Bizzell, M.D., who found that plaintiff suffered from keratoconus and currently wore contacts as treatment.  Dr. Bizzell noted that the plaintiff should be seen by him again within three (3) months.  (Exhibit CC)

**Response:  Defendants admit Exhibit CC contains a report of Dr. Bizzell and that the substance is as reflected in the exhibit.**

93.    On February 23, 1996, a second prescription was written for Renu Multi-Purpose solution "for lens car x 6 mo." (Exhibit DD)

**Response:  Defendants admit that on 2/23/96, a prescription for Renu Multipurpose Solution for Lens Care X 6 mo. for McCroy was written by a physician.**

94.    In March of 1996, plaintiff was seen at the Stateville Correctional Center's Optometry Clinic for a recheck of his vision. (Exhibit EE)

**Response:  Defendants admit Exhibit EE is a report from Stateville Correctional Center's Optometery Clinic and that the substance of the visit (to the extent not memorialized elsewhere) is as reflected in Exhibit EE.**

95.    On July 29, 1996, Dr. James Bizzell stated that Plaintiff was not wearing his lenses as he had no cleaner, and Plaintiff should return in two (2) to three (3) weeks when he is wearing his lenses. (Exhibit FF)

**Response:  Defendants admit Exhibit FF contains a report of Dr. Bizzell and that the substance of the report is as reflected in Exhibit FF.**

96.    On July 29, 1996, a prescription was written after plaintiff's visit to Dr. Bizzell for hard contact lens cleaner for three (3) months. (Exhibit GG)

**Response:  Defendants admit a prescription was written by Dr. Bizwell on July 29th for contact lens cleaner X 3 months.  Defendants lack sufficient knowledge to either admit or deny the year the prescription was written.**

97.    On August 30, 1996, Dr. James W. Bizzell found the plaintiff needed contact lens cleaner and wrote a prescription for the appropriate lens cleaner for six (6) months. (Exhibits HH and II)

Response:  Defendants admit Exhibit HH reflects a recommendation from Bizwell that he receive contact (hard) lens cleaner.  Defendants admit a prescription was written for lens cleaner for six months as reflected in Exhibit II.

98.    On September 27, 1996, Dr. James W. Bizzell stated he had prescribed the appropriate contact lens cleaner on August 30, 1996 for six (6) months and that he should see the plaintiff again in three (3) months for a recheck.  (Exhibit JJ)

Response:  Defendants admit Exhibit JJ is a report from Dr. Bizwell and that the contents of the report is as reflected in Exhibit JJ.

99.    On October 8, 1996, in response to a grievance filed by the Plaintiff, Willard O. Elyea, M.D. stated that the plaintiff was receiving twelve (12) ounces of contact lens solution a month and that a bottle of that size should reasonably last plaintiff a year using only 1 cc a day.  (Exhibit KK)

Response:  Defendants admit Exhibit KK is a memorandum from Dr. Elyea, and admit the substance of the memo is as reflected in Exhibit KK.

100.    On December 16, 1996, Plaintiff was transferred from Stateville Correctional Center to Dixon Correctional Center with the only mention of his disability being that as an assistive device/prosthetic plaintiff has contact lenses.  (Exhibit LL)

Response:  Defendants admit Exhibit LL contains a health status report from Stateville on 12/16/96, and that the only assistive devices/prosthetics noted by the reporting nurse were contact lenses.  Defendants admit the reporting nurse did not report any physical disabilities or limitations on that form.

31

101.    On January 6, 1997, Thomas K. Bialecke, O.D. stated that due to plaintiff's keratoconus he "had medical need for contact lenses and contact lens solutions" and wrote a new prescription for Boston II Contact lens car kit for twelve (12) months. (Exhibits MM and NN)

Response:  Defendants admit Exhibit MM is a Request for Consultation - Report of Consultation, and that the physician's findings and assessment are as found in Exhibit MM.  Defendants admit Exhibit NN contains, in part, a prescription for Boston II Contact Lens Care Kit for use daily for 12 months.

102.    On February 3, 1997, a new contact lens was dispensed to the plaintiff by Dr. Bialecke. (Exhibit OO)

Response:  Defendants admit Exhibit OO is a Request for Consultation - Report of Consultation and that the action taken on 2/3/97 is as reflected on Exhibit OO.

103.    On April 14, 1997, plaintiff was seen by Dr. Bialecke regarding problems with his new contacts and a new contact lens was ordered. (Exhibits PP and QQ)

Response:  Defendants admit Exhibit PP is a Request for Consultation - Report of Consultation, and that the substance of the report is as found in the report. Defendants admit Exhibit QQ is an optical prescription order, and that the substance of the order is as reflected in Exhibit QQ.

104.    On May 5, 1997, Plaintiff received glasses to wear with his contacts. (Exhibit RR)

Response:  Defendants admit Exhibit RR is a Receipt of Eyeglasses on 5/5/97 that indicates McCroy was responsible for the care of the eyeglasses.

Defendants deny the Receipt indicates where, when or how the glasses were to be worn.

105.    On June 16, 1997, Plaintiff went to the specialist to have his contact lens rechecked. (Exhibit SS)

Response:  Defendants admit Exhibit SS is a Request for Consultation - Report of Consultation and that the substance of the request is as reflected in Exhibit SS.

106.    On July 14, 1997, a new contact lens was dispensed to the plaintiff. (Exhibit TT)

Response:  Defendants admit Exhibit TT reflects a notation on 7/14/97 under "recommendations/plans" that states "dispensed contact."

107.    On November 22, 1997, when Plaintiff was transferred from Dixon Correctional Center to Stateville Correctional Center a health status form stated that a physical disability/limitation of the plaintiff's was decreased vision and that he wears contacts. (Exhibit UU)

Response:  Defendants deny Plaintiff was transferred to Stateville on November 22, 1997. Defendants admit Exhibit UU reflects a transfer of 11/25/97. Defendants admit the nurse filling out the health status form on 11/22/97 noted under "Physical Disabiities/Limitations" (down pointing arrow) bunk, (down pointing arrow) vision, and contacts.

108.    On May 21, 1998, Plaintiff was seen by Thomas K. Bialecke, O.D. who stated that the plaintiff's vision was stable and his contacts were comfortable. (Exhibit VV)

Response:  Defendants admit the Exhibit VV is a medical progress note for McCroy written by Dr. Bialecke, O.D., and that the substance of the examination are as reflected on Exhibit VV.

109.    On July 23, 1998, Plaintiff was seen again by Thomas K. Bialecke, O.D. who stated that the plaintiff only wears his contacts twice a week but that his vision is stable and the plaintiff had no complaints.  (Exhibit WW)

Response:  Defendants admit Exhibit WW is a medical progress note dated July 23, 1998, that appears to have been written by Dr. Bialecke, and that the substance of the examination is as reflected in Exhibit WW.

110.    On July 23, 1998, Dr. Bialecke renewed plaintiff's contact lens conditioner and cleaning kit prescription for two years. (Exhibit XX)

Response:  Defendants admit Exhibit XX contains a prescription apparently written by Dr. Bialecke on July 23rd for Boston Gas Permeable Contact Lens Condition and Cleaning Kit X 2 years.

111.    On March 6, 1999, when Plaintiff was transferred from Stateville Correctional Center to Hill Correctional Center on the health status form it was stated that he suffered from Keratoconus which included a medical need for contact lenses. (Exhibit YY)

Response:  Defendants deny Plaintiff was transferred from Stateville to Hill on March 6, 1999.  Defendants admit the nurse filling out the form on March 6, 1999 indicated under "Chronic Conditions/Problems: Keratoconus on 1993 - Medical need for contact, Hypertension."

34

112.   On June 28, 1999, plaintiff was seen by Dr. Kehoe to refit his left eye with a new lens. (Exhibit ZZ)

**Response:   Defendants admit Exhibit ZZ is a Request for Consultation - Report of Consultation, that reflects a note by Dr. Kehoe written on 6/28/99 and that the substance of the note is as reflected in Exhibit ZZ.**

113.   Sometime after July 8, 1999, plaintiff was fitted with his new contact lens for his right eye. (Exhibit AAA)

**Response:   Defendants lack knowledge to either admit or deny the allegations in paragraph 113.**

114.   On July 5, 1999, Dr. Kehoe prescribed Boston Advanced Contact lens cleaner and conditioner for six (6) months. (Exhibit BBB)

**Response:   Defendants deny the allegations in paragraph 114.**

115.   On February 2, 2000, Dr. Kehoe renewed plaintiff's prescription for Boston Advanced Contact lens cleaner and conditioner for another six (6) months. (Exhibit CCC)

**Response:   Defendants admit Exhibit CCC contains a prescription from Dr. Kehoe for Boston Advance Conditioner - Cleaner X 6 months.**

116.   On September 27, 2000, Dr. Kehoe once again renewed plaintiff's prescription for Boston Advanced Contact lens cleaner and conditioner for another six (6) months. (Exhibit DDD)

**Response:   Defendants admit that Exhibit DDD contains a prescription written on September 27, 2000 by Dr. Kehoe for Boston Conditioning/Cleaning Solutions X 6 months.**

117.   On October 2, 2000, a Referral Request Form was filed by Dr. Choudy for plaintiff to see Dr. Kehoe as plaintiff had lost a contact lens and needed a new one. (Exhibit EEE)

**Response:   Defendants admit Exhibit EEE appears to be a Referral Request Form and that the site doctor is listed as Dr. Chaudry and the referral to Dr. Kehoe.  Defendants admit this exhibit cites under conservative treatment to date "needs contacts/lost approx cost $180."**

118.   On October 5, 2000, a new contact was ordered for the plaintiff by Dr. Kehoe.  (Exhibit FFF)

**Response:   Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 118.**

119.   On October 19, 2000, Dr. Kehoe wrote a prescription for the plaintiff for Boston Advance Contact lens cleaner and condition for one (1) year and this prescription could not be substituted.  (Exhibit GGG)

**Response:   Defendants admit Exhibit GGG contains a prescription written by Dr. Kehoe for "Boston Cleaning/Conditioning Solutions X 1 year."**

120.   In early March, 2001, another set of new contacts were ordered for plaintiff by Dr. Kehoe.  (Exhibit HHH-1 and HHH-2)

**Response:   Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 120.**

121.   On May 3, 2001, a prescription was written for the plaintiff for one box of contact solution.  (Exhibit III)

**Response:   Defendants admit that Exhibit III contains a prescription for "contact solution X 1 box," purportedly written on 5/3/01.**

122.   On July 22, 2001, Dr. Kehoe prescribed Boston Cleaner, Boston Conditioning Solution and Boston Enzyme for six (6) months with a note that each can be given individually and "should give new bottle only in exchange of nearly empty bottle."  (Exhibit JJJ)

**Response:   Defendants admit that Exhibit JJJ contains a prescription written by Dr. Kehoe on 7/22/01 for "Boston Cleaner, Boston Solution, and Boston Enzymes" and contains a notation "X 6 months" and "can give individually."  It also contains a notation "should give new bottle only in exchange of nearly empty bottle."**

123.   In early October, 2001, Dr. Kehoe ordered new contacts for the plaintiff. (Exhibits KKK-1 and KKK-2)

**Response:   Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 123.**

124.   On October 30, 2001, when plaintiff was transferred from Hill Correctional Center to Western Illinois Correctional Center, the health status form stated that the plaintiff suffered from Keratoconus and wore contacts twice a week.  (Exhibit LLL)

**Response:   Defendants deny Plaintiff was transferred on 10/30/01.  Defendants admit the nurse filling out the form on October 30, 2001 indicated McCroy had Keratoconus and wore contacts 2X/wk.**

37

125.    Upon arrival at Western Illinois Correctional Center, plaintiff had all his contacts and supplies for them confiscated.  (Exhibit MMM)

**Response:  Defendants admit that Exhibit MMM indicates 5 contact solution bottles and 2 contact cases were sent to the Health Care Unit.  Defendants lack knowledge to either admit or deny whether this comprised "all his contacts and supplies for them."**

126.    On November 2, 2001, a memo from Deborah Fuqua, RN, CCHP, stated plaintiff was authorized to have one pair of contact lenses, one storage case, one bottle of cleaner and one bottle of soaking solution.  (Exhibit NNN)

**Response:  Defendants admit the allegations in paragraph 126.**

127.    On November 4, 2001, Plaintiff complained because the lenses and supplies still had not been returned.

**Response:  Defendants lack knowledge to either admit or deny the allegations in paragraph 127.**

128.    On November 7, 2001, and after, plaintiff requested to see an ophthalmologist to check his eyes.

**Response:  Defendants lack knowledge to either admit or deny the allegations in paragraph 128.**

129.    On December 17, 2001, plaintiff sent a letter to Western Illinois Correctional Center Warden Schnepel and Defendant Nurse Fuqua regarding his contact solution and failure to be seen by an eye doctor.  (Exhibits OOO-1 and OOO-2)

**Response:  Defendants admit Plaintiff's file contains a letter (referenced as exhibits OOO-1 and OOO-2) dated December 17, 2001, purported to have been**

38

written by Aaron McCroy and addressed to A/W Schnepel and Nurse Fuqua. Defendants admit the contents of this letter are as found in the letter itself.

130.    On December 18, 2001, plaintiff was seen by Dr. David Anderson who ordered a complete care kit and recheck of the lenses when plaintiff was able to wear them. (Exhibit PPP)

Response:   Defendants admit Exhibit PPP is a Medical Progress Note that reflects McCroy was seen by Dr. Anderson on 12/18/01. Defendants admit the substance of the note is as reflected in the note itself.

131.    On January 9, 2002, plaintiff's glasses prescription was received from Dixon Correctional Industries. (Exhibit QQQ)

Response:   Defendants lack knowledge to either admit or deny when the glasses prescription was received from Dixon Correctional Industries. Defendants admit Exhibit QQQ appears to be an invoice dated 1/9/02 for "Lenses - Reg" for patient McCroy.

132.    On January 25, 2002, there was a shakedown of the plaintiff's cell where two bottles of solution were confiscated and returned to the health cart.

Response:   Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 132.

133.    On January 27, 2002, plaintiff filed a grievance regarding the events of January 25, 2002. (Exhibits RRR-1, RRR-2, and RRR-3)

Response:   Defendants admit Plaintiff filed a grievance dated 1/27/02, and that in that grievance he alleges his solution was confiscated on 1/25/02.

39

134.    On January 29, 2002, the plaintiff received new glasses.  (Exhibit SSS)

**Response:    Defendants admit that Exhibit SSS is a memorandum reflecting that Aaron McCroy received prescription glasses on 1/29/02.**

135.    On February 26, 2002, plaintiff was seen by Dr. Weller who found advanced keratoconus but no corneal ulcer and stated that a corneal transplant should be considered as plaintiff was unable to tolerate the contact in his left eye.  (Exhibit TTT)

**Response:    Defendants admit Exhibit TTT is a Request for Consultation - Report of Consultation, and that it contains a report of consultant, Dr. Weller. Defendants admit the substance of Dr. Weller's report is as reflected in Exhibit TTT.**

136.    On March 5, 2002, a referral Request form was filled out by Dr. David Anderson for the plaintiff to see Dr. Kehoe for a refit of his contact lenses. Appointments were made and later cancelled for March 11, 2002; March 19, 2002; March 25, 2002; and April 1, 2002.  (Exhibit UUU)

**Response:    Defendants admit Exhibit UUU is a referral request form noting a request from the site doctor, Dr. David Anderson O.D. and a referral to Dr. Peter Kehoe. Defendants admit the substance of the document is as reflected in the document itself.**

137.    On March 11, 2002, plaintiff filed an Emergency Grievance regarding what he felt was improper treatment of his keratoconus and asked to see Dr. Kehoe. (Exhibits VVV-1 and VVV-2)

Response:   Defendants admit Exhibits VVV1 and VVV-2 appear to be a grievance, designated as "Emergency Grievance" by the author, who purports to be Aaron McCroy.  Defendants admit the substance of the grievance is as reflected in the grievance, but lack knowledge to either admit or deny the veracity of the substance of the grievance.

138.   Plaintiff March 11, 2002 and March 19, 2002 appointments with Dr. kehoe were cancelled by the Warden.  (Exhibit UUU)

Response:   Defendants admit Exhibit UUU reflects a notation that the appt. orig. scheduled for 2/19//02 was canceled per the Warden.  Defendants lack sufficient knowledge to either admit or deny if or by whom an appointment on March 11, 2002 was canceled.

139.   Plaintiff's March 25, 2002, appointment with Dr. Kehoe was cancelled due to weather.  (Exhibit UUU)

Response:   Defendants lack knowledge to either admit or deny whether the March 25, 2002 appointment was canceled due to weather and deny Exhibit UUU reflects any such cancellation.

140.   Plaintiff's April 1, 2002, appointment with Dr. Kehoe was also cancelled. (Exhibit UUU)

Response:   Defendants admit Exhibit UUU contains a notation that Plaintiff's 4/1/02 appointment was canceled.

141.   On March 20, 2002, Plaintiff filed an Emergency Grievance in which he requests to see an ophthalmologist.  (Exhibits WWW-1 and WWW-2)

41

Response:   Defendants deny that Exhibits WWW-1 and WWW-2 are emergency grievances dated 3/20/02. Defendants admit that Plaintiff dated a grievance 3/11/02 (Exhibits WWW-1 and WWW-2) and that he designated the grievances as "emergency." Defendants admit the content of the grievance is as found in the grievance, but lack knowledge to either admit or deny the veracity of the substance of the grievance.

142.   On March 26, 2002, Brian Plattner, O.D. mailed a contact lens to Western Illinois Correctional Center to have it fitted there. (Exhibits XXX-1 and XXX-2)

Response:   Defendants lack sufficient knowledge to either admit or deny when a contact lens was mailed to McCroy. Defendants admit Exhibit XXX-1 contains a notation that the lens be forwarded "to your on-site optometrist or opthalmologist for evaluation of the fit." Defendants admit Exhibit XXX-2 is a medical progress note that contains a notation by V. Lynne Shelton that McCroy's lens was found at Hill and would be mailed to the institution. The note was dated 3/26/02.

143.   On April 2, 2002, Dr. David Anderson prescribed Boston Advance Contact Lens Cleaning and Conditioning Solutions for the period of one year. (Exhibit YYY)

Response:   Defendants admit Exhibit YYY contains a prescription by Dr. Anderson for Boston Advance Cleaning Conditioning Solution X 1 year, and that the prescription is dated 4/2/02.

144.   On April 12, 2002, plaintiff was seen by Dr. Kehoe's associate, Dr. Brian Plottner, who stated that he sent the plaintiff with a lens but that it needed to be rechecked in two (2) to three (3) weeks and that the correctional center needed to keep contact lens cleaner on hand. (Exhibit ZZZ)

Response:   Defendants admit that Exhibit ZZZ is a Request for Consultation -
Report of Consultation, and that it contains a report by Dr. Plotner dated 4/12/02.
Defendants admit the substance of Dr. Plotner's findings are as appears on the
report.

145.    On April 16, 2002, Dr. David Anderson prescribed Boston enzyme cleaner
per Dr. Plottner's order for a period of one year.  (Exhibit YYY)

Response:   Defendants admit that Exhibit YYY contains a prescription written on
4/16/02 by Dr. Anderson per Dr. Plottner's order.  The substance of that
prescription is to add Boston Enzyme Cleaner to other solutions x 1 year.

146.    On April 16, 2002, Dr. David Anderson put in a Referral Request Form for
plaintiff to see Dr. Kehoe for a three week follow up.  (Exhibit AAAA and BBBB)

Response:   Defendants admit that Exhibit AAA is a referral request form with Dr.
Anderson listed as the site physician with a request for a referral to Dr. Plotner.
Defendants admit the document is purported to be signed by Dr. Anderson, and
dated 4/16/02.  Defendants admit the substance of the referral is a 3 week follow
up of CL refitting. Defendants deny the referral is from Dr. Anderson to Dr. Kehoe.

147.    On May 3, 2002, plaintiff's May 7, 2002, visit to see Dr. Plottner was
cancelled by the warden.  (Exhibit BBBB)

Response:   Defendants admit Exhibit BBBB is a Memorandum dated 5/3/02, and
includes a notation that a furlough for McCroy to see Dr. Plotner on 5/7/02 was
canceled by the Warden and rescheduled on 5/13/02.

43

148.    On May 13, 2002, plaintiff saw Dr. Plottner for his three (3) week follow up where once again Dr. Plottner stated that a corneal transplant should be considered. (Exhibit CCCC)

**Response:    Defendants admit that Exhibit CCCC is a Request for Consultation - Report of Consultation, and that it contains a report by Dr. Plotner. Defendants admit the substance of the report is as shown on Exhibit CCCC.**

149.    On May 13, 2002, Dr. David Anderson prescribed artificial tears for a six (6) month period to resolve post contact lens wear problems.  (Exhibit DDDD)

**Response:    Defendants admit Exhibit DDDD contains a copy of a prescription purported to have been written by Dr. Anderson on 5/13/02. Defendants admit the prescription is for Artificial Tears for 6 months and that the stated "problem" is "post contact lens wear.**

150.    On May 14, 2002, Dr. David Anderson put in a request for a corneal transplant that was denied on May 16, 2002.  (Exhibit EEEE)

**Response:    Defendants admit that Exhibit EEEE is a referral request form, purported to have been signed by Dr. Anderson and dated 5/14/02 with another signature purported to be of the medical director with a referral to Dr. Sieck. Defendants admit the substance of the request is as found in Exhibit EEEE and that the document contains a notation "denied 5-16-02." Defendants lack knowledge as to whose notation that is.**

151.    On May 20, 2002, a memo from Wexford was filed denying the transplant as not medically necessary at this time as well as indicating that "[t]he IDOC nor

Wexford will pay for transplants.  Suggest that patient will talk with HCNA if he or his family is willing to take care of the cost of transplantation."  (Exhibit FFFF)

Response:  Defendants admit Exhibit FFFF appears to be a Wexford document dated 5-15-2002 and that the document regards Aaron McCroy.  Defendants admit there is a statement on the document, "[t]he IDOC nor Wexford will pay for transplantations.  Suggest that patient talk with HCUA if he and/or his family is willing to take care of the cost of transplantation."  Defendants admit that "non approved" is stamped on the document.  Defendants admit a signature appears on the line "Provider Signature" and that there is a date next to that signature of 5/20/02.  Defendants lack knowledge as to whether the document was "filed."  Defendants lack knowledge to admit or deny the author of the document.

152.    On May 29, 2002, the written denial of May 20, 2002, was given to plaintiff.

Response:  Defendants lack knowledge to either admit or deny when or if a written denial was given to Plaintiff.

153.    On August 6, 2002, plaintiff filed a grievance in which he claimed that he was denied the ability to eat at his usual times, trips to the commissary and school. (Exhibit GGGG)

Response:  Defendants admit Exhibit GGGG is a grievance purported to be from Aaron McCroy, marked by the author as "Emergency Grievance" and dated 6-6-02.  Defendants admit the substance of the grievance is as found on the document GGGG.  Defendants lack knowledge to either admit or deny the veracity of any comments in the grievance.

45

154.    On August 19, 2002, another Referral Request Form was filled out request a corneal transplant in the left eye and it was denied on August 21, 2002. (Exhibit HHHH)

Response:    Defendants admit Exhibit HHHH is a referral request form dated 8/19/02, purported to be signed by Dr. Sims and containing a notation that "corneal transplant has been recommended." Defendants admit there is a notation "denied 8.21.02" on the document. Defendants lack sufficient knowledge to either admit or deny the person making the notation on 8/21/02.

155.    On August 21, 2002, a memo from Wexford states that the transplant was not medically necessary at the time and that insufficient time was allowed for adapting to the contact. At that time it was ordered that patient be placed in the infirmary and time of wear for the contact be increased daily to maximum wear ensuring that the patients eyes are moist. (Exhibit IIII)

Response:    Defendants admit Exhibit IIII appears to be a Wexford memorandum and that the document contains a "non approved" stamp. Defendants admit the substance of the document is as found in the document itself. Defendants lack knowledge to admit or deny the identity of the author of the document.

156.    Also on August 21, 2002, an eye exam was ordered by Dr. Rowe of Wexford and attempted to be performed on the plaintiff. (Exhibit JJJJ)

Response:    Defendants admit Exhibit JJJJ is a Referral Request Form that contains a notation "Dr. Rowe wanted the following eye exam on offender Aaron McCroy for Evaluation = need for corneal transplant...." There is also a notation,

"Offender refused exam completely 8/20/02 . . . ." Defendants lack knowledge of
any attempts at examination outside the notations on the document Exhibit JJJJ.

157.   On September 4, 2002, an appointment was made for plaintiff to see a
Doctor at Jacksonville Ophthalmologic Assoc. On September 20, 2002.  (Exhibit KKKK)
**Response:  Defendants admit Exhibit KKKK is a Referral Request form with Dr.
Sims listed as site doctor and a referral to "ophthalmology." Another notation
lists a date and time of Friday, September 20, 2002 at 1:30 p.m.**

158.   In a memo from Wexford Employees, Lori/Lynn, on September 9, 2002, it
was stated that the doctor at Jacksonville Ophthalmologic Associates would need to
speak with Dr. Sims prior to the appointment for plaintiff.  (Exhibit LLLL)
**Response:  Defendants admit Exhibit LLLL appears to be a facsimile cover sheet
to Lynn/Lori, and that the substance of the exhibit is as found on the exhibit itself.**

159.   On September 23, 2002, Dr. A. George Schultz III stated in a letter to Dr.
Sims that afer his exam of the plaintiff on September 20, 2002, the plaintiff would need
a corneal transplant in his left eye.  (Exhibits MMMM-1 and MMMM-2)
**Response:  Defendants admit Exhibits MMMM-1 and MMMM-2 appear to be two
pages of a letter to Dr. Sims from Dr. Schultz and that the substance of the letter
is as found in the letter itself.**

160.   On September 30, 2002, an appointment was made with Dr. Joseph
Feder a corneal specialist on November 20, 2002 to get his opinion on the corneal
transplant.  (Exhibit NNNN)
**Response:  Defendants admit that Exhibit NNNN is a Referral Request form and
that a notation appears on the form for a Medical Furlough to: Prairie Eye Center,**

47

Dr. Joseph Feder on Wednesday, November 20, 2002 at 2:45 p.m. Defendants admit the substance of the referral is as found in Exhibit NNNN.

161.   On November 20, 2002, plaintiff was seen by Dr. Joseph M. Feder who also suggested a corneal transplant in plaintiff's left eye. (Exhibit OOOO)

Response:  Defendants admit Exhibit OOOO appears to be a Report of Consultation, purported to have been signed by Dr. Feder on 11/20/02. Defendants admit the substance of the report is as found in Exhibit OOOO.

162.   On December 4, 2002, a Referral Request Form was completed for the corneal transplant that was then scheduled on January 6, 2003. (Exhibit PPPP)

**Response:  Defendants admit Exhibit PPPP is a Referral Request Form dated 12/4/02, and that it contains a box marked with a check mark next to OP surgery. Defendants lack knowledge to either admit or deny whether the referral was for the corneal transplant, as they did not author the form, and there appears to be no notation on the form of the OP surgery to be performed. Defendants admit the substance of the form is as found on Exhibit PPPP.**

163.   On December 10, 2002, the Pre-Certification Notification for plaintiff's corneal transplant, left was sent out to St. John's Hospital and Dr. Joseph Feder. (Exhibit QQQQ)

**Response:  Defendants admit Exhibit QQQQ appears to be a Wexford Pre-Certification Notification form, the substance of which is as found on the exhibit itself. Defendants lack knowledge as to the date the notification was sent or if it was sent, as they did not author the form.**

48

164.    On December 30, 2002, plaintiff was sent to St. John's Hospital in Springfield, Illinois, for his history and physical examination prior to his surgery. (Exhibit RRRR)

**Response:    Defendants admit Exhibit RRRR appears to be a St. John's Hospital History and Physical Examination for Outpatient form. Defendants admit the substance of the form is as appears on the form itself.**

165.    On January 6, 2003, plaintiff's surgery was postponed due to hemorrhaging on plaintiff's left eye as his left retrobular hemorrhage was healing well. (Exhibit SSSS)

**Response:    Defendants admit Exhibit SSSS appears to be a St. John's Hospital Progress Record and admit the substance of the notation on the record is as appears on the record itself.**

166.    On January 7, 2003, plaintiff was seen by Dr. Feder who stated that plaintiff's surgery could be rescheduled asap. (Exhibit TTTT)

**Response:    Defendants admit Exhibit TTTT appears to be a Request for Consultation - Report of Consultation with a notation purportedly signed by Dr. Feder dated 1/7/03. Defendants admit the substance of Dr. Feder's report is as found on Exhibit TTTT.**

167.    Plaintiff's corneal transplant on his left eye was rescheduled for February 3, 2003. (Exhibit UUUU)

**Response:    Defendants admit Exhibit UUUU is a Referral Request Form and contains a notation that Plaintiff has a medical furlough to St. John's Hospital on**

Monday, February 3, 2003 at 9 a.m.  Defendants admit the substance of the referral request form is as found on the form itself.

168.    On January 8, 2003, plaintiff was admitted to the infirmary.  (Exhibit VVVV)

**Response:    Defendants admit Exhibit VVVV is a placement/assignment form that notes McCroy was admitted to the infirmary on 1-8-03 at 8:40 a.m.**

169.    On January 13, 2003, plaintiff was discharged from the infirmary.  (Exhibit WWWW)

**Response:    Defendants admit the allegations in paragraph 169.**

170.    On February 3, 2003, plaintiff was admitted to the infirmary after his surgery.  (Exhibit XXXX)

**Response:    Defendants admit Exhibit XXXX is a placement/assignment form that shows Aaron McCroy was admitted to the infirmary on 2/3/03 at 5:00 pm. Defendants lack knowledge to either admit or deny whether this admission was after his surgery.**

171.    On February 3, 2003, plaintiff underwent a corneal transplant on his left eye.  (Exhibits YYYY-1, YYYY-2, and YYYY-3)

**Response:    Defendants admit the allegations in paragraph 171.**

172.    Dr. Feder wrote a prescription for two pairs of sunglasses for the plaintiff on February 3, 2003 as well.  (Exhibit ZZZZ)

**Response:    Defendants admit Exhibit ZZZZ appears to be an Outpatient Prescription purported to have been signed and filled out by Dr. Feder for 2 pairs of sunglasses.**

173.    On February 4, 2003, plaintiff was seen for a follow up by Dr. Feder at which time the left corneal transplants looked great. (Exhibit a)

**Response:    Defendants admit Exhibit a is a Request for Consultation - Report of Consultation and includes a note purported to have been authored and signed by Dr. Feder, and that the substance of the form is as appears on Exhibit a itself.**

174.    On February 6, 2003, plaintiff was seen again by Dr. Feder to check his left eye where he stated that plaintiff should be wearing a eye shield over his left eye for at least three weeks and that plaintiff should have sunglasses. (Exhibit b)

**Response:    Defendants admit Exhibit b is a Request for Consultation - Report of Consultation and contains a notation purported to have been authored and signed by Dr. Feder on 2-6-03. Defendants admit the substance of the notation is as found on Exhibit b.**

175.    On February 11, 203[sic], plaintiff was seen by Dr. David Anderson who checked plaintiff's pressure in his eyes and indicated that it was normal and the referred plaintiff to Dr. Feder for further follow-up. (Exhibit c)

**Response:    Defendants admit Exhibit c is an Offender Infirmary Progress Note with a notation dated 2/11/03 and purported to have been authored and signed by Dr. Anderson. Defendants admit the substance of the notation is as found on Exhibit c.**

176.    On March 6, 2003, plaintiff was again seen by Dr. Feder who stated that plaintiff should be seen weekly at the institution and that he could be fitted for new contact lenses in both eyes. (Exhibit d)

Response:   Defendants admit Exhibit d is a Request for Consultation - Report of Consultation, and that it contains a notation dated 3/6/03, purported to have been authored and signed by Dr. Feder.  Defendants admit the substance of the notation is as found on Exhibit d.

177.   On March 17, 2003, plaintiff was allowed one pair of sunglasses for medical reasons, this permission was indefinite.  (Exhibit e)

Response:   Defendants admit Exhibit e is a memorandum allowing Aaron McCroy to have a pair of sunglasses for an indefinite period of time for medical reasons.

178.   On March 18, 2003, plaintiff was seen by Dr. David Anderson who measured his pressure and indicated it was within normal range.

Response:   Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 178, but admit any examination by Dr. Anderson would be found in the Plaintiff's medical records, and the substance of any examination would be as noted in the medical records.

179.   On April 8, 2003, plaintiff was again seen by Dr. Feder where he states that plaintiff may be fitted for contact lenses.  (Exhibit f)

Response:   Defendants admit Exhibit f is a Request for Consultation - Report of Consultation that contains a notation dated 4/8/03 purported to have been authored and signed by Dr. Feder.  Defendants admit the substance of Dr. Feder's notation is as found in Exhibit f.

180.   On April 16, 2003, a Referral Request Form was filled out indicating that plaintiff needs to be fitted for contact lenses, which was denied on the same day. (Exhibit g)

Response:   Defendants admit Exhibit g is a Referral Request form noted by Site Doctor Sims with a referral to Dr. Feder.  Defendants admit the form is dated 4/16/03.  Defendants lack knowledge to either admit or deny when or if the referral was denied as not clear notation appears on the form and the defendants did not author the form.

181.   On May 9, 2003, plaintiff was seen by Dr. Feder where he states that the corneal transplant looks great and that plaintiff can be fitted for contact lenses.  (Exhibit h)

Response:   Defendants admit Exhibit h is a Request for Consultation - Report of Consultation that contains a notation dated 5/9/03 purported to have been authored and signed by Dr. Feder.  Defendants admit the substance of the notation is as found on Exhibit h.

182.   An appointment made for plaintiff on June 3, 2003, was canceled and rescheduled for June 24, 2003 for unknown reasons.  (Exhibit i)

Response:   Defendants admit Exhibit i appears to be a Referral Request dated 5/22/03 and that the service requested is a contact lens fitting.  Defendants Lack knowledge to either admit or deny the remaining allegations in paragraph 182.

183.   On June 24, 2003, Plaintiff was seen at Prairie Eye Center to fit contact lenses but they were unable to do so.  (Exhibit j)

Response:   Defendants admit Exhibit j appears to be a faxed document from Prairie Eye Center.  Defendants admit the substance of the document is as found on the document itself and lack knowledge as to anything else, as they did not author the document.

184.   On July 28, 2003, another appointment was made for plaintiff to be seen for contact lens placement and fitting.  (Exhibit k)

Response:   Defendants admit Exhibit k is a Referral Request to Optometry at Prairie Eye and Lasik Center for CL Placement 1 Fitting.  Defendants lack knowledge based on this document to either admit or deny the remaining allegations in paragraph 184.

185.   On August 29, 2003, plaintiff after being seen for sensations in his left eye and blurry vision in his right eye received numerous prescriptions from Dr. William G. Zeh.  (Exhibits l-1 and l-2)

Response:   Defendants admit Exhibits l-1 and l-2 appear to be copies of prescriptions purported to have been signed by two different physicians. Defendants admit the substance of the prescriptions are as they appear on Exhibits l-1 and l-2, but lack knowledge based on these exhibit as to the reasons for the prescriptions.

186.   On October 21, 2003, in a medical note indicates there was a discussion regarding the discharge of the Plaintiff from the infirmary to general population but the inmate indicates he is legally blind wanting three hours per day and is not comfortable being transferred to general population.  (Exhibit m)

Response:   Defendants admit Exhibit m is a Offender Infirmary Progress Note dated 10/21/03 containing an M.D. note.  Defendants admit the substance of the note is as found on Exhibit m and lack knowledge to either admit or deny anything outside the document.

187.   On October 21, 2003, a Referral Request was filled out for plaintiff with the note "can he be transferred to general population."  (Exhibit n)

Response:   Defendants admit Exhibit n appears to be a referral request for Aaorn McCroy dated 10/21/03.  Defendants admit the substance of the document is as found on the document itself and deny any allegations not found on the document.

188.   On October 29, 2003, plaintiff was to go and see Dr. Zeh but plaintiff refused and started a hunger strike.  (Exhibits o-1 and o-2)

Response:   Defendants admit Exhibits o-1 is a memorandum dated 10/22/03 from the Health Care Unit at Western Illinois Correctional Center regarding a scheduled doctor's appointment on 10/29/03 at Prairie Eye Center.  Defendants admit exhibit o-2 is a refusal of service form indicating McCroy was refusing to go to the doctor's appointment in Jacksonville.

189.   On November 6, 2003, plaintiff was seen by Dr. Zeh where he was told no rubbing his eye, no bending and no lifting over seven (7) to ten (10) pounds.  (Exhibits p-1 and p-2)

Response:   Defendants admit exhibits p-1 and p-2 are Requests for Consultation - Report of Consultation with a notes dated 11/6/03 by a physician.  Defendants admit the substance of the note is as found on Exhibits p-1 and p-2.  Defendants

55

lack knowledge to either admit or deny anything outside the documents themselves.

190.   On or about November 6, 2003, Dr. Zeh, one of Plaintiff's treating opthomolgists from Springfield, prescribed Plaintiff: "Maxitrol OS OID x 3 days and then stop."

**Response:   Defendants admit Exhibit p-2 contains a notation for Maxitrol listed next to number 1.  Defendants admit only that the substance of the document is as found on Exhibit p-2, and lack knowledge to either admit or deny any other allegations in 190.**

191.   On November 21, 2003, plaintiff was admitted to or discharged from the infirmary by D. Drennen, P.N. but he was left unassigned.  (Exhibit q)

**Response:   Defendants admit Exhibit q is a memorandum dated 11/21/03 regarding Placement/Assignment purported to have been filled out by Drennen lpn.  Defendants admit the substance of the documents is as found on Exhibit q and admit Inmate assignment is listed as "unassigned."**

192.   On November 29, 2003, Dr. Leonard gave plaintiff a medically unassigned status for the period of a year to be re-evaluated in January 2004 as well as restrictions of no weight lifting and sports.  (Exhibits r-1 and r-2)

**Response:   Defendants admit Exhibits r-1 and r-2 are memoranda dated 11/29/03 giving McCroy medically unassigned status (r-1) and restrictions from weight lifting and sports (r-2).  Defendants admit the substance and limits of the restrictions are as found on the Exhibits r-1 and r-2 themselves.**

193.    On December 23, 2003, plaintiff was seen at Prairie Eye Center for a follow up visit where it was stated that plaintiff should no longer be receiving maxitrol. (Exhibit s)

**Response:    Defendants admit Exhibit s is a Request for Consultation - Report of Consultation with a notation dated 12/23/03 purported to have been signed by a physician.  Defendants admit the substance of the document is as found on the document itself.**

194.    Plaintiff was given Maxitrol daily until December 23, 2003.

**Response:    Defendants lack knowledge to either admit or deny the allegations in paragraph 194.**

195.    On January 8, 2004, plaintiff saw Dr. John S. Kim who concluded that plaintiff had steroid induced glaucoma.  (Exhibit t)

**Response:    Defendants admit Exhibit t is a Request for Consultation - Report of Consultation containing a note dated 1/8/04 purported to have been signed by a physician.  Defendants admit only that the substance of the notation is as found on the exhibit itself.**

196.    On February 24, 2004, plaintiff was seen by Dr. Zeh who states that he should see him back for lens fittings.  (Exhibit u)

**Response:    Defendants admit Exhibit u is a Request for Consultation - Report of Consultation containing a notation by a physician.  Defendants lack knowledge as to when any examination took place.  Defendants admit the substance of the notation is as found on the document itself.**

197.    On May 21, 2004, plaintiff again sees Dr. Zeh who again states that he needs a contact lens fitting.  (Exhibit v)

**Response:   Defendants admit Exhibit v is a Request for Consultation - Report of Consultation with a note dated 5/21/04 purportedly to have been written by a physician.  Defendants admit the substance of the notation is as found on Exhibit v.**

198.    On June 18, 2004, plaintiff was seen by Dr. Steahly who stated that plaintiff needs to be seen by Dr. Lee or Dr. Lohse as Dr. Zeh is now leaving the area. (Exhibit w)

**Response:   Defendants admit Exhibit w appears to be a document from the Midwest Eye Associates with a clinic visit on June 18, 2004 by Aaron McCroy. Defendants admit the substance of the report is as found on Exhibit w.**

199.    On August 9, 2004, plaintiff was seen by Dr. James Lee for an evaluation. (Exhibit x)

**Response:   Defendants admit Exhibit x appears to be a document purportedly authored by Dr. Lee dated 8/9/04 concerning Aaron McCroy being seen for evaluation.  Defendants admit the substance of the report is as found on the report itself.**

200.    On September 24, 2004, plaintiff was involved in an altercation and was punched in his lefty eye.

**Response:   Defendants deny the allegations in paragraph 200.**

201.    On September 27, 2004, a letter was received from Stuart R. Farris, M.D. in which plaintiff was given a bad prognosis.  (Exhibit y)

Response:   Defendants admit Exhibit y is a letter purported to have been authored by Dr. Farris, and admit the substance of the letter is as found in the letter itself.  Defendants deny the letter was received on 9/27/04.

202.   Due to keratoconus and a subsequent injury plaintiff does not have his left eye and he has only 20/400 vision in his right eye.

Response:   Defendants admit Plaintiff no longer has his left eye, but lacks knowledge to either admit or deny the remaining allegations in paragraph 202.

203.   Due to plaintiff's eye condition, he is disabled within the meaning of both the American's With Disabilities Act and the Rehabilitation Act.

Response:   Defendants lack knowledge to either admit or deny the allegations in paragraph 203.

204.   On November 21, 2003, a call was placed to Dr. Zeh by a J. Blaesing to ask about transferring plaintiff from the infirmary to the general population.  Dr. Zeh ordered "that offender can be placed in Seg. (single-cell)."  (Exhibit z)

Response:   Defendants admit Exhibit z is an Offender Infirmary Progress Note with a notation purported to have been made by J. Blaesing on 11/21/03.  Defendants admit the substance of that notation is as found on Exhibit z.

205.   After the order fro Dr. Zeh, J. Blaesing discussed the case with R. Mills who agreed to discharge plaintiff from the infirmary to segregation.  (Exhibit z)

Response:   Defendants lack knowledge to either admit or deny the allegations in paragraph 205.

206.   An infirmary discharge note was completed by R. Mills on November 21, 2003.  (Exhibit aa)

**Response:    Defendants admit Exhibit aa is an Offender Infirmary Progress note dated 11/21/03 and purported to have been filled out and signed by R Mills.**

207.    On the infirmary discharge note, two notes were placed "needs placement to protect eye from injury.  Avoid general population" and "avoid yard and activity with others so as to protect Kerotoplasty site."  (Exhibit aa)

**Response:    Defendants admit the substance of Exhibit aa is as found on Exhibit aa.  Defendants lack any further knowledge as they did not author this document.**

208.    Another note on the infirmary discharge note states "follow-up as needed from single cell in segregation." (Exhibit aa)

**Response:    See response to paragraph 207.**

209.    On November 6, 2003 Dr. Zeh wrote a prescription to the plaintiff for Maxitrol for three days and then discontinue use.  (Exhibit bb)

**Response:    Defendants admit Exhibit bb contains copies of two prescriptions. Defendants admit the substance of the prescriptions are as found on the documents themselves.**

210.    On December 9, 2003, Dr. Lochard rubber stamped a continuing Maxitrol prescription for the plaintiff.  (Exhibit cc)

**Response:    Defendants admit Exhibit cc are prescription order forms containing a prescription dated 12/9/03 and containing a notation of a TO Dr. Lochard. Defendants state the substance of the document is as found on the document itself.**

211.    On December 23, 2003, Plaintiff was seen by Dr. Zeh who stated that his pressure was elevated possibly because he had received Maxitrol for too long a period.

**Response:   Defendants admit that Plaintiff's medical records reflect a Request for Consultation - Report of Consultation with a note dated 12/23/03 by a physician.  Defendants admit the substance of that note is as found in the medical records.  Defendants lack knowledge to either admit or deny any information outside that record and lack knowledge to either admit or deny the remaining allegations in paragraph 211.**

212.    On January 8, 2004, Plaintiff was seen by Dr. Kim who stated that Plaintiff was suffering from steroid induced glaucoma.

**Response:   Defendants admit Plaintiff's medical records contain a Request for Consultation - Report of Consultation containing a note of a consultant dated 1/8/04.  Defendants admit under "assessment" "steroid induced glaucoma os" is written.  Defendants lack sufficient knowledge to either admit or deny which physician wrote the note or any other information outside that found in the medical records themselves.**

213.    On February 24, 2004, Plaintiff was seen by Dr. Zeh with a request to provide a clear care plan from WICC and/or Wexford who were hoping to minimize transportation needs.

**Response:   Defendants lack sufficient knowledge to either admit or deny the allegations in paragraph 213.**

214.    On June 8, 2004, Plaintiff was seen by Dr. Anderson who restricted Plaintiff's weight lifting to five pounds and indicated he could play no contact sports.

Response:   Defendants admit Plaintiff's medical records reflect he was seen by Dr. Anderson on 6/8/04.  Defendants admit the substance of that visit and any restrictions on Plaintiff are as reflected in the medical records.

215.   On August 9, 2004, Plaintiff was seen by Dr. Lee who instructed that Plaintiff was to get contact lenses fitted.

Response:   Defendants admit a Request for Consultation - Report of Consultation was found in Plaintiff's medical records that reflects he was seen by Dr. Lee on 8/9/04 and that the substance of the consultation is as reflected in the report.

216.   On September 23, 2004, Plaintiff was in an altercation with cell mate.

Response:   Defendants admit the allegations in paragraph 216.

217.   On October 11, 2004, in Plaintiff's Surgical Report it is stated that Plaintiff's eye had to be "eviscerated." (Exhibits dd-1 and dd-2)

Response:   Defendants admit an Operative Report from St. John's Hospital indicate Plaintiff underwent surgery on 10/11/04.  Defendants admit the substance of the Operative Report is as stated in the operative report itself.

218.   On December 8, 2004, Plaintiff was seen by Dr. Kass who stated that a contact fitting for the right eye was needed as well as a prosthesis for the left eye. (Exhibit ee)

Response:   Defendants admit Exhibit ee is a Request for Consultation - Report of Consultation, and that it contains a physician's notation dated 12/8/094. Defendants admit the substance of the notation is as found in Exhibit ee.

219.   On December 16, 2004, a Disciplinary Report was filed regarding an insufficient urine sample for a drug test. (Exhibits ff and gg)

**Response:   Defendants admit Disciplinary Reports were written on Aaron McCroy on December 16, 2004 in which he was charged with Drug and Drug Paraphernalia and Damage or Misuse of Property. Defendants admit both tickets involved his failure to provide a sufficient amount of urine for drug testing.**

220.   On December 17, 2004, the Disciplinary Report mentioned the urine incident and stated that the medical records indicated a single cell; it was later changed to recommend a double cell. (Exhibit hh)

**Response:   Defendants deny the allegations in paragraph 220.**

221.   On December 29, 2004, the Final Summary of the Disciplinary Report recommended a transfer.

**Response:   Defendants admit a disciplinary transfer was recommended after the disciplinary ticket of 12/16/2004.**

222.   On January 5, 2005, Plaintiff's Good Conduct Credits/Revocation on the urine specimen was reduced by 3 months.

**Response:   Defendants admit Plaintiff's Good Conduct Credits/Revocation on the disciplinary tickets of December 16, 2004 were reduced by 3 months.**

223.   On January 13, 2005, Plaintiff was transferred to Menard Correctional Center from Western Illinois Correctional Center.

**Response:   Defendants deny the allegations in paragraph 223.**

224.   On February 1, 2005, it was recommended that Plaintiff have a double cell on his Segregation Form. (Exhibit ii)

**Response:   Defendants admit Exhibit ii is a Disciplinary Segregation Double**

**Celling Screening Form.  Defendants admit the form was dated at the top 2/1/05,**

**but note that the final determination was on 2/2/03.  Defendants admit the form**

**reflects a Casework Supervisors Recommendation for double celling and an**

**Assistant Warden's final determination for double celling.**

225.   On April 15, 2005, at Plaintiff's Grievance Hearing, Plaintiff was found

guilty, given 6 months segregation, 6 months "C" grade, 6 months revocation of good

conduct credits, loss of contract visits for 6 months, and a transfer.  (Exhibit jj)

**Response:   Defendants admit that Exhibit jj is documentation of a hearing before**

**the Administrative Review Board regarding McCroy's grievance of the December**

**16, 2004 tickets.  Defendants admit Exhibit jj reflects the Administrative Review**

**Board denied Plaintiff's grievance.  Defendants deny Exhibit jj reflects that**

**Plaintiff was found "guilty" at this hearing.**

226.   On September 6, 2005, Plaintiff was given a low bunk assignment

indefinitely.  (Exhibit kk)

**Response:   Defendants admit Exhibit kk is a Medical Permission form that**

**authorizes a low bunk/low gallery/physically challenged permit with an expiration**

**date of "indefinitely."  Defendants admit the effective date on this permission**

**form is 9/6/05.**

227.   On September 8, 2005, two memos were written in response to Plaintiff's

grievances o removal of his safety glasses in which both indicated his glasses were

returned to him.  (Exhibits ll and mm)

Response:   Defendants admit Exhibit ll is a memorandum to Plaintiff from Warden Evans dated September 8, 2005.  Defendants admit this memo reflects that Plaintiff's safety glasses were taken until his medical file could be reviewed and then were returned to Plaintiff.  Defendants lack knowledge to admit or deny whether this Exhibit was in response to a grievance.  Defendants admit Exhibit mm is a memorandum to Plaintiff from Warden Evans reflecting Plaintiff's safety glasses were returned.  Defendants deny this letter was in response to a grievance.

228.   On January 16, 2006, Plaintiff was given a prescription for an ADA cell for a year by Dr. Feinerman.  (Exhibit nn)

Response:   Defendants admit Exhibit nn is a Medical Permission slip authorizing an ADA cell for Aaron McCroy from 1/1/06 through 1/16/07.  Defendants deny this is a "prescription."

229.   On January 30, 2006, Plaintiff received a letter regarding Flagg's response to Plaintiff's grievance.  (Exhibit oo)

Response:   Defendants admit Exhibit oo is a memorandum dated 1/30/06 from Sue Ferrari, DON to Aaron McCroy in which she advises his issue of the ADA cell was addressed by Warden Flagg on 1/9/06.  Defendants lack sufficient knowledge to either admit or deny whether this was in response to a grievance.

230.   On March 21, 2006, Christine Brown wrote a memo in response to Plaintiff's grievance regarding an ADA cell.

Response:   Defendants admit Plaintiff's master file contains a memorandum purported to have been written by Christine Brown to Aaron McCroy.  Defendants

admit it appears this memorandum was in response to one or two of Plaintiff's grievances and regarded an ADA cell.

231.     On March 6, 1999, Plaintiff was transferred from Dixon Correctional Center to Hill Correctional Center. The IDOC concluded he needed a low bunk and needed to use a cane.

**Response:**   **Defendants deny the IDOC made any conclusions regarding Plaintiff.**

232.     On July 9, 2001, Plaintiff was given a permanent low bunk assignment.

**Response:**   **Defendants deny the allegations in paragraph 232.**

233.     The records herein attached to these requests to admit were made in the regular course of the business.

**Response:**   **Defendants lack knowledge to either admit or deny whether all of the records attached were "made" in the "regular" course of business. Defendants admit the records indicated specifically in request number one were maintained in the usual and ordinary course of business at institutions within the Illinois Department of Corrections.**

234.     The entries in the records attached to these request to admit were made by an employee or representative of Illinois Department of Corrections or Wexford Health Systems, a contractor of the Illinois Department of Corrections, who had personal knowledge of the act, event, or condition that is being recorded in the record.

**Response:**   **Defendants deny the allegations in paragraph 234. Defendants cannot speak for any records they did not author.**

235.     The records attached to these requests were made at or near the time that the recorded act, event, or condition occurred or reasonably soon thereafter.

Response:   Defendants lack knowledge to either admit or deny the allegations in

paragraph 235 as to any records not authored by these individual defendants.

Defendants admit the allegations as to any records authored by them.

236.   The records attached to these requests were kept in a consistent manner,

according to a set procedure.

Response:   Defendants admit the records indicated specifically in their response

to request number 1 were maintained as alleged in this paragraph.

Respectfully submitted,

ILLINOIS DEPARTMENT OF
CORRECTIONS, ROGER E. WALKER,
JR., DENNIS HOCKADAY, KEVIN
WINTERS, TERRY POLK, DAVID
SCHNEPEL, SANDRA FUNK, DEBRAH
FUQUA, BYRON LAW, KENNETH
KELLERMAN, JUDITH WILSON, PAMELA
A. GRUBMAN, and JULIUS FLAGG,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois

Kelly R. Choate, #6269533
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 782-9026

Of Counsel.

Attorney for Defendants,

By: _____
KELLY R. CHOATE
Assistant Attorney General

**McCroy v. IDOC, et al.**
USDC-CD Ill. No. 02-3171

<u>CERTIFICATE OF SERVICE</u>

I, Kelly R. Choate, herein certify that I have served a copy of the foregoing Defendants' Response to Plaintiff's Request for Admissions upon:

Thomas Londrigan
Doulgas J. Quivey
Carissa A. Haning
Londrigan, Potter & Randle, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, Illinois  62705

Theresa Powell
April Gowdy Troemper
Heyl, Royster, Voelker & Allen
National City Center
1 North Old State Capitol Plaza
Post Office Box 1687
Springfield, Illinois  62705-1687

Carl J. Tenney
Hughes, Hill & Tenney, L.L.C.
236 North Water Street, Suite 400
Post Office Box 560
Decatur, Illinois  62525-0560

via facsimile and by causing to be mailed a true copy thereof at the addresses referred to above in an envelope duly addressed bearing proper first class postage and deposited in the United States mail at Springfield, Illinois on March 15, 2007.

KELLY R. CHOATE
Assistant Attorney General

Kelly R. Choate, #6269533
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706
(217) 782-9026