IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON MCCROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02-cv-3171 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF CORRECTIONS, ROGER E. WALKER, JR., (in his official capacity only), DENNIS HOCKADAY, KEVIN WINTERS, SANDRA FUNK, DEBORAH FUQUA, LIEUTENANT BRYON LAW, KENNETH KELLERMAN, JULIUS FLAGG, all in their official and individual capacities, WEXFORD HEALTH SOURCES, Inc., Dr. LOWELL BROWN, MD., Dr. HUGHES LOCHARD, MD., and RHONDA MILLS, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR ORDER TO COMPEL THE DEPOSITION OF DEBRA FUQUA
AND TO COMPEL IDOC DEFENDANTS TO FULLY COMPLY WITH
PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS
AND IN OPPOSITION TO DEFENDANT'S MOTION
FOR PROTECTIVE ORDER**

Plaintiff, AARON MCCROY, by and through his attorneys, LONDRIGAN POTTER & RANDLE, respectfully submits this Memorandum of Law in Support of his Motion pursuant to Fed. R. Civ. P. 37(2)(b) for an order compelling Defendant ILLINOIS DEPARTMENT OF CORRECTION DEFENDANTS ("IDOC") to present Defendant Debra Fuqua for deposition and to fully comply with Plaintiff's request for production of documents. Plaintiff also submits this memorandum in opposition to Defendant's Motion for Protective Order.

# I. ARGUMENT

## A. DEBRA FUQUA HAS RELEVANT INFORMATION

Defendant Fuqua is a central witness to the controversy between the Parties and preventing Plaintiff from deposing her will greatly prejudice Plaintiff. Specifically, at all relevant times, Defendant Fuqua was the Health Care Unit Administrator for the Western Illinois Correctional Center (WICC). As such, according to her job description, she was responsible "for effectively and efficiently managing the institution's overall health care delivery system. . . ." (Job description attached as Ex. A). According to the job description, she was responsible for day-to-day operations and administrative direction of the infirmary. (Ex. A). She also acted as the liaison between the infirmary and the rest of WICC and between IDOC and Defendant Wexford as it relates to WICC medical issues. (Ex. A). Finally, she was also responsible for evaluating and responding to the Office of Health Services about grievances made by inmates to include those made by Plaintiff. (Ex. A).

Defendant Fuqua directly participated in at least four major events or activities that go to the heart of this lawsuit: (1) the long delay between the recognition of the need for a corneal transplant operation and the actual operation; (2) the steroid induced glaucoma suffered by Plaintiff; (3) Plaintiff's removal from the infirmary into general population on June 8, 2004; and (4) the various grievances and complaints made by Plaintiff.

As it relates to the long delay between recognition of the need for a transplant surgery and the surgery–a time period in which Plaintiff was in pain–it appears that Defendant Fuqua, as Health Care Unit Administrator, played a central role. (E-mails from Fuqua attached as Ex. B). At the very minium Plaintiff should be allowed to question Defendant Fuqua under oath about what happened when and why before she gives testimony at trial.

In regard to the steroid induced glaucoma issue, Defendant Fuqua appears to indicate that the error was caused because the "Maxitrol order on 11/6/03 not clear as written by Dr. Zeh." (3-3-04 Response to Committed Person's Grievance attached as Ex. C). Plaintiff believes that the prescription was clear as written and Plaintiff should be allowed to question Defendant Fuqua as to the basis for her belief that it was not clear as written.

Although IDOC is trying to minimize it, it also appears that Defendant Fuqua played a central role in the decision to remove Plaintiff from the infirmary on June 8, 2004, one day after he filed yet another grievance. For example, Defendant Winters, Warden at WICC, testified that Defendant Fuqua was responsible for transferring Plaintiff out of the infirmary. (Winters Dep. pp. 61-62, attached as Ex. D). Defendant Dr. Brown, acting Medical Director at WICC, testified that although the decision to remove Plaintiff from the infirmary was made by him, he consulted with Defendant Fuqua about the decision. (Brown Dep. p. 25, attached as Ex. E). In response to a grievance Plaintiff filed over his

removal from the infirmary, Counselor Wear testified that Defendant Fuqua gave her a written document authored by Defendant Fuqua (that has not been produced) that stated: "Offender McCroy was released from the infirmary per his request." (Wear Dep. p. 23, attached as Ex. F). The bottom line is that Plaintiff is entitled to question Defendant Fuqua about the transfer because she clearly has relevant information about it.

There is also no doubt that Defendant Fuqua played a central role as it relates to the grievances and the retaliation resulting from them. As noted by her job description, she was the person responsible for answering medically related grievances. (Ex. A). According to Counselor Wear, Counselor Wear received a written response from Defendant Fuqua as it relates to the grievance filed by Plaintiff about his removal from the infirmary. (Ex. F). Defendant Fuqua also was involved with the answer to the grievance about the steroid induced glaucoma. (Ex. C). In other words, Plaintiff would be severely prejudiced by IDOC's shielding Defendant Fuqua from providing testimony under oath.

**B.    PLAINTIFF DID NOT PREVENT DEFENDANT FUQUA FROM TESTIFYING**

Plaintiff requested the deposition of Defendant Fuqua in November 2006. She could have been deposed earlier but, as was more fully briefed in a previous motion to compel, the IDOC was very late in responding to Plaintiff's initial written discovery requests. After much back and forth, Defendant Fuqua's deposition was set for December 15, 2006. (Exhibit G). That deposition and the

other set with it on that date were cancelled due to a death in the family of the only Plaintiff's attorney available to take those depositions.

After Defendant Fuqua's deposition had been reset for January 19, 2007, Plaintiff learned that Defendant Fuqua was suffering from a medical condition and would not be available on that date for her deposition. (Exhibit H). On January 12, 2007, a letter was sent to Defendant Fuqua's counsel regarding the taking of her deposition and her medical condition. (Exhibit I). The deposition was rescheduled to February 2, 2007, but on that date Defendant Fuqua's deposition was cancelled again due to her medical condition. (Exhibit J). Defendant Fuqua's deposition was then re-set for the third time to March 8, 2007. (Exhibit K). On that date when Plaintiff's counsel arrived to take Defendant Fuqua's deposition, they were informed that she was on too much pain medication to give testimony.

Thereafter, Plaintiff has requested Defendant Fuqua's deposition be reset and Defendant continued to indicate that Defendant Fuqua is on too much medication to give her deposition. In a good faith attempt to confer in person and on the phone with Defendants Counsel, Counsel for Plaintiff reset this deposition twice. After conferring, IDOC Defendants' position regarding additional disclosure remains the same. Plaintiff's Counsel is not responsible for the non-production of the Defendant for the deposition.

### C. NOT ALL RELEVANT DOCUMENTS HAVE BEEN PRODUCED

Although Counsel for IDOC has made attempts to obtain some of the requested documents, Plaintiff still does not have much to which he is entitled. There have also been examples of Defendant representing that no documents exist and then having Defendant's witnesses testify to the contrary. (Def's Resp. to Plaintiff's First Request to Produce #14 attached as Ex. L; Flagg Dep. pp. 8-9, attached as Ex. M).

Moreover, there are also documents that simply have not been produced. For example, as it relates to grievances, enclosed as Exhibit N are two grievances that were clearly received by IDOC but never produced in discovery by the IDOC to include production this week. (Ex. N). 20 Ill. Admin. Code 504.860 clearly mandates that: "Records regarding the filling and disposition of grievances shall be maintained in the offender's master file." 20 Ill. Admin Code 504.860. The grievances in Ex. N are not in the master file. As a sanction for IDOC's repeated failure to produce all of the relevant grievance information Plaintiff asks that the Defendant's affirmative defense as it relates to exhaustion of administrative remedies by stricken.

IDOC has also failed to produce other relevant documents. For example, the June 8, 2004 discharge summary has never been produced. Likewise, the document that Defendant Fuqua drafted and gave to Counselor Wear has not been produced. (Ex. F). The list of inmates to include Plaintiff that were to take

a supposed random drug test generated by IDOC in Springfield and sent to WICC has also not been produced. Similarly, other than the few e-mails from Defendant Fuqua, virtually no other correspondence between Defendants has been produced.

## II.  CONCLUSION

Plaintiff will be seriously prejudiced if he will not be able to depose Defendant Fuqua, a party defendant, prior to trial. Moreover, taking her deposition will preserve her testimony under oath and may alleviate the need for her to testify at trial. As it relates to documents, because IDOC clearly has refused to provide all relevant grievance documents in their possession, the Defendants' affirmative defense as it relates to exhaustion of administrative remedies should be stricken. As it relates to the other documents, IDOC should be ordered to immediately produce all relevant documents.

WHEREFORE, Plaintiff prays that the Court Order Defendant Fuqua be presented for deposition prior to trial, that all Defendants' affirmative defenses relating to exhaustion of remedies be stricken, and that the discharge summary, Defendant Fuqua's written report to Counselor Wear, the random drug test list, and all other relevant documents be produced immediately.

Respectfully submitted,

AARON MCCROY, Plaintiff

By: <u>s/Thomas F. Londrigan</u>
THOMAS F. LONDRIGAN, Bar No.
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com

## Certificate of Service

The hereby certify that on April 3, 2007, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification to such filing to the following;

Ms. Theresa Powell
Heyl, Royster, Voelker & Allen
National City Center, Ste. 575
1 North Old State Capitol Plaza
PO Box 1687
Springfield, IL 62705-1687

Lisa Madigan, Illinois Attorney General
Attn: Kelly Choate, A.A.G. &
Julie L. Morgan. A.A.G.
500 South Second Street
Springfield, IL 62706

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Aaron McCroy, Reg. #N51882
P.O. Box 999
Pinckneyville, IL 62274

By:   s/Thomas F. Londrigan
THOMAS F. LONDRIGAN, Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com