05415-N3293
TMP/ej/jly

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

AARON McCROY,                                         )
                                                      )
                        Plaintiff,                    )
                                                      )
        v.                                            )   No. 02-3171
                                                      )
THE ILLINOIS DEPARTMENT OF CORRECTIONS,               )
ROGER E. WALKER, JR. (in his official capacity only), )
DENNIS HOCKADAY, KEVIN WINTERS, SANDRA                )
FUNK, DEBRAH FUQUA, LIEUTENANT BYRON                  )
LAW, KENNETH KELLERMAN, JULIUS FLAGG,                 )
(all in their official and individual capacities), WEXFORD )
HEALTH SOURCES, INC., DR. LOWELL BROWN,               )
M.D., DR. HUGHES LOCHARD, M.D., and                   )
RHONDA MILLS,                                         )
                        Defendants.                   )

STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF _____     )

## AFFIDAVIT

I, RHONDA S. MILLS, R.N., being first duly sworn upon my oath, soundly affirm the following statements:

1. I am a licensed nurse practitioner currently practicing at the Quincy Medical Group.

2. I have a master's degree in nursing with specialization as a nurse practitioner.

3. I worked at the correctional center as a nurse practitioner from September of 2001 through August of 2005.

4. I played no role and had no authority to transfer an inmate from one facility to another.

5. I played no role and had no authority to select or change Plaintiff's treating ophthalmologist.

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

EXHIBIT 1

05415-N3293
TMP/ej/jly

6. In general, the nurse practitioner would not participate in providing or passing out medications to inmates.

7. At no time would I or did I refuse to provide Plaintiff, Aaron McCroy, or any other inmate, medication that had been prescribed by the Medical Director or any other onsite physician.

8. At no time did I administer medication to Mr. McCroy that had not been prescribed.

9. I played no role in determining whether or not Mr. McCroy received a corneal transplant.

10. I played no role in determining the availability of corneal transplants to Mr. McCroy or anyone else. Whether or not a corneal transplant might have been available to McCroy if he had the means to pay for it prior to the year 2003 is unknown to me.

11. I played no role in determining whether or not Mr. McCroy should be referred to an outside ophthalmologist. In addition, I played no role in the frequency of those visits.

12. At no time did I refuse to scheduled needed medical appointments.

13. I played no role and had no authority to determine whether or not Mr. McCroy, or any other inmate, had access to programs and privileges provided to non-disabled or abled inmates.

14. I have no knowledge as to the eligibility requirements of the programs and privileges provided to inmates at the Western Illinois Correctional Center. I played no role in providing those programs or privileges or in determining who participated in them.

15. At no time did my duties as a nurse practitioner include making determinations regarding turning lights off and on for inmates; making decisions regarding requests to go to the commissary; making determinations regarding which inmates, if any, should be searched; determining whether or not an inmate should be allowed an opportunity to shower at any time;



HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej/jly

determining whether or not an inmate should be allowed to participate in recreation activities; and/or determining tasks and duties assigned to inmates concerning cleaning.

16. Specifically, I played no role in determining whether or not Mr. McCroy should or should not be allowed to go to the commissary, have his belongings searched, should or should not have access to a shower at any specific time, should or should not be allowed to participate in recreation activities. Additionally, at no time did I wake the Plaintiff to ask him to clean his cell or to empty his locker or dresser.

17. I played no role in determining whether or not Mr. McCroy should be "medically unassigned."

18. An inmate may be deemed medically unassigned in conjunction with a medical condition to prevent that inmate from having to work as a result of that medical condition.

19. I am not aware of the eligibility requirements for participating in any programs which may lead to an early release by an inmate.

20. I have no knowledge as to whether or not an inmate who is medically unassigned makes him ineligible to participate in certain programs offered by the Department of Corrections which may or may not lead to an early release.

21. I played no role in determining whether or not Plaintiff was allowed to go to the commissary on any particular date.

22. I played no role in determining whether or not Mr. McCroy had access to recreation activities.

23. At no time did I transfer Aaron McCroy to the general population.

24. I played no role in determining cell assignments or any inmates.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

3

05415-N3293
TMP/ej/jly

25. I played no roles in determining the cell mate of Aaron McCroy.

26. I had no knowledge as to the identity of Mr. McCroy's cell mate when he was released from the infirmary in June of 2004.

27. I was not aware of either the criminal background or the disciplinary background of any of the inmates housed with Mr. McCroy subsequent to his release from the infirmary in June of 2004.

28. I am not aware of any punishment Mr. McCroy may have received as a result of the altercation he had with his cell mate in September of 2004.

29. I had no authority, nor would I play any role in determining whether or not Plaintiff should be disciplined as a result of any altercation, either in the infirmary or elsewhere within the Western Illinois Correctional Center.

30. I had no involvement with obtaining a urine sample from Aaron McCroy in conjunction with a random drug test.

31. I had no involvement in determining the security risks of any particular inmate, including Aaron McCroy. In general, I had no specific knowledge concerning the security classifications of each and every inmate.

32. I played no role in transferring Plaintiff, Aaron McCroy, to the Menard Correctional Center. Not only did I have no role in doing so, I had no authority to transfer inmates from one facility to another.

33. I am no longer employed at the Western Illinois Correctional Center or any other correctional center.

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

4

05415-N3293
TMP/ej/jly

34. At no time during my employment at Western Illinois Correctional Center was I made aware of the identity of the cell mate with whom Aaron McCroy was housed in June of 2004 after he was transferred to the general population.

35. I have no recollection of the names of the inmates who were housed with Aaron McCroy while he was housed and/or admitted to the infirmary at any time from 2002 through June of 2004. Accordingly, I have no information concerning either the criminal history or the disciplinary backgrounds of any of these unidentified inmates.

36. Specifically, I was not familiar with Inmate Durham at any time relevant to this lawsuit. Likewise, I had no knowledge regarding Mr. Durham's criminal history, nor his disciplinary background. That information would not have been provided to me, nor would it have been accessible to me.

37. Mr. McCroy was transferred to the Western Illinois Correctional Center from the Hill Correctional Center on October 31, 2001. (Exhibit 1-A, p. 739.)

38. It appears that my first encounter with Mr. McCroy after July 1, 2002 was on December 10, 2002. On that occasion, I conducted a chart review only for blood pressure and monitoring the patient from the hypertension clinic. (Exhibit 1-B, p. 786 - my first notation in the record before that is p. 752.)

39. Subsequent to that date, I personally saw Mr. McCroy on December 12, 2002 in conjunction with his complaints of increased blood pressure. (Exhibit 1-C, p.787.)

40. The next time my name appears in the Plaintiff's progress notes is August 21, 2003. On that date, I saw Mr. McCroy as the nurse practitioner. My note from that date reads as follows:



HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

5

05415-N3293
TMP/ej/jly

> S (subjective): Patient just returning from showering when infirmary rounds made. Only complains of occasional dizziness.
>
> O (objective): Eyes - sclera without redness. No lid edema noted.
>
> A (assessment): 1) keratoplasty; 2) HCV (hepatitis C virus) receiving interferon.
>
> P (plan): Continue present management for those conditions based upon the prior physician's orders noted in the chart. (Exhibit 1-D, 911.)

41. I again made rounds on August 26, 2003 and made an entry in the patient's infirmary progress notes as follows:

> S (subjective): No complaints. Questions about removal of sutures of left eye. PEG-intron 16.5 mg SC weekly. Initiated 3/19/03. To reevaluate after 24 weeks - at week 20 now. To have follow-up keratoplasty on August 29, 2003.
>
> A (assessment): 1) Hepatitis C; 2) Keratoplasty.
>
> P (plan): Continue present management based upon prior orders entered concerning the patient's care and treatment of his hepatitis C and follow-up care with his outside treating ophthalmologist. (Exhibit 1-E, p. 912.)

42. I next saw Mr. McCroy on September 2, 2003. On that date, Mr. McCroy advised me that he had sutures in his left eye which needed to remain six more months. He requested renewal of an antihistamine. I examined him and noted that he was in no acute distress and was well-appearing. He was ambulating steady. I prescribed him some medication for his complaints in the form of Antivert and advised him to follow up as needed for his medications. (Exhibit 1-F, p. 914.)

43. My next visit with Mr. McCroy was on September 15, 2003 concerning his complaints of dermatitis. His care and treatment was unrelated to his eyes. (Exhibit 1-G, p. 918.)

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej/jly

44. My next entry in Mr. McCroy's progress notes comes on September 16, 2003 and relates to his ongoing treatment of hepatitis C. Again, this is unrelated to the patient's eye condition at issue in this case. (Exhibit 1-H, p. 919.)

45. Similarly, my next entry is on September 22, 2003 pursuant to a chart review relating to the patient's hepatitis C treatment. (Exhibit 1-I, p. 921.)

46. I next saw Mr. McCroy on September 23, 2003 relating to complaints of constipation. I did not assess him for any complaints relating to his eye condition. (Exhibit 1-J, p. 922.)

47. On September 29, 2003, I saw Mr. McCroy, who advised that he had run out of Maxitrol and was awaiting evaluation of his hepatitis C treatment. The Maxitrol was related to the patient's eye condition and was continued per the plan of that date. (Exhibit 1-K, p. 924.)

48. This medication was renewed pursuant to Dr. Zeh's order of August 29, 2003 of Maxitrol to be applied to the left eye twice per day, which could be refilled six times. (Exhibit B, p. 292.) This recommendation from Dr. Zeh was transcribed in a written prescription order by Dr. Shute, a staff physician, on August 29, 2003. (Exhibit 1-L, p.566.)

49. I saw Mr. McCroy on October 6, 2003 for complaints relating to care and treatment of the patient's hepatitis C. (Exhibit 1-M, p. 927.)

50. On October 27, 2003, I renewed the patient's Maxitrol per the orders of Dr. Zeh and Dr. Shute noted previously herein. (Exhibit 1-N, p. 942.)

51. My next entry in the patient's infirmary progress notes is dated November 17, 2003. At 10:30 a.m., I conducted infirmary rounds and noted complaints from the patient relating to a rash and constipation. (Exhibit 1-O, p. 963.)

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

7

05415-N3293
TMP/ej/jly

52.   On November 21, 2003, I signed the patient's infirmary discharge note after a discussion I had with Jennifer Blaesing, the Director of Nursing. (Mills Deposition, p. 32; Exhibit 2.)

53.   Pursuant to a telephone call that Jennifer Blaesing had with Dr. Zeh, she noted that the offender could be placed in a single cell in segregation. She discussed this with me, according to her note. (Exhibit 1-P, p. 965.)

54.   I do not recall the specifics of that conversation. (Exhibit 2.)

55.   Mr. McCroy was discharged from the infirmary after having a non-eventful course within the infirmary. He continued the healing process following his keratoplasty procedure. He was provided patient education to avoid the yard or activity with others so as to protect the keratoplasty site. He was discharged from the infirmary to a single cell in segregation, which to my knowledge was also within the infirmary. (Exhibit 1-Q, p. 966.)

56.   To my knowledge, Mr. McCroy was placed in a single cell following his discharge from the infirmary on November 21, 2003. (Exhibit 2.)

57.   My next note in the patient's chart is dated December 9, 2003. On that date, I noted that Dr. Lochard had discussed the patient's care with Dr. Owens and approved a follow-up visit for his keratoplasty post-operative care. (Exhibit 1-R, p. 968.)

58.   My next entry in the patient's progress notes is dated March 19, 2004. On that occasion, I noted orders written by Dr. Brown regarding the patient's status relating to his hypertension. (Exhibit 1-S, p. 989.) I made no personal assessment nor any evaluation of the patient of my own on that date.

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej/jly

59. My next entry in the patient's chart is dated August 12, 2004. On that date, I reviewed the patient's chart and noted that the patient was to be watched when taking medications. (Exhibit 1-T, p. 1011.)

60. My next entry in the patient's chart is dated October 13, 2004 and relates to the patient's complaints of constipation. This visit was unrelated to the patient's eyes. (Exhibit 1-U, p. 1038.)

61. A similar visit was noted on October 14, 2004 while I was conducting rounds in the infirmary. The patient was seen with respect to his complaints of constipation. I did note the patient had his eye shield in place at that time. (Exhibit 1-V, p. 1040.)

62. I next saw Mr. McCroy on November 1, 2004. On that date, Mr. McCroy complained of a headache. On my assessment, Mr. McCroy was sitting on a chair at bedside with earphones on. He voiced concerns over not having follow-up with Dr. Farris yet. He believed he was to go out one month prior. My assessment at that time referenced post-operative visits relating to the patient's left eye. My plan was to have the patient discuss his complaints with Dr. Brown regarding the need for follow-up visits. (Exhibit 1-W, p. 1057.)

63. I would not have had the authority to refer the patient to an outside physician on my own.

64. My next and last entry relating to Mr. McCroy was dated December 15, 2004. At that time, Mr. McCroy was noted to have his eye shield over his left eye and advised that he was awaiting his prosthesis. He complained of headaches and requested narcotics. In my assessment, the patient was in no acute distress and was well-appearing. He was laying on his right side with his shield over

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

his left eye. The patient was awaiting his prosthesis for his left eye. My plan was to continue present management of the patient's current medical complaints. (Exhibit X, p. 1071.)

65. In my opinion, Mr. McCroy was treated appropriately.

66. At the time I discharged the patient from the infirmary to a single cell in segregation, there was no medical indication prohibiting Mr. McCroy's transfer to the single cell.

67. Based upon a review of the medical records, it appears that Nurse Jennifer Blaesing had a discussion with Dr. Zeh regarding his recommendations, which were followed.

68. I had no involvement in discharging the patient from the infirmary to the general population in June of 2004.

69. Nevertheless, I have no reason to disagree with Dr. Brown's decision to do so.

70. I make this Affidavit in support of my Motion for Summary Judgment. I relied upon the medical records of the Plaintiff which were kept in the ordinary course of business.

71. I am competent to testify regarding the matters stated herein. If necessary, I am competent to testify regarding the facts stated herein.

Further Affiant Sayeth Not.

_Rhonda S. Mills, A.P.R.N._
RHONDA S. MILLS, R.N.

Subscribed and Sworn to before me this
___ day of ___April___, 2007.

_Angela D. Rodefer_
Notary Public

OFFICIAL SEAL
ANGELA D. RODEFER
NOTARY ... OF ILLINOIS
MY CO... 2-16-2010

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822