3:02-cv-03171-HAB-BGC    # 380-8    Page 1 of 51

E-FILED

2/23/07                McCroy v. Illinois Dept. of Corrections    Friday, 04 May, 2007  02:23:15 PM
Karen Wear                                                        Clerk, U.S. District Court, ILCD

```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE CENTRAL DISTRICT OF ILLINOIS

 3                      SPRINGFIELD DIVISION

 4

 5   AARON McCROY,

 6             Plaintiff,

 7      vs.                          No. 02-3171

 8   ILLINOIS DEPARTMENT OF
     CORRECTIONS, et al,
 9
               Defendants.
10

11

12

13             THE DEPOSITION of KAREN WEAR, taken in

14   the above-entitled case before Debra K. Baldwin, a

15   Notary Public of Sangamon County, acting within and

16   for the County of Sangamon, State of Illinois, at

17   11:30 o'clock A.M., on February 23, 2007, at

18   Western Illinois Correctional Center, Brown County,

19   Illinois, pursuant to notice.

20

21

22          Baldwin Reporting & Legal-Visual Services
              Serving Illinois, Indiana & Missouri
23          24hrs (217)788-2835    Fax (217)788-2838
                       1-800-248-2835
24
```



2/23/07                           McCroy v. Illinois Dept. of Corrections
Karen Wear

```
1      APPEARANCES:

2          LONDRIGAN, POTTER & RANDLE
           BY:  Douglas Quivey, Esq.
3                1227 South Seventh Street
                 Springfield, Illinois 62703
4                On behalf of Plaintiff.

5          MS. KELLY CHOATE
                 Assistant Attorney General
6                500 South Second Street
                 Springfield, Illinois 62706
7                On behalf of Defendant Illinois
                 Department of Corrections.
8
           HEYL, ROYSTER, VOELKER & ALLEN
9          BY:  Ms. Theresa Powell
                 Attorney at Law
10               National City Bank Building, Suite 575
                 Springfield, Illinois 62701
11               On behalf of Defendant.

12         HUGHES, HILL & TENNEY, LLC.
           BY:  Ms. Lyndsay Dudgeon
13               Attorney at Law
                 236 North Water Street
14               Decatur, Illinois 62525
                 On behalf of Defendant Doctor David
15               Anderson.

16

17

18

19

20

21

22

23

24
                           Page 2
```

2/23/07                    McCroy v. Illinois Dept. of Corrections
Karen Wear

```
 1                    I N D E X

 2   DEPONENT                           PAGE NUMBER

 3   Karen Wear

 4        Examination by Mr. Quivey        5, 42
          Examination by Ms. Choate          36
 5        Examination by Ms. Powell          40
          Examination by Ms. Dudgeon         42
 6

 7

 8

 9

10

11

                     E X H I B I T S
12

13   NUMBER                    MARKED FOR IDENTIFICATION

14   (None.)

15

16

17

18

19

20

21

22

23

24
```

Page 3

2/23/07                          McCroy v. Illinois Dept. of Corrections
Karen Wear

```
1                    S T I P U L A T I O N

2                    It is stipulated and agreed, by and
      between the parties hereto, through their
3     attorneys, that the deposition of KAREN WEAR may be
      taken before Debra K. Baldwin, a Notary Public and
4     Certified Shorthand Reporter and Registered
      Professional Reporter, upon oral interrogatories,
5     on the 23rd of February A.D., 2007, at the instance
      of the Plaintiff at the hour of 11:30 o'clock A.M.,
6     Western Illinois Correctional Center, Brown County,
      Illinois;
7
                     That the oral interrogatories and the
8     answers of the witness may be taken down in
      shorthand by the Reporter and afterwards
9     transcribed;

10                   That all requirements of the Federal
      Rules of Civil Procedure and the Rules of the
11    Supreme Court as to dedimus, and the reading over
      and signing of the deposition by the witness, are
12    expressly waived;

13                   That any objections as to competency,
      materiality or relevancy are hereby reserved, but
14    any objection as to the form of question is waived
      unless specifically noted;
15
                     That the deposition, or any parts thereof
16    may be used for any purpose for which depositions
      are competent, by any of the parties hereto,
17    without foundation proof;

18                   That any party hereto may be furnished
      copies of the deposition at his or her own expense.
19

20

21

22

23

24
                              Page 4
```

Baldwin Court Reporting & Legal Video Services
1-800-248-2835

```
 1                    (Whereupon the Deponent was

 2                    sworn by the Notary Public.)

 3              K A R E N   W E A R

 4    having been first duly sworn by the Notary Public,

 5    deposeth and saith as follows:

 6                    EXAMINATION

 7                    BY MR. QUIVEY:

 8        Q    Ma'am, please state your name.

 9        A    Karen Wear.

10        Q    And, ma'am, where do you work?

11        A    Western Illinois Correctional Center.

12        Q    And approximately how long have you

13    worked here?

14        A    Eighteen years.

15        Q    And have you been a--. You're currently a

16    counselor, is that correct?

17        A    That is correct.

18        Q    And has that been your duty here the

19    whole time?

20        A    No, sir. I was a correctional officer for

21    15 years. I have been a correctional counselor

22    since February of '04.

23        Q    Do correctional officers ever serve as

24    counselors?
```

Page 5

1        A     No, sir.

2        Q     So they're distinct and separate

3   positions?

4        A     Correct.

5        Q     Generally, what are your duties as a

6   counselor?

7        A     Initial inmate contact, processing of

8   paperwork, tabulation of good time, requested

9   transfers, transfers initiated by the institution,

10  crisis intervention.

11       Q     How often do you have contact with an

12  inmate?  Just John Smith's here.  How often does a

13  counselor, you, or another counselor have contact

14  with--

15       A     They're required to make face to face

16  contact with an individual at least every 60 days.

17       Q     And other than that what I'll call

18  regular contact, how else would it become a need

19  for you to see an individual inmate?

20       A     We have scheduled housing unit time where

21  we are available in an office in the housing

22  assignment, and individuals are able to--when they

23  have day room time, when they're out of their cells

24  for leisure time, they're welcome to come in and

Page 6

1    see the counselors in their office. Or they can

2    write request slips and then we make an effort to

3    contact them.

4        Q    So, as a counselor, are you assigned to a

5    housing unit?

6        A    At this time. There was a recent change.

7    At one point we were assigned signed to particular

8    inmates as determined by their identification

9    number. Now we are assigned to an individual

10   housing unit.

11       Q    Let's talk about transfers just a little

12   bit. What's your role when the transfer is at the

13   request of the institution?

14       A    (No response.)

15       Q    What do you do to facilitate that?

16       A    We process the required documentation.

17       Q    And, generally speaking, what is that

18   required documentation?

19       A    A keep of the disciplinary report,

20   they're assignment history, documentation that is

21   required to accompany the transfer.

22       Q    Are inmates ever transferred at the

23   request of the institution for other than

24   disciplinary reasons?

Page 7

1        A    Medical reasons.

2        Q    Do inmates ever request to be transferred

3   to a different facility?

4        A    Yes, they may request.

5        Q    And what is your role when an inmate

6   makes such a request?

7        A    To verify that they are--meet the

8   eligibility requirements for a requested transfer.

9        Q    And what are the eligibility requirements

10   for a requested transfer?

11        A    They have to have been at this

12   institution for a specific length of time, they

13   cannot be in segregation status, they cannot be in

14   C grade status.

15        Q    What's the length of time?

16        A    Currently they can request every six

17   months.

18        Q    So just so I'm clear, an inmate couldn't

19   request to be transferred until they've been in

20   this institution for six months?

21        A    They may request, but we inform them that

22   our process is to evaluate every six months.

23        Q    What's C grade status?

24        A    That is a disciplinary status. A

Page 8

1    reduction in privileges.

2        Q    And how is that different than

3    segregation?

4        A    Segregation is a location. It's all part

5    of the disciplinary process.

6        Q    So, in other words, you could both be

7    C grade and in segregation at the same time?

8        A    Correct.

9        Q    Do you know who Aaron McCroy is?

10        A    I am familiar with the name.

11        Q    And I take it by that answer, if he

12    walked in here today, you may not recognize him?

13        A    I may not. I'm terribly sorry.

14        Q    You don't have to be sorry. I'm just

15    trying to get your recollection.

16        A    I see hundreds of individuals.

17        Q    Before you talked about how there's been

18    a change and now it's by housing unit and before it

19    was by name.

20        A    That's correct.

21        Q    Generally speaking, when it was in the

22    old way, how many inmates were you assigned as

23    their counselor, in rough numbers?

24        A    In tabulation of the population that we

Page 9

1    have here, over two hundred.

2         Q    And has that remained pretty much the

3    same?

4         A    Yes.

5         Q    And does each inmate, regardless under

6    the old system or the new system, only have one

7    counselor?

8         A    Correct.

9         Q    And so if an inmate is assigned to you, a

10   counselor, or vice-versa, the only reason he would

11   see another counsel is if for some reason you were

12   on vacation or not available for whatever reason?

13        A    Correct.

14        Q    Is there a counselor on duty 24 hours a

15   day?

16        A    No.

17        Q    So is it just during the day,

18   essentially?

19        A    Yes. Seven days a week.

20        Q    I'm going to hand you a form which I

21   believe is a transfer form dated 3/2/04, and I

22   would first just ask you if you've ever seen that

23   document before. And take as much time as you want

24   to look at it.

Page 10

1          A      Yes.   That is my signature.

2          Q      Okay. Tell me what that--what's the

3     purpose of that form and as to why it was filled

4     out or created on that date and time.

5          A      It is indicated as an inmate requested

6     transfer.

7          Q      And so the inmate in question is Aaron

8     McCroy.   Correct?

9          A      Correct.

10         Q      So it would be fair to say, as per that

11    form, that at that time he had made a request for a

12    transfer to another institution?

13         A      Yes.

14         Q      And can you tell from that form what your

15    role in that process was?

16         A      My role is to initiate the documentation.

17         Q      Let me--. Hold on. And by initiate the

18    documentation, does that mean you're the creator of

19    that document?

20         A      Correct.

21         Q      Okay. Keep going.

22         A      And then I simply indicate the location

23    of preference and the rationale, which is indicated

24    on page 1.

2/23/07                                McCroy v. Illinois Dept. of Corrections
Karen Wear

1        Q    Okay. And I'm assuming--. Well, strike

2    that.

3             Do you have an independent recollection

4    of Mr. McCroy making that request?

5        A    No, sir.

6        Q    Is it your standard practice when an

7    inmate is requesting a transfer to talk to them

8    about which facility they would like to be

9    transferred to, or is it you just write down

10   whatever they say?

11       A    Whatever request they make we verify

12   eligibility.

13       Q    So I guess what I'm asking is if inmate

14   John Smith comes in to you and says I want to be

15   transferred to another facility, do you sit down

16   and talk to them to try to come up with what would

17   be a suitable facility for whatever the reason is

18   or that you just take whatever that inmate tells

19   you and write it down? I'm just trying get what

20   your kind of standard procedure is.

21       A    Normally individuals have a specific area

22   of request and then we verify whether they are

23   eligible for that. I don't make recommendations.

24       Q    Okay. Do you know where a Logan

Page 12

1    correctional facility is, where it's located?

2        A    Yes.

3        Q    And where is that?

4        A    By Springfield, Illinois.

5        Q    And I'm assuming you don't have any

6    independent recollection of talking to Mr. McCroy

7    as to why he wanted to go there?

8        A    No, sir, I do not.

9        Q    Is that a fair statement?

10            After he made that request to you and you

11   prepared the form, what happened next?

12       A    Then it was given to my supervisor.

13       Q    Which is who or was at that time?

14       A    Jeff Urban.

15       Q    And what is his title?

16       A    He is the casework supervisor.

17       Q    And is he still the casework supervisor?

18       A    That is correct.

19       Q    And then what happened with the form?

20       A    Then he reviews, processes, and passes it

21   along to the next level.

22       Q    And what's the next level?

23       A    Apparently it's been signed by assistant

24   warden of programs.

1        Q    And, again, is that the typical process,

2    that it goes from the counselor to Mr. -- is it

3    Urban?

4        A    Urban.

5        Q    Is he the only person in his capacity, or

6    is more than one person serving in that job?

7        A    We have a casework supervisor and we have

8    a clinical services supervisor.

9        Q    And as it relates to inmate requested

10   transfer, do both of them have the same--both him

11   and Mr. Urban and the other person, do they both

12   have the same authority as it relates to the

13   transfers?

14       A    I'm not aware of that. I'm sorry.  I

15   don't know.

16       Q    Is it--. Based on your experience, is it

17   after the caseworker supervisor signs off, is it

18   the assistant warden for -- did you say programs or

19   operations, I'm sorry?

20       A    Programs.

21       Q    (Continuing) -- is that typically the

22   person, the next person in the approval, chain of

23   approval for one of those?

24       A    Yes.

                        Page 14

1        Q    And can you tell from that form whether

2    or not it was approved by you, first of all?

3        A    I do not make an approval. I don't get a

4    vote on this.

5        Q    So you don't make a recommendation?

6        A    I do not make a recommendation.

7        Q    Who is the first person in the chain that

8    does make a recommendation?

9        A    That would be the casework supervisor.

10        Q    And did the casework supervisor approve

11    Mr. McCroy's request?

12        A    Yes.

13        Q    And did the deputy warden approve his

14    request?

15        A    Yes.

16        Q    And where did it go next?

17        MS. CHOATE: Objection to the previous question

18    in reference to deputy warden. I believe it's

19    assistant warden, for clarity.

20        THE DEPONENT: It was signed by the assistant

21    warden of programs and then it was signed by the

22    assistant warden of operations.

23        MR. QUIVEY:   Q  And did that person approve it

24    as well?

Page 15

1        A    Yes.

2        Q    Then where did it go?

3        A    Then there is a signature that indicates

4    the warden.

5        Q    And can you tell from that form, did the

6    warden disapprove the request?

7        A    No.

8        Q    Was the request disapproved?

9        A    The form indicates that it was denied at

10    the transfer coordinator's office.

11        Q    And is the transfer coordinator's office

12    an office here at Western, or is that an office in

13    Springfield?

14        A    I believe it's in Springfield.

15        Q    So would a fair reading of the form be

16    that everybody that was in the approval process had

17    approved it here at Western and then the request

18    was denied at the Springfield office?

19        A    That is the indication of this form.

20        Q    And can you tell from the form what that

21    person or that office's reason was for denying it?

22        A    There is a rationale indicator here that

23    says--it appears to be a number 3.

24        Q    And do you know what that means?

2/23/07                          McCroy v. Illinois Dept. of Corrections
Karen Wear

1        A    And the rationale is coded at the top

2    that states additional observation needed.

3        Q    And do you know what additional

4    observation would be needed?

5        A    No, sir.

6        Q    Based on your experience, have you seen

7    other inmates whose request for transfer was denied

8    by the Springfield office?

9        A    Yes.

10       Q    And had you seen other ones that gave the

11   coded reason number 3?

12       A    Yes.

13       Q    Have you ever inquired to anybody what

14   additional observation is supposed to mean?

15       A    No. That's not my purview to do that.

16       Q    When a request for transfer is denied, is

17   that communicated to the inmate?

18       A    They may ask the counselor. At this time

19   they receive a written notification. I'm not aware

20   whether it was done at that time or not.

21       Q    And I'm assuming you don't have an

22   independent recollection of whether or not you

23   communicated that denial to Mr. McCroy?

24       A    I do not recall.

Baldwin Court Reporting & Legal Video Services
1-800-248-2835

1        Q    I hand you another form. This one is

2    dated May 12th, 2004, and could you just tell me

3    what that form appears to be.

4        A    It is a denied contact maintenance

5    deletion form. That is where an individual had been

6    determined to be kept separate from another

7    individual. And this is a form that is completed to

8    remove that restriction.

9        Q    So would it be fair to say that was

10    another inmate here at Western?

11        A    No. It was initiated by an individual who

12    was at that time assigned to Lawrence Correctional

13    Center.

14        Q    And, again, I'm just trying to understand

15    what it means. Does that mean that at one point in

16    time there was an inmate that was on some list with

17    Mr. McCroy that hey shouldn't have contact?

18        A    Correct.

19        Q    And that inmate as of the date of the

20    form was in Lawrenceville, and Mr. McCroy was here

21    at Western, and, for whatever reason, they're

22    ending that no contact provision?

23        A    They are requesting that, yes.

24        MS. POWELL: I just want to correct.  I think

Page 18

1    you said Lawrenceville. I think it's Lawrence

2    Correctional Center.

3         THE DEPONENT: Lawrence.

4         MS. CHOATE: It's in Lawrenceville.

5         MR. QUIVEY:  Q  Can you tell from that form

6    why that was done? And, specifically, was it at the

7    request of Mr. McCroy, or was it at the request of

8    the other inmate who, I believe, was redacted?

9         A    It was initiated by the other individual.

10   We receive this form with the top portion

11   completed. Then I present this to the individual at

12   this facility, explain its intent, and he indicates

13   whether he is or is not an enemy of the individual

14   listed above, and then signs that, and I witness.

15        Q    And what did Mr. McCroy indicate?

16        A    He indicated "am not".

17        Q    Now I'm going to hand you a series of

18   documents that I believe all kind of go together,

19   but I could be wrong, and I'd first just have you

20   read them.

21        A    (Reviewing document.)

22        Q    Have you had an opportunity to read that?

23        A    Yes.

24        Q    First of all, what is the date on the

1    grievance?

2         A    (No response.)

3         MS. CHOATE: Object to the foundation that it's

4    one grievance.

5         MR. QUIVEY:  Q  That appears on the first page

6    of that.

7         A    I'm sorry. I'm not able to read this

8    copy.

9         Q    Okay. Where it says counselor's response,

10   do you see that?

11        A    Yes.

12        Q    Is that your signature on there?

13        A    Yes.

14        Q    So would it be fair to say that a

15   grievance was submitted to you and that you made a

16   response to it?

17        A    Yes.

18        Q    And the grievance you made a response to

19   is the typewritten portion on the top page?

20        A    Yes.

21        Q    So, in other words, your handwritten

22   response corresponds to the grievance, the

23   typewritten part of the grievance.  Correct?

24        A    Correct.

Page 20

1        Q    And before we go on I want to hand you

2    another form, and this one appears to be a

3    committed persons grievance dated June 15th, 2004,

4    and I'd ask you to read that.

5        A    (Reviewing document.) Yes.

6        Q    On the second form I just handed you

7    there's a notation on the bottom that says

8    emergency review and then it has somebody's

9    signature. Do you know whose signature that is?

10       A    No, I'm sorry I do not.

11       Q    When an inmate files what the inmate

12    entitles an emergency grievance, who does the

13    initial review?

14       A    The individual indicates by marking this

15    and it is sent to--

16       Q    Hold on a second. You have to identify

17    for the court reporter what "this" is.

18       A    I'm sorry.  There is a notation on the

19    grievance form that states that the inmate is

20    declaring this an emergency grievance. Then it is

21    reviewed by someone in administration. I'm sorry, I

22    do not recognize that signature.

23       Q    Would you agree with me that, as far as

24    the content, this grievance dated June 15th, 2004,

Page 21

1    seems to be the same content of the grievance that

2    we're having trouble reading the date because it's

3    cut off, but would appear to be in either October

4    or November of 2004?

5         A    Yes, they appear to be.

6         Q    Okay. On the one that's dated sometime in

7    October or November of 2004, just so I'm clear, the

8    date on your response has a date received 11/30/04.

9    Is that correct?

10        A    That is correct.

11        Q    And would that be the date you received

12   it?

13        A    Yes, it is.

14        Q    How would you have received it in terms

15   of--is it placed in a mailbox or hand--

16        A    It's placed in my mailbox.

17        Q    And then I'm assuming as a part of your

18   regular course of duties you review grievances that

19   are put in your mailbox on a...

20        A    Daily basis.

21        Q    And could you read to me what you wrote

22   as your response on or about -- and I don't mean to

23   trick you -- it seems like you received this on

24   11/30/04 and then filled out the response on

Page 22

1    12/28/04.  Is that correct?

2         A    That is correct.

3         Q    First of all, could you read what you

4    wrote as the response?

5         A    D. Fuqua, healthcare administrator,

6    states that, per Doctor Brown, offender McCroy was

7    released from the infirmary per his request. There

8    was not a treating surgeon's order violated. The

9    eye injury was not worsened by the corneal graft.

10   The loss of vision following the injury was trivial

11   as his vision was 20/200 prior to the injury, which

12   is legally blind. Inmate McCroy was seen 12/8/04 by

13   a specialist who recommended right eye contact lens

14   fitting and a prosthesis or glass eye for left eye.

15        Q    Okay. Now, let me ask you a couple

16   questions. When you received the grievance on

17   11/30/04, what did you do?

18        A    I make a copy of the grievance per

19   procedure when it addresses a healthcare issue and

20   I give a copy of that grievance to the healthcare

21   unit administrator.

22        Q    And then what did you do?

23        A    I waited for her response.

24        Q    And in what form was the response? Was it

Page 23

1      in writing or was it verbal?

2          A    They would be in writing.

3          Q    And on what form would the response be?

4          A    Her response would be on the copy that I

5      issued to her.

6          Q    And by "copy", do you mean the same form

7      that we're talking about?

8          A    Yes. I make a copy of the form and send

9      it to her and then she will respond on that and

10     send it back to me so that I can respond on the

11     original form.

12         Q    And where on the form would her response

13     be? Would it be on the back? What part of the form?

14         A    She would use the same area that is

15     indicated for my response, but she does not respond

16     to grievances, the counselors do, so that I would

17     reiterate her response.

18         Q    Is it part of your normal practice when a

19     grievance relates to healthcare to keep that

20     written response with the grievance form?

21         A    No. We return the original to the

22     individual, to the offender.

23         Q    So is it given back to he offender, or is

24     it placed in the offender's master file?

Page 24

1       A    The original grievance form with the

2    response is returned to the offender. Any notes or

3    copies of documentation are not maintained.

4       Q    So there is no record of grievances kept

5    in an inmate's file?

6       A    Not at this level. This is the initial

7    counselor response.

8       Q    So after you make a response you give it

9    back to the inmate.  Correct?

10       A    Correct.

11       Q    Then what happens?

12       A    If the offender disagrees with the

13    initial counselor response, then he may resubmit

14    the original grievance and it goes to the grievance

15    committee.

16       Q    Is the written document that you received

17    from Ms. Fuqua a part of the document that you give

18    back to the inmate?

19       A    No.

20       Q    Is that document kept anywhere?

21       A    They're not normally maintained.

22       Q    Do you have an independent recollection

23    of her making a written response to you as it

24    relates to this grievance that we're talking about?

Page 25

1       A    No. I answer many grievances. I would

2   have, as per routine, simply reiterated her

3   response.

4       Q    So is it fair to say you don't have an

5   independent recollection, but your standard

6   procedure would be to get a written response from

7   her?

8       A    Correct.

9       Q    Besides her written response, did you do

10  any other investigation?

11      A    No. Not for healthcare needs.

12      Q    Did you speak to Mr. McCroy about his

13  grievance prior to you giving a response?

14      A    I do not recall.

15      Q    Is it your normal practice to do that?

16      A    It's not normal, but it's possible.

17      Q    In what situations would you followup

18  with an inmate?

19      A    If I had questions as far as clarity of a

20  grievance or if I felt that I was not clear with

21  the answer.

22      Q    On the form it has emergency review 11, I

23  believe--I believe it's either 13 or 17, '04. Do

24  you see that?

Page 26

1          A      Yes.

2          Q      Could you tell whose signature is on

3    that?

4          A      That appears to be Polk.

5          Q      And who is that?

6          A      He was a warden at this facility at one

7    time.

8          Q      And it says followup with -- is it HCV?

9          A      HCU. Healthcare unit.

10         Q      When you received this report, did it

11   have his notation on it?

12         A      It did have.

13         Q      So when you originally received this

14   report from Mr. McCroy when it was put in your box,

15   would you have given it to Mr. Polk? Or how did it

16   get to Mr. Polk for his review?

17         A      He would have received--. I would have

18   received the original to process as a regular

19   grievance and he would have received a copy

20   indicating the administrator's decision that it was

21   not an emergency situation and that it would be

22   handled as a routine grievance.

23         Q      Just so I'm clear, you never spoke to

24   Doctor Brown about this grievance.  Correct?

Page 27

1        A    No, sir.

2        Q    Other than this grievance,--. Well,

3    strike that.

4             You have don't have an independent

5    recollection of processing this grievance.

6    Correct?

7        A    No, sir, I do not.

8        Q    Do you have an independent recollection

9    of processing any grievance relating to Aaron

10   McCroy?

11       A    No, I do not.

12       Q    Just so I'm clear, there's one grievance,

13   and we can't tell the date, that you have what you

14   just talked about is on your response.  Correct?

15       A    Yes.

16       Q    And then I also handed you a document

17   that I believe is dated November 12th--. Strike

18   that. I've got two different things mixed together.

19            I also handed you a response that says

20   response to committed person's grievance, and I

21   will tell you I don't think it directly relates to

22   the grievance that I handed you, but can you tell

23   me generally what that form indicates?

24       A    This is the second stage in the grievance

Page 28

1    procedure. This is a review by the grievance

2    committee chairperson.

3        Q    And where is the grievance committee

4    located? And, by that, is it something here

5    internally at Western, or is that something at

6    Springfield?

7        A    It is within this facility.

8        Q    And by title, who sits on that grievance

9    committee?

10       A    That is a counselor that has been

11   appointed to that position.

12       Q    So is it just one person, or is it more

13   than one person?

14       A    One person at a time.

15       Q    So although it's called a committee, it's

16   actually one person?

17       A    There are other individuals who can act

18   as backup.

19       Q    At the time that the grievance that you

20   testified about making your response was filed,

21   and, again, we can't really tell exactly what the

22   date of the grievance is, at that time were you

23   assigned inmates by name, or was it by housing at

24   that time, if you can remember?

Page 29

1        A     By number. By individual.

2        Q     So have you ever been assigned the

3    infirmary as part of your housing duties?

4        A     No.

5        Q     I'm handing you another grievance which I

6    believe is dated 12/10/04. If you could take minute

7    to review that.

8        A     (Reviewing document.) Yes, I have

9    reviewed that.

10       Q     And what's the subject of that grievance?

11       A     A report of missing or damaged personal

12   property.

13       Q     And it relates to Mr. McCroy, correct?

14       A     Correct.

15       Q     And when did he claim his property was

16   missing or damaged, as far as after some event?

17       A     He states that after he was placed in

18   segregation following an incident.

19       Q     When an inmate is placed in segregation,

20   are there any special rules as to how often a

21   counselor has to meet with an inmate that's in

22   segregation that's different than what you already

23   testified about?

24       A     Yes. Every 30 days.

                          Page 30

1      Q     And is it a fair assessment that you

2    denied the grievance because you said that it was

3    not filed timely?  Correct?

4      A     That is correct.

5      Q     If a grievance is filed with the box

6    checked that it's an emergency and then on the

7    emergency review is denied, what obligation does an

8    inmate then have to do to get a response from you?

9      A     I'm sorry. I'm not understanding.

10     Q     So if an inmate files a grievance and

11   asks for an emergency review and whoever denies the

12   emergency review -- are you following me so far? --

13     A     Yes.

14     Q     (Continuing) -- do you still see that

15   grievance even if the emergency review status is

16   denied?

17     A     Correct.

18     Q     Then on the document that I showed you

19   earlier, and I'll hopefully be able to find, I'm

20   handing you a grievance that I believe is dated

21   June 15th, 2004, which I believe you looked at

22   before.  Correct.

23     A     Correct.

24     Q     And my question is simply, it would

Page 31

1      appear the emergency status of that grievance was

2      denied. Correct?

3          A    Correct.

4          Q    Do you know why there's no response, no

5      counselor's response noted?

6          A    No, I do not.

7          Q    But would it be correct that at least

8      procedurally just because the emergency status was

9      denied, it would still have gone to the counselor.

10     Correct?

11         A    That is correct.

12         Q    You became a counselor, I believe your

13     testimony was, sometime in 2004?

14         A    Correct.

15         Q    And prior to that you were a correctional

16     officer here?

17         A    That is correct.

18         Q    In 2001 was there another correctional

19     officer here with the last name of the same as

20     yours?

21         A    Correct.

22         Q    Are you related to that person at all?

23         A    Yes.

24         Q    I'm just going to hand you what I believe

Page 32

1    is a committed persons grievance dated

2    November 29th, 2001, and all I'm trying to figure

3    out is if that was you or somebody else that

4    participated or is noted therein.

5        A    I'm sorry. I'm having difficulty reading

6    this. It's taking a little while.

7        Q    I don't think anybody's going to disagree

8    with that one. Can you tell if the warden that's

9    noted in there is you or somebody else?

10       A    That is someone else.

11       Q    Is that someone else your husband?

12       A    That is correct.

13       Q    Do you remember talking to him about the

14   incident, or incidents, that are related in that

15   grievance, the best that you can interpret them?

16       A    No, sir, I do not.

17       MS. CHOATE: Plus it calls for hearsay and

18   calls for a few other things.

19       MR. QUIVEY: It truly doesn't matter at this

20   point.

21           Q  When you were a correctional officer,

22   were you ever assigned to the healthcare unit?

23       A    Occasionally.

24       Q    And when a correctional officer is

Page 33

1    assigned to the healthcare unit, what does that

2    mean?

3        A    Process hall passes, monitor the electric

4    doors, maintain security and the proper function of

5    the appointment schedules in the front entrance, in

6    the infirmary area, provide for showers for the

7    individuals, out of cell time, and accompany the

8    nurses on their rounds.

9        Q    And based owe your experience as a

10   correctional officer here, was there always at

11   least one correctional officer assigned to the

12   healthcare unit, at least during the day?

13       A    To the best of my knowledge.

14       Q    How about at night?

15       A    I'm not sure what their scheduling would

16   be.

17       Q    Other than conversations that you had

18   with your attorney, have you spoken to anybody else

19   about Aaron McCroy?  Anything related to Aaron

20   McCroy?

21       A    No. Simply stating the fact that I barely

22   remember the man.

23       Q    Just so I'm clear, you don't have any

24   independent recollection of having a conversation

Page 34

2/23/07                          McCroy v. Illinois Dept. of Corrections
Karen Wear

1    with anybody other than your attorney about Aaron

2    McCroy in any manner?

3         A    No.

4         Q    And the same, you don't recall anybody

5    else telling you anything about him?

6         A    No.

7         Q    Who is Sue Redshaw?

8         A    She is a counselor at Western Illinois

9    Correctional Center and was at one point the

10   grievance chairperson.

11        Q    So she essentially has the same duty that

12   you do but for other inmates?

13        A    Yes.

14        MR. QUIVEY: I have no more questions.

15        MS. CHOATE: Could I see the document, the one

16   you have written in the November--you guys have

17   written in the 11/12/04.  And there were four

18   pages. I need to kind of clarify that document. I

19   was not clear at the beginning. I want to make sure

20   we know what we're talking about.

21        MR. QUIVEY: I think I gave her this, although

22   it doesn't have anything to do with that.

23        MS. CHOATE: And the other one had the same

24   emergency grief.  That's probably it. Those two I

                         Page 35

1    think.

2          MR. QUIVEY: Have at it.

3                        EXAMINATION

4                        BY MS. CHOATE:

5          Q    At some point you were shown documents,

6    the first page of which says committed person's

7    grievance. Is that correct?

8          A    Correct.

9          Q    And on this page of the document dated

10   11/30/04 is your entry that you were asked about.

11   Right?

12         A    That is correct.

13         Q    And that is your handwriting?

14         A    Yes.

15         Q    Now, on any of the other four pages

16   relating to--that you were given at the same time

17   as this one page with your signature on it, do you

18   see your signature or your handwriting anywhere

19   else?

20         A    No, I do not.

21         Q    Is there anything that would tell you

22   whether this is one or two grievances?

23         MR. QUIVEY: And by "this", just so I'm clear,

24   we're talking about the one that she responded to,

                          Page 36

2/23/07                          McCroy v. Illinois Dept. of Corrections
Karen Wear

1    correct?

2        MS. CHOATE: The one she responded to when she

3    was shown three other pages additional to that.

4        MR. QUIVEY: But when you said disagreements,

5    you're referring to the one she responded to,

6    right?

7        MS. CHOATE: Right.

8        THE DEPONENT: To the best of my ability, they

9    appear to be two separate grievances.

10        MS. CHOATE:  Q  And on the other page--

11        MR. QUIVEY: Just again, because I don't want

12    to get the record all confused. When you said two

13    separate grievances, you mean there's one grievance

14    that you responded to and the others she sent you

15    were shown seem appears to relate to a separate

16    grievance.  Is that right?

17        THE DEPONENT: That would be correct.

18        MR. QUIVEY: I just want to make it clear that

19    there's not two grievances on the one that you

20    responded to.

21        THE DEPONENT: Right.  No.

22        MS. CHOATE: We can sort this out somehow.

23           Q  Now, you were asked I believe at one

24    point by counsel whether the two, and you were

                         Page 37

2/23/07                    McCroy v. Illinois Dept. of Corrections
Karen Wear

1    shown the two pages, both of which were entitled

2    Committed Person's Grievance, and you were asked to

3    read them over and compare them.

4         MR. QUIVEY: That's this one though. That was

5    not those.

6         MS. CHOATE: Oh, that was this one?  I thought

7    she was asked about these.

8         MR. QUIVEY: No. I believe she was asked to

9    compare the one that she did the response to.

10        MS. CHOATE: And that (indicating).  Okay.

11        MR. QUIVEY: The June 15th, 2004. To be honest

12   with you, I don't think these things have anything

13   to do with--

14        MS. CHOATE: Well, one might be the back side

15   of that one.

16        Q  You were asked to compare these two.

17   Are these two documents, for want of a better

18   title, the document in which you responded on

19   11/30/04 on the grievance. Correct?

20        A    Yes.

21        Q    And the document that's dated at the top

22   June 15th, '04, you were asked to compare these two

23   documents.  Correct?

24        A    Correct.

Page 38

1        Q    And you said that they were similar or

2    the same topic.  Is that fair?

3        A    Correct.

4        Q    From reading over these, and you had

5    looked over them previously, are they verbatim?

6    Identical?

7        A    No.

8        Q    And on the grievance dated June 15th,

9    2004, anywhere on this grievance, either the first

10   or second page that you were shown, is your

11   signature or handwriting on that grievance?

12       A    No.

13       Q    Is there anything on this grievance that

14   would make you believe that you had ever seen this

15   grievance?

16       A    No.

17       Q    You were asked about an inmate getting an

18   emergency grievance and I believe in reference to

19   the June 15th, '04, grievance. Apparently there was

20   an emergency review done. Is that fair?

21       A    Yes.

22       Q    And after the emergency review or after

23   it's denied as an emergency grievance, does that go

24   directly to you, or does it go back to the inmate

                          Page 39

1    for processing regularly? How is that done?

2        A    It can be either way. Many times the

3    original is returned to the individual, if he

4    chooses to pursue that, or it can be placed

5    directly into my mailbox or the counselor's

6    mailbox.

7        Q    And do you have any way of knowing,

8    looking at this grievance dated at the top of

9    June 15th, '04, which way that was done?

10       A    No.

11       MS. CHOATE: I don't have anything else.

12                   EXAMINATION

13                   BY MS. POWELL:

14       Q    The only question I had, ma'am, was at

15   the beginning of the deposition you were asked some

16   questions about transfers--

17       A    Yes.

18       Q    (Continuing)--that were made at the

19   request of the institution.  Do you remember that

20   phrasing?

21       A    Yes.

22       Q    What does that mean to you, transfers

23   made at the request of the institution?

24       A    If I would receive instructions from one

                        Page 40

1    of my supervisors saying you need to initiate the

2    documentation for a transfer for a particular

3    individual for a particular reason, then I would

4    initiate the documentation.

5         Q    Would you play any role in that?

6         A    No.

7         Q    Okay.

8         A    No. It's strictly clerical.

9         Q    And do you know or have specific

10   knowledge as to, when inmates are transferred from

11   one facility to another, why those transfers are

12   made?

13        A    No.

14        Q    So would it be fair to say that your

15   understanding of when the counselor uses the term

16   "request of the institution" that could be any

17   transfer that was made by someone in the department

18   of corrections as opposed to a request made by

19   Mr. McCroy himself?

20        A    Correct.

21        MS. POWELL: That's all I have. Thanks.

22        MS. DUDGEON: I have actually one question. Can

23   I see the document that referenced the order from

24   Doctor Brown and I believe the counselor's

Page 41

1    response.

2        MS. POWELL: I believe it was a grievance and

3    she said she never spoke to Doctor Brown.

4                        EXAMINATION

5                    BY MS. DUDGEON:

6        Q    Just for clarification, I see -- and you

7    read this earlier, so if I'm misstating it, please

8    correct me -- I see I believe you read, per Doctor

9    Brown, Offender McCroy was released from the

10   infirmary per his request. Who is "his"?

11       A    That would have been in reference to

12   Offender McCroy.

13       Q    So this document is saying that at some

14   point Doctor Brown indicated that he was to be

15   released per a request from the inmate himself to

16   be released?

17       A    That is how I interpreted that.

18       MS. DUDGEON: Thank you. That's all I have.

19                       EXAMINATION

20                   BY MR. QUIVEY:

21       Q    Again, you never talked to Doctor Brown,

22   correct?

23       A    No, I did not.

24       Q    And you don't have an independent

                       Page 42

1    recollection of talking to Mr. Fuqua, correct?

2        MS. CHOATE: Ms.

3        MR. QUIVEY:  Q  Ms.

4        A    No, I do not.

5        Q    But you believe it's probable that she

6    made a written notation on a grievance form after

7    you gave it to her?

8        A    That is my standard procedure for

9    response from healthcare.

10       Q    A second ago you were asked some

11   questions about transfers at the request of the

12   institution, correct?

13       A    Yes.

14       Q    Would it be fair to say that the same

15   form is used whether the request for transfer is

16   the inmate or the institution?

17       A    Correct.

18       Q    And when the institution makes the

19   request, there's further notations as to why

20   they're making it be an emergency, disciplinary,

21   administrative, adjustment, or other.  Correct?

22       A    That is correct.

23       Q    And that's noted on the form?

24       A    Yes.

Page 43

1            MR. QUIVEY: No more questions.

2            MS. CHOATE: I don't have anything else.

3            MS. POWELL: I don't have anything else either.

4            MS. CHOATE: Karen, you have the right to

5    review the deposition to see if the lady taking the

6    transcription made mistake, or you can waive that

7    and we'll just get a copies of it.  I'll get a

8    copy. It's up to you.  You can either review it or

9    waive it. Generally we waive.

10           THE DEPONENT: Okay.

11                    FURTHER DEPONENT SAITH NOT.

12

13

14

15

16

17

18

19

20

21

22

23

24

                            Page 44

2/23/07                           McCroy v. Illinois Dept. of Corrections
Karen Wear

1    STATE OF ILLINOIS    )
                          )  SS
2    COUNTY OF SANGAMON   )·

3                    C E R T I F I C A T E

4         I, Debra K. Baldwin, a Notary Public and

5    Certified Shorthand Reporter and Registered

6    Professional Reporter in and for said County and

7    State do hereby certify that the Deponent herein,

8    KAREN WEAR, prior to the taking of the foregoing

9    deposition, and on the 23rd of February A.D., 2007,

10   was by me duly sworn to testify to the truth, the

11   whole truth and nothing but the truth in the cause

12   aforesaid; that the said deposition was on that

13   date taken down in shorthand by me and afterwards

14   transcribed, and that the attached transcript

15   contains a true and accurate translation of my

16   shorthand notes referred to.

17        Given under my hand and seal this 1st day

18   of March A.D., 2007.

19

20                  Notary Public and
                    Certified Shorthand Reporter and
21                  Registered Professional Reporter

22

23   License No. 084-002128

24

OFFICIAL SEAL
**DEBRA K. BALDWIN**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-20-2006

Page 45

Baldwin Court Reporting & Legal Video Services
1-800-248-2835

2/23/07
Karen Wear

McCroy v. Illinois Dept. of Corrections

Page 46

---

**A**

Aaron 1:5 9:9
  11:7 28:9
  34:19,19 35:1
ability 37:8
able 6:22 20:7
  31:19
about 7:11 9:17
  12:8 22:22
  24:7 25:24
  26:12 27:24
  28:14 29:20
  30:23 33:13
  34:14,19 35:1
  35:5,20 36:10
  36:24 38:7
  39:17 40:16
  43:11
above 19:14
above-entitled
  1:14
accompany 7:21
  34:7
accurate 45:15
act 29:17
acting 1:15
actually 29:16
  41:22
additional 17:2
  17:3,14 37:3
addresses 23:19
adjustment
  43:21
administration
  21:21
administrative
  43:21
administrator
  23:5,21
administrator's
  27:20
aforesaid 45:12
after 13:10
  14:17 25:8
  30:16,17
  39:22,22 43:6
afterwards 4:8
  45:13
again 14:1 18:14
  29:21 37:11
  42:21
ago 43:10
agree 21:23

agreed 4:2
al 1:8
ALLEN 2:8
along 13:21
already 30:22
although 29:15
  35:21
always 34:10
Anderson 2:15
another 6:13
  10:11 11:12
  12:15 18:1,6
  18:10 21:2
  30:5 32:18
  41:11
answer 9:11
  26:1,21
answers 4:8
anybody 17:13
  34:18 35:1,4
anybody's 33:7
anything 34:19
  35:5,22 36:21
  38:12 39:13
  40:11 44:2,3
anywhere 25:20
  36:18 39:9
Apparently
  13:23 39:19
appear 22:3,5
  32:1 37:9
APPEARAN...
  2:1
appears 16:23
  18:3 20:5 21:2
  27:4 37:15
appointed 29:11
appointment
  34:5
approval 14:22
  14:23 15:3
  16:16
approve 15:10
  15:13,23
approved 15:2
  16:17
approximately
  5:12
area 12:21
  24:14 34:6
asked 36:10
  37:23 38:2,7,8
  38:16,22
  39:17 40:15

43:10
asking 12:13
asks 31:11
assessment 31:1
assigned 7:4,7,9
  9:22 10:9
  18:12 29:23
  30:2 33:22
  34:1,11
assignment 6:22
  7:20
assistant 2:5
  13:23 14:18
  15:19,20,22
assuming 12:1
  13:5 17:21
  22:17
attached 45:14
attorney 2:5,9
  2:13 34:18
  35:1
attorneys 4:3
authority 14:12
available 6:21
  10:12
aware 14:14
  17:19
A.D 4:5 45:9,18
A.M 1:17 4:5

---

**B**

B 3:11
back 24:10,13
  24:23 25:9,18
  38:14 39:24
backup 29:18
Baldwin 1:14,22
  4:3 45:4
Bank 2:10
barely 34:21
based 14:16
  17:6 34:9
basis 22:20
became 32:12
become 6:18
before 1:14 4:3
  9:17,18 10:23
  21:1 31:22
beginning 35:19
  40:15
behalf 2:4,7,11
  2:14
believe 10:21
  15:18 16:14

19:8,18 26:23
  26:23 28:17
  30:6 31:20,21
  32:12,24
  37:23 38:8
  39:14,18
  41:24 42:2,8
  43:5
Besides 26:9
best 33:15 34:13
  37:8
better 38:17
between 4:2
bit 7:12
blind 23:12
both 9:6 14:10
  14:10,11 38:1
bottom 21:7
box 27:14 31:5
Brown 1:18 4:6
  23:6 27:24
  41:24 42:3,9
  42:14,21
Building 2:10

---

**C**

C 8:14,23 9:7
  45:3,3
call 6:17
called 29:15
calls 33:17,18
capacity 14:5
case 1:14
casework 13:16
  13:17 14:7
  15:9,10
caseworker
  14:17
cause 45:11
cell 34:7
cells 6:23
Center 1:18 4:6
  5:11 18:13
  19:2 35:9
CENTRAL 1:2
Certified 4:4
  45:5,20
certify 45:7
chain 14:22 15:7
chairperson
  29:2 35:10
change 7:6 9:18
checked 31:6
Choate 2:5 3:4

15:17 19:4
  20:3 33:17
  35:15,23 36:4
  37:2,7,10,22
  38:6,10,14
  40:11 43:2
  44:2,4
chooses 40:4
City 2:10
Civil 4:10
claim 30:15
clarification
  42:6
clarify 35:18
clarity 15:19
  26:19
clear 8:18 22:7
  26:20 27:23
  28:12 34:23
  35:19 36:23
  37:18
clerical 41:8
clinical 14:8
coded 17:1,11
come 6:24 12:16
comes 12:14
committed 21:3
  28:20 33:1
  36:6 38:2
committee 25:15
  29:2,3,9,15
communicated
  17:17,23
compare 38:3,9
  38:16,22
competency
  4:13
competent 4:16
completed 18:7
  19:11
confused 37:12
contact 6:7,11
  6:13,16,18 7:3
  18:4,17,22
  23:13
contains 45:15
content 21:24
  22:1
Continuing
  14:21 31:14
  40:18
conversation
  34:24
conversations

34:17
coordinator's
  16:10,11
copies 4:18 25:3
  44:7
copy 20:8 23:18
  23:20 24:4,6,8
  27:19 44:8
corneal 23:9
correct 5:16,17
  6:4 9:8,20
  10:8,13 11:8,9
  11:20 13:18
  18:18,24
  20:23,24 22:9
  22:10 23:1,2
  25:9,10 26:8
  27:24 28:6,14
  30:13,14 31:3
  31:4,17,22,23
  32:2,3,7,10,11
  32:14,17,21
  33:12 36:7,8
  36:12 37:1,17
  38:19,23,24
  39:3 41:20
  42:8,22 43:1
  43:12,17,21
  43:22
correctional
  1:18 4:6 5:11
  5:20,21,23
  13:1 18:12
  19:2 32:15,18
  33:21,24
  34:10,11 35:9
corrections 1:8
  2:7 41:18
corresponds
  20:22
counsel 10:11
  37:24
counselor 5:16
  5:21 6:6,13,13
  7:4 9:23 10:7
  10:10,14 14:2
  17:18 25:7,13
  29:10 30:21
  32:9,12 35:8
  41:15
counselors 5:24
  7:1 24:16
counselor's 20:9
  32:5 40:5

2/23/07
Karen Wear

McCroy v. Illinois Dept. of Corrections

41:24
County 1:15,16
   1:18 4:6 45:2
   45:6
couple 23:15
course 22:18
court 1:1 4:11
   21:17
created 11:4
creator 11:18
crisis 6:10
currently 5:15
   8:16
cut 22:3

_____
         D
_____
D 3:1 23:5
Daily 22:20
damaged 30:11
   30:16
date 11:4 18:19
   19:24 22:2,8,8
   22:11 28:13
   29:22 45:13
dated 10:21
   18:2 21:3,24
   22:6 28:17
   30:6 31:20
   33:1 36:9
   38:21 39:8
   40:8
David 2:14
day 6:23 10:15
   10:17 34:12
   45:17
days 6:16 10:19
   30:24
Debra 1:14 4:3
   45:4
Decatur 2:14
decision 27:20
declaring 21:20
dedimus 4:11
Defendant 2:7
   2:11,14
Defendants 1:9
deletion 18:5
denial 17:23
denied 16:9,18
   17:7,16 18:4
   31:2,7,16 32:2
   32:9 39:23
denies 31:11
denying 16:21

department 1:8
   2:7 41:17
Deponent 3:2
   5:1 15:20 19:3
   37:8,17,21
   44:10,11 45:7
deposeth 5:5
deposition 1:13
   4:3,11,15,18
   40:15 44:5
   45:9,12
depositions 4:16
deputy 15:13,18
determined 7:8
   18:6
different 8:3 9:2
   28:18 30:22
difficulty 33:5
directly 28:21
   39:24 40:5
disagree 33:7
disagreements
   37:4
disagrees 25:12
disapprove 16:6
disapproved
   16:8
disciplinary
   7:19,24 8:24
   9:5 43:20
distinct 6:2
DISTRICT 1:1
   1:2
DIVISION 1:3
Doctor 2:14
   23:6 27:24
   41:24 42:3,8
   42:14,21
document 10:23
   11:19 19:21
   21:5 25:16,17
   25:20 28:16
   30:8 31:18
   35:15,18 36:9
   38:18,21
   41:23 42:13
documentation
   7:16,18,20
   11:16,18 25:3
   41:2,4
documents
   19:18 36:5
   38:17,23
done 17:20 19:6

39:20 40:1,9
doors 34:4
Douglas 2:2
down 4:8 12:9
   12:15,19
   45:13
Dudgeon 2:12
   3:5 41:22 42:5
   42:18
duly 5:4 45:10
during 10:17
   34:12
duties 6:5 22:18
   30:3
duty 5:18 10:14
   35:11

_____
         E
_____
E 3:1,11 5:3,3
   45:3,3
each 10:5
earlier 31:19
   42:7
effort 7:2
Eighteen 5:14
either 22:3
   26:23 39:9
   40:2 44:3,8
electric 34:3
eligibility 8:8,9
   12:12
eligible 12:23
emergency 21:8
   21:12,20
   26:22 27:21
   31:6,7,11,12
   31:15 32:1,8
   35:24 39:18
   39:20,22,23
   43:20
ending 18:22
enemy 19:13
entitled 38:1
entitles 21:12
entrance 34:5
entry 36:10
Esq 2:2
essentially 10:18
   35:11
et 1:8
evaluate 8:22
even 31:15
event 30:16
ever 5:23 7:22

8:2 10:22
   17:13 30:2
   33:22 39:14
every 6:16 8:16
   8:22 30:24
everybody
   16:16
exactly 29:21
Examination
   3:4,4,5,5 5:6
   36:3 40:12
   42:4,19
expense 4:18
experience
   14:16 17:6
   34:9
explain 19:12
expressly 4:12
eye 23:9,13,14
   23:14

_____
         F
_____
F 45:3
face 6:15,15
facilitate 7:15
facility 8:3 12:8
   12:15,17 13:1
   19:12 27:6
   29:7 41:11
fact 34:21
fair 11:10 13:9
   16:15 18:9
   20:14 26:4
   31:1 39:2,20
   41:14 43:14
familiar 9:10
far 21:23 26:19
   30:16 31:12
Fax 1:23
February 1:17
   4:5 5:22 45:9
Federal 4:10
felt 26:20
few 33:18
figure 33:2
file 24:24 25:5
filed 29:20 31:3
   31:5
files 21:11 31:10
filled 11:3 22:24
find 31:19
first 5:4 10:22
   15:2,7 19:19
   19:24 20:5

23:3 36:6 39:9
fitting 23:14
following 23:10
   30:18 31:12
follows 5:5
followup 26:17
   27:8
foregoing 45:8
form 4:14 10:20
   10:21 11:3,11
   11:14 13:11
   13:19 15:1
   16:5,9,15,19
   16:20 18:1,3,5
   18:7,20 19:5
   19:10 21:2,6
   21:19 23:24
   24:3,6,8,11,12
   24:13,20 25:1
   26:22 28:23
   43:6,15,23
foundation 4:17
   20:3
four 35:17 36:15
from 11:14 14:2
   15:1 16:5,20
   18:6 19:5 23:7
   25:17 26:6
   27:14 31:8
   39:4 40:24
   41:10,23 42:9
   42:15 43:9
front 34:5
function 34:4
Fuqua 23:5
   25:17 43:1
furnished 4:18
further 43:19
   44:11

_____
         G
_____
gave 17:10
   35:21 43:7
General 2:5
generally 6:5
   7:17 9:21
   28:23 44:9
getting 39:17
give 23:20 25:8
   25:17
given 13:12
   24:23 27:15
   36:16 45:17
giving 26:13

glass 23:14
go 13:7 15:16
   16:2 19:18
   21:1 39:23,24
goes 14:2 25:14
going 10:20
   11:21 19:17
   32:24 33:7
gone 32:9
good 6:8
grade 8:14,23
   9:7
graft 23:9
grief 35:24
grievance 20:1,4
   20:15,18,22
   20:23 21:3,12
   21:19,20,24
   22:1 23:16,18
   23:20 24:19
   24:20 25:1,14
   25:14,24
   26:13,20
   27:19,22,24
   28:2,5,9,12,20
   28:22,24 29:1
   29:3,8,19,22
   30:5,10 31:2,5
   31:10,15,20
   32:1 33:1,15
   35:10 36:7
   37:13,16 38:2
   38:19 39:8,9
   39:11,13,15
   39:18,19,23
   40:8 42:2 43:6
grievances
   22:18 24:16
   25:4 26:1
   36:22 37:9,13
   37:19
guess 12:13
guys 35:16

_____
         H
_____
H 3:11
hall 34:3
hand 10:20 18:1
   19:17 21:1
   22:15 32:24
   45:17
handed 21:6
   28:16,19,22
handing 30:5

2/23/07
Karen Wear

McCroy v. Illinois Dept. of Corrections

31:20
handled 27:22
handwriting
36:13,18
39:11
handwritten
20:21
happened 13:11
13:19
happens 25:11
having 5:4 22:2
33:5 34:24
HCU 27:9
HCV 27:8
healthcare 23:5
23:19,20
24:19 26:11
27:9 33:22
34:1,12 43:9
hearsay 33:17
her 4:18 23:23
24:4,5,9,12,17
25:23 26:2,7,9
35:21 43:7
hereto 4:2,16,18
hey 18:17
HEYL 2:8
HILL 2:12
him 9:12 14:10
33:13 35:5
himself 41:19
42:15
history 7:20
Hold 11:17
21:16
honest 38:11
hopefully 31:19
hour 4:5
hours 10:14
housing 6:20,21
7:5,10 9:18
29:23 30:3
HUGHES 2:12
hundred 10:1
hundreds 9:16
husband 33:11

**I**

Identical 39:6
identification
3:13 7:8
identify 21:16
Illinois 1:2,8,16
1:18,19,23 2:3

2:6,7,10,14
4:6,6 5:11
13:4 35:8 45:1
incident 30:18
33:14
incidents 33:14
independent
12:3 13:6
17:22 25:22
26:5 28:4,8
34:24 42:24
Indiana 1:23
indicate 11:22
19:15
indicated 11:5
11:23 19:16
24:15 42:14
indicates 16:3,9
19:12 21:14
28:23
indicating 27:20
38:10
indication 16:19
indicator 16:22
individual 6:16
6:19 7:9 18:5
18:7,11 19:9
19:11,13
21:14 24:22
30:1 40:3 41:3
individuals 6:22
9:16 12:21
29:17 34:7
infirmary 23:7
30:3 34:6
42:10
inform 8:21
initial 6:7 21:13
25:6,13
initiate 11:16,17
41:1,4
initiated 6:9
18:11 19:9
injury 23:9,10
23:11
inmate 6:7,12
6:19 8:5,18
10:5,9 11:5,5
12:7,13,18
14:9 17:17
18:10,16,19
19:8 21:11,11
21:19 23:12
25:9,18 26:18

30:19,21 31:8
31:10 39:17
39:24 42:15
43:16
inmates 7:8,22
8:2 9:22 17:7
29:23 35:12
41:10
inmate's 25:5
inquired 17:13
instance 4:5
institution 6:9
7:13,23 8:12
8:20 11:12
40:19,23
43:16 43:12
43:16,18
instructions
40:24
intent 19:12
internally 29:5
interpret 33:15
interpreted
42:17
interrogatories
4:4,7
intervention
6:10
investigation
26:10
issue 23:19
issued 24:5

**J**

Jeff 13:14
job 14:6
John 6:12 12:14
June 21:3,24
31:21 38:11
38:22 39:8,19
40:9
just 6:12 7:11
8:18 9:14
10:17,22 12:9
12:18,19 18:2
18:14,24
19:19 21:6
22:7 27:23
28:12,14
29:12 32:8,24
34:23 36:23
37:11,18 42:6
44:7

**K**

K 1:14 4:3 5:3
45:4
Karen 1:13 3:3
4:3 5:9 44:4
45:8
keep 7:19 11:21
24:19
KELLY 2:5
kept 18:6 25:4
25:20
kind 12:20
19:18 35:18
know 9:9 12:24
14:15 16:24
17:3 21:9 32:4
35:20 41:9
knowing 40:7
knowledge
34:13 41:10

**L**

L 4:1
lady 44:5
last 32:19
Law 2:9,13
Lawrence 18:12
19:1,3
Lawrenceville
18:20 19:1,4
least 6:16 32:7
34:11,12
left 23:14
legally 23:12
Legal-Visual
1:22
leisure 6:24
length 8:12,15
lens 23:13
let 11:17 23:15
Let's 7:11
level 13:21,22
25:6
License 45:23
like 12:8 22:23
list 18:16
listed 19:14
little 7:11 33:6
LLC 2:12
located 13:1
29:4
location 9:4
11:22

Logan 12:24
LONDRIGAN
2:2
long 5:12
look 10:24
looked 31:21
39:5
looking 40:8
loss 23:10
Lyndsay 2:12

**M**

made 11:11
13:10 20:15
20:18 40:18
40:23 41:12
41:17,18 43:6
44:6
mailbox 22:15
22:16,19 40:5
40:6
maintain 34:4
maintained 25:3
25:21
maintenance
18:4
make 6:15 7:2
12:11,23 15:3
15:5,6,8 23:18
24:8 25:8
35:19 37:18
39:14
makes 8:6 43:18
making 12:4
25:23 29:20
43:20
man 34:22
manner 35:2
many 9:22 26:1
40:2
March 45:18
MARKED 3:13
marking 21:14
master 24:24
materiality 4:13
matter 33:19
may 4:3,8,16,18
8:4,21 9:12,13
17:18 18:2
25:13
ma'am 5:8,10
40:14
McCROY 1:5
9:9 11:8 12:4

13:6 17:23
18:17,20 19:7
19:15 23:6,12
26:12 27:14
28:10 30:13
34:19,20 35:2
41:19 42:9,12
McCroy's 15:11
mean 11:18
17:14 18:15
22:22 24:6
34:2 37:13
40:22
means 16:24
18:15
Medical 8:1
meet 8:7 30:21
might 38:14
minute 30:6
missing 30:11
30:16
Missouri 1:23
misstating 42:7
mistake 44:6
mixed 28:18
monitor 34:3
months 8:17,20
8:22
more 14:6 29:12
35:14 44:1
much 10:2,23

**N**

N 3:1 4:1 5:3
name 5:8 9:10
9:19 29:23
32:19
National 2:10
need 6:18 35:18
41:1
needed 17:2,4
needs 26:11
never 27:23
42:3,21
new 10:6
next 13:11,21,22
14:22 15:16
night 34:14
None 3:14
normal 24:18
26:15,16
normally 12:21
25:21
North 2:13

**Notary** 1:15 4:3
5:2,4 45:4,20
**notation** 21:7,18
27:11 43:6
**notations** 43:19
**noted** 4:14 32:5
33:4,9 43:23
**notes** 25:2 45:16
**nothing** 45:11
**notice** 1:19
**notification**
17:19
**November** 22:4
22:7 28:17
33:2 35:16
**number** 3:2,13
7:9 16:23
17:11 30:1
**numbers** 9:23
**nurses** 34:8

_____ **O** _____

**O** 4:1
**Object** 20:3
**objection** 4:14
15:17
**objections** 4:13
**obligation** 31:7
**observation**
17:2,4,14
**Occasionally**
33:23
**October** 22:3,7
**off** 14:17 22:3
**offender** 23:6
24:22,23 25:2
25:12 42:9,12
**offender's** 24:24
**office** 6:21 7:1
16:10,11,12
16:12,18 17:8
**officer** 5:20
32:16,19
33:21,24
34:10,11
**officers** 5:23
**office's** 16:21
**often** 6:11,12
30:20
**Oh** 38:6
**Okay** 11:2,21
12:1,24 20:9
22:6 23:15
38:10 41:7

44:10
**old** 9:22 10:6
**one** 7:7 10:6
14:6,23 18:1
18:15 20:4
21:2 22:6 27:6
28:12 29:12
29:13,14,16
33:8 34:11
35:9,15,23
36:17,22,24
37:2,5,13,19
37:23 38:4,6,9
38:14,15
40:24 41:11
41:22
**ones** 17:10
**only** 10:6,10
14:5 40:14
**operations**
14:19 15:22
**opportunity**
19:22
**opposed** 41:18
**oral** 4:4,7
**order** 23:8
41:23
**original** 24:11
24:21 25:1,14
27:18 40:3
**originally** 27:13
**other** 6:17 7:23
9:6 14:11 17:7
17:10 19:8,9
20:21 26:10
28:2 29:17
33:18 34:17
35:1,12,23
36:15 37:3,10
43:21
**others** 37:14
**out** 6:23 11:4
22:24 33:3
34:7 37:22
**over** 4:11 10:1
38:3 39:4,5
**owe** 34:9
**own** 4:18
**o'clock** 1:17 4:5

_____ **P** _____

**P** 4:1
**page** 3:2 11:24
20:5,19 36:6,9

36:17 37:10
39:10
**pages** 35:18
36:15 37:3
38:1
**paperwork** 6:8
**part** 9:4 20:23
22:17 24:13
24:18 25:17
30:3
**participated**
33:4
**particular** 7:7
41:2,3
**parties** 4:2,16
**parts** 4:15
**party** 4:18
**passes** 13:20
34:3
**per** 11:10 23:6,7
23:18 26:2
42:8,10,15
**person** 14:5,6,11
14:22,22 15:7
15:23 16:21
29:12,13,14
29:16 32:22
**personal** 30:11
**persons** 21:3
33:1
**person's** 28:20
36:6 38:2
**phrasing** 40:20
**placed** 22:15,16
24:24 30:17
30:19 40:4
**Plaintiff** 1:6 2:4
4:5
**play** 41:5
**please** 5:8 42:7
**Plus** 33:17
**point** 7:7 18:15
33:20 35:9
36:5 37:24
42:14
**Polk** 27:4,15,16
**population** 9:24
**portion** 19:10
20:19
**position** 29:11
**positions** 6:3
**possible** 26:16
**POTTER** 2:2
**Powell** 2:9 3:5

18:24 40:13
41:21 42:2
44:3
**practice** 12:6
24:18 26:15
**preference**
11:23
**prepared** 13:11
**present** 19:11
**pretty** 10:2
**previous** 15:17
**previously** 39:5
**prior** 23:11
26:13 32:15
45:8
**privileges** 9:1
**probable** 43:5
**probably** 35:24
**procedurally**
32:8
**procedure** 4:10
12:20 23:19
26:6 29:1 43:8
**process** 7:16
8:22 9:5 11:15
14:1 16:16
27:18 34:3
**processes** 13:20
**processing** 6:7
28:5,9 40:1
**Professional** 4:4
45:6,21
**programs** 13:24
14:18,20
15:21
**proof** 4:17
**proper** 34:4
**property** 30:12
30:15
**prosthesis** 23:14
**provide** 34:6
**provision** 18:22
**Public** 1:15 4:3
5:2,4 45:4,20
**purpose** 4:16
11:3
**pursuant** 1:19
**pursue** 40:4
**purview** 17:15
**put** 22:19 27:14

_____ **Q** _____

**question** 4:14
11:7 15:17

31:24 40:14
41:22
**questions** 23:16
26:19 35:14
40:16 43:11
44:1
**Quivey** 2:2 3:4
5:7 15:23 19:5
20:5 33:19
35:14,21 36:2
36:23 37:4,11
37:18 38:4,8
38:11 42:20
43:3 44:1

_____ **R** _____

**R** 5:3,3 45:3
**RANDLE** 2:2
**rationale** 11:23
16:22 17:1
**read** 19:20,22
20:7 21:4
22:21 23:3
38:3 42:7,8
**reading** 4:11
16:15 22:2
33:5 39:4
**really** 29:21
**reason** 10:10,11
10:12 12:17
16:21 17:11
18:21 41:3
**reasons** 7:24 8:1
**recall** 17:24
26:14 35:4
**receive** 17:19
19:10 40:24
**received** 22:8,11
22:14,23
23:16 25:16
27:10,13,17
27:18,19
**recent** 7:6
**recognize** 9:12
21:22
**recollection**
9:15 12:3 13:6
17:22 25:22
26:5 28:5,8
34:24 43:1
**recommendati...**
15:5,6,8
**recommendati...**
12:23

**recommended**
23:13
**record** 25:4
37:12
**redacted** 19:8
**Redshaw** 35:7
**reduction** 9:1
**reference** 15:18
39:18 42:11
**referenced**
41:23
**referred** 45:16
**referring** 37:5
**regardless** 10:5
**Registered** 4:4
45:5,21
**regular** 6:18
22:18 27:18
**regularly** 40:1
**reiterate** 24:17
**reiterated** 26:2
**relate** 37:15
**related** 32:22
33:14 34:19
**relates** 14:9,12
24:19 25:24
28:21 30:13
**relating** 28:9
36:16
**released** 23:7
42:9,15,16
**relevancy** 4:13
**remained** 10:2
**remember** 29:24
33:13 34:22
40:19
**remove** 18:8
**report** 7:19
27:10,14
30:11
**reporter** 4:4,4,8
21:17 45:5,6
45:20,21
**Reporting** 1:22
**request** 7:2,13
7:23 8:2,4,6
8:16,19,21
11:11 12:4,11
12:22 13:10
15:11,14 16:6
16:8,17 17:7
17:16 19:7,7
23:7 40:19,23
41:16,18

42:10,15
43:11,15,19
requested 6:8
8:8,10 11:5
14:9
requesting 12:7
18:23
required 6:15
7:16,18,21
requirements
4:10 8:8,9
reserved 4:13
respond 24:9,10
24:15
responded
36:24 37:2,5
37:14,20
38:18
response 7:14
20:2,9,16,18
20:22 22:8,22
22:24 23:4,23
23:24 24:3,4
24:12,15,17
24:20 25:2,7,8
25:13,23 26:3
26:6,9,13
28:14,19,20
29:20 31:8
32:4,5 38:9
42:1 43:9
restriction 18:8
resubmit 25:13
return 24:21
returned 25:2
40:3
review 21:8,13
22:18 26:22
27:16 29:1
30:7 31:7,11
31:12,15
39:20,22 44:5
44:8
reviewed 21:21
30:9
Reviewing
19:21 21:5
30:8
reviews 13:20
right 23:13
36:11 37:6,7
37:16,21 44:4
role 7:12 8:5
11:15,16 41:5

room 6:23
rough 9:23
rounds 34:8
routine 26:2
27:22
ROYSTER 2:8
rules 4:10,10
30:20

_____ S _____
S 3:11 4:1
saith 5:5 44:11
same 9:7 10:3
14:10,12 22:1
24:6,14 32:19
35:4,11,23
36:16 39:2
43:14
Sangamon 1:15
1:16 45:2
saying 41:1
42:13
says 12:14 16:23
20:9 21:7 27:8
28:19 36:6
scheduled 6:20
schedules 34:5
scheduling
34:15
seal 45:17
second 2:6 21:6
21:16 28:24
39:10 43:10
security 34:4
see 6:19 7:1 9:16
10:11 20:10
26:24 31:14
35:15 36:18
41:23 42:6,8
44:5
seem 37:15
seems 22:1,23
seen 10:22 17:6
17:10 23:12
39:14
segregation 8:13
9:3,4,7 30:18
30:19,22
send 24:8,10
sent 21:15 37:14
separate 6:2
18:6 37:9,13
37:15
series 19:17

serve 5:23
services 1:22
14:8
serving 1:23
14:6
Seven 10:19
Seventh 2:3
shorthand 4:4,8
45:5,13,16,20
showed 31:18
showers 34:6
shown 36:5 37:3
37:15 38:1
39:10
side 38:14
signature 11:1
16:3 20:12
21:9,9,22 27:2
36:17,18
39:11
signed 7:7 13:23
15:20,21
signing 4:11
signs 14:17
19:14
similar 39:1
simply 11:22
26:2 31:24
34:21
since 5:22
sir 5:20 6:1 12:5
13:8 17:5 28:1
28:7 33:16
sit 12:15
sits 29:8
situation 27:21
situations 26:17
six 8:16,20,22
slips 7:2
Smith 12:14
Smith's 6:12
some 10:11
18:16 30:16
36:5 40:15
42:13 43:10
somebody 33:3
33:9
somebody's 21:8
somehow 37:22
someone 21:21
33:10,11
41:17
something 29:4
29:5

sometime 22:6
32:13
sorry 9:13,14
14:14,19 20:7
21:10,18,21
31:9 33:5
sort 37:22
South 2:3,6
speak 26:12
speaking 7:17
9:21
special 30:20
specialist 23:13
specific 8:12
12:21 41:9
specifically 4:14
19:6
spoke 27:23
42:3
spoken 34:18
Springfield 1:3
2:3,6,10 13:4
16:13,14,18
17:8 29:6
SS 45:1
stage 28:24
standard 12:6
12:20 26:5
43:8
state 1:16 5:8
45:1,7
statement 13:9
states 1:1 17:2
21:19 23:6
30:17
stating 34:21
status 8:13,14
8:23,24 31:15
32:1,8
still 13:17 31:14
32:9
stipulated 4:2
Street 2:3,6,13
strictly 41:8
strike 12:1 28:3
28:17
subject 30:10
submitted 20:15
Sue 35:7
suitable 12:17
Suite 2:10
supervisor
13:12,16,17
14:7,8,17 15:9

15:10
supervisors 41:1
supposed 17:14
Supreme 4:11
sure 34:15 35:19
surgeon's 23:8
sworn 5:2,4
45:10
system 10:6,6

_____ T _____
T 3:11 4:1,1
45:3,3
tabulation 6:8
9:24
take 9:11 10:23
12:18 30:6
taken 1:13 4:3,8
45:13
taking 33:6 44:5
45:8
talk 7:11 12:7
12:16
talked 9:17
28:14 42:21
talking 13:6
24:7 25:24
33:13 35:20
36:24 43:1
tell 11:2,14 15:1
16:5,20 18:2
19:5 27:2
28:13,21,22
29:21 33:8
36:21
telling 35:5
tells 12:18
TENNEY 2:12
term 41:15
terms 22:14
terribly 9:13
testified 29:20
30:23
testify 45:10
testimony 32:13
Thank 42:18
Thanks 41:21
their 4:2 6:23
7:1,8 9:23
34:8,15
thereof 4:15
Theresa 2:9
things 28:18
33:18 38:12

think 18:24 19:1
28:21 33:7
35:21 36:1
38:12
though 38:4
thought 38:16
three 37:3
through 4:2
time 5:19 6:8,20
6:23,24 7:6
8:12,15 9:7
10:23 11:4,11
13:13 17:18
17:20 18:12
18:16 27:7
29:14,19,22
29:24 34:7
36:16
timely 31:3
times 40:2
title 13:15 29:8
38:18
today 9:12
together 19:18
28:18
top 17:1 19:10
20:19 38:21
40:8
topic 39:2
transcribed 4:9
45:14
transcript 45:14
transcription
44:6
transfer 7:12,21
8:8,10 10:21
11:6,12 12:7
14:10 16:10
16:11 17:7,16
41:2,17 43:15
transferred 7:22
8:2,19 12:9,15
41:10
transfers 6:9,9
7:11 14:13
40:16,22
41:11 43:11
translation
45:15
treating 23:8
trick 22:23
trivial 23:10
trouble 22:2
true 45:15

2/23/07                       McCroy v. Illinois Dept. of Corrections
Karen Wear

truly 33:19
truth 45:10,11
  45:11
try 12:16
trying 9:15
  12:19 18:14
  33:2
two 10:1 28:18
  35:24 36:22
  37:9,12,19,24
  38:1,16,17,22
typewritten
  20:19,23
typical 14:1
typically 14:21

**U**

U 4:1
under 10:5
  45:17
understand
  18:14
understanding
  31:9 41:15
unit 6:20 7:5,10
  9:18 23:21
  27:9 33:22
  34:1,12
UNITED 1:1
unless 4:14
until 8:19
Urban 13:14
  14:3,4,11
use 24:14
used 4:16 43:15
uses 41:15

**V**

vacation 10:12
verbal 24:1
verbatim 39:5
verify 8:7 12:11
  12:22
vice-versa 10:10
violated 23:8
vision 23:10,11
VOELKER 2:8
vote 15:4
vs 1:7

**W**

W 5:3
waited 23:23
waive 44:6,9,9

waived 4:12,14
walked 9:12
want 10:23
  12:14 18:24
  21:1 35:19
  37:11,18
  38:17
wanted 13:7
warden 13:24
  14:18 15:13
  15:18,19,21
  15:22 16:4,6
  27:6 33:8
Water 2:13
way 9:22 40:2,7
  40:9
Wear 1:13 3:3
  4:3 5:9 45:8
week 10:19
welcome 6:24
well 12:1 15:24
  28:2 38:14
were 7:7 9:22
  10:11 29:22
  32:15 33:21
  33:22 35:17
  36:5,10,16
  37:15,23,24
  38:1,2,16,22
  39:1,10,17
  40:15,18
  43:10
Western 1:18
  4:6 5:11 16:12
  16:17 18:10
  18:21 29:5
  35:8
we'll 44:7
we're 22:2 24:7
  25:24 35:20
  36:24
while 33:6
whole 5:19
  45:11
witness 4:8,11
  19:14
words 9:6 20:21
work 5:10
worked 5:13
worsened 23:9
write 7:2 12:9
  12:19
writing 24:1,2
written 17:19

24:20 25:16
  25:23 26:6,9
  35:16,17 43:6
wrong 19:19
wrote 22:21
  23:4

**X**

X 3:1,11

**Y**

years 5:14,21

**0**

02-3171 1:7
04 5:22 26:23
  38:22 39:19
  40:9
084-002128
  45:23

**1**

1 11:24
1st 45:17
1-800-248-2835
  1:24
11 26:22
11/12/04 35:17
11/30/04 22:8,24
  23:17 36:10
  38:19
11:30 1:17 4:5
12th 18:2 28:17
12/10/04 30:6
12/28/04 23:1
12/8/04 23:12
1227 2:3
13 26:23
15 5:21
15th 21:3,24
  31:21 38:11
  38:22 39:8,19
  40:9
17 26:23

**2**

20/200 23:11
2001 32:18 33:2
2004 18:2 21:3
  21:24 22:4,7
  31:21 32:13
  38:11 39:9
2007 1:17 4:5
  45:9,18

217)788-2835
  1:23
217)788-2838
  1:23
23 1:17
23rd 4:5 45:9
236 2:13
24 10:14
24hrs 1:23
29th 33:2

**3**

3 16:23 17:11
3/2/04 10:21
30 30:24
36 3:4

**4**

40 3:5
42 3:4,5

**5**

5 3:4
500 2:6
575 2:10

**6**

60 6:16
62525 2:14
62701 2:10
62703 2:3
62706 2:6