E-FILED
Friday, 04 May, 2007  02:26:23 PM
Clerk, U.S. District Court, ILCD

2/23/07
Connie Shaw

McCroy v. Illinois Dept. of Corrections

```
 1              UNITED STATES DISTRICT COURT

 2           FOR THE CENTRAL DISTRICT OF ILLINOIS

 3                   SPRINGFIELD DIVISION

 4

 5   AARON McCROY,

 6             Plaintiff,

 7        vs.                          No. 02-3171

 8   ILLINOIS DEPARTMENT OF
     CORRECTIONS, et al,
 9
               Defendants.
10

11

12

13        THE DEPOSITION of CONNIE SHAW, taken in

14   the above-entitled case before Debra K. Baldwin, a

15   Notary Public of Sangamon County, acting within and

16   for the County of Sangamon, State of Illinois, at

17   2:15 o'clock P.M., on February 23, 2007, at Western

18   Illinois Correctional Center, Mt. Sterling, Brown

19   County, Illinois, pursuant to notice.

20

21

22
            Baldwin Reporting & Legal-Visual Services
23             Serving Illinois, Indiana & Missouri
          24hrs (217)788-2835    Fax (217)788-2838
24                    1-800-248-2835
```



Page 1

2/23/07  McCroy v. Illinois Dept. of Corrections
Connie Shaw

```
 1                    (Whereupon the Deponent was
 2                    sworn by the Notary Public.)
 3              C O N N I E   S H A W
 4   having been first duly sworn by the Notary Public,
 5   deposeth and saith as follows:
 6                    EXAMINATION
 7                    BY MR. QUIVEY:
 8        Q    Ma'am, please state your name.
 9        A    Connie Jo Shaw.
10        Q    And please just summarize your formal
11   educational background.
12        A    High school. Nurses training. Spoon River
13   College, LPN.
14        Q    And when did you get your LPN degree,
15   approximately?
16        A    '79.
17        Q    And since then have you had any formal
18   education?
19        A    Some classes at Spoon River working
20   towards my RN degree. Yes.
21        Q    And, briefly, since you got your LPN
22   degree, what has been your employment background in
23   nursing?  Just in summary form.
24        A    Short term, right after I got out of
```

Page 5

2/23/07  McCroy v. Illinois Dept. of Corrections
Connie Shaw

```
 1   school at a hospital, about a year, went to a
 2   nursing home, Meyers Nursing Home, worked my way up
 3   to assistant DON, worked there for 12 years. It was
 4   sold to Heritage, I stayed there four years coming
 5   to WICC for five to six years. And, presently,
 6   Culbertson Hospital.
 7        Q    And, approximately, what was your years
 8   of employment here at WICC?
 9        A    Five to six.
10        Q    And, just roughly, the time period?
11        A    (No response.)
12        Q    Well, do you know when you left? That
13   might be the easiest way.
14        A    Two years ago. Yeah. Uh-huh.
15        Q    So, say, 2005 and you worked there the
16   previous five or six years?
17        A    Five or six, yeah. I can't think right
18   now about the years, but, yeah, that's
19   approximately.
20        Q    That's fine.
21             At the whole time that you worked at
22   WICC, did you work for Wexford?
23        A    CMS I believe was here for a short period
24   of time.
```

Page 6

1      Q    Just so I finish my question. Who would
2  have prepared the letter?
3      A    No.
4      Q    I'm now handing you a note, actually, two
5  notes dated 6/8/04, and I believe some of these are
6  yours and some of them are not, but I'd have you
7  take a look.
8      A    6/8/04.
9      MS. POWELL: Do you have a question?
10     MR. QUIVEY:  Q  What did you do vis-a-vis
11 Mr. McCroy on 6/8/04?
12     A    What did I do for him? Signed off orders.
13     Q    Orders from whom?
14     A    Doctor Anderson.
15     Q    And what orders did Doctor Anderson have
16 on that time, on that date?
17     A    6/8/04 at 10:10, no yard, no gym due to
18 eye condition, due to low vision.
19     Q    Do you have an independent recollection
20 of speaking to Doctor Anderson on that date about
21 Mr. McCroy?
22     A    The second one was no contact sports, no
23 weightlifting over five pounds. I'd say, yes, I
24 discussed this with him.

```
 1        Q    Do you have an independent recollection,
 2   as you sit here today, of discussing it with him,
 3   or do you think just from reading those records you
 4   must have discussed it with him?
 5        A    I'm--. It's been two and a half years. Or
 6   three years. But, yes, I'm sure I discussed it with
 7   him.
 8        Q    Do you know why you discussed it with
 9   him?
10        A    Yes. Because repeatedly this man was told
11   and advised that he should not go to yard, gym, due
12   to his eye, and he repeatedly insisted on going.
13   And we discussed that, the reasons for him to do
14   what the eye doctor told him.
15        Q    Do you recall whether on 6/8/04 there was
16   any discussion about removing Mr. McCroy from the
17   infirmary and putting him in general population?
18        A    Repeat the question.
19        Q    Do you recall on 6/8/04 whether you had
20   any conversation with anybody about Mr. McCroy
21   being removed from the infirmary and put in the
22   general population?
23        A    No. This is regarding contact sports and
24   that he should not lift.  So, there again, I have
```

2/23/07  McCroy v. Illinois Dept. of Corrections
Connie Shaw

```
1    nothing to do with where he lives.
2         Q    And just so I'm clear, it's your
3    testimony that the reason why you had that
4    conversation with Doctor Anderson on 6/8/04 was
5    because Mr. McCroy wanted to go to recreation and
6    lift weights, et cetera?
7         A    Yes.
8         Q    Are you aware whether or not Mr. McCroy
9    ever filed a grievance regarding access to the law
10   library?
11        A    I have no recollection of grievances.
12        Q    Do you have any recollection of him
13   filing a grievance about anything, other than what
14   I showed you earlier?
15        A    Yes. I've heard other employees say that
16   he filed grievances.
17        Q    And--
18        A    As far as seeing them and reading them,
19   no, of course not.
20        Q    And, again, from whatever source you
21   heard it, I just want to go by topic, did anybody
22   tell you he had filed a grievance about access to
23   the yard or recreation?
24        A    I don't know that he filed grievances,
```

Page 31