UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

AARON MCCROY,

    Plaintiff,

v.                                                            02-CV-3171

ILLINOIS DEP'T OF
CORRECTIONS et al.,

    Defendants.

## **Order**

    Before the Court are Plaintiff's motions to determine answers to his requests for admission (d/e's 361, 363) and Plaintiff's motion to compel the production of certain documents (d/e 356).

    Admissions are "used to establish the truth . . . of a matter in order to eliminate the need to prove the matter at trial or to limit the triable issues of fact." *T. Rowe Price Small-Cap fund, Inc., v. Oppenheimer & Co.,* 174 F.R.D. 38, 42 (S.D.N.Y. 1997)). Fed. R. Civ. P. 36 governs requests for admission. Rule 36(a) states in pertinent part:

> The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. . . . An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.
>
> The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.

A matter admitted under Rule 36 is deemed "conclusively established." Fed. R. Civ. P. 36(b). The sufficiency of a response is not about its truth or falsity, but rather about its specificity. Courts do not decide whether a response is supported by evidence–that is a determination for summary judgment or trial. *See Mayes v. City of Hammond*, 2006 WL 2251877 *2 (N.D. Ind. 2006).

Conclusory assurances of "reasonable inquiry" do not give enough information for a party or the court to determine independently the reasonableness of the inquiry. *See Burkybile v. Mitsubishi Motors Corp.,* 2006 WL 3191541 *2 (N.D. Ill. 2006)("[u]nadorned conclusions" of reasonable inquiry insufficient).  Assertions of "reasonable inquiry" must be based on a detailed description of the inquiry made.  "'Reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.'" *Id. (quoted citations omitted).*

*Requests to Admit to IDOC et al.*

**Requests 2, 3, 4**: These admissions regard the 7/24/02 criminal history record of Mr. Durham, the inmate who allegedly attacked Plaintiff. The admissions appear designed to authenticate the history.

*Request 2* states that the history was produced by the Illinois State Police in response to the IDOC's request. The Defendants' response–that they lack knowledge–is insufficient. Defendants should be able to determine upon reasonably inquiry how the document came into IDOC hands. They should be able to answer whether they asked the ISP for it, and what they received in response. In any event, the answer does not comply with Rule 36's "reasonable inquiry" requirements. <u>The IDOC defendants will be directed to **amend** their answer.</u>

*Request 3* states that the history "accurately reflects the known criminal history of Mr. Durham in Kane County . . ." While it is true that the IDOC Defendants did not author the report, their answer of insufficient knowledge is not detailed enough. IDOC may qualify its answer if, as far as the defendants know based on the information they have, it is an accurate account, even if IDOC cannot vouch for the accuracy. <u>The IDOC defendants will be directed to **amend** their answer.</u>

Request 4 states that Roger Walker and IDOC had access to the history. Defendants admit Walker had access and that the information was in IDOC files, but "lack knowledge" as to "IDOC's" access. As discussed earlier, the entity IDOC acts through its agents. The IDOC's access, then, is the access available to IDOC agents. <u>The defendants will be directed to **amend** their answer to clarify whether other IDOC employees, including defendants, could have access to Durham's file.</u> The court agrees with the defendants that access to the records is not synonymous with an admission of personal knowledge. Whether a

reasonable inference of personal responsibility arises is not a determination to be made at this point. Additionally, though the IDOC or defendants may not have authored certain documents and cannot testify as to their truth, the defendants should be able to answer whether those documents were obtained and maintained by IDOC in the usual course of business, and whether they contain the statements asserted by Plaintiff.

**Requests 8, 12, 17, 27, 31, 36, 42, 45, 47, 52, 56, 59, 66, 80 :** This regards the access of Defendant Roger Walker and the IDOC to documents relating to inmate Durham, including an IDOC transfer form, classification form, disciplinary proceedings. <u>The defendants will be directed to **amend** their answer for the reason stated in Request 4 above.</u>

**Request 25:** "The Hearing Committee noted that Inmate Durham admitted he and his cell mate 'had words and would have fought' on 1/28/03."

The defendants admit that the Hearing Committee noted this as its basis for decision, but lacks knowledge whether the statement was made by Durham or paraphrased by the Committee. The defendants further state in their response that an inquiry to the adjustment committee did not yield an answer. The court believes this response satisfies Rule 36's requirements.

**Request 33:** The defendants have admitted this request.

**Request 67:** "On 9/23/04, Inmate Durham struck his cell mate, Inmate McCroy, in the left eye while they were in their shared cell."

Defendants responded that they lack knowledge to either admit or deny, and in their response state that, though they were not witnesses, they do not deny "that plaintiff sustained an injury to his left eye, and can admit the information in request number 67." The court believes the response sufficiently amends the defendants' answer to satisfy Rule 36's requirements.

**Requests 88, 113, 118, 120, 123, 131**: These requests ask to admit facts about what documents purport to establish regarding the medical care given to the plaintiff. Defendants respond by stating they lack knowledge to admit or deny, but also state that they do not deny the documents existence in the plaintiff's master file (if they were found there).

<u>The court will direct **amend**ment of these answers because they do not meet Rule 36's requirements.</u> The defendants may not be able to speak to the truth or meaning of the facts asserted for documents not prepared by them, but they can qualify their answer and address whether the exhibits referenced are what they purport to be (i.e., a prescription, a doctor's order for contacts, etc.), whether they are located in Plaintiff's files maintained by the IDOC.

**Request 125**:

3

125: "Upon arrival at Western Illinois Correctional Center, plaintiff had all his contacts and supplies for them confiscated."

The defendants responded that they "admit that Exhibit MMM indicates 5 contact solution bottles and 2 contact cases were sent to the Health Care Unit. Defendants lack knowledge to either admit or deny whether this comprised 'all his contact and supplies for them.'"

The defendants will be directed to **amend** their answer to comply with Rule 36, stating what inquiry they made about this request. The defendants may qualify their answer.

**Request 132**: "On January 25, 2002, there was a shakedown of the plaintiff's cell where two bottles of solution were confiscated and returned to the health cart.

The defendants responded that they "lack sufficient knowledge to admit or deny," but in their response to the motion, counsel asserts that "Plaintiff's medical records revealed that on 1/25/02 Plaintiff was counseled by nurses in the Health Care Unit about solution and that he refused solution at that time. The undersigned, on behalf of the defendants looked through Plaintiff's medical and master file, but could not find a document regarding the shakedown."

The court concludes that defendants have adequately responded to Request 132, taking into account their response to the motion.

**Requests 127, 128:** "On November 4, 2001, Plaintiff complained because the lenses and supplies still had not been returned." (127). "On November 7, 2001, and after, plaintiff requested to see an ophthalmologist to check his eyes." (128)

Defendant respond that they lack knowledge to admit or deny, but they do not state what inquiry they made into Plaintiff's records maintained at IDOC regarding Plaintiff's complaints on those dates. Defendants will be directed to **amend** their answers to 127 and 128.

**Request 137:** "On March 11, 2002, plaintiff filed an Emergency Grievance regarding what he felt was improper treatment of his keratoconus and asked to see Dr. Kehoe."

"Defendants admit Exhibits . . . appear to be a grievance designated as "Emergency Grievance" by the author, who purports to be Aaron McCroy. Defendants admit the substance of the grievance is as reflected in the grievance, but lack knowledge to either admit or deny the veracity of the substance of the grievance."

The court believes this response satisfies the specificity requirement of rule 36.

**Request 138**: "Plaintiff's March 11, 2002 and March 19, 2002 appointments with Dr. Kehoe were cancelled by the Warden."

The defendants admit that a notation reflects cancellation of a February 29, 2002, appointment by the Warden, but lack sufficient knowledge with regard to the other appointment(s). However, defendants do not state what reasonable inquiry they made regarding the purported cancellations. It seems that easily accessible records ought to confirm or deny at least the existence of the appointment and whether it was cancelled. Accordingly, the defendants will be directed to **amend** this answer.

**Request 139**: "Plaintiff's March 25, 2002 appointment with Dr. Kehoe was cancelled due to weather."

The defendants will be directed to **amend** this answer for the reasons stated in Request 138.

**Request 142**: "On March 26, 2002, Brian Plattner, O.D. mailed a contact lense to Western Illinois Correctional Center to have it fitted there."

Defendants responded that they lacked sufficient knowledge when Dr. Plattner mailed the contact. That may be true, but defendants can admit to the date on Dr. Plattner's letter. Defendants will be directed to **amend** their answer to that extent. The remainder of Defendants' answer appears sufficient under Rule 36.

**Request 152**: "On May 29, 2002, the written denial of May 20, 2002, was given to plaintiff."

Defendants responded that they lack knowledge to admit or deny, but do not state what inquiry they made to determine whether their records contain such a written denial or the date thereof. Defendants will be directed to **amend** their answer.

**Requests 150, 151, 153, 154, 155, 156, 162, 163, 180, 183, 185, 186, 196, 207, 208, 211, 212, 235**: In the court's view defendants have sufficiently responded to these requests, admitting that the documents say what Plaintiff purports they say.

**Request 178**: "On March 18, 2003, plaintiff was seen by Dr. David Anderson who measured his pressure and indicated it was within normal range."

Defendants responded that they lacked sufficient knowledge to admit or deny, but did admit that any examination would be found in Plaintiff's medical records. Defendants will be directed to **amend** their answer to state whether their inquiry into those medical records revealed that Dr. Anderson did see Plaintiff on March 18, 2003, and what those records state.

**Requests 182, 184**: "An appointment made for plaintiff on June 3, 2003, was canceled and rescheduled for June 24, 2003, for unknown reasons." (182). "On July 28, 2003, another appointment was made for plaintiff to be seen for contact lens placement and fitting." (184)

As to request 182, Defendants responded that they lacked sufficient knowledge to admit or deny, other than admitting that the exhibit referred to was dated 5/22/03 and requested a contact lens fitting.  <u>Defendants will be directed to **amend** their answer to state whether their inquiry Plaintiff's records maintained at IDOC revealed a June 3, 2003 appointment that was cancelled and rescheduled.</u>

As to request 184, Defendant admitting the exhibit is a referral, but lacked knowledge to admit or deny the remaining allegations.  <u>Defendants will be directed to **amend** their answer to state whether their inquiry Plaintiff's records maintained at IDOC reveal a July 28, 2003 appointment.</u>

**Request 194:** "Plaintiff was given Maxitrol daily until December 23, 2003."

Defendants respond that they lack knowledge to admit or deny, but they do not set forth their inquiry into Plaintiff's IDOC records, which presumably would reflect when Plaintiff received Maxitrol, at least according to the records.  <u>Defendants will be directed to **amend** their answer to this request.</u>

**Request 203**: "Due to plaintiff's eye condition, he is disabled within the meaning of both the American's with Disabilities Act and the Rehabilitation Act."

Defendants respond that they lack knowledge to either admit or deny.  While Defendants' answer does not meet Rule 36 requirements of reasonable inquiry, this request appears to be a legal conclusion more appropriate for determination at the summary judgment stage.  Accordingly, defendants will not be required to amend their response.

**Request 213**: On February 24, 2004, Plaintiff was seen by Dr. Zeh with a request to provide a clear care plan from WICC and/or Wexford who were hoping to minimize transportation needs."

While defendants may lack knowledge of intentions and goals, they can speak to the authenticity of Exhibit a and its maintenance in the Plaintiff's IDOC records.  <u>The defendants will be directed to **amend** their answer to this request.</u>

**Request 229**: "On January 30, 2006, Plaintiff received a letter regarding Flagg's response to Plaintiff's grievance."

Defendants admit the exhibit is a memo to Plaintiff, but lack sufficient knowledge to admit or deny whether it was in response to a grievance.  <u>Defendants will be directed to **amend** their response to state what inquiry they made into IDOC's institutional memory–i.e., Plaintiff's records maintained by the IDOC.</u>

**Request 233**: <u>Defendants will be directed to **amend** their answer to state which documents are/were **not** maintained in the usual and ordinary course of business within the</u>

6

Illinois Department of Corrections.

**Request 235:** Defendants will be directed to **amend** their answer to state which documents were **not** authored by them and whether they are aware that any of the documents were **not** made at or near the time of the event.

*Requests to Admit to Wexford et al.*

Plaintiff objects to these defendants' general statement prefacing their answers that an admission that records were kept in the ordinary course of business by the IDOC does not amount to an admission of personal knowledge. Defendants also reserve the right to object to the admissibility of the records under the rules of evidence. However, the Wexford defendants do not object to Plaintiff's medical records being proper exhibits; they reserve specific objections as to the contents of those records if Plaintiff fails to sufficiently lay a foundation. The Court does not believe these qualifications offend any rule regarding responding to requests for admission. Defendants seem simply to be reserving objections to the admissibility of the documents, other than an objection that the document was not kept in the ordinary course of business by IDOC. Admissibility and foundation determinations are usually better made in the context of the trial. Accordingly, the court will not strike the statement.

Plaintiff also objects to Wexford's responses that deny the requests because of insufficient knowledge. The court agrees with Plaintiff that, if Wexford has insufficient knowledge, the correct response is that Wexford cannot truthfully admit or deny the request because of that insufficient knowledge. That is how the court construes those responses.[1]

The court also notes that many of the requests seem more directed to the IDOC defendants and regard documents and events within the IDOC's knowledge and control. The Wexford defendants respond appropriately by asserting insufficient knowledge while admitting that the referenced do contain specific statements. The court notes that the Wexford defendants do not dispute any admissions to the extent admitted to by another defendant.[2]

**Requests 1-78:**

Request 1 asks for an admission that IDOC and Walker kept certain records in ordinary course of business. The Wexford defendants deny any of these documents due to insufficient knowledge of what records are kept by IDOC, but do appear to admit to the many documents

---

[1] Responses to requests 1-77, 73-78, 80-86, 88, 89, 94, 95, 101-109, 118-125, 127-129, 131, 132, 139-141, 143, 147, 186, 202, 219-222, 225, 227, 229-232, 235, 236.

[2] For example, responses to requests 139, 141, 143, 147, 202.

7

that relate to Wexford's handling of Plaintiff's medical treatment. The Wexford defendants also state that they do not challenge the IDOC's admission that these documents were kept in the ordinary course of business.

Requests 2-78 and 80-86 deal with IDOC records relating to inmate Durham and Plaintiff's interaction with inmate Durham. The Wexford defendants denied due to insufficient knowledge. In their response, the Wexford defendants clarify that these admissions are not relevant to the claims against them and they lack access to information as to their truth, and that they do not challenge IDOC responses thereto. The court agrees that these requests do not appear to be directed at knowledge within Wexford's realm or relevant to the claims against Wexford. Additionally, the IDOC has answered (or is being directed to answer) the requests–Wexford does not challenge those answers.

**Requests 88, 89, 94, 95, 101-109**,: "Plaintiff had been given soft lenses to t[r]eat his keratoconus, on April 7, 1995, a prescription was written by J. Lang RN for Renu soft lens cleaner." (88) "On September 21, 1995, the plaintiff visited the Optometry Clinic at Stateville Correctional Center where the doctor stated that the plaintiff should be referred to an ophthalmologist to evaluate his corneas." (89) "In March of 1996, plaintiff was seen at the Stateville Correctional Center's Optometry Clinic for a recheck of his vision." (94). "On July 29, 1996, Dr. James Bizzell stated that Plaintiff was not wearing his lenses as he had no cleaner, and Plaintiff should return in two (2) to three (3) weeks when he is wearing his lenses." (95).

The Wexford defendants initially denied due to insufficient knowledge. However, Wexford gave more detailed explanations in their response to the motion which the court believes is sufficient to satisfy Rule 36. Additionally, it appears the IDOC defendants already admit to many of these requests (an admission that Wexford does not dispute). The IDOC defendants already admit that the referenced exhibits do indicated a prescription was written and noted by J. Lang RN. The IDOC defendants also admit that the exhibit does "reflect[] a plan of the physician to refer to an ophthalmologist to evaluate his corneas." The IDOC defendants also admit to the report from Stateville Correctional Center's Optometry Clinic and to the report from Dr. Bizzell, as well as to the records asked about in requests 101-109.

**Request 99**: "On October 8, 1996, in response to a grievance filed by the Plaintiff, Willard O. Elyea, M.D. stated that the plaintiff was receiving twelve (12) ounces of contact lens solution a month and that a bottle of that size should reasonably last plaintiff a year using only 1 cc a day."

The Wexford defendants respond that they have no knowledge whether Dr. Elyea was responding to a grievance. However, they should be able to state whether the referenced exhibit is what it purports to be. <u>The Wexford defendants will be directed to **amend** their response.</u>

**Request 118-124** : These requests for admissions regard the treatment ordered by Dr. Kehoe in 2000 and 2001.

8

The Wexford defendants respond that they must deny these requests because they cannot determine if the referenced exhibit supports the statement, and that they have no way of knowing whether the statements are true because Plaintiff was at Stateville Correctional Center on that date. The court believes this response meets Rule 36's requirements. The court further notes that the Wexford defendants do admit the referenced exhibits contain statements to support the requests where applicable.

**Request 125:** "Upon arrival at Western Illinois Correctional Center, plaintiff had all his contacts and supplies for them confiscated." Wexford answers in its response that they have no knowledge of what happens when an inmate arrives at Western, and that the statement has no relevance to its claims against the Wexford defendants. The court finds that this answer satisfies Rule 36.

**Requests 139:** In their response, the Wexford defendants admit the referenced exhibit is a medical note, but state they have no knowledge of the discussion the note refers to. They also appear to object to the admissibility of the note. The Wexford defendants do appear to admit the exhibit is a medical note and that it says what it says. If they intend to challenge its admissibility, that determination is better made in the context of trial. Accordingly, the court will not direct amendment of this response.

**Requests 219-222, 225, 227, 229**: These requests involve disciplinary proceedings and grievances. While the Wexford defendants respond that they have insufficient knowledge, they do not appear to deny the documents are what they purport to be. With that understanding, the court will not direct an amendment to these requests.

**Requests 235, 236:** "The records attached to these requests were made at or near the time that the recorded act, event, or condition occurred or reasonably soon thereafter." (#235). "The records attached to these requests were kept in a consistent manner, according to a set procedure." (#236)

The Wexford defendants answered that they have insufficient knowledge. However, their response indicates that they will not dispute the other defendants' admission to these requests. Additionally, if any documents were created by Wexford employees, they should be able to determine upon reasonable inquiry whether there is any indication those documents were not so recorded. <u>Accordingly, the Wexford defendants will be directed to **amend** their responses to this request.</u>

*Plaintiff's Motion to Compel Production of Documents from IDOC (#356)*

Deborah Fuqua's deposition is apparently scheduled for August 7, 2007, mooting this part of motion #356.

9

The non-moot part of the motion asks to compel the production of certain documents. Particularly, Plaintiff's fourth supplemental request for documents asks for: "Any and all weekly, monthly, quarterly and/or yearly reports from the Warden to the Director of the Illinois Department of Corrections for the time that the Plaintiff was housed at Western Illinois Correctional Center, including any supplemental reports."[3]

The IDOC defendants agreed to provide any such reports that referenced Aaron McCroy, but otherwise objected. Defendants assert that releasing the documents could be a security risk. They also assert that the documents have no relevance to this case.

Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Limits on otherwise discoverable information may be had for various reasons, if the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," or "the burden or expense of the proposed discovery outweighs its likely benefit, taking in to account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake . . ., and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).

The Court concludes that the negative aspects of the proposed discovery outweigh its likely benefit. Plaintiff has already obtained much discovery, including Plaintiff's master file, and the reports likely cover a whole gamut of prison administration issues. Further, Plaintiff's prior discovery requests for all documents relating to his claims should already cover those reports that relate to this case. *See May 12, 2006 order on motion to compel.*  However, the Court will direct the IDOC defendants to <u>amend their response to indicate that Defendants' counsel has reviewed the reports and that the reports contain no information relevant to Plaintiff's claims in this case.</u>

Plaintiff also seeks a response to its fifth request for production of documents, to which the IDOC defendants object as untimely and improperly served. The documents sought in the fifth request appear to have been covered already by prior discovery requests (though the prior requests were more generally worded). The court accordingly believes that much of the request is duplicative. Additionally, the court does agree that the fifth request is untimely, in that discovery was extended to March 15, 2007 solely for the purpose of taking depositions, receiving answers to Plaintiff's second request for documents, and serving requests to admit. *Court order of January 9, 2007.*  It appears from the record that Plaintiff's counsel has already ably and amply conducted discovery. For these reasons, Plaintiff's motion will be denied as to

---

[3]The other part of the fourth request appears moot (job descriptions), as the IDOC defendants represent those have been provided.

his fifth request.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's motion to determine answers as to the IDOC defendants (d/e 361) is granted in part and denied in part. By August 20, 2007, the IDOC defendants are directed to amend their answers to the following requests for admissions, in accordance with the discussion above: 2, 3, 4, 8, 12, 17, 27, 31, 36, 42, 45, 47, 52, 56, 59, 66, 80, 88, 113, 118, 120, 123, 125, 127, 128, 131, 138, 139, 142, 152, 178, 182, 184, 194, 213, 229, 233, 235.

2) Plaintiff's motion to determine answers as to the Wexford defendants (d/e 363) is granted in part and denied in part. By August 20, 2007, the Wexford defendants are directed to amend their answers to the following requests for admissions: 99, 235, 236. Additionally, request number 126 is deemed admitted by the Wexford defendants, as their response appears to be intended as an admission.

3) Plaintiff's motion to compel production of documents is granted in part and denied in part (d/e 356). By August 20, 2007, the IDOC defendants are directed to amend their response to Plaintiff's Fourth request for the production of documents to indicate that Defendants' counsel has reviewed the requested documents and concluded based on that review that the documents contain no information relevant to Plaintiff's claims in this case. The motion is otherwise denied.

4) Plaintiff's response to the pending motions for summary judgment is due August 31, 2007.

5) A joint, final proposed pretrial order is due October 8, 2007. Parties are responsible for subpoenaing their own non-party witnesses, except that the IDOC shall produce by video any witnesses who, at the time of trial, are current inmates or employees of IDOC. The final pretrial order shall contain the location from where such witnesses will appear by video, to enable the clerk to issue the appropriate video writs.

Entered this 26th Day of July, 2007.

**s\Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE