## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

AARON MCCROY,                                    )
                                                 )
    Plaintiff,                )
                                                 )
    v.                        )     02-cv-3171
                                                 )
THE ILLINOIS DEPARTMENT OF                       )
CORRECTIONS, ROGER E.                            )
WALKER, JR., (in his official                    )
capacity only), DENNIS HOCKADAY,                 )
KEVIN WINTERS, SANDRA FUNK,                      )
DEBORAH FUQUA, LIEUTENANT BRYON                  )
LAW,  KENNETH KELLERMAN, JULIUS                  )
FLAGG, all in their official and                 )
individual capacities, WEXFORD                   )
HEALTH SOURCES, Inc.,                            )
Dr. LOWELL BROWN, MD.,                           )
Dr. HUGHES LOCHARD, MD., and                     )
RHONDA MILLS,                                    )
                                                 )
    Defendants.               )


STATE OF ILLINOIS        )
                         )  ss
COUNTY OF SANGAMON       )


## <u>AFFIDAVIT</u>

    I, AARON McCROY, being first duly sworn upon my oath, soundly affirm the

following statements:

    1.    During my stay in the WICC infirmary, there were times I was housed

in a single cell or by myself.

1



2.      While in the infirmary, I was housed with other inmates, most of whom were incapacitated or terminally ill.

3.      Currently, I am incarcerated at Big Muddy River Correctional Center with no cellmate and housed in an ADA cell.

4.      After the corneal transplant, Springfield Eye Clinic and Prairie Eye Center, physicians recommended that I be fitted with contact lenses. An appointment was made, then it was cancelled after I lost my left eye. However, my right eye still needed to be fitted and the period my right eye was able to tolerate a contact lens was decreasing each day, making it difficult for me to accomplish even simple tasks.

5.      I observed Nurse Practitioner Mills performing several duties, including turning lights off and on for inmates, making decisions regarding commissary requests, shower opportunities for inmates, and recreational activities for inmates.

6.      Nurse Practitioner Mills made decisions on whether or not I could be allowed to go to the commissary, whether my belonging should be searched, whether I could have access to a shower, and  whether I could participate in recreational activities. Correctional Officer Wilson would wake me up to ask me to clean my cell or empty my locker or dresser.

7.      HCU Administrator Fuqua gave directions to me and other inmates as well as to HCU and infirmary nurses. She reported to Assistant Warden Funk who

2

frequently visited the infirmary.

8.    I spoke directly to Assistant Warden Funk and received permission to place my TV away from the glare of an infirmary window.

9.    While I was in the infirmary, I received permission to go to the prison yard on occasion, but did not insist upon going at any particular time.

10.    During the over eleven-month delay in me receiving a left eye corneal transplant, I was often in pain and suffering from Hydrops.

11.    I filed numerous grievances relating to how I was treated while I was in the WICC infirmary both before and after transplant surgery and before and after I was hit in the eye.

12.    On June 8, 2004, I was involuntarily moved from the infirmary to general population.  Before June 8, 2004 , my grievances pertaining to the WICC infirmary included but were not limited to issues regarding--prescription lens cleaner being confiscated; prescription lens cleaner not being re-filed; refusal to give me a corneal transplant; appointments with ophthalmologists being cancelled; being forced to stay in the infirmary for monitoring and as a result not being able to go to school; being forced to wear contact lens that caused pain; being given steroid medication in an amount greater than prescribed which resulted in me developing glaucoma; being disciplined when I was unable to go to school because of eye pain; being forced to receive medical treatment from people who I had sued; not being

3

allowed to go to the law library; not being allowed to go to the exercise yard; false discipline charges being filed against me; being subjected to excessive searches of my personal property; not being fitted for contact lens for my right eye; having my security level increased; not being allowed to shower before going on outside medical appointments; restrictions on where I could place my TV; and restrictions on when I could go to the commissary.  Many of my grievances were directed at acts or omissions of the named Defendants.

13.    I also complained in writing to IDOC officials to include the Director, Deputy Director, and Medical Director about how I was treated while at WICC.

14.    I have filed numerous other grievances regarding various issues relating to my confinement since June 8, 2004.

15.    While I was in the infirmary at WICC, I was not given access to employment, school, and facilities to the same extent as able bodied inmates.

16.    In the infirmary, I was given direction by both Nurse Practitioner Mills or HCU Administrator Fuqua whether I could go to the yard and/or the law library.

17.    While in the infirmary, I was denied access to employment, educational programs, the commissary, exercise facilities and other programs and facilities while in the infirmary at WICC.

18.    On October 29, 2003, when awakened and informed that an appointment at the Prairie Eye Center had been scheduled, I was ordered to leave the

bed, dress, and be ready to leave in ten (10) minutes. When I stated that I would not leave until I was allowed to shower, I was told my appointment was cancelled by security.

19.     On the same date, when I was informed that my appointment with Dr. Zeh and the Prairie Eye Center was cancelled by security and that I was being written up for disciplinary action. I was immediately placed in segregation. I announced a hunger strike in protest.

20.     On November 21, 2003, I was placed in segregation.

21.     On or about November 11, 2004, I received a response to a grievance where IDOC officials indicated that I was legally blind both before and after my corneal transplant surgery.

22.     I did not ask anyone to be released into general population and thereafter I filed several grievances that my release from the infirmary violated Dr. Zeh's orders.

23.     The number of inmates in the yard varied at different times that I went there. I did not interact with any of those inmates or do anything that I was not allowed to do per my doctor's orders.

24.     Because of my eye problems, I have been prescribed protective safety glasses. Upon being transferred to Pickneyville CC, my safety glasses were withheld from  me for several days.

25.    I was initially placed in an ADA cell at the Pinckneyville Correctional Center.  Thereafter, at the direction of Defendant Flagg, I was removed from that ADA cell against the recommendation of Dr. Rayford.

26.    Even after Dr. Rayford said I needed an ADA cell, I was not given one.

27.    Much later, I was returned to an ADA cell at Pinckneyville.

28.    I currently have no left eye and the vision in my right eye is very limited.   I am only able to use a contact lens to read for one hour a day and I am forced to use a cane to feel my way about.

29.    IDOC initially prohibited me from having books on tape and have denied me participation in early release programs.

30.    Dr. Anderson gave me a permanent weight lifting restriction of no more than five pounds.

31.    None of the grievances I filed had a satisfactory resolution.

32.    I have been diagnosed with bi-polar disorder.

FURTHER AFFIANT SAYETH NOT.

_____
AARON McCROY

Subscribed and Sworn to before me this
_____ day of _____, 2007.

_____
NOTARY PUBLIC

6