**E-FILED**
Friday, 07 September, 2007  04:40:11 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON MCCROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02-cv-3171 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, ROGER E. | ) | |
| WALKER, JR., (in his official | ) | |
| capacity only), DENNIS HOCKADAY, | ) | |
| KEVIN WINTERS, SANDRA FUNK, | ) | |
| DEBORAH FUQUA, LIEUTENANT BRYON | ) | |
| LAW,  KENNETH KELLERMAN, JULIUS | ) | |
| FLAGG, all in their official and | ) | |
| individual capacities, WEXFORD | ) | |
| HEALTH SOURCES, Inc., | ) | |
| Dr. LOWELL BROWN, MD., | ) | |
| Dr. HUGHES LOCHARD, MD., and | ) | |
| RHONDA MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S JOINT RESPONSE TO DEFENDANTS' UNDISPUTED MATERIAL FACTS

Plaintiff, AARON MCCROY, by and through his attorneys, LONDRIGAN,

POTTER, & RANDLE, P.C., pursuant to local rule 7.1(D), Fed. R. Civ. P. 56(e), hereby

submits his Response to Defendants' Undisputed Material Facts states as follows:

## A.  Undisputed Material Facts:

WEXFORD DEFENDANTS

**WEXFORD HEALTH SOURCES, INC.**

Plaintiff acknowledges that the facts listed by the Defendant in the following paragraphs as undisputed material facts are indeed undisputed material facts: ¶¶1,2, 3, 4, 5, 6, 7, 8, 9, 10 and 11.

***DR. LOWELL BROWN, M.D.***

Plaintiff acknowledges that the facts listed by the Defendant in the following paragraphs as undisputed material facts are indeed undisputed material facts: ¶¶ 1, 2, 4, 8, 12, 14-19, 22, 23, 26-33, 35-37, 39, 43, 45, 51, 52, 55-59, 61, 62, 66, 70, 72, 73, 75-82, 84-86, 90, 93, 94, 100, 102-116, 118-132, 134-140, 142-148, 150-168, 170-199, 202-205, 207, 208, 212-214, 216-224, 226, 227, 229, 230, 232-239

***DR. HUGHES LOCHARD, M.D.***

Plaintiff acknowledges that the facts listed by the Defendant in the following paragraphs as undisputed material facts are indeed undisputed material facts: ¶¶ 1, 2, 4, 6-9, 11-13, 15, 16, 21, 22, 24, 26, 28, 31, 36, 39, 41, 42, 44, 45, 48, 51, 59, 60, 63-65, 67, 71, 72, 74-76, 78, 80, 81, 83-95, 97-111, 113-119, 121-127, 129-147, 149-178, 181-184, 186, 187, 191-193, 195-203, 205, 206, 208, 209, 211-218

2

*RHONDA MILLS, N.P.*

Plaintiff acknowledges that the facts listed by the Defendant in the following paragraphs as undisputed material facts are indeed undisputed material facts:

¶¶ 1-4, 9, 12, 13, 19, 20, 22, 23, 25-28, 32, 35, 37-39, 43, 44, 49, 50, 52, 54-56, 59, 64, 65, 66, 68, 72-81, 83-97, 99-105, 107-113, 115-133, 135-164, 167-170, 172, 173, 178-179, 181-189, 191, 192, 194, 195, 197-204

## IDOC DEFENDANTS

Plaintiff acknowledges that the facts listed by the IDOC Defendants in the following paragraphs as undisputed material facts are indeed undisputed material facts:

¶¶ 2, 4, 7-10, 13-18, 20, 21, 23, 24, 27, 30, 32, 33, 35-37, 40-43, 45-47, 49-52, 54-57, 59, 60, 63, 64, 66, 71-73, 75-80, 82-85, 88-93, 95-101, 110-112, 115-118, 121, 122, 124-135, 138-150, 152-181, 183-186, 188, 190, 191, 193, 194, 197-206, 208-212, 214-216, 218-226, 228-233, 235-249, 251, 252, 254-266, 268-274, 276-295, 297, 299, 302-304, 306-308, 311-345, 356-362, 364-369, 371, 373.

## B.  Material Facts Which Plaintiff Claims to be Disputed

### WEXFORD DEFENDANTS

*DEFENDANT DR. BROWN*

Plaintiff disputes the statement set forth in ¶6 because Defendant in his deposition stated that if a grievance was related to medical care it was referred to him for review. (Ct. Docket#373-8, Brown Dep., p. 13).

3

Plaintiff disputes the statement set forth in ¶9 because McCroy in his deposition states that the appointments were either missed or not scheduled; also in late 2004 follow-up appointments for McCroy's evisceration of his left eye were not scheduled with Prairie Eye Center. (Ct. Docket #372-17, McCroy Dep., p. 81; Ex. L, Farris Dep., p. 22-23.)

Plaintiff disputes the statement set forth in ¶10 because by not reviewing and changing McCroy's medically unassigned status, McCroy was unable to obtain employment in the early release program. (Ct. Docket#372-17, McCroy Dep., p. 49 - 51).

Plaintiff disputes the statement set forth in ¶11 because in McCroy's deposition he indicates that he told this Defendant that he would like to obtain appropriate employment. (Ct. Docket#372-17, McCroy Dep., p. 49 -51).

Plaintiff disputes the statements set forth in ¶13 and ¶21 due to the infirmary rules and those associated with being medically unassigned. (Ct. Docket#372-2, Lochard Aff., Exh. 1-G).

Plaintiff disputes the statement set forth in ¶20 because by virtue of his position he should be aware of the ramifications of making an inmate medically unassigned.

Plaintiff disputes the statement set forth in ¶24  because while there is only a note in McCroy's Offender Outpatient Progress Notes, no order or  discharge summary from that time has ever been produced. (6-8-04 Prog. Note, C43).

4

Plaintiff disputes the statement set forth in ¶38 because beginning in January 2004, notes in McCroy's medical file indicate that he was being "housed" in the infirmary "per warden" or "per security."  Defendant Brown has indicated that he reviewed McCroy's file upon beginning at WICC.

> MR. LONDRIGAN: There's a transcription in the record that a request was made of his treating ophthalmologist to place him in the general population and he said no, he didn't want him poked in the eye.
>
> Q.  Did you ever review that before this deposition today?
>
> A.  Yes, I know all about that.
>
> Q.  Did you call this treating physician back when you exercised your medical judgment to have this patient transferred into the general population?
>
> A.  No.
>
> Q.  Why not?
>
> A.  I determined that an opinion or recommendation was based on probably unrealistic expectations and playing it safe.  He wasn't on the scene, he doesn't know entirely what's going on here, and I decided that I knew better in view of everything that was going on.  And he was a previous ophthalmologist, at any rate.
>
> (Ct. Docket #373-8, Brown Dep., p. 28).

Plaintiff disputes the statement set forth in ¶42 because there were times during McCroy's stay in the infirmary where he was housed in a single unit or by himself for various reasons.   (A1, McCroy Aff).

5

Plaintiff disputes the statement set forth in ¶44  because while there were times that McCroy did have access to the law library, commissary and yard, there were other times that he did not. (Ct. Docket#372-17, McCroy Dep., p. 58).

Plaintiff disputes the statement set forth in ¶50  because the date of review indicated on the form is January 26, 2004. (Ct. Docket#373-2, Brown Aff., Exh. 1-A ).

Plaintiff disputes the statement set forth in ¶53  because this statement infers that the document written by Dr. Zeh on February 24, 2004 was reviewed and approved by Defendant Brown on the same date, a review of the document shows it was reviewed and approved by Defendant Brown on April 12, 2004; and on that date he prepared a referral request.  (Ct. Docket#373-2, Brown Aff., Exh. 1-C).

Plaintiff disputes the statement set forth in ¶60  because this statement refers to "his outside ophthalmologist" who at that time was Dr. Zeh at Prairie Eye Clinic, this appointment was with Dr. Steahley at Midwest Eye Associates for a "2nd opinion." (Ct. Docket#373-2, Brown Aff., Exh. 1-J).

Plaintiff disputes the statement set forth in ¶64  because this statement refers to the appointment McCroy had with Dr. Steahley on June 18, 2004 and no where on this form is the date June 11 nor did the appointment take place on that date. Also, it does not appear that Dr. Steahley (who was only asked for a second opinion) was asked about any restrictions on McCroy, only about the treatment of McCroy's Keratoconus with medications. (Ct. Docket#373-2,  Brown Aff., Exh. 1-M).

6

Plaintiff disputes the statement set forth in ¶68 because the statement indicates that McCroy's corneal transplant had "failed" of which there is no proof, Dr. Zeh's deposition was taken on June 22, 2004 and no where in that deposition does it say that the corneal transplant had failed. Dr. Zeh indicated that McCroy was on schedule as far as recovery is concerned. (Ct. Docket#373-2, Brown Aff., Exh. 1-P; Ct. Docket#372-10, Zeh Dep., p. 57).

Plaintiff disputes the statement set forth in ¶117 because the quote in its entirety reads "[i]t's thought actually that eye rubbing, among other things, is one of the main reasons that some patients progress just due to mechanical, mechanical pressure on the cornea. But some patients progress whether or not they rub their eyes." (Ct. Docket#372-10, Zeh Dep., p. 9).

Plaintiff disputes the statement set forth in ¶133 because McCroy was not actually referred to Dr. Kim, it was recommended that McCroy see Dr. Kim for a glaucoma evaluation. (Ct. Docket#372-10, Zeh Dep., p. 9).

Plaintiff disputes the statement set forth in ¶141 because the quote in its entirety reads "it wasn't necessarily induced by that because he actually had an elevated pressure before this transcription error or inadvertent prolong use had occurred . But the pressure was elevated longer, potentially longer than would have been desired because of the failure to discontinue the steriod." (Ct. Docket#372-10, Zeh Dep., p. 22).

Plaintiff disputes the statement set forth in ¶149 because Doctor indicated that it should be stable. Dr. Zeh did not see McCroy that day and had not seen him since May of that year. (Ct. Docket#372-10, Zeh Dep., p. 27).

Plaintiff disputes the statement set forth in ¶200 because McCroy is currently incarcerated at Big Muddy River Correctional Center in Ina, Illinois. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶201 because McCroy is no longer incarcerated at Pickneyville Correctional Center, but was incarcerated there from August of 2005 to May 2007. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶206 because that was the date that McCroy complained to Officers Law and Kellerman; McCroy had complained prior. (Ct. Docket #372-17, McCroy Dep., pp. 129-130).

Plaintiff disputes the statement set forth in ¶209 because at Big Muddy River Correctional Center, McCroy currently has no cell mate. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶210 because McCroy currently has no cell mate. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶211 because McCroy is not currently at Pinckneyville Correctional. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶215 because McCroy contends that the reason he did not attend school on certain days was that he had eye problems. (A4, McCroy Aff).

Plaintiff disputes the statement set forth in ¶225  because McCroy's complaint is actually that Defendant Lochard placed a restriction on him by making him medically unassigned without examining him. (C26, 11-29-03 Lochard Memo).

Plaintiff disputes the statement set forth in ¶228  because McCroy may have been housed with other inmates most of whom were incapacitated or terminally ill. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶231  because McCroy was only asked about one cell mate and not all of them; McCroy did not recall the name of that cell mate. (Ct. Docket #373-17, McCroy Dep., pp. 16 and 19).

### DEFENDANT DR. LOCHARD

Plaintiff disputes the statement set forth in ¶3 because in Defendant's  Deposition he indicates that he is not a specialist in anything but is a general medical physician specialist. (Ct. Docket #372-4, Lochard Dep. p. 8).

Plaintiff disputes the statement set forth in ¶5,  ¶52 and ¶77  because if the grievance was medical related then it was given to the appropriate authority, during that time it would be Defendant Lochard. (Ct. Docket #373-8, Brown Dep., p. 13).

Plaintiff disputes the statement set forth in ¶10 because while he may not have personally given McCroy the medication, Defendant Lochard rubber stamped a prescription of Maxitrol for McCroy that had NOT been prescribed by Dr. Zeh. (C22, 11-6-03 Prog. Note).

9

Plaintiff disputes the statements set forth in ¶14, ¶17, ¶18 and ¶20 as the note in McCroy's Offender Infirmary Progress Notes just states that Defendant Lochard was notified, it does not indicate that the nurse entering the note was the one who contacted Defendant Lochard nor does it state what was fully discussed.(Ct. Docket#372-2, Lochard Aff., Exh. 1-C).

Plaintiff disputes the statement set forth in ¶23 because Defendant Lochard is the one who signed McCroy's medically unassigned form on November 29, 2003. (Ct. Docket #372-2, Lochard Aff., Exh. 1-E).

Plaintiff disputes the statement set forth in ¶29, ¶30, ¶47  because as a nurse practitioner, Defendant Mills, practiced under him as a physician and all of these are her actions of which he supervised as her physician. (Ct. Docket #372-4, Lochard Dep. p. 18).

Plaintiff disputes the statement set forth in ¶43 because McCroy's prior terms as medically unassigned had been short lived or for the time McCroy was housed in the infirmary for medical reasons. The ONE example provided by Defendant shows that McCroy was medically unassigned while he was in the infirmary due to the transplant. (Ct. Docket#372-2 Lochard Aff., Exh. 1-F).

Plaintiff disputes the statement set forth in ¶50  because by being the physician under whom Nurse Practitioner Mills practiced, he was the physician who discharged

McCroy from the infirmary in November 2003. (Ct. Docket #372-4, Lochard Dep. p. 18).

Plaintiff disputes the statement set forth in ¶56 because Defendant had the opportunity to review McCroy's medical records, as well as the ability to question anyone that McCroy spoke with at WICC regarding not only McCroy, but any inmate.

Plaintiff disputes the statement set forth in ¶57 because there is no indication that there was any other physician treating McCroy during the day at WICC; the only other person seeing him was Nurse Practitioner Mills, whom the Defendant indicates practiced under him. (Ct. Docket #372-4, Lochard Dep. p. 18).

Plaintiff disputes the statement set forth in ¶61 because Defendant's testimony is that he never actually worked at WICC as his base but that he did fill in at times. (Ct. Docket#372-4, Lochard Dep., p. 9 &12-13).

Plaintiff disputes the statement set forth in ¶62 because Defendant just states that he does not remember McCroy as a patient, not that he never saw McCroy. (Ct. Docket #372-4, Lochard Dep. p. 13).

Plaintiff disputes the statement set forth in ¶66 because Defendant never states the date when he became aware of the wrong time frame on the prescription.

Plaintiff disputes the statement set forth in ¶68 because there is no indication on this document if Dr. Ghosh consulted with anyone or just signed off on it. (C20, 11-6-03 Rpt. of Consult).

Plaintiff disputes the statement set forth in ¶69 because, while this is what Defendant indicates there is no proof one way or the other, once again he indicates that he was the physician under whom Defendant Mills was working. (Ct. Docket #373-4, Lochard Dep., pp. 9-11).

Plaintiff disputes the statement set forth in ¶82 because in Defendant's deposition he stated that by making McCroy medically unassigned he was making it so that McCroy would not be able to work.  (Ct. Docket #372-4, Lochard Dep. p. 63).

Plaintiff disputes the statement set forth in ¶96 because the quote in its entirety reads "[i]t's thought actually that eye rubbing, among other things, is one of the main reasons that some patients progress just due to mechanical, mechanical pressure on the cornea. But some patients progress whether or not they rub their eyes." (Ct. Docket 372-10, Zeh Dep., p. 9).

Plaintiff disputes the statement set forth in ¶112 because McCroy was not actually referred to Dr. Kim, it was recommended that McCroy see Dr. Kim for a glaucoma evaluation. (Ct. Docket 372-10, Zeh Dep.,  p. 9).

Plaintiff disputes the statement set forth in ¶120 because the quote in its entirety reads "it wasn't necessarily induced by that because he actually had an elevated pressure before this transcription error or inadvertent prolong use had occurred . But the pressure was elevated longer, potentially longer than would have been desired because of the failure to discontinue the steriod." (Ct. Docket 372-10, Zeh Dep., p. 22).

Plaintiff disputes the statement set forth in ¶128 because Doctor indicated that it should be stable. Dr. Zeh did not see McCroy that day and had not seen him since May of that year. (Ct. Docket 372-10, Zeh Dep., p. 27).

Plaintiff disputes the statement set forth in ¶179 because McCroy is currently incarcerated at Big Muddy River Correctional Center in Ina, Illinois. (A2, McCroy Aff)

Plaintiff disputes the statement set forth in ¶180 because McCroy is no longer incarcerated at Pickneyville Correctional Center but was incarcerated there from August of 2005 to May 2007. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶185 because that was the date that McCroy complained to Officers Law and Kellerman; McCroy had complained prior. ((Ct. Docket #372-17, McCroy Dep., pp. 129-130).

Plaintiff disputes the statement set forth in ¶188 because at Big Muddy River Correctional Center, McCroy currently has no cell mate. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶189 because McCroy currently has no cell mate. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶190 because McCroy is not currently at Pickneyville Correctional Center. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶194 because McCroy contends that the reason he did not attend school on certain days was that he had eye problems. (Ct. Docket #327-17, McCroy Dep., pp. 54-55).

3:02-cv-03171-HAB-BGC    # 400    Page 14 of 42

Plaintiff disputes the statement set forth in ¶204 because McCroy's complaint is actually that Defendant Lochard placed a restriction on him by making him medically unassigned. (Ct. Docket#39, 3rd Amd. Compl., p. 8).

Plaintiff disputes the statement set forth in ¶207 because while McCroy may have been housed with other inmates, most were incapacitated or terminally ill. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶210 because McCroy was only asked about one cell mate and not all of them; he did not recall the name of that cell mate. (Ct. Docket #372-17, McCroy Dep., pp. 16 & 19).

### *DEFENDANT MILLS*

Plaintiff disputes the statement set forth in ¶8 because McCroy indicates in his deposition that it was Defendant who refused to provide him with medication. (Ct. Docket #372-17, McCroy Dep. p. 84).

Plaintiff disputes the statement set forth in ¶16 and ¶17 because McCroy witnessed Defendant performing these duties. ( A2, McCroy Aff).

Plaintiff disputes the statements set forth in ¶18 as she is the one who took charge during the November 2003 discharge from the HCU to the jurisdiction of "Security" in conjunction with McCroy being made medically unassigned by Defendant Lochard. (Ct. Docket #380-10, Mills Dep., pp. 14-15).

14

Plaintiff disputes the statement set forth in ¶21 because physicians under whom Defendant worked were aware of the limitations of being medically unassigned, therefore Defendant, a nurse practitioner, should also have been aware of those limitations. (Ct. Docket #372-4, Lochard Dep., pp.63-64; Ct. Docket #373-8, Brown Dep., p. 16).

Plaintiff disputes the statements set forth in ¶24 and ¶69 because she signed off to discharge McCroy from the infirmary during the time he was medically unassigned there; after that time, McCroy was in the infirmary per security /per Warden. (Ct. Docket #375-2, Mill Aff. Exh. 1-Q).

Plaintiff disputes the statement set forth in ¶57 and ¶58 because McCroy indicates that he was discharged to segregation that was not in the infirmary, as well as that during that time McCroy had a cell mate. (A1-5, McCroy Aff).

Plaintiff disputes the statement set forth in ¶70 because McCroy was later released from "housing" in the infirmary in June 2004, but discharged medically from the infirmary in November 2003 by Defendant. (Ct. Docket #375-2, Mill Aff., Exh 1-Q).

Plaintiff disputes the statement set forth in ¶71 because she knew that the current order from Dr. Zeh was a single cell, therefore she had a reason to disagree with Defendant Brown's decision in June 2004. (Ct. Docket #375-2, Mill Aff., Exh. 1-Q).

Plaintiff disputes the statement set forth in ¶82 because the quote in its entirety reads "[i]t's thought actually that eye rubbing, among other things, is one of the main

reasons that some patients progress just due to mechanical, mechanical pressure on the cornea. But some patients progress whether or not they rub their eyes." (Ct. Docket #372-10, Zeh Dep., p. 9).

Plaintiff disputes the statement set forth in ¶98 because McCroy was not actually referred to Dr. Kim; it was recommended that McCroy see Dr. Kim for a glaucoma evaluation. (Ct. Docket#372-10, Zeh Dep. p. 9).

Plaintiff disputes the statement set forth in ¶106 because the quote in its entirety reads "it wasn't necessarily induced by that because he actually had an elevated pressure before this transcription error or inadvertent prolong use had occurred . But the pressure was elevated longer, potentially longer than would have been desired because of the failure to discontinue the steriod." (Ct. Docket #372-10, Zeh Dep., p. 22).

Plaintiff disputes the statement set forth in ¶114 because Doctor indicated that it should be stable. Dr. Zeh did not see McCroy that day and had not seen him since May of that year.  (Ct. Docket #372-10, Zeh Dep., p. 27).

Plaintiff disputes the statement set forth in ¶165 because McCroy is currently incarcerated at Big Muddy River Correctional Center in Ina, Illinois. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶166 because McCroy is no longer incarcerated at Pickneyville Correctional Center but was incarcerated there from August of 2005 to May 2007. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶171 because that was the date that McCroy complained to Officers Law and Kellerman; McCroy had complained prior. (Ct. Docket 372-17, McCroy Dep., pp. 129-130).

Plaintiff disputes the statement set forth in ¶174 because at Big Muddy River Correctional Center, McCroy currently has no cell mate. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶175 because McCroy currently has no cell mate. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶176 because McCroy is not currently at Pickneyville Correctional Center, and therefore has no complaints about his ADA cell as he has none. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶177 to the extent that complains about lights and curtains are categorized as complaints about "cell placement". McCroy also complained about other cell placement issues on other occasions. (B22-23, 6-13-04 Grievance).

Plaintiff disputes the statement set forth in ¶180 because McCroy contends that the reason he did not attend school on certain days was that he had eye problems. (Ct. Docket #372-17, McCroy Dep., pp. 54-55).

Plaintiff disputes the statement set forth in ¶190 because McCroy's complaint is actually that Defendant Lochard placed a restriction on him by making him medically unassigned without examining him. (Ct. Docket#39, 3rd Amd. Compl., p. 8).

Plaintiff disputes the statement set forth in ¶193 because while McCroy may have been housed with other inmates, most were either incapacitated or terminally ill. (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶196 because McCroy was only asked about one cell mate and not all of them; McCroy did not recall the name of that cell mate. (Ct. Docket #372-17, McCroy Dep., pp. 16 & 19).

## IDOC DEFENDANTS

Plaintiff disputes the statement set forth in ¶1 because as the medical records show, many appointment were missed, continuously rescheduled and/or not scheduled at all. (**See** medical records generally as previously submitted to the Court and all disputed facts as well as additional facts in this Motion and Summary Judgment Response).

Plaintiff disputes the statement set forth in ¶3 because Defendant failed to read or become aware of McCroy's issues with the medical care he was being or not being provided. (Ct. Docket #380-4, Hockaday Dep., pp. 25, 27 & 49).

Plaintiff disputes the statement set forth in ¶5 because while McCroy was being given the impression the Warden was dealing with the problems and looking into them, he only learned during the litigation that the Warden was not reviewing and dealing with any issues raised in grievances, but delegated that duty without notice. (Ct. Docket #380-4, Hockaday Dep., pp. 25, 27 & 49).

18

Plaintiff disputes the statements set forth in ¶6 because these responses were not from Defendant Hockaday but someone acting as the Warden and not signing their own name but the Warden's, giving McCroy the impression the Warden was the one signing the grievances.  (Ex. N, Schnepel Dep., p. 35).

Plaintiff disputes the statement set forth in ¶12  because McCroy would not be removed from the situation, the inmate "would be taken to segregation." (Ct. Docket 380-4 Hockaday Dep., p. 105).

Plaintiff disputes the statement set forth in ¶19  because Defendant Fuqua changed McCroy's contact lense cleaners upon his arrival at WICC as well as not allowing him to use the enzyme cleaners until he got a new prescription from Dr. Anderson, both necessary for McCroy's condition. (B1-2, 12-17-01 McCroy Ltr).

Plaintiff disputes the statement set forth in ¶22  because Defendant Fuqua refused to treat McCroy the same as all the other inmates in the infirmary. (Ct. Docket #372-17, McCroy Dep., p. 105).

Plaintiff disputes the statement set forth in ¶25  because this statement insinuates that Plaintiff was allowed to go to the yard and the law library all the time.  That is not the case; there were occasions when he was not allowed to do these things.  (A4, McCroy Aff).

Plaintiff disputes the statement set forth in ¶26 because while McCroy was finally allowed to use the phone, he had to grieve the issue to field services and they arranged for him to be able to use the phone. (Ct. Docket #372-17, McCroy Dep., p. 118).

Plaintiff disputes the statement set forth in ¶28 and ¶29 because McCroy was told Defendant Fuqua was in charge of the things, that he was not allowed to do, that others in the infirmary were allowed to do. (Ct. Docket #372-17, McCroy Dep., p. 118).

Plaintiff disputes the statement set forth in ¶31 because there is no evidence that prior to August 12, 2002, Dr. Elyea indicated that anyone had to perform the transplant, even after August 12, 2002, in Dr. Elyea's memo the transplant was just found to not be an organ transplant and could be covered by the vendor. (C11-12, 8-12-02 Elyea Ltr).

Plaintiff disputes the statement set forth in ¶34 because what Defendant Fuqua wrote was "No, Dr. Sims will have to put it through U.R. again. I have asked him to do this today," (Ct. Docket #380-6, Elyea Dep., Exh. 6).

Plaintiff disputes the statement set forth in ¶38 and ¶39 because Defendant Winters indicated that the Health Care Unit Administrator does have the ability to admit and discharge inmates to the infirmary. (Ex. G, Winters Dep., p. 86).

Plaintiff disputes the statement set forth in ¶44 because Roger Walker was sued in his official capacity regarding his supervision over the other IDOC Defendants. McCroy changed the official capacity defendant after Donald Snyder left his position as head of IDOC. (Ct. Docket #183, First Amd. Complaint).

Plaintiff disputes the statement set forth in ¶48  because at no time in the pages cited by Defendant Winters does it talk about McCroy's issues with Defendant Winters. Those pages discuss McCroy's cell mate issues and the fight on September 23/24, 2004. (Ct. Docket #372-17, McCroy Dep., pp. 15-23).

Plaintiff disputes the statement set forth in ¶53  because in Defendant Winters' deposition, he states that the grievance officer makes rulings and disposes of grievances. They can do small investigations or whatever is necessary to determine factual statements.  (Ex. G, Winters Dep., p. 9 & 16).

Plaintiff disputes the statement set forth in ¶58 because in Defendant's deposition, Defendant Winters states "the warden would have final say on emergency grievances declaring whether a grievance was an emergency nature or not and then would forward that immediately to the grievance officer for immediate handling."  (Ex. G, Winters Dep., p. 9).

Plaintiff disputes the statement set forth in ¶61and ¶62  because in Defendant Funk's deposition, she explained that whoever was assigned that day to grievances would handle them, it could have been either assistant warden.  (Ex. G, Winters Dep., p. 19).

Plaintiff disputes the statement set forth in ¶65, ¶67, ¶68, ¶69 and ¶70  because while the Warden and Assistant Wardens may not be trained medical personal, they do have access to medical personal who could assist them, such as Dr. Elyea in this case. These consultations could lead to a directive to the Health Care Unit Administrator in

the position as a liaison to get outside treatment for the inmate. (C8-9-10, Fuqua E-mails).

Plaintiff disputes the statement set forth in ¶74 because few of these considerations are noted when an appointment is cancelled, most just say "per the Warden". (C4, 3-5-02 Ref Requ).

Plaintiff disputes the statement set forth in ¶81 because it is impossible for this Defendant to know what he actually reviewed as Warden since he delegated that task to his assistant wardens, including emergency grievances. (Ex. G, Winters Dep., pp 69).

Plaintiff disputes the statement set forth in ¶86 because McCroy was given permission to move his TV in the infirmary by not only Defendant Funk, but it was written in his medical notes that he was allowed to have his TV lower, but later he was disciplined for where his TV was located. (B21, 6-7-04 Grievance; C34, 4-7-04 Prog Note).

Plaintiff disputes the statement set forth in ¶105 because McCroy indicates that he spoke with Funk on occasion about his treatment and Funk supervised the Health Care Unit and its supervisor, Defendant Fuqua. (Ct. Docket #372-17, McCroy Dep., pp. 123-4).

Plaintiff disputes the statement set forth in ¶106 because Defendant Funk spoke with McCroy regularly and knew he had issues with his eyes, as well as her experience in reviewing his grievances. (Ex. M, Funk Dep., pp. 12-13).

Plaintiff disputes the statement set forth in ¶107 because Dr. Zeh, Plaintiff's treating outside ophthalmologist paid by Wexford, stated that "offender needed to stay in the infirmary ... he doesn't want offender to get poked in the eye." (C23, 11-6-03 Prog Note) and Dr. Brown, who was not an ophthalmologist, stated in his deposition that he, "knew all about" McCroy's treating ophthalmologist's (Dr. Zeh) request not to place McCroy in the general population because he didn't want him poked in th eye. But Dr. Brown determined that recommendation was probably "unrealistic" and "playing it safe".(Ct. Docket #k373-8, Brown Dep, pp. 25 & 28)

Plaintiff disputes the statement set forth in ¶113  because Defendant Fuqua recalls a conversation where Dr. Elyea told Defendant Wexford they have to provide the transplant.   (Ex. E, Fuqua Dep., p. 25).

Plaintiff disputes this statement set forth in ¶114 because although Plaintiff admits that Keratoconus can be treated with contact lenses and that McCroy was treated over the years with contact lenses prior to being transferred to WICC.  At WICC, McCroy was not able to wear contact lenses because of corneal ulcers and lack of medical treatment. During this period of time his cornea was rapidly thinning.  By September of 2002, his left cornea showed scarring with approximately 80% loss of corneal thickness. (C13-14, 9-23-02 Schultz Ltr).

Plaintiff disputes the statement set forth in ¶119 because McCroy was only asked to wear his eye shield at night and not during the day at the time of the altercation with inmate Durham. (Ct. Docket #372-17, McCroy Dep., p. 14).

Plaintiff disputes the statement set forth in ¶120 because the shield was worn at night per Dr. Zeh's orders. (Ct. Docket #372-17, McCroy Dep., p. 14).

Plaintiff disputes the statement set forth in ¶123 because McCroy was placed on investigative status after he filed several grievances regarding his cell mate and after several moves in and out of the cell and finally a transfer to WICC. (Ct. Docket #372-17, McCroy Dep., p. 17).

Plaintiff disputes the statement set forth in ¶182 because McCroy was not happy with being transferred to general population, and there is no way that anyone other than McCroy could know his state of mind over being transferred to general population. (A5, McCroy Aff).

Plaintiff disputes the statement set forth in ¶195 because McCroy went to the yard while he was in the infirmary, but did not insist on going to the yard. (A3, McCroy Aff).

Plaintiff disputes the statement set forth in ¶196 because the number of inmates in the yard would change every time that McCroy went to the yard and McCroy did not interact with any of those inmates or do anything he was not allowed to do. (A5, McCroy Aff).

Plaintiff disputes the statement set forth in ¶207 because McCroy did not go to the gym.  As to the yard, McCroy was restricted from contact sports and lifting over a certain amount not from walking or being outside. (C29, 6/8/04 Prog Note).

Plaintiff disputes the statement set forth in ¶213  because while there could be no orders regarding a specific cell, there could have been orders regarding a single cell or that McCroy was not to be housed with inmates with a history of violence.  (Ct. Docket #373-8, Brown Dep., pp. 50-52).

Plaintiff disputes the statement set forth in ¶217 because McCroy did not tell anyone he would like to be in general population, including Nurse Thompson. (Ct. Docket 372-17, McCroy Dep., p. 143).

Plaintiff disputes the statement set forth in ¶227  because McCroy was told that he would either have to get in a fight with his cell mate or refuse housing to be given a new cell mate. (Ct. Docket #372-17, McCroy Dep.  129-130).

Plaintiff disputes the statement set forth in ¶234  because, though Defendant Law knew of the fear of McCroy regarding his cell mate, he did nothing to rectify the situation.   (Ct. Docket #372-17, McCroy Dep., pp. 125, 129-130).

Plaintiff disputes the statement set forth in ¶250 because McCroy did tell Defendant Law, as well as Defendant Kellerman who reported to Defendant Law that he feared for his safety. (Ct. Docket #372-17, McCroy Dep., pp. 129-130).

Plaintiff disputes the statement set forth in ¶253 because McCroy had an additional complaint of inmate Durham becoming aggressive with him when McCroy would attempt to talk to him. (Ct. Docket #372-17, McCroy Dep., p. 18).

Plaintiff disputes the statement set forth in ¶267 because McCroy indicates that Durham would either ignore him or become belligerent and aggressive. (Ct. Docket #372-17, McCroy Dep., p. 28-30).

Plaintiff disputes the statement set forth in ¶275 because on the final summary report he noted Durham had prior IDR for fighting on 3/11/04 and 7/23/04. (D9-10, Durham Rcd).

Plaintiff disputes the statement set forth in ¶296 because McCroy indicated that he did not know at that time what privileges he was entitled to and could not say what ones he was also complaining about. (Ct. Docket #372-17, McCroy Dep., pp. 44-45). In grievances, McCroy clearly asked for specific accommodations. (B19-20-21, 6-7-04 Grievances).

Plaintiff disputes the statement set forth in ¶301 because McCroy indicated that he wanted to be able to work when he was released as well as while he was in the Department of Corrections, specifically while he was medically unassigned. (Ct. Docket #372-17, McCroy Dep., p. 47-50).

Plaintiff disputes the statement set forth in ¶305 because McCroy received three disciplinary tickets for not going to school when he had problems with his eyes and the

26

infirmary would not tell the school about his problems with his eyes. (Ct. Docket #372-17, McCroy Dep., p. 54).

Plaintiff disputes the statement set forth in ¶309 because McCroy indicated that Defendants had control over whether the forms were turned in or not for McCroy to receive the commissary. (Ct. Docket #372-17, McCroy Dep., p. 58).

Plaintiff disputes the statement set forth in ¶310 because McCroy indicates that he asked both Defendant Fuqua and Defendant Funk to remove him from the list of medically unassigned inmates. (Ct. Docket #372-17, McCroy Dep., p. 102).

Plaintiff disputes the statement set forth in ¶346 because McCroy was placed in an ADA cell at Pickneyville after Defendant Flagg's deposition.  (A6, McCroy Aff).

Plaintiff disputes the statement set forth in ¶370  because McCroy does not currently have a cell mate.  (A2, McCroy Aff).

Plaintiff disputes the statement set forth in ¶372 because McCroy is not a certified law clerk and has shown no certificate to that effect.

## C.  Facts Which Plaintiff Claims to be Irrelevant to the Motion

### WEXFORD DEFENDANTS

### *DEFENDANT DR. BROWN*

Plaintiff submits that the statements set forth in the following paragraphs are irrelevant to the Motion for the following reasons:

The statement set forth in ¶3 is irrelevant because McCroy makes no claim against this Defendant while he was not employed at WICC.

The statement set forth in ¶5 is irrelevant because McCroy has made no claim for any contact with Defendant prior to Defendant's employment at WICC.

The statements set forth in ¶7, ¶25, ¶34, ¶40, ¶41, ¶46, ¶47, ¶48, ¶49, ¶63, and ¶89 are irrelevant because they contain undisclosed, gratuitous and irrelevant argument concerning this Defendant.

The statements set forth in ¶54, ¶69, ¶83, ¶87, ¶88, ¶91, ¶92 and ¶95 are irrelevant as it is regarding McCroy's medical treatment unrelated to the medical issues complained about in this litigation.

The statements set forth in ¶65 and ¶67 are irrelevant as McCroy would have seen any physician for medical purposes and not to complain about his housing status.

The statement set forth in ¶71 is not relevant because there is no evidence that Dr. Lee was asked to make said recommendations. It is clear that Dr. Zeh was asked and did make a recommendation to keep McCroy in the infirmary so he would not get poked in the eye. (C23, 11-6-03 Prog. Note).

The statement set forth in ¶74 is not relevant because prior to September 23, 2004, Dr. Brown did not see any entries in McCroy's medical records that McCroy complained about going to the general population. McCroy filed a grievance on the

issue. (B22-23, 6-13-04 Grievance). There is no reason for a complaint to be in the medical records.

The statement set forth in ¶89 is not relevant because what, if anything, Defendant Dr. Brown advised McCroy regarding Darvocet in November 24, 2004, is not relevant to any issue in the case and is a clear attempt to prejudice Plaintiff.

The statements set forth in ¶96, ¶97, ¶98, ¶99 and ¶101 are irrelevant as Defendant Brown's background is not at issue.

The statement set forth in ¶169 is irrelevant as there is no issue of generic drugs being substituted in this litigation.

### DEFENDANT DR. LOCHARD

Plaintiff submits that the statements set forth in the following paragraphs are irrelevant to the Motion for the following reasons:

The statements set forth in ¶19, ¶35, ¶53 and ¶54 are irrelevant because they contain undisclosed, gratuitous and irrelevant argument concerning this Defendant.

The statements set forth in ¶25, ¶27, ¶32, ¶33, ¶34, ¶37, ¶38, ¶46, ¶49, ¶55 and ¶70  are irrelevant because McCroy's claims regarding this specific Defendant do not involve these facts.

The statements set forth in ¶79 is not relevant in that Dr. Lochard never changed McCroy's treating ophthalmologist because he admits to not having knowledge of the

cure and treatment McCroy received for his ongoing Keratoconus condition. (Lochard material fact claimed to be undisputed #65.)

The statements set forth in ¶40 and ¶73 are irrelevant because Defendant's understanding of medically unassigned is not an issue, only the fact that he signed off on the form.

The statement set forth in ¶58 is irrelevant because while it shows when Defendant began with the Department of Corrections, it is not necessary to any of the claims against this Defendant.

The statement set forth in ¶148 is irrelevant as there is no issue of generic drugs being substituted in this litigation.

### *DEFENDANT MILLS*

Plaintiff submits that the statements set forth in the following paragraphs are irrelevant to the Motion for the following reasons:

The statements set forth in ¶5, ¶6, ¶10, ¶11, ¶14, ¶15, ¶29, ¶30, ¶31 and ¶33 are irrelevant because McCroy's claims regarding this specific Defendant do not involve these facts.

The statements set forth in ¶7 and ¶67 are irrelevant because they contain undisclosed, gratuitous and irrelevant argument concerning this Defendant.

The statement set forth in ¶34 is irrelevant because no claims are made against this Defendant for any time that she was not employed by Department of Corrections working at WICC.

The statement set forth in ¶36 is irrelevant because no claim is being made for any problems with any of the inmates that McCroy was housed with in the infirmary.

The statements set forth in ¶40, ¶41, ¶42, ¶45, ¶46, ¶47, ¶48, ¶53, ¶60, ¶61, ¶62 and ¶63 are irrelevant as it is regarding McCroy's medical treatment unrelated to the medical issues complained about in this litigation.

The statement set forth in ¶51 is irrelevant because the treatment of McCroy's unrelated medical conditions is not relevant to any issue in this case.

The statement set forth in ¶134 is irrelevant as there is no issue of generic drugs being substituted in this litigation.

## IDOC DEFENDANTS

Plaintiff submits that the statements set forth in the following paragraphs are irrelevant to the Motion for the following reasons:

The statement set forth in ¶11 is irrelevant because a Warden should not be involved in the choosing of a particular physician for an inmate.

The statement set forth in ¶87 is irrelevant because the subjective claim of Defendant Funk's knowledge of her involvement is not a fact at issue.

The statements set forth in ¶94, ¶103, ¶104, ¶108, ¶109, ¶187, ¶189, ¶192, ¶347, ¶348, ¶349,  ¶350, ¶351, ¶352, ¶353, ¶354 and ¶355 are irrelevant because they contain undisclosed, gratuitous and irrelevant argument concerning this Defendant.

The statement set forth in ¶102 is irrelevant.  McCroy did not file grievances regarding medical determinations made by his treating physicians.

The statement set forth in ¶136 and ¶137 are irrelevant because at no time is it alleged McCroy is a member of a gang nor is that at issue in this lawsuit.

The statement set forth in ¶151 is irrelevant because McCroy is not claiming Defendant Funk was involved in the drug test resulting in his transfer to Menard Correctional Center.

The statement set forth in ¶298 is irrelevant because McCroy is making no claim regarding being able to cover his cell.

The statement set forth in ¶300 is irrelevant because McCroy was only concerned with his lights and not those of the rest of the prison.

The statement set forth in ¶363 is irrelevant because McCroy was not seeking medical treatment for his head or an injury thereto on that date

**D.  Additional Material Facts in Opposition to Defendant's Motion**

1.    McCroy was diagnosed with Keratoconus in 1993. (C1, 9-9-93 Prog. Note).

2.    Keratoconus is an abnormality of the cornea in which the cornea is weakened and begins to bulge irregularly. (Ct. Docket #372-10, Zeh Dep., p. 7).

3.     Keratoconus is first treated with spectacles. The next step is rigid contact lenses. If the diseases progresses and the patient becomes intolerant to contact lenses, the final treatment step is a cornea transplant. (Ct. Docket #372-10, Zeh Dep., pp. 7-8).

4.     For several years prior to being transferred to Western Illinois Correctional Center (WICC), McCroy received eye care from Dr. Kehoe at the Kehoe Eye Care in Galesburg, Illinois. (McCroy Med. Rcds, generally).

5.     McCroy was transferred to WICC on October 31, 2001. (D1, 10-16-01 Transfer Rpt).

6.     The optometrist seeing patients at WICC, Dr. Anderson, did not consider himself qualified to treat Keratoconus. (Ex. H, Anderson Dep., p. 16).

7.     From May 14, 2002 until September, 2002, Dr. Anderson provided the only eye treatment McCroy received. (Ex. H, Anderson Dep., p. 16).

8.     On February 26, 2002, Dr. Weller noted that McCroy needed to follow up with Dr. Sieck regarding a corneal transplant. (C3, 2-27-02 Rpt. Of Consult).

9.     On March 12, 2002, Warden Hockaday wrote McCroy a memo stating that doctors recommend he receive a corneal transplant or be seen by Dr. Kehoe. (B5, 3-12-02 Memo).

10.    On March 12, 2002, no ophthalmologist opined that refitting contacts to his left eye would alleviate McCroy's need for surgery. (McCroy Med. Rcds, generally).

11.    On 3-11-02, 3-19-02, 3-15-02 and 4-1-02 McCroy's appointments with Dr. Kehoe were cancelled by IDOC. (C4, 3-5-02 Ref. Req).

12.    On May 13, 2002, Dr. Plattner of the Kehoe Eye Center indicated that McCroy needed to discontinue wearing a contact lens in his left eye and consider a corneal transplant. (C5, 5-13-02 Rpt. of Consult).

13.    On May 14, 2002, Dr. Anderson, initiated a referral request for corneal transplant. (C6, 5-14-02 Ref. Req).

14.   On May 16, 2002, the referral request by Dr. Anderson noting that McCroy could no longer tolerate contact lenses was denied without comment. (C6, 5-14-02 Ref. Req).

15.   On June 17, 2002, McCroy filed a grievance noting that three outside ophthalmologists stated he needed a transplant surgery. (B8, 6-17-02 Grievance).

16.   On August 9, 2002, McCroy filed suit seeking the court to order a transplant. (Ct. Docket#10, *Pro se* Complaint).

17.   On August 11, 2002, McCroy wrote Warden Hockaday a letter asking him to do something. (B9, 8-11-02 McCroy Ltr).

18.   Defendant Hockaday acknowledged receipt of the suit on August 23, 2002. (B11, 8-23-02 Hockaday Memo).

19.   On September 23, 2002, WICC and Wexford Defendants were informed:

> [McCroy] has been intolerant of the contact in his left eye for the past seven to eight years. ... The vision in the left eye could not be improved by any means. ... The left cornea showed central apical scarring with approximately 80% loss of corneal thickness.

> (C13, 9-23-02 Schultz Ltr).

20.   Dr. Schultz was chosen by Wexford to express the foregoing "second opinion" to Wexford employee, Dr. Sims, Medical Director of WICC. (C13, 9-23-02 Schultz Ltr).

21.   Wexford assigned no optometrist qualified to treat Keratoconus to WICC. (Ex. H, Anderson Dep., pp. 16-17).

22.   Wexford assigned no ophthalmologists qualified to fit special contact lenses for Keratoconus patients to WICC. (Ex. H, Anderson Dep., pp. 16-17).

23.   Wexford assigned no ophthalmologists qualified to evaluate the need for corneal transplant surgery for patients with Keratoconus to WICC. (Ex. H, Anderson Dep., pp. 16-17).

24. On November 20, 2002 Dr. Feder also recommended a corneal transplant. (C15, 11-20-02 Rpt. of Consult).

25. McCroy received a corneal transplant from Dr. Feder on February 2, 2003. (C17, 2-3-03 Prog. Note).

26. During the period between when a corneal transplant was first recognized as being needed and February 2, 2003, McCroy suffered from hydrops and progressive and painful scaring of the cornea. (Ct. Docket #372-17, McCroy Dep., p. 81; Ex. H, Anderson Dep., 47-48).

27. McCroy filed numerous grievances relating to how he was treated while he was housed in the WICC infirmary both before and after the transplant surgery and before and after he was hit in the eye. (A3, McCroy Aff).

28. Prior to June 8, 2004, McCroy filed grievances pertaining to the WICC security and HCU Supervisors on issues regarding:

a) prescription lens cleaner being confiscated;
b) prescription lens cleaner not being re-filed;
c) refusal to give him a corneal transplant;
d) appointments with ophthalmologists being cancelled;
e) being forced to stay in the infirmary for monitoring and as a result not being able to go to school;
f) being forced to wear contact lens that caused pain;
g) being given steroid medication in an amount greater than prescribed which resulted in him developing glaucoma;
h) being disciplined when he was unable to go to school because of eye pain;
i) being forced to submit to medical examinations from unqualified health care professionals, who he had just sued;
j) not being allowed to go to the law library;
k) not being allowed to go to the exercise yard;
l) false discipline charges being filed against him;
m) being subjected to excessive searches of his personal property;
n) not being fitted for contact lens for his right eye;
o) having his security level increased;
p) not being allowed to shower before going on outside medical appointments;
q) restrictions on where he could place his TV;
r) and restrictions on when he could go to the commissary.

(A3-4, McCroy Aff).

29.  All grievances submitted by McCroy on all issues were denied by the IDOC. (See Grievances, generally).

30.  Although his name appears on various grievance responses, Defendant Warden Hockaday claims to not have personally reviewed McCroy's grievances. (Ct. Docket #380-4, Hockaday Dep., pp. 25, 27).

31.  Defendant Warden Hockaday designated Defendant Assistant Warden Winters to review McCroy grievances. (Ex. G, Winters Dep., p. 17).

32.  After he became Warden, Defendant Winters did not read any of McCroy's grievance and he authorized Assistant Wardens to sign his name. (Ex. G, Winters Dep., p. 38-39).

33.  After he became Warden, Warden Polk abandoned the procedure of allowing others to sign the warden's name and he personally reviewed grievances. (Ex. I, Polk Dep., p. 9).

34.  Defendant Assistant Warden Funk regularly reviewed McCroy's medical related grievances and signed the then warden's name denying the grievances. (Ex. M, Funk Dep., pp. 13-15).

35.  On October 22, 2003, a security reclassification review was conducted and it was noted that McCroy was "ineligible" for transfer to another prison. (D2, 10-22-03 Sec. Reclass).

36.  In October of 2003, McCroy was ineligible for a transfer because he was a medical patient in the WICC infirmary.  (Ex. E, Fuqua Dep., p. 140).

37.  On November 6, 2003, a written form was submitted to Dr. Zeh asking "from eye point of view need to know if inmate can be moved to general population of the correction center with his impaired vision can he move freely and independently." (C20, 11-6-03 Rpt. of Consult).

38.  Dr. Zeh responded over the phone that McCroy needed to stay in the infirmary because Dr. Zeh did not want him to get poked in the eye.  (C23, 11-6-03 Prog. Note).

39.  Dr. Zeh specifically asked that McCroy be "kind of isolated to a place where he would not be, you know, inadvertently jostled or struck or anything like that". (Ct. Docket #372-10; Zeh Dep., p. 11).

40.  On November 21, 2003, Nurse Blaesing placed a follow-up call to Dr. Zeh and then noted that McCroy could be placed in seg (single cell). (C24, 11-21-03 Prog. Note).

41.  On November 21, 2003, Defendant Nurse Mills discharged McCroy from the infirmary to a "single cell in segregation". (C25, 11-21-03 Disch. Note).

42.  After November 21, 2003, Defendant Mills claims "Security" was "calling the shots" as to where McCroy was to be housed. (Ct. Docket #380-10, Mills Dep., pp. 30-39).

43.  On November 29, 2003, McCroy was given the status of "Medically Unassigned" for a period of one year by Defendant Dr. Lochard with the status to be evaluated in January of 2004. (C26, 11-29-03 WICC Memo).

44.  No "medically unassigned" status evaluation occurred in January of 2004.

45.  Dr. Lochard never personally examined McCroy and he was not physically present at WICC. (Ct. Docket #372-4, Lochard Dep., p. 13).

46.  On January 23, 2004, a nurses note indicated McCroy is housed in the infirmary "per Warden". (C30, 1-23-04 Prog. Note).

47.  On March 8, 2004, a nurses note indicates McCroy was housed in the infirmary "per security". (C31, 3-8-04 Prog. Note).

48.  The "per security" notation appears in medical records in March, April and May of 2004. (C31-32-33-35-36-37-39-41, Prog. Notes).

49.  On March 2, 2004, a transfer report notes McCroy is housed in general population. (D3, 3-2-04 Trans. Rpt).

50.  On June 7, 2004, McCroy filed two grievance regarding issues he had with placing a TV in the infirmary and not being allowed to go to the commissary. (B19-20-21, 6-7-04 Grievances).

51.   On June 8, 2004, Defendant Dr. Brown wrote an order transferring McCroy to the general population and McCroy was removed from the infirmary. (C43, 6-8-04 Prog. Note).

52.   On June 8, 2004, Dr. Anderson noted that McCroy had a lifetime restriction of no weight lifting "over five pounds". (C42, 6-8-04 Anderson Memo).

53.   The last time prior to June 8, 2004 that Dr. Brown examined McCroy was March 30, 2004. (C33, 3-30-04 Prog. Note).

54.   McCroy was seen by Dr. Zeh on May 21, 2004 and Dr. Zeh recommended another lens fit.  Dr. Zeh was not asked whether McCroy could be released into general population. (Ct. Docket # 372-10, Zeh Dep., p. 23).

55.   Dr. Brown did not ask Dr. Zeh or any ophthalmologists whether it was safe to move McCroy to general population. (Ct. Docket #373-8, Brown Dep., pp. 25 &28).

56.   McCroy did not want to be moved into general population and filed a grievance about the move. (B22-23, 6-13-04 Grievance).

57.   Sometime in late August or September, 2004, Inmate Durham was placed in the same cell as McCroy. (D9-10, Durham Rcd).

58.   Before being placed with McCroy, Durham was returning from segregation for fighting his previous cell mate. (D9-10, Durham Rcd).

59.   While he was in segregation, Durham was also involved in an altercation. (D9-10, Durham Rcd).

60.   On September 23, 2004, McCroy was hit in the eye by Durham. (D11, 9-23-04 Discp. Rpt).

61.   On or about September 22, 2004, McCroy told Defendant Law that Durham was violent and asked that Durham be moved. (Ct. Docket #372-17, McCroy Dep., pp. 129-130).

62.   On September 22, 2003, Defendant Kellerman told McCroy to be careful around Durham. (Ct. Docket #372-17, McCroy Dep., pp. 129-130).

63. Besides filing grievances, McCroy has complained in writing to IDOC officials to include the Director, Deputy Director and Medical Director about how he was treated at WICC. (A4, McCroy Aff).

64. On October 29, 2003, McCroy was awakened and told he needed depart in 10 minutes for a medical appointment. (A4-5, McCroy Aff).

65. The reason given for the short notice to get ready for the October 29, 2003 appointment was "security". (Ex. F, Wilson Dep., p. 48).

66. No rule prevents the IDOC from waking up an inmate early enough so he can take a shower before an outside medical appointment. (Ex. G, Winters Dep., pp. 47-48).

67. On October 29, 2003, McCroy started a hunger strike. (C18, 10-29-03 Prog Note).

68. Because of the October 29, 2003 incident, McCroy received 30 days in segregation. (B12-13, 10-31-03 Final Summ. Rpt).

69. After he was returned from segregation and allowed to see his doctor, McCroy was diagnosed with steroid induced glaucoma. (C29, 1-8-04 Rpt of Consult).

70. On November 6, 2003, Dr. Zeh prescribed McCroy Maxitrol four times daily for three days. (C20, 11-6-03 Rpt. of Consult; C21, 11-6/03 Maxitrol Prescr).

71. Without consulting with Dr. Zeh, Dr. Lochard approved the giving of Maxitrol for 30 days. (C22, 11-6-03 Prog. Note).

72. After getting Maxitrol, McCroy developed steriod induced glaucoma. (Ct. Docket #372-10, Zeh Dep., p. 15).

73. Defendant Fuqua claimed the prescription was not clear. (B16, 2-24-04 Grievance Resp).

74. During her later deposition, Defendant Fuqua clearly read the prescription into the record. (Ex. E, Fuqua Dep., p. 105).

75. Defendant Fuqua also explained what must be done if there is a question about a prescription. (Ex. E, Fuqua Dep., p. 106).

76.    The court appointed counsel to represent McCroy in March of 2004. (Ct. Docket #124).

77.    As a result of the incident with Durham, McCroy was disciplined. (B30-31, 11-12-04 Grievance).

78.    On December 16, 2004, McCroy "failed" a drug test because he was unable to give a sufficient urine sample. (B32-33, 1-2-05 Grievance).

79.    After the urine test, McCroy was transferred to a higher security prison, Menard CC. (D5-6, 1-4-05 Transfer Rpt).

80.    On November 30, 2004 IDOC officials indicated McCroy was legally blind both before and after corneal transplant surgery. (A5, McCroy Aff; B28, 11-30-04 Grievance Resp).

81.    In December, 2004, a court appointed doctor, Dr. Kass, recommended a lens fitting for McCroy's right eye. (C46, 12-8-04 Rpt of Consult).

82.    McCroy did not receive a lense fitting until January 22, 2005. (C49-50-51-52-53, 1-22-05 Marion Eye Rcds).

83.    After January of 2005, IDOC continues to delay and/or not schedule needed lense fittings (B36-37, 1-8-06 Grievance).

84.    After losing his left eye, McCroy's ability to wear a contact lens in his right eye was decreasing, making it difficult for him to accomplish even simple tasks. (A2, McCroy Aff).

85.    McCroy is only able to tolerate wearing a lense to read for about one hour per day and uses a cane. (A6, McCroy Aff).

86.    Because of pressure, McCroy is not allowed to lift more than five pounds. (C42-43, 6-8-04 Memo).

87.    McCroy has been diagnosed as being bi-polar. (A6, McCroy Aff).

88.    WICC does not have ADA equipped cells.

89.  While in the WICC infirmary, McCroy was not given access to employment, school, and facilities to the same extent as able bodied inmates. (A4, McCroy Aff).

90.  When McCroy was transferred from Menard CC to Pinckneyville CC, his prescribed safety glasses were taken from him and not returned for approximately15 days. (Ex. J, Flagg Dep., p. 38; C55, 9-8-05 Memo; A5, McCroy Aff).

91.  Upon arrival at Pinckneyville CC, McCroy was placed in an ADA Cell. (A6, McCroy Aff).

92.  On January 9, 2006, Defendant Flagg, a non-doctor, determined McCroy did not meet the criteria for an ADA Cell and McCroy was removed. (A6, McCroy Aff).

93.  On January 16, 2006, a doctor gave McCroy written permission for an ADA cell, but McCroy was not moved back in an ADA cell. (C57, 1-16-06 ADA Cell Permission).

94.  After Defendant Flagg's deposition was taken, McCroy was put back in an ADA cell. (A6, McCroy Aff).

95.  Since being transferred to Big Muddy River CC, McCroy is housed in an ADA cell and he uses a cane. (A2-6, McCroy Aff).

96.  IDOC prohibited McCroy from having books on tape and currently denies him participation in an early release program. (A6, McCroy Aff).

Respectfully submitted,
AARON MCCROY, Plaintiff

By: s/Thomas F. Londrigan
THOMAS F. LONDRIGAN, Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street, P.O. Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com

41

## Certificate of Service

The hereby certify that on September 7, 2007, I presented the foregoing to the Clerk of

the Court for filing and uploading to the CM/ECF system which will send notification to

such filing to the following;

Ms. Theresa Powell
Heyl, Royster, Voelker & Allen
National City Center, Ste. 575
1 North Old State Capitol Plaza
PO Box 1687
Springfield, IL 62705-1687

Lisa Madigan, Illinois Attorney General
Attn: Kelly Choate, A.A.G. &
Julie L. Morgan. A.A.G.
500 South Second Street
Springfield, IL 62706

and I hereby certify that I have mailed by United States Postal Service the document to
the following non CM/ECF participants:

Aaron McCroy,#N51882
Receiving Cell 15
P. O. Box 900
Ina, IL 62846

By: s/Thomas F. Londrigan
THOMAS F. LONDRIGAN, Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com

42