E-FILED
Friday, 21 September, 2007  01:49:40 PM
Clerk, U.S. District Court, ILCD

05415-N3293
TMP/ej

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON McCROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-3171 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF CORRECTIONS, | ) | |
| ROGER E. WALKER, JR. (in his official capacity only), | ) | |
| DENNIS HOCKADAY, KEVIN WINTERS, SANDRA | ) | |
| FUNK, DEBRAH FUQUA, LIEUTENANT BYRON | ) | |
| LAW, KENNETH KELLERMAN, JULIUS FLAGG, | ) | |
| (all in their official and individual capacities), WEXFORD | ) | |
| HEALTH SOURCES, INC., DR. LOWELL BROWN, | ) | |
| M.D., DR. HUGHES LOCHARD, M.D., and | ) | |
| RHONDA MILLS, | ) | |
| Defendants. | ) | |

## REPLY TO PLAINTIFF'S RESPONSE TO
## MOTIONS FOR SUMMARY JUDGMENT

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC.; HUGHES LOCHARD, M.D.; LOWELL BROWN, M.D.; and RHONDA MILLS, by their attorney, THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, and pursuant to Local Rule 7.1(D)(3)(a), reply to Plaintiff's Response to Motions for Summary Judgment as follows:

## A.    REPLY TO ADDITIONAL MATERIAL FACTS

1.    McCroy was diagnosed with Keratoconus in 1993.

**Material and undisputed.**

2.    Keratoconus is an abnormality of the cornea in which the cornea is weakened and begins to bulge irregularly.

**Material and undisputed.**

3.    Keratoconus is first treated with spectacles.  The next step is rigid contact lenses.  If the disease progresses and the patient becomes intolerant to contact lenses, the final treatment step is a cornea transplant.

HEYL ROYSTER
VOELKER
& ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**Material and disputed.**

**Defendants agree that the options set forth in Paragraph 3 are accurate. Defendants dispute that all patients who become intolerant to contact lenses require corneal transplants. The Plaintiff in this case has Keratoconus in his remaining eye. Whether or not his eye becomes intolerant to contact lenses, a corneal transplant may or may not be the final treatment step. However, Defendants do not dispute that the identified treatment is one course of care that may be selected.**

4.      For several years prior to being transferred to Western Illinois Correctional Center (WICC), McCroy received eye care from Dr. Kehoe at the Kehoe Eye Care in Galesburg, Illinois.

**Material and undisputed.**

5.      McCroy was transferred to WICC on October 31, 2001.

**Material and undisputed.**

6.      The optometrist seeing patient at WICC, Dr. Anderson, did not consider himself qualified to treat Keratoconus.

**Immaterial.**

**Whether or not Dr. Anderson considered himself qualified to treat Keratoconus is irrelevant. Keratoconus is not a condition that is normally treated by an optometrist but is treated by an ophthalmologist. To the extent an optometrist evaluated the Plaintiff, these evaluations were done with respect to determining eye pressures and other tasks that could be completed by an optometrist. There is a difference between treating keratoconus and monitoring a patient's condition.**

7.      From May 14, 2002 until September 2002, Dr. Anderson provided the only eye treatment McCroy received.

**Immaterial.**

**Paragraph 7 attempts to infer that Mr. McCroy did not receive some eye care that was needed because he was only seen by Dr. Anderson, the optometrist. Plaintiff's medical records indicate that he was seen in the hypertension clinic in May of 2002. He was also seen and evaluated for diabetes in July of 2002. Each of these evaluations were conducted by a physician, Dr. Stanley Sims. Plaintiff's eyes were evaluated with respect to those conditions, but not with respect to the Keratoconus. There is no medical testimony to indicate that McCroy should have been seen between May 14, 2002 and September of 2002. In addition, Mr. McCroy was seen in the M.D. call on June 4, 2002. At that time, he was referred to the optometrist for reports of a headache and complaints concerning his eyes. There is no**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

2

05415-N3293
TMP/ej

indication by Dr. Anderson that he was unable to address the complaints referenced to him by Mr. McCroy. In fact, Dr. Anderson notes that the patient was reporting only minor irritation on June 18, 2002, as well. See attached medical records. (pp. 762-64.)

Mr. McCroy was also seen by Dr. Sims in an effort to determine the Plaintiff's visual acuity on August 20, 2002. Mr. McCroy refused to read the eye chart as request. (pp. 766-67.)

In fact, Mr. McCroy advised Dr. Sims on August 22, 2002 that he did not want to be treated by Wexford and its employees. (p.768)

In addition, eye contact lenses were provided to Mr. McCroy on August 26, 2002, as well as eye drops in an effort to determine whether or not he could tolerate contact lenses for any period of time and for how long. (pp. 769-772.)

In addition, on pages 773 and 774, Dr. Sims notes that Mr. McCroy was released from the infirmary. He was noncompliant with break-in period regarding right contact lens usage. Patient was still adamant about his need for a corneal transplant. The patient was scheduled to be seen by an ophthalmologist. (p. 774.)

8.    On February 26, 2002, Dr. Weller noted that McCroy needed to follow up with Dr. Sieck regarding a corneal transplant.

**Material and Disputed.**

Dr. Weller's note does not say that Mr. McCroy needed to follow up with Dr. Sieck regarding a corneal transplant. That note specifically indicates that the recommendations and plans were as follows:

> If keratoconus progresses greater than 55 and unable to fit with contacts, follow up with Dr. Sieck for consideration for corneal transplant. (p. 1292)

9.    On March 12, 2002, Warden Hockaday wrote McCroy a memo stating that doctors recommend he receive a corneal transplant or be seen by Dr. Kehoe.

**Immaterial.**

Any writing by the warden concerning the medical status of Mr. McCroy is not relevant to the issues raised in this suit against the undersigned Defendants.

10.    On March 12, 2002, no ophthalmologist opined that refitting contacts to his left eye would alleviate McCroy's need for surgery.

**Immaterial.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**Paragraph 10 is not material because it is not true. Paragraph 10 is not a statement but is argumentative in nature. The Plaintiff has already indicated in Paragraph 3 that keratoconus is treated over time as it progresses. Some patients may require contact lenses while others may only be treated with glasses. In other cases, contact lenses may not be sufficient and surgery may be recommended. Defendants assert that the use of the word "need" is inappropriate and argumentative as well. While some patients may not be able to do well with contacts, whether or not a patient ultimately has surgery to treat this condition is another question. Surgery does not always result in improved visual acuity either. Not all patients with keratoconus receive corneal transplants. Not all physicians recommend corneal transplants for all patients who are unable to wear contact lenses. Not all corneal transplants are successful.**

11.     On 3-11-02, 3-19-02, 3-15-02 and 4-1-02 McCroy's appointments with Dr. Kehoe were cancelled by IDOC.

**Immaterial.**

**Mr. McCroy's appointments were canceled on certain dates by the Department of Corrections for various reasons. This is immaterial to the claims against the undersigned Defendants.**

12.     On May 13, 2002, Dr. Plattner of the Kehoe Eye Center indicated that McCroy needed to discontinue wearing a contact lens in his left eye and consider a corneal transplant.

**Material and somewhat disputed.**

**Dr. Plattner's consultation report of May 13, 2002 reads as follows under the plan portion:**

>   **Discontinue contact lens left eye. Consider corneal transplant left eye at inmate expense. Prescription artificial tears x 180 days. Inmate to return to Dr. Anderson _____ for any eye drops. (p. 1305.)**

13.     On May 14, 2002, Dr. Anderson initiated a referral request for corneal transplant.

**Immaterial.**

**With respect to the Defendants in this case, it is immaterial whether or not Dr. Anderson referred the Plaintiff for a corneal transplant. None of the individual Defendants in this case had any involvement in determining whether or not Plaintiff received a corneal transplant. Therefore, the claims against them cannot be based upon this fact.**

14.     On May 16, 2002, the referral request by Dr. Anderson noting that McCroy could no longer tolerate contact lenses was denied without comment.

**Immaterial.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

4

05415-N3293
TMP/ej

**Defendants do not dispute that the referral request initially completed by Dr. Anderson and signed by the Medical Director, Dr. Sims, was denied. This is immaterial to the Defendants in this case as none of the Defendants denied the request.**

15.     On June 17, 2002, McCroy filed a grievance noting that three outside ophthalmologists stated he needed a transplant surgery.

**Immaterial.**

**Whether or not Mr. McCroy filed a grievance on June 17, 2002 is irrelevant to the named Defendants in this case. None of the individual Defendants in this case played any role in determining whether or not the Plaintiff received transplant surgery. As the claims against Wexford are based upon application of the ADA and the Rehabilitation Act, this statement is irrelevant to all parties in this case.**

16.     On August 9, 2002, McCroy filed suit seeking the court to order a transplant.

**Material and undisputed.**

17.     On August 11, 2002, McCroy wrote Warden Hockaday a letter asking him to do something.

**Immaterial.**

**This statement is immaterial as it pertains to the undersigned Defendants and the claims against them in this case.**

18.     Defendant Hockaday acknowledged receipt of the suit on August 23, 2002.

**Immaterial.**

**This statement is immaterial as it pertains to the undersigned Defendants and the claims against them in this case.**

19.     On September 23, 2002, WICC and Wexford Defendants were informed:

> [McCroy] has been intolerant of the contact in his left eye for the past seven to eight years. . . . The vision in the left eye could not be improved by any means. . . . The left cornea showed central apical scarring with approximately 80% loss of corneal thickness.

**Material and disputed.**

**Not all of the Wexford Defendants in this case were informed of this information as the evidence in this case indicates that Dr. Brown did not even begin working at the Western**



HEYL ROYSTER
VOELKER
& ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

Illinois Correctional Center until sometime in 2004. In addition, Dr. Lochard only worked at the Western Illinois Correctional Center for a brief period of time and was not involved in making the decision as to whether or not Mr. McCroy was to receive his corneal transplant. In fact, Dr. Lochard's involvement in this case did not occur until after the transplant had been received. In addition, Nurse Mills, the only other remaining individual Defendant in this case, played no role in determining whether or not Mr. McCroy was to receive his corneal transplant. None of the individual Defendants in this case were apprised of this information.

20.    Dr. Schultz was chosen by Wexford to express the foregoing "second opinion" to Wexford employee, Dr. Sims, Medical Director of WICC.

**Material and disputed**

Dr. Schultz's assistance was sought to evaluate Mr. McCroy. There is no evidence to indicate that Wexford chose him to express a specific opinion. Dr. Schultz evaluated the patient on September 20, 2002. Defendants admit that Dr. Schultz authored a letter on September 23, 2002, which was sent to Dr. Sims, the Medical Director at the Western Illinois Correctional Center. A copy of this letter is attached hereto. (pp. 1321-1322.) Defendants admit that Dr. Schultz authored document dated September 23, 2002. Defendants deny that Paragraph 19 accurately sets forth all of the opinions of Dr. Schultz.

21.    Wexford assigned no optometrist qualified to treat Keratoconus to WICC.

**Immaterial.**

Paragraph 21 suggests that there are optometrists who are qualified to treat keratoconus. While certain aspects of evaluating a patient's eye may be done by an optometrist, treating the actual condition is not usually done by an optometrist. Moreover, Dr. Anderson is not a spokesperson for Wexford.

22.    Wexford assigned no ophthalmologists qualified to fit special contact lenses for Keratoconus patients to WICC.

**Immaterial.**

Wexford provides healthcare staff to correctional facilities pursuant to the terms of its contract. The contract does not require Wexford to assign ophthalmologists to any particular inmate or correctional facility. When it is determined that an ophthalmologist is necessary, referrals are made. Dr. Anderson's deposition, pp. 16 and 17, do not explain anything or provide any information which assists Plaintiff in pursuing his cause of action against the named Defendants in this case.

23.    Wexford assigned no Ophthalmologists qualified to evaluate the need for corneal transplant surgery for patients with Keratoconus to WICC.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**Immaterial.**

**Wexford provides healthcare staff to correctional facilities pursuant to the terms of its contract. The contract does not require Wexford to assign ophthalmologists to any particular inmate or correctional facility. When it is determined that an ophthalmologist is necessary, referrals are made. Dr. Anderson's deposition, pp. 16 and 17, do not explain anything or provide any information which assists the elements of Plaintiff's cause of action against the undersigned Defendants in this case.**

24.      On November 20, 2002 Dr. Feder also recommended a corneal transplant.

**Material and undisputed.**

25.      McCroy received a corneal transplant from Dr. Feder on February 2, 2003.

**Material and undisputed.**

26.      During the period between when a corneal transplant was first recognized as being needed and February 2, 2003, McCroy suffered from hydrops and progressive and painful scarring of the cornea.

**Immaterial.**

**Whether or not Mr. McCroy suffered from hydrops and scarring of the cornea sometime between 2002 and February of 2003 is immaterial to the claims against the undersigned Defendants, who were not even working at the Western Illinois Correctional Center during the time frames referenced. Moreover, Dr. Feder's recommendation for corneal transplant notes that he scheduled Mr. McCroy to receive the transplant first in January of 2003, which was then rescheduled to February 2003 due to medical reasons. These statements, even if true, are immaterial as they do support the elements of the causes of action against any of the undersigned Defendants.**

27.      McCroy filed numerous grievances relating to how he was treated while he was housed in the WICC infirmary both before and after the transplant surgery and before and after he was hit in the eye.

**Material and undisputed.**

28.      Prior to June 8, 2004, McCroy filed grievances pertaining to the WICC security and HCU Supervisors on issues regarding:

    a)      prescription lens cleaner being confiscated;
    b)      prescription lens cleaner not being re-filed (sic);
    c)      refusal to give him a corneal transplant;

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

    d)       appointments with ophthalmologists being cancelled;

    e)       being forced to stay in the infirmary for monitoring and as a result not being able to go to school;

    f)       being forced to wear contact lens that caused pain;

    g)       being given steroid medication in an amount greater than prescribed which resulted in him developing glaucoma;

    h)       being disciplined when he was unable to go to school because of eye pain;

    i)       being forced to submit to medical examinations from unqualified health care professionals, who he had just sued;

    j)       not being allowed to go the law library;

    k)       not being allowed to go to the exercise yard;

    l)       false discipline charges being filed against him;

    m)       being subjected to excessive searches of his personal property;

    n)       not being fitted for contact lens for his right eye;

    o)       having his security level increased;

    p)       not being allowed to shower before going on outside medical appointments;

    q)       restrictions on where he could place his TV;

    r)       and restrictions on when he could go to the commissary.

**Immaterial.**

**To the extent the grievances may relate to the matters set forth in Paragraph 28, subparagraphs a through r, these grievances must have been filed prior to the time the undersigned Defendants were involved in Mr. McCroy's care for the most part. With respect to non-medical issues, the undersigned Defendants have no involvement. With respect to many of the claims, Plaintiff is referencing security issues which do not pertain to the undersigned Defendants. Accordingly, whether or not Mr. McCroy filed these grievances is irrelevant to most, if not all, of the claims filed against the undersigned Defendants. Defendants do not dispute that Mr. McCroy filed grievances.**

29.      All grievances submitted by McCroy on all issues were denied by the IDOC.

**Immaterial.**

**Whether or not any of Mr. McCroy's grievances were denied or were allowed is irrelevant to the claims against the undersigned Defendants.**

30.      Although his name appears on various grievance responses, Defendant Warden Hockaday claims to not have personally reviewed McCroy's grievances.

**Immaterial.**

**Whether or not this statement is true, the information contained therein does not advance any of the claims against the undersigned Defendants.**



HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

31.     Defendant Warden Hockaday designated Defendant Assistant Warden Winters to review McCroy grievances.

**Immaterial.**

**This statement is immaterial as it pertains to the undersigned Defendants.**

32.     After he became Warden, Defendant Witners did not read any of McCroy's grievance and he authorized Assistant Wardens to sign his name.

**Immaterial.**

**This statement is immaterial as it pertains to the undersigned Defendants.**

33.     After he became Warden, Warden Polk abandoned the procedure of allowing others to sign the warden's name and he personally reviewed grievances.

**Immaterial.**

**Whether or not this statement is true, the information contained therein does not advance any of the claims against the undersigned Defendants.**

34.     Defendant Assistant Warden Funk regularly reviewed McCroy's medical related grievances and signed the then warden's name denying the grievances.

**Immaterial.**

**Whether or not this statement is true, the information contained therein does not advance any of the claims against the undersigned Defendants.**

35.     On October 22, 2003, a security reclassification review was conducted and it was noted that McCroy was "ineligible" for transfer to another prison.

**Immaterial.**

**Whether or not Mr. McCroy underwent a security reclassification is immaterial as it pertains to the claims against the undersigned Defendants. Likewise, whether or not Mr. McCroy was eligible for a transfer to another prison is immaterial to the claims against the undersigned Defendants.**

36.     In October of 2003, McCroy was ineligible for a transfer because he was a medical patient in the WICC infirmary.

**Immaterial and disputed.**

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**First, whether or not Mr. McCroy was eligible for a transfer is immaterial with respect to the claims against the undersigned Defendants. In addition, it is disputed that Mr. McCroy was ineligible for a transfer because he was a medical patient in the Western Illinois Correctional Center infirmary. Defendants also dispute that Deb Fuqua indicated or suggested that Mr. McCroy did not receive a transfer because of his status as an inmate in the healthcare at the Western Illinois Correctional Center.**

37.     On November 6, 2003, a written form was submitted to Dr. Zeh asking "from eye point of view need to know if inmate can be moved to general population of the correction center with his impaired vision can he move freely and independently."

**Immaterial.**

**It is undisputed that the referral request form submitted by Dr. Ghosh with the patient when he was transferred to be seen by Dr. Zeh contains the language identified in Paragraph 37. However, whether or not this information is accurate is immaterial to the claims against the undersigned Defendants. Whether or not this information is true does not tend to support any of the causes of action currently pending against the undersigned Defendants.**

38.     Dr. Zeh responded over the phone that McCroy needed to stay in the infirmary because Dr. Zeh did not want him to get poked in the eye.

**Material and disputed.**

**It is undisputed that a telephone conversation took place between Jennifer Blaesing and Dr. Zeh wherein Dr. Zeh must have advised Jennifer Blaesing that the patient was to stay in the infirmary "for now." Paragraph 38 does not make reference to November 6, 2003 in the body of the statement. Moreover, Paragraph 38 does not contain the additional language as noted in the progress note "for now."**

39.     Dr. Zeh specifically asked that McCroy be "kind of isolated to a place where he would not be, you know, inadvertently jostled or struck or anything like that."

**Immaterial.**

**The statement contained in Paragraph 39 is not material to the claims against the undersigned Defendants as Plaintiff does not give a time reference with respect to when this statement was given and as to how it should be applied. Dr. Zeh did not say that Mr. McCroy needed to be isolated indefinitely. This statement is taken out of context and therefore is not relevant to the undersigned Defendants as to any issues pending against them.**

40.     On November 21, 2003, Nurse Blaesing placed a follow-up call to Dr. Zeh and then noted that McCroy could be placed in seg (single cell).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**Material and undisputed.**

41.    On November 21, 2003, Defendant Nurse Mills discharged McCroy from the infirmary to a "single cell in segregation."

**Material and undisputed.**

42.    After November 21, 2003, Defendant Mills claims "Security" was "calling the shots" as to where McCroy was to be housed.

**Material and undisputed.**

43.    On November 29, 2003, McCroy was given the status of "Medically Unassigned" for a period of one year by Defendant Dr. Lochard with the status to be evaluated in January of 2004.

**Immaterial.**

**Mr. McCroy was given a medically unassigned status as he was visually challenged and was somewhat still recuperating from his surgery of February of 2003. As Dr. Lochard also testified in his deposition, being medically unassigned means that the inmate is not required to work while incarcerated.**

44.    No "medically unassigned" status evaluation occurred in January of 2004.

**Immaterial.**

**Whether or not Mr. McCroy was deemed no longer to be medically unassigned is immaterial to the causes of action filed against the undersigned Defendants. Whether or not Mr. McCroy was medically unassigned is not evidence of deliberate indifference to any of Mr. McCroy's serious medical needs.**

45.    Dr. Lochard never personally examined McCroy and he was not physically present at WICC.

**Material and undisputed.**

46.    On January 23, 2004, a nurses note indicated McCroy is housed in the infirmary "per Warden".

**Material and undisputed.**

47.    On March 8, 2004, a nurses note indicates McCroy was housed in the infirmary "per security".

**Material and undisputed.**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

48.    The "per security" notation appears in medical records in March, April and May of 2004.

**Material and undisputed.**

49.    On March 2, 2004, a transfer report notes McCroy is housed in general population.

**Material and undisputed.**

50.    On June 7, 2004, McCroy filed two grievance regarding issues he had with placing a TV in the infirmary and not being allowed to go to the commissary.

**Immaterial.**

**Whether or not Mr. McCroy filed grievances regarding the placement of his television while in the infirmary is irrelevant to the causes of action against the undersigned Defendants.**

51.    On June 8. 2004, Defendant Dr. Brown wrote an order transferring McCroy to the general population and McCroy was removed from the infirmary.

**Material and undisputed.**

52.    On June 8, 2004, Dr. Anderson noted that McCroy had a lifetime restriction of no weight lifting "over five pounds".

**Immaterial.**

**Dr. Anderson is not a medical physician.  Moreover, Dr. Anderson is no longer a defendant in this case.  Whether or not Dr. Anderson recommended a lifetime restriction of no weight lifting is not relevant to the claims pending against the undersigned Defendants.**

53.    The last time prior to June 8, 2004 that Dr. Brown examined McCroy was March 30, 2004.

**Material and disputed.**

**Defendants would agree that Dr. Brown may not have made any medical progress notes in the Plaintiff's charts between March 30, 2004 and June 8, 2004.  However, prior to his discharge, Dr. Brown would have observed Mr. McCroy in the infirmary even though he was not actually examined.**

54.    McCroy was seen by Dr. Zeh on May 21, 2004 and Dr. Zeh recommended another lens fit. Dr. Zeh was not asked whether McCroy could be released into general population.

**Material and undisputed.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

55.    Dr. Brown did not ask Dr. Zeh or any ophthalmologists whether it was safe to move McCroy to general population.

**Material and undisputed.**

56.    McCroy did not want to be moved into general population and filed a grievance about the move.

**Material and disputed.**

**The grievance pages attached to Plaintiff's motion labeled Exhibits B22 and 23 do not seek as part of their relief that the Plaintiff be moved back into the healthcare unit, but actually seek to be moved to another facility where he may receive different medical care and would like to receive a 2800 calorie diet.**

57.    Sometime in late August or September, 2004, Inmate Durham was placed in the same cell as McCroy.

**Material and undisputed.**

58.    Before being placed with McCroy, Durham was returning from segregation for fighting his previous cell mate.

**Immaterial.**

**The undersigned Defendants had no knowledge of Mr. Durham's history of violence prior to Mr. Durham being assigned a cell with Mr. McCroy. Whether or not Mr. Durham had been placed in segregation for fighting before being placed with Mr. McCroy is irrelevant to the undersigned Defendants as they had no knowledge of this information.**

59.    While he was in segregation, Durham was also involved in an altercation.

**Immaterial.**

**The undersigned Defendants had not knowledge of Mr. Durham's history of violence prior to Mr. Durham being assigned a cell with Mr. McCroy. Whether or not Mr. Durham had been placed in segregation for fighting before being placed with Mr. McCroy is irrelevant to the undersigned Defendants as they had no knowledge of this information.**

60.    On September 23, 2004, McCroy was hit in the eye by Durham.

**Material and undisputed.**

**HEYL ROYSTER VOELKER & ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

13

05415-N3293
TMP/ej

61.    On or about September 22, 2004, McCroy told Defendant Law that Durham was violent and asked that Durham be moved.

**Immaterial.**

**Whether or not Mr. McCroy advised others, including Defendant Law, that he would like Mr. Durham to be moved is not material to the claims against the undersigned Defendants as they had no knowledge of this information prior to September 23, 2004.**

62.    On September 22, 2003, Defendant Kellerman told McCroy to be careful around Durham.

**Immaterial.**

**Whether or not Mr. McCroy advised others, including Defendant Law, that he would like Mr. Durham to be moved is not material to the claims against the undersigned Defendants as they had no knowledge of this information prior to September 23, 2004.**

63.    Besides filing grievances, McCroy has complained in writing to IDOC officials to include the Director, Deputy Director and Medical Director about how he was treated at WICC.

**Immaterial.**

**Defendants do not dispute that Mr. McCroy has complained in writing about the Director, Deputy Director, and Medical Director. Mr. McCroy's complaints have no bearing on the claims against the undersigned Defendants with respect to the claims of deliberate indifference. Defendants admit that such may be relevant with respect to any claim of retaliation.**

64.    On October 29, 2003, McCroy was awakened and told he needed depart in 10 minutes for a medical appointment.

**Immaterial.**

**It appears that this statement is true; however, this statement is immaterial as to the claims against the undersigned Defendants.**

65.    The reason given for the short notice to get ready for the October 29, 2003 appointment was "security".

**Immaterial.**

**Again, this statement appears to be accurate; however, as it pertains to the undersigned Defendants, it is not relevant to the issues pending against them.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

66.    No rule prevents the IDOC from waking up an inmate early enough so he can take a shower before an outside medical appointment.

**Immaterial.**

**Whether or not there is a rule which prevents the IDOC from waking an inmate up early enough so he can take a shower is irrelevant to the claims pending against the undersigned Defendants, and anyone else for that matter. To the contrary, there is no rule which requires the IDOC security to wake an inmate up to allow him time to decide whether or not he would like to take a shower and then to take that shower before he is to be transported to an outside facility, including a medical appointment.**

67.    On October 29, 2003, McCroy started a hunger strike.

**Immaterial.**

**Whether or not Mr. McCroy started a hunger strike is irrelevant to the claims against the undersigned Defendants.**

68.    Because of the October 29, 2003 incident, McCroy received 30 days in segregation.

**Immaterial.**

**Whether or not Mr. McCroy was placed in segregation is immaterial to the claims against the undersigned Defendants.**

69.    After he was returned from segregation and allowed to see his doctor, McCroy was diagnosed with steroid induced glaucoma.

**Material and disputed.**

**Mr. McCroy was diagnosed with steroid-induced glaucoma on November 6, 2003. See Dr. Zeh's medical record of that date. With respect to the statement that after Mr. McCroy was returned from said segregation and allowed to see his doctor, this statement is immaterial and argumentative. There is no relationship or purpose for including this phrase in the statement. The veracity of this phrase is irrelevant to the claims pending against the undersigned Defendants.**

70.    On November 6, 2003, Dr. Zeh prescribed McCroy Maxitrol four times daily for three days.

**Immaterial.**

**Defendants do not dispute that Dr. Zeh wrote a prescription for Mr. McCroy to receive Maxitrol four times a day for three days. With respect to this motion, this statement is**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

15

05415-N3293
TMP/ej

irrelevant as it does not tend to disprove any of the arguments made by the undersigned Defendants and does not tend to prove any of the claims against the undersigned Defendants.

71.    Without consulting with Dr. Zeh, Dr. Lochard approved the giving of Maxitrol for 30 days.

**Material and disputed.**

**First, Paragraph 71 infers that Dr. Lochard was required to consult directly with Dr. Zeh. The facts in this case are that a nurse, Nancy Roberts, transcribed the written prescription received from Dr. Zeh as being a 30-day prescription rather than a 3-day prescription. Dr. Lochard approved Nurse Roberts' recitation of the contents of Dr. Zeh's prescription and no more. This is not evidence of deliberate indifference against Dr. Lochard.**

72.    After getting Maxitrol, McCroy developed steroid induced glaucoma.

**Material and disputed.**

**Mr. McCroy had steroid-induced glaucoma even before he continued to receive the Maxitrol. The reason Mr. McCroy had his Maxitrol discontinued after three days was because his eye pressures were increased at the November 6, 2003 visit with Dr. Zeh. The steroid was switched to Lodimax at the time, as well. Mr. McCroy had been taking Maxitrol consistently since February of 2003. It is not disputed that Mr. McCroy developed steroid-induced glaucoma after receiving Maxitrol, but it is disputed that Mr. McCroy's glaucoma was in any way related to receiving Maxitrol for longer than the three days prescribed on November 6, 2003, as no doctor has specifically correlated the glaucoma with the 27 additional days of Maxitrol.**

73.    Defendant Fuqua claimed the prescription was not clear.

**Immaterial.**

**Ms. Fuqua's grievance notations are not relevant to the claims against the undersigned Defendants.**

74.    During her later deposition, Defendant Fuqua clearly read the prescription into the record.

**Immaterial.**

**Whether or not an individual could read a prescription into the record clearly after having dealt with the issue for approximately three or four years is immaterial and irrelevant to the claims made against the undersigned Defendants and any other Defendant.**

75.    Defendant Fuqua also explained what must be done if there is a question about a prescription.

**Immaterial.**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**Ms. Fuqua's explanation is immaterial to the claims against the undersigned Defendants. There is no testimony or evidence in this case to indicate that anyone who is a defendant in this case had a question about the contents of the prescription at the time that it was reviewed. Moreover, there is no evidence that any of the Defendants actually personally reviewed the actual prescription written by Dr. Zeh. This prescription was entered into the patient's chart by a nurse, Nancy Roberts, who is not a party to this case. Her note was provided to Dr. Lochard for review.**

76.    The court appointed counsel to represent McCroy in March of 2004.

**Immaterial.**

**Counsel is well aware that the Court has appointed counsel to represent Mr. McCroy. This is immaterial to the claims in this case.**

77.    As a result of the incident with Durham, McCroy was disciplined.

**Immaterial.**

**Whether or not Mr. McCroy was disciplined with respect to the incident involving Inmate Durham is irrelevant to the claims made against the undersigned Defendants and to their Motions for Summary Judgment.**

78.    On December 16, 2004, McCroy "failed" a drug test because he was unable to give a sufficient urine sample.

**Immaterial.**

**This statement is immaterial to the claims against the undersigned Defendants.**

79.    After the urine test, McCroy was transferred to a higher security prison, Menard CC.

**Immaterial.**

**This statement is immaterial to the claims against the undersigned Defendants.**

80.    On November 30, 2004 IDOC officials indicated McCroy was legally blind both before and after corneal transplant surgery.

**Material and undisputed.**

81.    In December, 2004, a court appointed doctor, Dr. Kass, recommended a lens fitting for McCroy's right eye.

**HEYL ROYSTER VOELKER & ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**Material and undisputed.**

82.    McCroy did not receive a lens fitting until January 22, 2005.

**Material and somewhat disputed.**

**Defendants do not dispute that Mr. McCroy received a lens fitting in January of 2005. However, Defendants object to the argumentative nature of Paragraph 82 as it suggests a delay caused by one or more of the Defendants.**

**It should be noted, however, that at the time Plaintiff received the recommendation and the request for the lens fitting, he was no longer at the Western Illinois Correctional Center. Accordingly, none of the undersigned Defendants were involved in providing care and treatment to Mr. McCroy at that time other than Wexford, the possible employer of some of the individuals who may have been providing care to Mr. McCroy.**

83.    After January of 2005, IDOC continues to delay and/or not schedule needed lens fittings.

**Material and disputed.**

**Plaintiff's grievance is only evidence of a complaint and is not evidence that the Department of Corrections is delaying and not scheduling needed lens fittings.  In fact, this grievance does not provide evidence that lens fittings are medically needed.**

84.    After losing his left eye, McCroy's ability to wear a contact lens in his right eye was decreasing, making it difficult for him to accomplish even simple tasks.

**Material and disputed.**

**Mr. McCroy is not a physician.  Accordingly, Plaintiff's statement that suggests that Mr. McCroy's inability to wear a contact lens in his right eye is in any way related to the loss of his left eye is unsupported by medical testimony.  Otherwise, there is no dispute that Mr. McCroy continues to suffer from keratoconus in his right eye.  It is undisputed that this is a progressive disease that may affect Mr. McCroy's ability to see.**

85.    McCroy is only able to tolerate wearing a lens to read for about one hour per day and uses a cane.

**Material and undisputed.**

86.    Because of the pressure, McCroy is not allowed to lift more than five pounds.

**Material and undisputed.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

87.    McCroy has been diagnosed as being bi-polar.

**Immaterial.**

**Mr. McCroy's mental health diagnosis of being bipolar is not related to the claims against the undersigned Defendants.**

88.    WICC does not have ADA equipped cells.

**Immaterial.**

**Whether or not the Western Illinois Correctional Center has ADA cells is not material to the claims against the undersigned Defendants as they have no ability to modify the cells at that facility.**

89.    While in the WICC infirmary, McCroy was not given access to employment, school, and facilities to the same extent as able bodied inmates.

**Material and disputed.**

**See document pp. 274 and 275.**

90.    When McCroy was transferred from Menard CC to Pinckneyville CC, his prescribed safety glasses were taken from him and not returned for approximately 15 days.

**Immaterial.**

**When Mr. McCroy was transferred from Menard to Pinckneyville, the undersigned Defendants had no involvement.  Accordingly, the truth or falsity of this paragraph has no relevance to the claims against the undersigned Defendants nor their Motions for Summary Judgment.**

91.    Upon arrival at Pinckneyville CC, McCroy was placed in an ADA cell.

**Immaterial.**

**Whether or not this statement is true is immaterial to the claims against the undersigned Defendants as their care and treatment of Mr. McCroy did not occur at the Pinckneyville Correctional Center.**

92.    On January 9, 2006, Defendant Flagg, a non-doctor, determined McCroy did not meet the criteria for an ADA cell and McCroy was removed.

**Immaterial.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**These events occurred at a facility where none of the Defendants had interactions with Mr. McCroy. Accordingly, these statements are irrelevant to the claims against the undersigned Defendants.**

93.     On January 16, 2006, a doctor gave McCroy written permission for an ADA cell, but McCroy was not moved back in an ADA cell.

**Immaterial.**

**These events occurred at a facility where none of the Defendants had interactions with Mr. McCroy. Accordingly, these statements are irrelevant to the claims against the undersigned Defendants.**

94.     After Defendant Flagg's deposition was taken, McCroy was put back in an ADA cell.

**Immaterial.**

**These events occurred at a facility where none of the individual Defendants had interactions with Mr. McCroy. Accordingly, these statements are irrelevant to the claims against the undersigned Defendants.**

95.     Since being transferred to Big Muddy River CC, McCroy is housed in an ADA cell and he uses a cane.

**Immaterial.**

**These events occurred at a facility where none of the Defendants had interactions with Mr. McCroy. Accordingly, these statements are irrelevant to the claims against the undersigned Defendants.**

96.     IDOC prohibited McCroy from having books on tape and currently denies him participation in an early release program.

**Immaterial.**

**Whether or not someone within the Department of Corrections prohibits Mr. McCroy from having books on tape and whether or not they deny him from participating in an early release program is irrelevant to the claims pending against the undersigned Defendants and is irrelevant to the arguments made in Defendants' Motions for Summary Judgment.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

**B.     ARGUMENT**

20

05415-N3293
TMP/ej

The Plaintiff separates his Response to the Motion for Summary Judgment with respect to the general issues outlined in the counts against the undersigned Defendant. Defendants will address the arguments in the same fashion.

## 1.    **Deliberate Indifference**

With respect to the claims of deliberate indifference, the Plaintiff first references the undersigned Defendants in Paragraph 3. With respect to the subjective components of Paragraph 3, page 10 of Plaintiff's Response to the Motion for Summary Judgment. Plaintiff makes reference to the transfer to general population and lists Defendants Brown and Mills.

In reply to Plaintiff's response with respect to Defendant Mills, the only evidence against Defendant Mills is that Nurse Practitioner Mills signed a discharge order on November 21, 2003 which discharged Mr. McCroy from the healthcare unit so that he could be placed in segregation. This issue was discussed with Dr. Zeh by Nurse Blaesing, the Director of Nurses at the time. Ms. Blaesing had a conversation with Nurse Practitioner Mills prior to the time that the discharge form was completed.

The Plaintiff is alleging that as a result of Nurse Mills' discharge from the healthcare unit and into the segregation cell, Plaintiff suffered some sort injury. However, there is no injury specifically attributable to the discharge summary prepared by Nurse Practitioner Mills. In fact, the second part of Plaintiff's claim is focused upon Dr. Brown, who made an entry in the Plaintiff's medical records on June 8, 2004 directing that Mr. McCroy be returned to the general population. It was not until Dr. Brown made this entry that the patient was actually sent back to the general population. Accordingly, an act of Nurse Practitioner Mills had no relationship to Mr. McCroy being ordered

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

21

05415-N3293
TMP/ej

back into the general population.  Likewise, no injuries can be attributed to any act of Nurse Practitioner Mills in the meantime.

With respect to Dr. Brown's order to allow Mr. McCroy to be placed in the general population, Dr. Brown specifically indicated that there was no medical reason to keep him in the infirmary.

There is no dispute that Mr. McCroy was injured during the time that he was in the general population.  However, the mere fact that he was injured by a cellmate in the general population is not sufficient evidence to suggest that Dr. Brown was deliberately indifferent to a serious medical need of Mr. McCroy.  Mr. McCroy had people around him, both within the healthcare unit and when not in the healthcare unit.  His testimony referenced previously indicates that Plaintiff went to yard and was around other people.  Although he claims to not have had interactions with them, he still was near them and could have been in proximity to this same inmate while in the yard on other occasions. There is no evidence that Dr. Brown, nor anyone else in the healthcare unit, was apprised of any background information of the cellmates with whom Mr. McCroy may or may not have been housed. Accordingly, there is no evidence to support claims against Nurse Practitioner Mills or Dr. Brown with respect to these issues.

Plaintiff specifically makes the argument that the fact that Dr. Brown was unaware of the violent propensities of the Plaintiff's cellmate is not relevant to the claim is inaccurate and misstates the law.  With respect to causes of action for failure to protect, the Plaintiff must show that the Defendants did have specific knowledge.  The same is true with respect to deliberate indifference as the Plaintiff must show that the Defendant has specific knowledge that the Plaintiff was at risk of substantial harm and chose to ignore it.  In this case, there is no such evidence.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

In addition, Plaintiff suggests that Dr. Brown was not qualified to override an order of McCroy's treating ophthalmologist. The only order Plaintiff references is one from November of 2003 in which Dr. Zeh recommends that the patient on November 6, 2003 stay in the healthcare unit "for now." June 8, 2004 is approximately eight months later. In fact, Dr. Zeh had changed his mind only a few weeks later when he advised Director of Nurses Jennifer Blaesing that Mr. McCroy could be transferred to segregation for security purposes.

This issue has already been addressed in the Defendants' Motions for Summary Judgment. Plaintiff was sent out to many eye physicians after he had surgery. To the extent appointments were canceled, these were canceled by individuals other than Dr. Brown. In some instances, Mr. McCroy's delays were attributable to the acts and requests of his physicians at the Springfield Eye Clinic as opposed to anyone associated with the Department of Corrections.

With respect to Dr. Kass's recommendations for a lens fitting, it should be noted that Dr. Kass was never considered a treating physician, but was a court-appointed physician as suggested by the Plaintiff. Dr. Kass did not ever treat Mr. McCroy, but made recommendations based upon one assessment of Mr. McCroy. Within a one month, Mr. McCroy was transferred to the Menard Correctional Center and was provided with a contact lens for his right eye. Plaintiff's references to delays in treatment following surgery appear to be outside the time frame that Dr. Brown was treating Mr. McCroy.

## 2.    Retaliation

Plaintiff makes reference to specific events which he finds could constitute retaliation. There do not appear to be specific references to acts on the part of the undersigned Defendants which are alleged to be retaliation for the exercise of one's constitutional rights. The reference to Nurse Mills

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

is tangential at best.  Defendants see no specific reference to Nurse Mills in this section other than to state that she offered no explanation as to the role of security in McCroy's transfer to the general population.  Plaintiff does not explain how this constitutes retaliation.

The same is true with respect to Dr. Lochard and Dr. Brown.  The Plaintiff makes no arguments or provides any evidence to indicate that either was motivated by Plaintiff's exercise of his constitutional rights.   Accordingly, Defendants are entitled to judgment as a matter of law.  Moreover, there is no suggestion that a different outcome would have occurred had Plaintiff not filed his grievances or exercised his First Amendment rights.

3.     **Failure to Protect**

Plaintiff attempts to state a cause of action for failure to protect against Dr. Brown and others. With respect to Dr. Brown, the Plaintiff is relying on Dr. Brown's order allowing Mr. McCroy to be released from the healthcare unit and transferred to the general population as he found there to be no medical reason why Mr. McCroy needed to remain in the healthcare unit.

The Plaintiff relies upon Dr. Zeh's order of November 6, 2003 wherein his note indicates that he did not want the patient's eye poked out.  However, on November 21, 2003, Dr. Zeh allowed Mr. McCroy to be transferred to segregation and was discharged at that time.  Dr. Zeh's note specifically indicates that he was to be kept away from others "for now."  The "now" was November of 2003. Mr. McCroy was not released from the healthcare unit until eight months later.  It appears that Plaintiff is arguing that he has to be kept away from all inmates at all times for the duration of his incarceration despite his medical condition.  Plaintiff has no evidence to indicate that Dr. Brown or any of the other undersigned Defendants had knowledge of the individuals with whom Mr. McCroy may or may not have been housed.  Mr. McCroy had no complaints with respect to the two other

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

inmates with whom he was housed before being celled with Mr. Durham. This evidence, in and of itself, is sufficient to establish that Mr. McCroy was not at risk from being with a cellmate, but was only at risk of being in a cell with Mr. Durham. Since the undersigned Defendants had no knowledge that Mr. Durham presented a special risk to Mr. McCroy, there can be no claim of failure to protect. See the law referenced in Defendants' Motions for Summary Judgment.

The same arguments are applicable to Rhonda Mills. However, with respect to Nurse Mills, there is no evidence that her discharge from the healthcare unit caused any injury to Mr. McCroy. Mr. McCroy was not put into the general population until June 8, 2004, after Dr. Brown signed off on his release. Nurse Mills was not consulted on this, nor on Mr. McCroy's cell assignments. Accordingly, she had no knowledge or authority sufficient to support such a claim.

4.    **ADA\NRA Claims Defendant IDOC**

The Plaintiff in his Complaint originally referenced Wexford as a Defendant in the claims asserted pursuant to the ADA and the Rehabilitation Act. However, in Plaintiff's Response to the Motions for Summary Judgment, Plaintiff only makes reference to the Department of Corrections. Plaintiff also admits all of the facts set forth in Defendant's Motion for Summary Judgment. Accordingly, as there are no arguments to refute those made by Wexford with respect to these allegations, Wexford is entitled to summary judgment and should be dismissed in its entirety in this matter. As there can be no claims for respondeat superior or vicarious liability, Wexford should be dismissed with prejudice and granted summary judgment.

In addition, Plaintiff appears to be relying on his affidavit attached to the Response to the Motions for Summary Judgment to refute Defendants' statement of undisputed facts. To the extent Plaintiff's affidavit conflicts with his deposition testimony so as to create an issue of fact, Plaintiff's

HEYL ROYSTER
VOELKER
& ALLEN

Suite 575
National City Plaza
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

affidavit should be stricken and disregarded. Using Plaintiff's Affidavit for such purposes is improper.

<u>Darnell v. Target Stores, Inc.</u>, 16 F.3d 174, 177 (7th Cir. 1994.)

Likewise, Defendants adopt the arguments of co-defense counsel as and for their own as they relate to the argumentative and unsupported assertions made by Plaintiff in his Response to Defendants' Motions for Summary Judgment.

Respectfully submitted,

WEXFORD HEALTH SOURCES, INC.; HUGHES LOCHARD, M.D.; LOWELL BROWN, M.D.; and RHONDA MILLS, Defendants,

HEYL, ROYSTER, VOELKER & ALLEN, Attorneys for Defendants,

BY:    /s/Theresa M. Powell
       Theresa M. Powell, #6230402
       HEYL, ROYSTER, VOELKER & ALLEN
       Suite 575, National City Center
       P. O. Box 1687
       Springfield, IL  62705
       Phone: (217) 522-8822
       Fax:    (217) 523-3902
       E-mail:tpowell@hrva.com

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2007, I electronically filed **Reply to Plaintiff's Response to Motions for Summary Judgment** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

Douglas J. Quivey
doug@lprpc.com

Thomas F. Londrigan
tom@lprpc.com

Kelly R. Choate
kchoate@atg.state.il.us

Julie L. Morgan
jlmorgan@atg.state.il.us

Alexandra de Saint Phalle
alex@lprpc.com

and I hereby certify that on September 21, 2007, I mailed by United States Postal Service, the document(s) to the following non-registered participants:

None

/s/Theresa M. Powell
Theresa M. Powell, #6230402
HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, National City Center
P. O. Box 1687
Springfield, IL  62705
Phone: (217) 522-8822
Fax:    (217) 523-3902
E-mail:tpowell@hrva.com

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822