**E-FILED**
Friday, 21 September, 2007  02:54:47 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| AARON MCCROY, #N-51882, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  02-3171 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**IDOC DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC), JULIUS FLAGG, SANDRA FUNK, DEBRA K. FUQUA, DENNIS HOCKADAY, KENNETH KELLERMAN, BYRON LAW, ROGER E. WALKER, JR., and KEVIN WINTERS, by and through their attorney, Lisa Madigan, and in reply to Plaintiff's response [docs 399 and 400] to Defendants' Motion for Summary Judgment, submit the following:

**I.     Plaintiff's additional material facts claimed to be undisputed:**

**Facts 1 - 14** - These facts go to the medical care already being received by Plaintiff. Because the IDOC defendants were not charged with providing medical care, and because Plaintiff was receiving medical care, these facts do not create sufficient factual issues to avoid or defeat any of these Defendants' Motion for Summary Judgment.

**Facts 15 - 26** - These "facts" go to the debate about whether Plaintiff required a corneal transplant.  As stated in Defendants' Motion for Summary Judgment, none of these defendants were in a position to determine whether Plaintiff required a transplant or

whether one would be provided.  Notwithstanding, Plaintiff received a corneal transplant and Plaintiff cannot show any detriment from the delay.

**Facts 27 and 28** - Whether Plaintiff filed grievances does not make his allegations within the grievances true, nor does it create any personal involvement on any particular defendant.  Additionally, it does not impose a duty on any of the defendants to grant the grievances and does not implicate the Constitution if a grievance was written, even if the grievance was denied.  Therefore, unless these facts are more specific and tailored to a specific defendant and incident, the bare fact that Plaintiff was a prolific grievance writer does not defeat the defendants more detailed motion for summary judgment.

**Fact 29** - The fact that "IDOC" might have denied grievances does not create any issue of material fact as to individual defendants.  IDOC is only in the case for injunctive relief and cannot be held liable for failing to grant any particular grievance written by the plaintiff.

**Facts 30 - 34** - These "facts" appear to suggest that it is constitutionally impermissible for a high ranking official to delegate the review and response of grievances. This is not the law, and no liability can attach because a person delegated that responsibility.  Therefore, the mere fact that another individual was asked to review and respond to grievances does not defeat summary judgment for either the defendant delegating or the defendant who actually reviewed the grievances.  Moreover, denying a grievance based on an inmate's dissatisfaction with the abundant medical care he is receiving cannot be the basis for liability under §1983, and cannot defeat the Defendants' Motion for Summary Judgment.

**Fact 35** - The fact that Plaintiff's security classification was changed and he was ineligible for a transfer at that time does not implicate any of these defendants and does not defeat any of these Defendants' Motion for Summary Judgment

**Fact 37 - 40** - Whether Dr. Zeh thought Plaintiff should be housed in any particular area of the prison or with or without a cell mate is immaterial when the Medical Director of the institution determined Plaintiff could have a cell mate (Defendants' Facts 184, 189, 190, 191, and 192), and none of the defendants placed him in general population or assigned his cell mates (Defendants' Fact 159). None of these "facts", even if true, defeat Defendants' Motion for Summary Judgment.

**Facts 41 - 49** - These "facts" do not implicate any of the defendants except to the extent that Plaintiff was allowed to remain in the infirmary longer than he normally would have. Again, none of the defendants determined who would be housed with Plaintiff and there was no medical order from Western Illinois Correctional Center that Plaintiff could not be housed with a cell mate (Defendants' Facts 189, 192). Therefore, these facts, even if true, do not defeat Defendants' Motion for Summary Judgment.

**Fact 50** - Plaintiff's grievance is irrelevant because by the time it was received, the grievance officer, a non-defendant, determined it was moot since Plaintiff was already in general population.

**Facts 51 - 55** - The fact that Dr. Brown released McCroy into general population, whether or not he agreed with Dr. Zeh, bolsters the Defendants' Motion for Summary Judgment.

**Facts 58 and 59** - Inmate Durham's background is irrelevant to the Defendants' summary judgment motion since none of them placed Mr. Durham in a cell with Plaintiff and Plaintiff had no medical restrictions on double celling.

**Fact 60** - This fact is undisputed.

**Facts 61 and 62** - These facts are disputed. However, these facts do not defeat Defendants' Motion for Summary Judgment as Plaintiff admits he never refused housing, even though he was advised that he could do so by both Kellerman (Defendants' Fact 218) and Law (Defendants' Fact 241). Moreover, because there is not constitutional violation by making someone go to segregation in order to protect himself from perceived threat, the fact that Plaintiff was unable to either change cells or get his cellie out of his cell without refusing housing does not rise to the level of deliberate indifference as to Defendants Kellerman and Law, nor does it defeat their qualified immunity defense.

**Facts 64 - 66** - These "facts," regarding Plaintiff not being allowed to take a shower before going to the doctor are irrelevant and do not defeat Defendants' Motion for Summary Judgment.

**Fact 67** - Plaintiff's reactions to any situation, in this case his going on a hunger strike, are irrelevant to whether any of the defendants violated his constitutional rights.

**Fact 68** - Plaintiff's receipt of a disciplinary ticket for refusing a direct order when he refused to go to the doctor without first having taken a shower, is irrelevant to the issue of whether any of these defendants were deliberately indifferent or retaliated against him for some other reason.

**Facts 69 - 72** - These facts are immaterial, as none of the IDOC defendants were involved in taking the Maxitrol order from doctor, transcribing the order or dispensing the Maxitrol (See attached Continued Deposition of Debra Fuqua, pp. 87 - 91[1]).

**Facts 73 - 75** - Any response to a grievance from Defendant Fuqua, after the alleged improper dosage has occurred, is irrelevant to the issue of whether she was deliberately indifferent. Likewise, whether she could clearly read some form of the script shown to her at her deposition or her determination of what steps the dispensing medical personnel should have or could have followed, is also irrelevant to the issues in this case as to defendant Fuqua.

**Fact 80** - Defendants dispute Plaintiff's characterization of the exhibit cited. The grievance response accredited to Defendant Fuqua was that Plaintiff was legally blind even before the injury on September 23, 2004. The gist of the notation was that the loss of vision resulting from the loss of Plaintiff's eye was not great, as Plaintiff's vision was poor even with the corneal graft.

**Facts 81 - 86** -These "facts" regarding when Plaintiff was able to receive his contact lenses after leaving Western Illinois Correctional Center and his current restrictions are irrelevant to the issue of the liability of any of these defendants and does not create any reason for injunctive relief as to "IDOC."

---

[1] This deposition transcript was not available to Defendants when the original motion for summary judgment was filed, as Defendant Fuqua was medically unable to sit for her deposition.

**Fact 87** - McCroy's diagnosis of bi-polar disorder is irrelevant to the issues in this case.

**Fact 88** - Whether Western Illinois Correctional Center has ADA equipped cells is irrelevant as there was never an order that Plaintiff required an ADA cell while at Western or, for that matter, at any other institution.

**Fact 89** - This is not a fact, but a conclusion, and therefore is inappropriate for inclusion as an undisputed fact.

**Fact 92** - This fact is undisputed; however, it does not defeat Defendants' summary judgment, as Dr. Feinerman testified that, while he wrote permission for an ADA cell, McCroy was not required to be in a larger cell because of his disability (Defendants' Fact 353).

**Fact 93** - See response to Fact 92.  Moreover, there is no evidence that any Defendant made the decision to not place McCroy in an ADA cell on January 16, 2006.

**Fact 94** - This fact is irrelevant, as Defendant Flagg was no longer employed at the prison at which Plaintiff was incarcerated when Flagg's deposition was taken.  There was no correlation between the deposition of Flagg at Centralia and Plaintiff's move to an ADA cell at Pinckneyville.  Moreover, the fact that Plaintiff was given an ADA cell proves the Department is going above and beyond to accommodate him.

**Fact 95** - These facts also show the accommodations given to McCroy.

**Fact 96** - Defendants dispute these facts and state they are immaterial to the issues presented in this case.

**II.** **Defendants' Facts disputed by Plaintiff even though the facts directly arise from Plaintiff's sworn deposition testimony:**

**Facts 3, 4, 6, 19, 22, 25, 26, 28, 29, 44, 86, 119, 120, 123, 234, 253, 296, 305, 309, 310, 372.**

### Argument

In disputing these facts based on his own sworn testimony, Plaintiff appears to be attempting to create issues of fact to avoid summary judgment. In some cases, he points to other statements he has made to nullify his previous sworn statements. While he may be able to add additional facts, he should not be able to dispute his own sworn testimony. See Darnell v. Target Stores, Inc., 16 F.3d 174, 177 (7th Cir. 1994). To the extent that Plaintiff is attempting, by affidavit or other testimony to disavow his sworn deposition testimony, these facts should be considered undisputed.

**III.** **Defendants' Facts Plaintiff disputed generally: none of Defendants' Facts as disputed by Plaintiff is sufficient to defeat Defendants' Motion for Summary Judgement.**

### Argument

The fact that Plaintiff disputes Defendant Hockaday's statement that inmates who fear for their safety can refuse housing and be removed from the situation [fact 12] by claiming the inmate would be taken to segregation, does not nullify the fact that in segregation, the inmate would be separated from the alleged risk. Simply because Plaintiff may not like that option does not make it a constitutional violation to require it, and this "dispute" does not defeat Defendants Motion for Summary Judgment.

Plaintiff also claims Defendants' Facts 31 and 34, which detail actions taken by Defendant Fuqua in attempting to clarify whether Plaintiff could receive a corneal transplant

after the transplant recommendation had been denied, is disputed. However, Plaintiff does not so much dispute it as claim a different meaning, i.e. that Dr. Elyea, a non-defendant was merely determining who would pay for transplants in number 31, and challenging the wording rather than the meaning in number 34. This does not negate any actions taken by Defendant Fuqua and does not defeat Defendant Fuqua's Motion for Summary Judgment.

Also relevant to Defendant Fuqua, Plaintiff disputes Defendants' Facts numbers 38 and 39, which are Dr. Elyea, the Agency Medical Director's sworn statement that Defendant Fuqua could not admit or discharge from the infirmary and Dr. Brown, the Western's Medical Director's statement that she could not discharge anyone from the infirmary. Plaintiff disputes these statements because former Warden Winters surmised in his deposition that she could. Notwithstanding that no person, other than Defendant Winters, said Defendant Fuqua could admit or discharge, this dispute is irrelevant since there is no evidence Defendant Fuqua actually discharged or admitted any inmate, including Plaintiff to the infirmary. Moreover, even if that fact became relevant, no reasonable jury could find the Warden, a non-medical person would have more information about this issue than the person charged with running the unit and the person charged with overseeing the entire health care system of the agency.

Plaintiff also disputed Defendants' Facts numbers 58 (regarding emergency grievances), 61 (regarding Winters' involvement in the grievances process as Assistant Warden of Operations), 62 (regarding the duty to review grievances), and 65 (regarding the limits of power a Warden has when reviewing medical grievances). Plaintiff's statement in dispute of number 58 is not a factual dispute, but merely a difference in

interpretation. Plaintiff's "dispute" of Winter's statements about the number of grievances he would normally review cannot be nullified by Plaintiff's broad assertion that whoever was assigned by the Warden would have to review them. Plaintiff's broad interpretation also does not trump the more specific assertion by the defendant about his experiences with reviewing grievances, and Defendant Winters' undisputed facts regarding which grievances he actually reviewed.

In disputing Facts numbers 65, 67, 68, and 69 (in which Defendant Winters testifies as to the limits of power in determining what medical care an inmate can receive or where he should go for outside care), Plaintiff appears to be placing some duty to not only second guess the physicians who are actually examining and treating the inmate, but arguing what these Defendants should or could have done, such as bringing Dr. Elyea in whenever an inmate complains about the medical care he is receiving. This assertion, that they could have done more, when placed in the context of an inmate receiving abundant medical care by in house physicians, as well as specialists, cannot be the basis of liability under the Eighth Amendment and cannot defeat Defendants' Motion for Summary Judgment.

Plaintiff does not dispute the grievances noted in Defendants' Undisputed Facts numbers 75 - 80; however, Plaintiff disputes Defendant Winters' belief that those were the only grievances of Plaintiff's that he reviewed. Plaintiff's basis for this dispute is that Winters could not know how many grievances were delegated. Personal involvement is required for liability under §1983, and a broad allegation that a designee might have reviewed some of the grievances, does not make untrue Defendant Winters' statements in 75 - 80, nor does it defeat his Motion for Summary Judgment.

9

Plaintiff also disputes Defendant Funk's assertion that she was not apprised of Plaintiff's medical care by anyone with medical knowledge, other than that which she received in grievances she reviewed (Fact 105). Also, Plaintiff disputes Defendant Funk's assertions that she was unaware of any particular danger Plaintiff was in and/or any recommendation by an outside physician that he not be housed in general population (Fact 106). Additionally, Plaintiff disputes that medical restrictions are determined by medical personnel in the institution and that no medical doctor at Western recommended McCroy not be housed in general population (Fact 107). Plaintiff disputes Facts 105 and 106 because he states he spoke with Ms. Funk about his medical care. He does not; however, have medical knowledge (so to defeat Fact 105), nor does his assertion that he regularly talked with Funk defeat her specific statement that she did not know of any recommendation he not be housed in general population (so to defeat Fact 106). Finally, Plaintiff disputes Fact 107 by asserting that at some point, Dr. Zeh, an outside Ophthalmologist, recommended Plaintiff needed to stay in the infirmary. What Dr. Zeh did or did not recommend does not impute such knowledge to Sandra Funk, a non-medical defendant, and does not defeat her Motion for Summary Judgment.

Plaintiff disputes Dr. Elyea's sworn testimony that Wexford would determine what ophthalmologist an inmate would go to (Fact 113) because Defendant Fuqua recalls a conversation with Dr. Elyea where Elyea said he told Wexford they would have to provide the transplant. This objection does not make sense. Dr. Elyea's determination that Wexford would have to provide a transplant has nothing to do with the physician who would either perform the transplant or provide any other ophthalmological care.

While Plaintiff claims he disputes Dr. Elyea's testimony that contacts can be used to treat Keractoconus (Fact 114), in reality, Plaintiff is disputing how long *Plaintiff* should have worn contacts.  This dispute is, therefore, about the propriety of care received as opposed to stating that Dr. Elyea's statement is incorrect.

Whether McCroy insisted on going to the yard or not (Fact 195), though disputed, does not defeat the assertion that McCroy went to yard and did not stay in the infirmary for his own safety.  Likewise, Plaintiff's dispute over how many inmates constitute a "whole bunch" according to Nurse Mills' testimony (Fact 196) and whether or not he went to the gym as well as the yard (Fact 207) does not defeat the assertion that Plaintiff chose to go to the yard and that there were other inmates in the yard that could cause harm to his eye. These "disputes" do not defeat Defendants' Motion for Summary Judgment.

Plaintiff disputes Nurse Thompson's statement that no one in health care would have any role in placing an inmate in a particular cell in general population (Fact 213).  The "dispute" is that someone in health care could have given a single cell order or ordered a particular type of cell mate.  However, Plaintiff's dispute of the statement of Nurse Thompson does not negate the truth of her statement and does not create a sufficient factual dispute to defeat the Defendants' Motion for Summary Judgment.

Plaintiff disputes Defendant Law's sworn testimony that Plaintiff never told Law he feared for his safety (Fact 250).  Though this fact is in direct dispute, the additional facts that Plaintiff admitted Defendant Kellerman told him he could refuse housing and go to segregation (Fact 241), and Defendant Law's testimony that refusing housing was the remedy for an inmate's fear for his safety, (Fact 244) does not defeat the Defendants'

Motion for Summary Judgment, when combined with Plaintiff's own failure to take that step to protect himself.

Plaintiff disputes Defendant Flagg's assertion that after January 9, 2006, Defendant Flagg had no occasion to revisit the issue of Plaintiff and the ADA cell (Fact 346), because Plaintiff was moved to an ADA cell after Flagg's deposition.  Despite the fact that Defendant Flagg would be in a better position to determine whether he had looked into an issue or not, the fact that Plaintiff was moved to an ADA cell at Pinckneyville could not logically be attributed to any action or inaction of Flaggs who, by the time he was deposed, was at Centralia.

**IV.    Defendants' Facts deemed by Plaintiff to be irrelevant.**

Several facts cited by Defendants as material, yet asserted by Plaintiff to be immaterial or irrelevant go directly to the subjective knowledge of a particular defendant. These Facts are:  94 (Funk's knowledge of inmates' misuse of the "emergency grievance" system), 108 (Funk's perception that McCroy was continually under the care of physicians for medical concerns and her belief that he was not precluded from being in activities he could physically perform), 187 (Dr. Brown's testimony about the difficulty finding outside physicians because they did not want to treat inmates), 189 (Dr. Brown's belief that Plaintiff did not need to be placed in a single cell or otherwise sheltered), and 192 (Dr. Brown's testimony that there was no medical reason McCroy should not be around other inmates).

Some Facts that Plaintiff claims are irrelevant are material to the determination that the defendants could only do so much with regard to Plaintiff's medical care.  These Facts are:  11 (Defendant Hockaday's testimony that a warden would not make a determination about an outside treating physician) and 102 (Funk's testimony that she could not, as a

result of a grievance, grant an offender relief that wold be contrary to the medical determination already made by physicians caring for the offender).

Other Facts claimed by Plaintiff to be irrelevant go directly to the ADA and/or retaliation claim and are material to determining what amount of accommodation was owed to Plaintiff as a result of his disability. These Facts are: 298 (Plaintiff's acknowledgment that cell coverings are not allowed), 300 (fact that all inmates in the infirmary are required to have a light over their beds on), 347 - 348 (Dr. Feinerman examined Plaintiff at Pinckneyville on January 16, 2006 when he asked for an ADA Cell and knew of his enucleated left eye and Kerotoconus of his right eye), 350 (Dr. Feinerman's determination that Plaintiff did not need a larger cell for his visual problems, rather his opinion was that a smaller cell might be easier for someone who was visually challenged to maneuver in.), 353 (Dr. Feinerman's belief that Plaintiff's disability does not require him to be in an ADA cell), 354 (the larger ADA cell would be required for someone in a wheelchair or for someone who needed the assistance of rails on the wall to get in or out of a chair or on or off of the commode), 355 (Dr. Feinerman's determination that Plaintiff was not in either situation that would require an ADA cell). Finally, Fact 363 (in which Plaintiff saw the physician's assistant but did not complain of frequently hitting his head, as was asserted in Plaintiff's general complaints about the regular, non-ADA cell).

## CONCLUSION

Plaintiff's response, in which he added additional facts, disputed facts and considered some facts irrelevant is insufficient to defeat the Defendants' Motion for Summary Judgment for the following reasons: It is undisputed that Plaintiff received abundant, specialized medical care; his restrictions such as lights over his bed and cell

coverings were restrictions placed on all inmates in the Health Care Unit; he went to the

yard, the law library and the commissary while in the Health Care Unit; he was placed in

a cell with the inmate who harmed him by persons other than the defendants; he had no

medical restrictions to being placed in a cell with another inmate; he knew he could have

protected himself from Mr. Durham by refusing housing, but would not do so; he was never

medically required to be placed in an ADA cell; and cannot dispute that he was unable to

produce urine for a drug screen.   Because all of these facts, and others as cited in

Defendants' Motion for Summary Judgment cannot be disputed, Plaintiff cannot, as a

matter of law, prove his case and the defendants are entitled to summary judgment.

Respectfully submitted,

ILLINOIS DEPARTMENT OF
CORRECTIONS (IDOC), JULIUS FLAGG,
SANDRA FUNK, DEBRA K. FUQUA,
DENNIS HOCKADAY, KENNETH
KELLERMAN, BYRON LAW, ROGER E.
WALKER, JR., and KEVIN WINTERS,

    Defendants,

LISA MADIGAN, Attorney General,
State of Illinois

By:  s/ Kelly R. Choate
     Kelly R. Choate, #6269533
     Assistant Attorney General
     Attorney for Defendants
     500 South Second Street
     Springfield, Illinois  62706
     Telephone:  (217) 782-9026
     Facsimile:    (217) 524-5091
     E-Mail:  kchoate@atg.state.il.us

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

AARON MCCROY, #N-51882,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　-vs-　　　　　　　　　　　　)　　　No.  02-3171
　　　　　　　　　　　　　　　　　)
ILLINOIS DEPARTMENT OF　　　　　 )
CORRECTIONS, et al.,　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　 )

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2007, I electronically filed Idoc Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Thomas Londrigan
Londrigan, Potter & Randle, P.C.
tom@lprpc.com

Douglas J. Quivey
Londrigan, Potter & Randle, P.C.
doug@lprpc.com

Theresa Powell
Heyl, Royster, Voelker & Allen
tpowell@hrva.com

Carl J. Tenney
Hughes, Hill & Tenney, L.L.C.
ctenney@hhtlaw.com

April Gowdy Troemper
atroemper@hrva.com

and I hereby certify that on September 21, 2007, I mailed by United States Postal Service, the document(s) to the following non-registered participant(s):

None

Respectfully Submitted,
 s/ Kelly R. Choate
Kelly R. Choate, #6269533
Assistant Attorney General
Attorney for Defendants
500 South Second Street
Springfield, Illinois  62706
Telephone:  (217) 782-9026
Facsimile:   (217) 524-5091
E-Mail:  kchoate@atg.state.il.us