3:02-cv-03171-HAB-BGC   # 406-2   Page 1 of 6

E-FILED
Friday, 21 September, 2007  02:55:21 PM
Clerk, U.S. District Court, ILCD

8/24/07
Deborah Fuqua
McCroy v. Illinois Dept. of Corrections

```
 1                  UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF ILLINOIS

 3

 4   AARON McCROY,

 5             Plaintiff,

 6   vs.                                   No.  02-3171

 7   ILLINOIS DEPARTMENT OF CORRECTIONS
     et. al.,
 8
               Defendants.
 9

10

11

12

13            CONTINUED DEPOSITION of DEBORAH FUQUA,

14   taken in the above-entitled case before Angela C.

15   Turner, a Notary Public of Sangamon County, acting

16   within and for the County of Sangamon, State of

17   Illinois, at 10:05 o'clock A.M., on August 24, 2007, at

18   3000 Montvale, Springfield, Sangamon County, Illinois,

19   pursuant to notice.

20

21

22
             Baldwin Reporting & Legal-Visual Services
23              Serving Illinois, Indiana & Missouri
             24 hrs   (217)788-2835   Fax (217)788-2838
24                        1-800-248-2835
```



Page 1

8/24/07  McCroy v. Illinois Dept. of Corrections
Deborah Fuqua

```
1         Q    Are you aware of it now when you
2    interpret and read these?
3         A    Yes.
4         Q    Next page is 060.  Does that include an
5    entry made by you?
6         A    On 11/6/03.  Is that?
7         Q    Yes.
8         A    Yes.  That's my handwriting.
9         Q    And was there a question of whether or
10   not this prisoner patient could go on a medical
11   furlough because of the fact that he went on a hunger
12   strike when the prior furlough was cancelled?
13        A    I am not aware of the prior furlough
14   cancelled, but security had a question about it, so I
15   just called Dr. Elyea to clarify.  I wanted to make
16   sure he was able to go out.
17        Q    And normally, if you pick up the
18   telephone and called to seek direction from Dr. Elyea,
19   were you able to contact him either by returned phone
20   call or will he accept your calls?
21        A    Yes.
22        Q    Look at the entries on 061.  Can you tell
23   who made these entries?
24        A    Looks like an R.N.  M. Robert, Roberts,
```

Page 87

8/24/07    McCroy v. Illinois Dept. of Corrections
Deborah Fuqua

1    R.N. made the 11/6/03 entry.

2        Q    And were you ever consulted about this

3    first entry about orders received from Dr. Zeh, one,

4    Maxitrol OS, GID times 30 days then stop?

5        A    No.

6        MS. POWELL:  Object to the accuracy of your

7    interpretation of the records.

8        MR. LONDRIGAN:  I'm not interpreting the record

9    incorrectly.

10        MS. POWELL:  You're reading them incorrectly.  I

11    am objecting to your incorrect --.

12        MR. LONDRIGAN:  All right.  You read them into

13    the record, please don't object though.

14        MS. POWELL:  I can object to her foundation for

15    reading the records.

16        MR. LONDRIGAN:  Yeah, you can object to anything

17    you want.  The question is are you just using up time

18    or are you trying to expedited this?

19        MS. CHOATE:  Now you're using up time, Tom.  Go

20    ahead and read it if you can, Deb.

21        THE DEPONENT:  Am I to read the orders?

22        MR. LONDRIGAN:  Yes.

23        Q    You just came on shift and you walk in

24    here and you're interested in the welfare of the

Page 88

```
 1   patient.  You pick up these notes.  And what do you
 2   read?
 3        A    You realize I wouldn't be doing that,
 4   because I am not a clinical nurse.  I am an
 5   administrative nurse.
 6        MS. POWELL:  I object to the foundation --.
 7        THE DEPONENT:  I can read them for you, but I'm
 8   not a --.
 9        MR. LONDRIGAN:  Q  Will you acknowledge right
10   now that you're not capable of reading and interpreting
11   these notes?  I won't ask you anymore questions if
12   you'll acknowledge that.
13        A    I am not incapable.  But some of this
14   stuff --.
15        Q    Well, then if you weren't incapable, I am
16   asking you to provide me and assist and give me your
17   interpretation based on the fact you are a registered
18   nurse, that you are the supervisor of a health care
19   unit, that you make entries into these records and that
20   you have access to them on a continuous basis.
21        MS. CHOATE:  Tom, I would object to you cutting
22   her off in the middle of her answer to your question.
23   Let her fully answer your question first.
24        MR. LONDRIGAN:  Q  Fully answer my question,
```

Page 89

1    please.

2         A    I am sorry. I forgot the question.

3         Q    I am sure you did.

4              Now, just read what you see here. You
5    just came on shift and it appears that this is what Dr.
6    Lochard was notified. Do I read that right?

7         A    Yes.

8         Q    And these are supposed to be orders
9    received from Dr. Zeh?

10        A    Correct.

11        Q    What's the first line say?

12        MS. POWELL: I just want my objection noted for
13   the record, foundation and relevance.

14             Go ahead and read it.

15        THE DEPONENT: Maxitrol OS, QID times 30 days,
16   then stopped.

17        MR. LONDRIGAN: Q Interpret that for me. What
18   does that mean?

19        A    They're eye drops, but I am not sure. I
20   don't know a lot about it. I just know it's an eye
21   drop and it's to be given four times a day for 30 days.

22        Q    Did you ever see the original
23   prescription?

24        A    No, sir.

Page 90

8/24/07 McCroy v. Illinois Dept. of Corrections
Deborah Fuqua

```
1         Q      Did you ever opine or to anybody else
2    upon request that the doctor's prescriptions, when
3    given, weren't clear?
4         A      No.
5         Q      Anybody ever ask you to do that?
6         A      No.  That wouldn't be routine.
7         Q      Would you look at the entry made on 062?
8                And as a laymen, assuming you just came
9    on shift and you had a particular interest in this
10   case, would you accurately read and interpret the entry
11   for 11/6/03?
12        A      Telephone --.  I don't know.  She's
13   marked out something there.  Order, I guess.  Dr. Zeh
14   for clarification of if McCroy to return to housing
15   unit or the infirmary.  Dr. Zeh stated that offender
16   needed to stay in the infirmary due to weight
17   restrictions.  And also, he doesn't want offenders to
18   -- doesn't want offender to get poked in the eye.  To
19   stay in infirmary for now.  Jennifer Blaesing, R.N.
20               And I don't know what that scratch is.
21        Q      Jennifer Blaesing's official position at
22   that time was the head of nursing?
23        A      Director of nursing, correct.
24        Q      And this represents what she understood,
```

Page 91

Baldwin Court Reporting & Legal Video Services
1-800-248-2835