IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON MCCROY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 02-CV-3171 |
| | ) |
| THE ILLINOIS DEPARTMENT OF CORRECTIONS, ROGER E. WALKER, JR., (in his official capacity only), DENNIS HOCKADAY, KEVIN WINTERS, SANDRA FUNK, DEBORAH FUQUA, LIEUTENANT BRYON LAW, KENNETH KELLERMAN, JULIUS FLAGG, all in their official and individual capacities, WEXFORD HEALTH SOURCES, Inc., Dr. LOWELL BROWN, MD., Dr. HUGHES LOCHARD, MD., and RHONDA MILLS, | ) |
| Defendants. | ) |

## MOTION *IN LIMINE*

Plaintiff, Aaron McCroy, by his attorneys, Londrigan, Potter, & Randle, P.C., prior to trial moves *in limine* to instruct Defendants' counsel not to mention, refer to, interrogate concerning, voluntarily answer, or attempt to convey at any time during these proceedings in any manner, either directly or indirectly, the subject matters as stated below and instruct Defendants' counsel not to make any reference or inference to the fact that this Motion has been filed, argued, or ruled upon, and further that Defendants' counsel be instructed to warn and caution each and every witness under their control to strictly comply with the ruling of the Court on the following matters: 1) Plaintiff's religious beliefs; 2) allegations that Plaintiff is a homosexual and/or engaged in homosexual activity; 3) Plaintiff's use of illegal drugs and related conduct;) HIV and other disease testing on Plaintiff; (5) allegations Plaintiff has Hepatitis C or any sexually transmitted diseases; (6) allegations

Plaintiff uses or has used aliases; (7) Plaintiff's prior lawsuits; and (8) the details of Plaintiff's criminal history.

As grounds for this Motion, Plaintiff states:

**(1)    Plaintiff's religious beliefs;**

Plaintiff's medical records, which were created by Defendants, indicate Plaintiff is a Muslim and his hunger strike was due to this religious philosophy. In 2001, however, Plaintiff converted to Christianity from Islam and has practiced Christianity since that time. (*See*, Pl. Ex. 1, McCroy dep., pp. 91-92). Moreover, evidence of Plaintiff's prior Islamic beliefs, or any religious beliefs for that matter, are irrelevant to any issue in the case and is prejudicial. Accordingly, mention of Plaintiff's religious affiliations are prohibited by Fed.R.Evid. 610 and 403.

Federal Rule of Evidence 610 prohibits a "witnesses' beliefs or opinions on matters of religion when offered for certain purposes pertaining to credibility." This rule is intended to prevent impeachment of a witnesses' credibility based upon his religion. ***U.S. v. Sampol***, 636 F.2d 621, 666 (D.C. Cir. 1980).

In addition, evidence of a witnesses' religious beliefs is barred by FedR.Evid. 403 where the probative value of the evidence is outweighed by unfair prejudice. In ***U.S. v. Rabb***, 394 F.2d 230 (3rd Cir. 1968), the Third Circuit held that the defendant was allowed to affirm outside the presence of the jury to avoid questions on the issue of defendant's religion. In ***Rabb***, as in the case at bar, the defendant was a follower of Islam. The ***Rabb*** court recognized that the defendant was a member of a "minority religion" and an "unpopular religion". *Id.* at 233. ***See also Finch v. Hercules, Inc.***, 1995 WL 785100 (D.Del. 1995) (explaining that evidence that a witness and the plaintiff were Mormons was inadmissible because "even if it is relevant, its probative value is substantially

2

outweighed by the danger of undue prejudice to the plaintiff). Certainly Islam has not become more popular in America since **Rabb** was decided in 1968 and admission of said evidence would be highly prejudicial.

**(2)  Allegations that Plaintiff engaged in homosexual behavior;**

Defendants have referenced hearsay accusations in discovery that Plaintiff is a homosexual and Plaintiff's alleged homosexual tendencies caused or contributed to the incident in which Plaintiff lost his left eye. There is no competent evidence, however, that Plaintiff is a homosexual or ever engaged in homosexual activity. Specifically, although estranged from his wife and incarcerated for a long period of time, Plaintiff is married. Second, IDOC records show that the IDOC did not consider Plaintiff a sexual predator before or after the incident in which he lost his eye. (*See*, Pl. Ex's. 2-5).

Moreover, even if homosexual behavior was somehow relevant, its probative value is substantially outweighed by the extreme prejudice it would inject into this trial. Fed. R. Evid. 403. The prejudicial effect of asserting homosexual conduct greatly outweighs any claimed probative impact. The United States Supreme Court recognized the prejudices expressed against homosexuals in ***Rowland v. Mad River Local School Dist., Montgomery County, Ohio***, 470 U.S. 1009 (1985). According to the Supreme Court, "homosexuals constitute a significant and insular minority of this country's population. Because of the immediate and severe opprobrium often manifested against homosexuals once so identified publicly, members of this group are particularly powerless to pursue their rights openly in the political arena. Moreover, homosexuals have historically been the object of pernicious and sustained hostility, and it is fair to say that discrimination against homosexuals is 'likely...to reflect to deep-seated prejudice

3

rather than...rationality.'" *Id.* at 1014 (internal citations omitted).

In ***Cohn v. Papke***, 655 F.2d 191 (9th Cir. 1981), the Ninth Circuit reversed the district court's decision and awarded plaintiff a new trial because the district court abused its discretion by allowing evidence of plaintiff's homosexuality into evidence. *Id.* at 194. The Court noted that there was a "clear potential" the jury may have been "unfairly influenced" by whatever biases and stereotypes they may have held pertaining to homosexuality. *Id.* at 195. ***See also U.S. v. Gillespie***, 852 F.2d 475 (9th Cir. 1988) (explaining that it was error to admit evidence from which the jury could infer Defendant was a homosexual because evidence of homosexuality is "extremely prejudicial"); ***Tinker v. US***, 417 F.2d 542, 545 (D.C. Cir.. 1969) ("noting that "[e]ven where testimony of that sort has some tendency to connote motivation, any exercise of judicial discretion worthy of the name necessitates consideration of these adverse effects. Here, the proffered evidentiary items could have legitimately added little to appellant's substantial presentation while their illegitimate propensities looked large."); ***Wilson v. Maricopa County***, 2007 WL 686726 (D. Ariz. 2007) (excluding evidence of plaintiff's homosexuality because it was "unfairly prejudicial" and may tend to "confuse the jury").

The first person to suggest that McCroy ever engaged in homosexual conduct was his cell mate, Durham, <u>after</u> he punched out his eye. There were no witnesses to this incident and McCroy denied Durham's claim that he kissed or attempted to kiss his assailant. Philip Crary, IDOC's Internal Affairs Investigations Officer, simply accepts Durham's account:

> A   Mr. Durham says in his statement, and I believe, and I can't quote it for a fact, unless you really want me to, that McCroy had come up and kissed him on the lips. And that's what started the argument.

(Pl. Ex. 6, Crary Dep., pp. 16-17).

4

To bolster Durham's allegation, Wexford's HCU employees began to circulate rumors that McCroy "tried to kiss" another unnamed prisoner. Defendant Dr. Brown, the former WICC Medical Director, reinforced the homosexual allegation in his deposition.

> Q. Okay. What was Aaron McCroy notorious for in the prison, according to your understanding?
>
> A. Well, notorious might be too strong a word, but let's say he was well known. But I believe there was some talk, and this is hearsay, of some sexual hostility or aggressiveness. I understood that he was supposed to have put his arms around and kissed Durham provoking the attack.
>
> Q. Do you know of anyone that claimed that other than Durham, his assigned cellmate?
>
> A. No, I don't.
>
> Q. Have you ever looked at Aaron McCroy's records in the number of years he's been at this institution and other institutions as to whether or not there was ever any indications that he was a predator?
>
> A. I don't know that. I don't know it.[1]
>
> Q. Other than the rumor that you heard, which came from an assailant in this case that caused the loss of his eye, have you ever reviewed any of this records to find out if he was a person of violence who had ever been in any fight before?
>
> A. No, I didn't do that.
>
> Q. Or whether or not he even had homosexual tendencies? There are those records that are kept in this institution, aren't there?
>
> A. Well, I had heard one other story somewhere that he did the same type of thing to somebody else.
>
> Q. An who told you that story?

---

1 See discussion and exhibits cited herein at p. 2-3.

> A. Am I obliged to divulge the name of my source?
>
> Q. Yes.
>
> A. Cathy Ashcraft.
>
> (Pl. Ex. 7, Brown Dep., pp. 56-57).

***

> Q. ... you talked about some office gossip from a Nurse Ashcraft, and you said that she said he had done the same thing to someone else, and that wasn't clear. Do you mean that McCroy had done the same thing, allegedly tried to kiss someone else, or the other inmate had tried to harm someone else? What was your conversation with Ashcraft?
>
> A. No. He kissed someone else.
>
> Q. That McCroy had done the same thing he was alleged to have done to Durham?
>
> A. Yes.
>
> Q. And did this conversation take place after the fight with Durham, if you recall?
>
> A. What now?
>
> Q. The conversation with Ashcraft, with Nurse Ashcraft.
>
> A. It took place quite recently.
>
> (Pl. Ex. 7, Brown Dep., pp. 65-66).

Recent allegations McCroy may be a homosexual occurred only <u>after</u> the incident and are inadmissible hearsay. "Hearsay is a statement other than one made by the declarant by testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801. These allegations stem from the aforementioned conversation between Dr. Brown and Nurse Ashcraft after the fight and from IDOC Internal Affairs Investigative Officer, Philip Crary

who simply repeats the explanation Durham gave for the fight.[2]

The allegations that Plaintiff provoked the fight with Durham stem solely from Durham's statements to prison officials <u>after</u> the fight. Durham has not be named by either side as a witness. Following the incident, McCroy was in no condition to fight and was trying to avoid a fight to protect his sight. Durham, on the other hand, was a disturbed and violent young prisoner just released from segregation for fighting. 7/24/02 Psychologist Report for Brandon Durham prepared by IDOC employee, Dr. Richard Ibe (Pl. Ex. 8); 7/30/03 IDOC Internal Classification Form for Brandon Durham (Pl. Ex. 9); 1/23/03 Hearing Incident Report of Brandon Durham (Pl. Ex. 10); 1/28/03 IDOC Disciplinary Report of Brandon Durham (Pl. Ex. 11); 2/4/03 IDOC Final Summary Report of Brandon Durham (Pl. Ex. 12); 3/11/04 IDOC Disciplinary Report of Brandon Durham (Pl. Ex. 13); 3/17/04 IDOC Final Summary Report of Brandon Durham (Pl. Ex. 14); 3/24/04 IDOC Transfer Report Regarding Brandon Durham (Pl. Ex. 15); 6/4/03 IDOC Disciplinary Report of Brandon Durham (Pl. Ex. 16); 7/25/04 IDOC Disciplinary Report of Brandon Durham (Pl. Ex. 17); 8/2/04 IDOC Incident and Disciplinary Report of Brandon Durham (Pl. Ex. 18); 8/5/04 IDOC Final Summary Report of Brandon Durham (Pl Ex. 19); IDOC Disciplinary Card of Brandon Durham from 1/1/98 through 9/24/04 (Pl. Ex. 20).

Self-serving hearsay statements were made by Durham to avoid the consequences of his assault. "Hearsay is a statement other than one made by the declarant by testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay statements that do not fit within a recognized exception to the hearsay rule are

---

2 These hearsay rumors were also volunteered by Barb Bowers, who stated off the record the same hearsay from Nurse Ashcraft. Ashcraft is not listed as a witness in this case.

7

inadmissible. ***Doe v. U.S.***, 975 F.2d 1071 (7th Cir. 1992). The self-serving statements made by Durham to prison officials about the incident were not made at a trial or a hearing, were not made under oath, and do not fit within any recognized exception to the hearsay rule. Finally, hearsay allegations that Plaintiff instigated a fight by kissing his assailant on the lips do not have any indicia of reliability and should be excluded as irrelevant and prejudicial hearsay. Again, Durham has not been named as a witness. Moreover, even if he was a witness, the prejudice would outweigh the probative value.

(3)    **Allegations of illegal drug use;**

Defendants have indicated through discovery that Plaintiff failed drug tests while incarcerated. Evidence or allegations pertaining to Plaintiff's alleged drug use is wholly irrelevant to the issues of this case and is prejudicial. Allegations that Plaintiff failed prior drug tests is irrelevant because it does not make it more or less probable that Plaintiff was retaliated against, subjected to the deliberate indifference to his medical needs or conditions of confinement, denied the rights guaranteed to him by the Americans with Disabilities Act (ADA) or Rehabilitation Act (RA), or any other issue in the case.

In ***Alexander v. CIT Technology Financing Services, Inc.***, 217 F.Supp.2d 867, 882 (N.D. Ill. 2002), the court held that allegations of alleged use of alcohol or drugs was irrelevant where the evidence did not "have any tendency to make it more or less probable that Alexander was subjected to harassment, discrimination or retaliation." ***Id.*** The same rational applies to the facts in this case. ***United States v. Cameron***, 814 F.2d 403, 405 (7th Cir. 1987) (explaining that "there is considerable danger that evidence that a witness has used . . . drugs may . . . prejudice the jury. . . .").

Evidence of Plaintiff's prior drug use or failed drug tests is also not admissible under

Rule 404(b). To be admissible under Rule 404(b), the evidence must satisfy a four-part test. *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771 (7th Cir. 2001). Under this four-part test, the evidence must be (1) directed toward establishing "something at issue"; (2) similar enough and close enough in time to be relevant; (3) "such that the jury could find that the act occurred and the party in question committed it"; and (4) "the prejudicial effect of the evidence must not substantially outweigh its probative value." *Id*. at 776-777. Whether Plaintiff previously used drugs or failed prior drug tests while incarcerated is wholly irrelevant to the issues in this case. Such evidence does not tend to make the existence or non-existence of a material fact more true or less true, nor does the evidence go to anything "at issue". This evidence fails the first-prong of the four-part test, and, subsequently is inadmissible.

Even if there were some probative value to evidence of prior drug use, this evidence would still fail part four of the four-prong test above because any probative value would be outweighed by the prejudicial impact that evidence would have on the jury. *Buffone v. Rosebud Restaurants, Inc.*, 2006 WL 2425327 (N.D. Ill. 2006) (granting Motion in Limine with respect to evidence of drug use because the probative value is substantially outweighed by the danger of unfair prejudice).

(4)    **HIV and other disease testing;**

Plaintiff's medical records that were produced and maintained by Defendants indicate Plaintiff was tested for HIV and other diseases while incarcerated. HIV testing is irrelevant to any issues in the case and should be kept confidential. That fact Plaintiff was tested for HIV or other conditions unrelated to his eye condition is wholly irrelevant and has no bearing on the issues brought before the court in this case. Despite the fact that Plaintiff has never tested positive for HIV, HIV status and HIV testing carries a social stigma. For this reason, HIV testing

has been determined to be confidential medical information. ***Pisciotti v. County of Wayne***, 76 F.Supp.2d 307 (W.D.N.Y 1999). While the right to confidentiality of medical records is not a fundamental right, it exists as a conditional or qualified right when the government's interest in using the information does not outweigh the patient's interest in maintaining confidentiality. *Id.* at 309-310. The privacy of a person's medical condition also varies with the nature of the illnesses or injuries involved. ***Powell v. Schriver***, 175 F.3d 107 (2nd Cir. 1999). With regard to HIV, there is an "unfortunately unfeeling attitude among many in this society toward those coping with the disease." *Id.* at 112. The fact that Plaintiff has never tested positive for HIV does not erase the stigma that infers either intravenous drug use or homosexual conduct. The right of confidentiality applies to prisoners because these rights are not inconsistent with "their status as prisoners." *Id.* at 112. "The gratuitous disclosure of an inmate's confidential medical information as humor or gossip-the apparent circumstance of disclosure in this case-is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy." *Id* at 112. Moreover, admission of said evidence is also highly prejudicial.

**(5)    Allegations Plaintiff has Hepatitis C or any sexually transmitted diseases;**

Plaintiff's medical records created, maintained, and produced by Defendants indicate that Plaintiff has Hepatitis C --he has had it since before being incarcerated-- and possibly other diseases that could be sexually transmitted diseases. Allegations of these diseases are unrelated and irrelevant to Plaintiff's keratoconus condition, the treatment of same, and the allegations raised in Plaintiff's complaint. Assuming arguendo such allegations had any probative value, the probative value would be substantially outweighed by the prejudicial effect of the allegations. Accordingly, Defendants should not be allowed to bring forth evidence that Plaintiff suffers

from Hepatitis C or any other medical condition not at issue.

**(6)    Allegations Plaintiff uses or has used aliases;**

Plaintiff has used aliases in the past. However, evidence of Plaintiff's allegations are irrelevant to the issues of this case and any probative value would be substantially outweighed by the prejudicial effect same would have on the jury.

Allegations that Plaintiff has used aliases has no bearing on the issues of this case and does not tend to make a fact of consequence more or less true. Subsequently, such allegations are irrelevant and inadmissible pursuant to Fed.R.Evid. 402. Even if such allegations had probative value in this case, the probative value would be substantially outweighed by the prejudicial impact and the allegations should be excluded under Fed.R.Evid. 403.

**(7)    Plaintiff's Prior lawsuits;**

Plaintiff has filed several *pro se* lawsuits in both Federal and State court. Evidence concerning Plaintiff's prior lawsuits is inadmissible under Fed. R. Evid. 404(b) and 403. Federal Rule of Evidence 404(b) provides a four-part test for determining admissibility: (1) evidence of the prior lawsuits must go toward proving an issue before the court; (2) the prior lawsuits must be closely related in substance and time to be relevant to the issues of the case; (3) "the evidence must be such that the jury could find that the act occurred and the party in question committed it;" and (4) the probative value of the evidence, if any, must not be substantially outweighed by its prejudicial effect. ***Mathis v. Phillips Chevrolet, Inc.***, 269 F.3d 771 (7th Cir. 2001) (explaining that evidence of Plaintiff's prior lawsuits was inadmissible.).

Even if there were some probative value to evidence of Plaintiff's prior lawsuits, that probative value would be substantially outweighed by its prejudicial effect. This alone would render the evidence inadmissible under Fed.R.Evid. 404(b) and 403. ***Mathis***, 269 F.3d at 777.

11

"The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent." *O'Hare Truck Services, Inc. v. City of Northlake*, 1999 WL 528485 (N.D. Ill. 1999); **See also** *Outley v. City of New York*, 837 F.2d 587 (2nd Dist. 1988)("Litigiousness is the sort of character trait with which Rule 404(b) is concerned.").

### (8) Details of Plaintiff's Criminal History

Plaintiff has stipulated that he is in the custody of the department of corrections. Thus, the only basis for his criminal history to be at issue is via Fed. R. Evid. 609. Pursuant to Fed. R. Evid. 609, the specifics of convictions should not be admitted and only the date, nature, and fact of conviction is admissible. ***United States v. Robinson***, 8 F.3d 398, 409-10 (7th Cir. 1993). Accordingly, the facts of Plaintiff's criminal convictions should be limited to the date, May 10, 1993, and nature, burglary.

## CONCLUSION

Interrogation of witnesses or suggestion there is evidence concerning any of the matters specified in sub-paragraphs 1-8 would be extremely prejudicial to Plaintiff. Even if the Court sustained objections to such questions, statements, and evidence in the presence of the jury, it would not prevent the prejudicial effect.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Order that counsel for Defendants may not mention, refer to or imply the existence of the matters set forth in sub-Paragraphs 1-8 above.

2. Order that counsel for Defendants instruct Defendants' witnesses that they may not at any time mention or refer to the matters set forth in sub-paragraphs 1-8 above.

Respectfully submitted,

AARON MCCROY, Plaintiff


By: s/Thomas F. Londrigan
THOMAS F. LONDRIGAN, Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com

**Certificate of Service**

The hereby certify that on October 15, 2007, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification to such filing to the following;

Ms. Theresa Powell
Heyl, Royster, Voelker & Allen
National City Center, Ste. 575
1 North Old State Capitol Plaza
PO Box 1687
Springfield, IL 62705-1687

Lisa Madigan, Illinois Attorney General
Attn: Kelly Choate, A.A.G. &
Julie L. Morgan. A.A.G.
500 South Second Street
Springfield, IL 62706

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Aaron McCroy,#N51882
Receiving Cell 15
P. O. Box 900
Ina, IL 62846

By: s/Thomas F. Londrigan
THOMAS F. LONDRIGAN, Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com