3:02-cv-03171-HAB-BGC     # 419-7     Page 1 of 3
2/2/07                    McCroy vs. Illinois Dept. of Corrections
Philip Crary

E-FILED
Monday, 15 October, 2007  03:01:54 PM
Clerk, U.S. District Court, ILCD

## Page 1

```
 1                 UNITED STATES DISTRICT COURT
 2             FOR THE CENTRAL DISTRICT OF ILLINOIS
 3                    SPRINGFIELD DIVISION
 4
 5     AARON McCROY,
 6               Plaintiff,
 7          vs.                        No. 02-3171
 8     ILLINOIS DEPARTMENT OF
       CORRECTIONS, et al,
 9
               Defendants.
10
11
12
13          THE DEPOSITION OF PHILIP CRARY, taken in
14     the above-entitled case before Debra K. Baldwin, a
15     Notary Public of Sangamon County, acting within and
16     for the County of Brown, State of Illinois, at
17     11:15 o'clock A.M., on February 2, 2007, at Western
18     Illinois Correctional Center, Mt. Sterling, Brown
19     County, Illinois, pursuant to notice.
20
21
22
               Baldwin Reporting & Legal-Visual Services
23                Serving Illinois, Indiana & Missouri
           24hrs (217)788-2835   Fax (217)788-2838
24                    1-800-248-2835
```

## Page 2

```
 1     APPEARANCES:
 2          LONDRIGAN, POTTER & RANDLE
            BY:  Thomas F. Londrigan, Esq.
 3               1227 South Seventh Street
                 Springfield, Illinois 62703
 4               On behalf of Plaintiff.
 5          MS. KELLY CHOATE
                 Assistant Attorney General
 6               500 South Second Street
                 Springfield, Illinois 62706
 7               On behalf of Defendant Illinois
                 Department of Corrections.
 8
            HEYL, ROYSTER, VOELKER & ALLEN
 9          BY:  Ms. April Troemper
                 Attorney at Law
10               National City Bank Building, Suite 575
                 Springfield, Illinois 62701
11               On behalf of Defendant Wexford.
12          HUGHES, HILL & TENNEY, LLC.
            BY:  Carl J. Tenney, Esq.
13               236 North Water Street
                 Decatur, Illinois 62525
14               On behalf of Defendant Doctor David
                 Anderson.
15
16     ALSO PRESENT:
17          Ms. Paula Gentry
            Londrigan, Potter & Randle
18
19
20
21
22
23
24
```

## Page 3

```
 1                      I N D E X
 2     DEPONENT                           PAGE NUMBER
 3     Philip Crary
 4          Examination by Mr. Londrigan      5, 27
            Examination by Ms. Choate          24
 5
 6
 7
 8
 9
10
11              E X H I B I T S
12     NUMBER                   MARKED FOR IDENTIFICATION
13     (None.)
14
15
16
17
18
19
20
21
22
23
24
```

## Page 4

```
 1               S T I P U L A T I O N
 2          It is stipulated and agreed, by and
       between the parties hereto, through their
 3     attorneys, that the deposition of PHILIP CRARY may
       be taken before Debra K. Baldwin, a Notary Public
 4     and Certified Shorthand Reporter and Registered
       Professional Reporter, upon oral interrogatories,
 5     on the 2nd of February A.D., 2007, at the instance
       of the Plaintiff at the hour of 11:15 o'clock A.M.,
 6     Western Illinois Correctional Center, Mt. Sterling,
       Brown County, Illinois;
 7
 8          That the oral interrogatories and the
       answers of the witness may be taken down in
 9     shorthand by the Reporter and afterwards
       transcribed;
10          That all requirements of the Federal
       Rules of Civil Procedure and the Rules of the
11     Supreme Court as to dedimus, and the reading over
       and signing of the deposition by the witness, are
12     expressly waived;
13          That any objections as to competency,
       materiality or relevancy are hereby reserved, but
14     any objection as to the form of question is waived
       unless specifically noted;
15
16          That the deposition, or any parts thereof
       may be used for any purpose for which depositions
17     are competent, by any of the parties hereto,
       without foundation proof;
18          That any party hereto may be furnished
       copies of the deposition at his or her own expense.
19
20
21
22
23
24
```

Baldwin Court Reporting & Legal Video Services
1-800-248-2835



PLAINTIFF'S
EXHIBIT
6

3:02-cv-03171-HAB-BGC    # 419-7    Page 2 of 3
2/2/07
Philip Crary                          McCroy vs. Illinois Dept. of Corrections

Page 13

1      A    I don't think that that would be
2  annotated unless it was in an incident report by an
3  officer saying that they did do that. There would
4  be no record, sir.
5      Q    Are you aware of any photographs that
6  were taken the night of this fight?
7      A    No, sir.
8      Q    "Are you aware of any rule or regulation,
9  absent what you did and what your responsibilities
10  were, that say that this evidence should be
11  preserved, and by that I mean taking photographs
12  and preserving those photographs and the negatives
13  of those photographs?
14     A    I can't answer that off the top of my
15  head. That one I couldn't tell you. I don't believe
16  so. I don't believe that there's a departmental
17  rule on certain circumstances that tells you
18  evidence, and they use that in a broad sense.  One
19  person's view of evidence might be different from
20  the other person's view of evidence.
21     Q    Well, for instance, do you believe
22  contemporaneous or near to contemporaneous
23  photographic evidence to be important evidence to
24  preserve?

Page 14

1      A    Yes. Definitely.
2      Q    And were the only pictures that you're
3  aware of that were taken, pictures that were taken
4  by you the following morning?
5      A    That's the only ones I'm aware of. If
6  there's other pictures out there, I do not know of
7  them. I do not have them.
8      Q    As part of your investigation, I assume
9  you became aware of preexisting health risks that
10  McCroy had with respect to his eye?
11     A    Yes. When I started investigating, yes.
12     Q    While you were conducting your
13  investigation, did you determine, or attempt to
14  determine, who was responsible for placing McCroy
15  in the general population?
16     A    No, sir.
17     Q    While you were conducting your
18  investigation, did you look in to the prior
19  criminal history and also the history of fighting
20  and confrontation and altercation of the cellmate
21  Durham while he was in the custody of the
22  department of corrections?
23     A    No, sir.
24     Q    So, as you sit there today, you are not

Page 15

1  aware of that?
2      A    No, sir.
3      Q    And no one volunteered that to you at the
4  time you were conducting your investigation and you
5  issued the citations?
6      A    No, sir.
7      Q    Did you arrive at a personal conclusion
8  as to who initiated this fight? By that I don't
9  mean the argument itself, but to who struck the
10  first blow?
11     A    I would have to read my--. Can I read my
12  report?
13     Q    Sure.
14     A    You don't mind?
15     Q    No.
16     A    I believe you guys all have a copy of
17  this. I believe in my--. You're asking me my
18  belief?  Is that how you said it?
19     Q    Yes.
20     A    In my opinion?
21     Q    Did you arrive at any conclusion, and
22  then I want you to explain to me what are the
23  factors that you used in arriving at that
24  conclusion.

Page 16

1      A    Okay. The only thing I have to do--I
2  mean, there's a different standard between
3  department of corrections and the outside world.
4  You understand that as far as us writing--
5      Q    I'm coming to that conclusion.
6      A    Well, what I'm saying as far as
7  disciplining an inmate.
8      Q    And for good reason.
9      A    Okay. Under DL504, as far as this kind
10  of inmate, there's different circumstances and be a
11  burden of proof, okay. And, basically, on this I
12  have both of their statements. There was physical
13  evidence of course.  Both of them had scratches.
14  Mr. McCroy had the injury to his eye.  Durham had
15  scratches, abrasions on him which proved to me that
16  there was a physical altercation in the cell.
17        If it was just as easy as Mr. McCroy said
18  in that he was struck in the eye and he did
19  nothing, never touched them, then the other guy
20  wouldn't have had marks on him, fresh marks on him.
21  What's the other guy's name? Mr. Durham says in his
22  statement, and I believe, and I can't quote it for
23  a fact, unless you really want me to, that McCroy
24  had come up and kissed him on the lips. And that's

4  (Pages 13 to 16)

2/2/07                               McCroy vs. Illinois Dept. of Corrections
Philip Crary

Page 17

1   what started the argument.
2            And McCroy states that Durham, I believe
3   he stated that Durham started to choke him. No.
4   That's what Durham stated, that McCroy was choking
5   him and that he had to swing back. But he said he
6   didn't remember swinging at him. Of course he swung
7   at Mr. McCroy because he had the injury to his eye.
8   It's obvious.
9            So based on them factors, I have to
10  factor that all together.  In our departmental
11  rule, okay, like I said, it's totally different
12  than the outside burden of proof. That's why I
13  wrote the administrative ticket on them saying that
14  they were fighting in the cell.
15       Q   So you issued the same tickets to each
16  one, that they were fighting?
17       A   Yes, sir. Yeah.
18       Q   At the time that you received these
19  statements, did you have the advantage of the
20  initial statement that was given by Durham the
21  night before when the security on guard interviewed
22  him as to what happened?
23       A   Let me see what I had the night before.
24  Is that all right?

Page 18

1        Q   Yes. Take a look at that and see if he
2   didn't deny that he ever stroke a blow.
3        A   That who denied it?
4        Q   Durham.
5        A   Right. And he denied that to me also. He
6   said that there was a--. This is McCroy's. I'm sure
7   you have a statement from Durham?
8        Q   Yes.
9        A   He says right in the statement I put my
10  arms up, but I don't remember hitting my cellmate.
11  He grabbed me around my neck and fell on top of me,
12  he had noodles in his hand, which was true, there
13  was noodles on the floor which was documented by
14  Sergeant Vancil, I believe, in his 434.
15       Q   Were the noodles still on the floor the
16  following morning?
17       A   The two pictures I have there is. You
18  can't see it on this one. There is a little stuff
19  on the floor here. It's not very defined in the two
20  photos I have. But, yes, there was. You could tell
21  where it was dried up.
22       Q   When you conducted your investigation,
23  did you do anything to determine the violent
24  propensities of either of these cellmates?

Page 19

1        A   In the past?
2        Q   Yes.
3        A   No, sir.
4        Q   So, as you sit there today, you aren't
5   aware of any incidence of violence in the past as
6   far as Durham was concerned?
7        A   No, sir.
8        Q   Were you aware when Durham was discharged
9   from the custody of the department of corrections?
10       A   When he left?
11       Q   Yes.
12       A   On this current sentence?
13       Q   Yes. Since he was serving.
14       A   No, sir. Huh-uh.
15       Q   I want you to assume that, which I think
16  I already know from your own investigation, that my
17  client, Aaron McCroy, had a serious disability
18  which placed him at great risk if he got involved
19  with a struggle or was struck, either directly or
20  inadvertently.
21           And I want you to further assume that in
22  the weeks before this at this institution that he
23  had just been released from unassigned status where
24  he was housed in the infirmary awaiting further

Page 20

1   treatment and that he was transferred in to the
2   general population and he was assigned Durham who
3   had recently, within the last several weeks, been
4   released from segregation because of an assault and
5   a fight conducted with another cellmate.
6        A   Uh-huh.
7        Q   At the time that you made your evaluation
8   of what happened that night, was that information
9   shared with you, with others, in the department of
10  corrections?
11       A   I don't understand that question. Because
12  you're asking me to assume. You build up--
13       Q   I want you to assume that those are the
14  facts.
15       A   Uh-huh. Okay.
16       Q   Now, if they're not the facts and I'm
17  making them up, but I'm telling you that based on
18  upon that assumption, that those facts are true,
19  were you provided with that information by the
20  others in the department of correction at the time
21  that you made your investigation?
22       A   Who are you saying as "others" though?
23       Q   Anybody else.
24       A   No, sir. This is the information that I

Baldwin Court Reporting & Legal Video Services
1-800-248-2835