IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON MCCROY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02-cv-3171 |
| ) | |
| THE ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS, ROGER E. ) | |
| WALKER, JR., (in his official ) | |
| capacity only), DENNIS HOCKADAY, ) | |
| KEVIN WINTERS, SANDRA FUNK, ) | |
| DEBORAH FUQUA, LIEUTENANT BRYON ) | |
| LAW, KENNETH KELLERMAN, JULIUS ) | |
| FLAGG, all in their official and ) | |
| individual capacities, WEXFORD ) | |
| HEALTH SOURCES, Inc., ) | |
| Dr. LOWELL BROWN, MD., ) | |
| Dr. HUGHES LOCHARD, MD., and ) | |
| RHONDA MILLS, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO ALL DEFENDANTS' MOTIONS *IN LIMINE***

The Plaintiff, AARON McCROY, by and through his attorneys, LONDRIGAN, POTTER & RANDLE, P.C., responds to all Defendants', (Wexford Health Sources, Inc., Hughes Lochard, M.D., Lowell Brown, M.D. and Rhonda Mills, IDOC, Roger E. Walker, Jr., Dennis Hockaday, Kevin Winters, Sandra Funk, Debra Fuqua, Bryon Law, Kenneth Kellerman, and Julius Flagg) Motion *in Limines* as follows:

**I. INTRODUCTION**

Plaintiff is responding to three Motions *in Limines* filed by the various defendants in this case. Specifically, Wexford, et al.'s "First Motion *in Limine*", Court Docket # 422; All Defendants' "Second Motion *in Limine*", Court Docket #427; and all Defendants' "Defendants'

Combined Motion *in Limine*", Court Docket #428. The foregoing Motions *in Limine* address the following issues:

1. Grievances constituting hearsay and an exception as a business record, under Fed.R.Evid. 801, 802, 803.

2. Plaintiff's counsel referring to himself as "appointed counsel".

3. Admission or use at trial of Brandon Durham's master file.

## II.  ARGUMENT

Without a single citation of authority that evidence is clearly inadmissible or irreparably prejudicial, Defendants seek an *in limine* order in advance of trial that evidence be excluded. Motions *in limine* are intended to exclude evidence from consideration which would be "inadmissible for any purpose." **Jonasson v. Lutheran Child and Family Services**, 115 F.3d 436, 440 (7th Cir. 1997). **See also Telewizja Polska U.S.A., Inc. v. Echostar Satellite Corp**., 2004 WL 2367740, *1 (N.D. Ill. 2004)("[a] motion *in limine* should be granted only if the evidence clearly is not admissible for any purpose.").   If the evidence which is the subject matter of the motion *in limine* is not clearly inadmissible for any purpose, the motion *in limine* should be denied and the evidentiary ruling should be deferred until trial.  **Hawthorne Partners v. AT&T Technologies, Inc**., 831 F.Supp. 1398, 1400-1401 (N.D. Ill. 1993).

As the Supreme Court observed in **Luce v. U.S.**, 469 U.S. 38, fn. 2 (1984), "'*In limine*' has been defined as '[o]n or at the threshold; at the very beginning; preliminarily.'[internal citations omitted].  We use the term in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'"

      There is no showing that undue prejudice will be caused by ruling on issues in the context of the evidence presented at trial to allow the court to exercise judicial discretion to weigh any possible prejudice against probative value.

    **1.**    **Grievances constituting hearsay and an exception as a business record, under Fed.R.Evid. 801, 802, 803.**

      Plaintiff's grievances are not offered to prove the truth of their allegations, but to show the repeated notice given to defendants of health related needs that were summarily denied, often in the face of clear directives from outside specialists retained by Wexford to act as Plaintiff's treating ophthalmologists.

      Whether a statement constitutes inadmissible hearsay generally turns on the purpose for which the statement is offered.  ***U.S. v. Breland***, 356 F.3d 787, 791-792 (7th Cir. 2004).  If a statement is not offered to prove the truth of the matter asserted, but for another legitimate purpose, the statement does not qualify as hearsay.  ***U.S. v. Bursey***, 85 F.3d 293, 296 (7th Cir. 1996).  "... evidence that he has heard or read a statement may be relevant, and lies beyond reach of a hearsay objection." ***Martinez v. McCaughtry***, 951 F.2d 130, 133 (7th Cir. 1991).  **See also** ***Pender v. U.S.***, 866 F.Supp. 1129, 1134-1135 (N.D. Ind. 1994)("[b]ecause the statement is not being offered for the truth of the matter asserted but to impute knowledge to the insurance agent, it is admissible and will be considered."); ***Fenje v. Feld***, 301 F.Supp.2d 781, 811 (N.D. Ill. 2003) (statements offered to show the notice or knowledge of a party are not hearsay.); ***Kemper/Prime Indus. Partners v. Montgomery Watson Americans, Inc.***, 1998 WL 704049, *4-5 (N.D. Ill. 1998) ("... out of court statements offered to prove that a listener had notice of the information contained therein, rather than to prove the truth of the matter asserted are not hearsay.")

3

Moreover, as it relates to business records, by regulation IDOC must retain all records regarding the filing and disposition of grievances in McCroy's master file. 20 Ill.Admin. Code, Sec. 504.860.

2. **Plaintiff's counsel referring to himself as "appointed counsel".**

Plaintiff's action was filed nearly two years before counsel was appointed to Plaintiff in March of 2004. This appointment came after Plaintiff received a corneal transplant and in the wake of a dispute about "steroid induced"glaucoma. No discovery had been conducted. Thereafter, numerous defendants and causes of action were dismissed, and others added. Based upon the years that followed, the number of depositions taken by three separate lawyers, the appointment of an independent ophthalmologist, and the separate retention of an expert ophthalmologist, the defendants wish to leave the impression with a taxpayer jury that this defendant was able to retain private counsel. This gives rise to companion inferences that an *in pauperis* plaintiff is able to afford his own future medical care; or that he was solicited by lawyers to file a "frivolous"claim seeking taxpayer money.

In this proceeding, such inferences have no basis in fact and this prejudice can only be avoided if all counsel and the court agree to an appropriate impartial instruction as to role of counsel in these proceedings.

3. **Admission or use at trial of Brandon Durham's master file.**

Defendants join together to argue the relevance of IDOC records of the violent nature of Plaintiff's cellmate assailant. Defendants argue since no defendant has admitted to reviewing the lengthy history of violence of this cellmate, they are entitled to an *in limine* order. No authority

is cited to support this proposition.

The facts are: only the Defendants, not the Plaintiff, had access to this cellmate's violent history. Plaintiff first learned part of that history from Defendant Law the day before the assault.

> Q. What did you tell Lieutenant Law?
>
> A. I told him that I felt that my cellie was violent. That your officers had told me, Officer Kellerman in particular told me about him being transferred from Galesburg or Hill for fighting, him getting, just getting out of seg for fighting, him fighting while he was in seg. And I felt that, "Hey, because you all had told me to be careful, why is it that you all – your officers told me to be careful. Why is it that you all won't move him?" He is sitting there telling me, "Well, he is going to home in thirty days, just, you know, just let him, you know, let him, you know, unless you want to go to seg or you want to commit a disciplinary infraction, just wait it out. He is going home in thirty days."
>
> Q. So he basically told you that you could go to seg if you wanted, you know, or stick it out, correct?
>
> A. Yeah.

(Ct. Docket 372-17, McCroy Dep., pp. 129-130).

As explained in Plaintiff's Joint Response to Defendants' Separate Motions for Summary Judgment: "Brown and Fuqua acted together, choosing to ignore the clear warning of Dr Zeh. Instead, they 'presumed', in concert, that a violent prisoner would never be assigned as McCroy's cellmate..."

> Q. Well, what was done, from a medical standpoint, to make sure that when this patient went into the general population that he wouldn't be put together with a known violent cellmate who had previously been placed in segregation for fighting and that had a

5

history of violence?

A. Well, there is a – there is an action that security performs under the heading of placement where they're supposed to consider the variables involved in how people get put in certain cells. And I *presume that that process took place* when he went from the infirmary to the population.

Q. Why do you *presume* that?

A. I expect it is written somewhere.

* * *

Q. You just assumed that that's something that security would be doing to make sure that this patient wasn't put in with a violent cellmate?

A. Well, I've had *reputable* people tell me that that's what happened so it isn't just a mere assumption.

Q. Tell me a couple of those *reputable* people that told you that.

A. This is Debbie Fuqua, the healthcare administrator.

Q. Anybody else?

A. I don't remember any other incidents, but I remember she told me that that's a specific action that is performed. Or should be performed.

(Ct. Docket #373-8, Brown Dep., pp. 50-52). (Emphasis added).(Pl. Resp. To Defs' M for Summary Judgment, pp. 20-21).

There were certainly cellmates more violent than Durham cycled through disciplinary segregation and given unassigned status before being given a job assignment and then housed

among other prisoners. In this case, it was predictable that Durham, or a prisoner like him, would be housed with a vulnerable and *medically* unassigned prisoner such as Plaintiff. It is a damning admission for all named defendants to assert they did not review the violent history of any of the cellmates housed with Plaintiff after he was ordered into the general population against the clear medical orders of his treating ophthalmologist, Dr. Zeh.

The concern for being housed with other prison inmates was repeated at Dr. Zeh's recent video deposition when he responded to Attorney Powell's question.

> Q. Okay. Again, Doctor, I don't see anywhere in your records where you made any specific restrictions about keeping this patient away from all people?
>
> A. I'm not sure. I think that the telephone conversations that I had definitely reflect my concern that the patient could be subjected to trauma if he were in the – in an inappropriate environment. This one specifically, you know – and also he *doesn't want offender to get poked in the eye*, end quote.[1] *And that was definitely my concern.*
>
> Q. That was in November of 2003. Right?
>
> A. Right. That's – *that is a lifelong concern*. I have seen many transplant patients with corneal suture and without corneal sutures have trauma to eye that's resulted in a dehiscence, or separation, of the transplant in a ruptured globe injury.
>    They're not nicely protected from that by the presence of corneal sutures. I've seen quite a few patients, even with sutures still in place, get hit in the eye and have the eye rupture. So that is the – the– the trauma concern is definitely a lifelong concern for this patient and I think I made that abundantly clear to him.

---

[1] Exhibit A, attached.

(Ex. B, attached, Dep. Dr. William G. Zeh, taken 10/15/07, pp. 44-45). (Emphasis added).

This concern was also made abundantly clear to IDOC and Wexford Defendants. Durham's violence is an issue in the case and the records in his master file showing his violent nature are admissible pursuant to Fed.R.Evid. 402.

WHEREFORE, Plaintiff prays that all of Defendants' Motions *in Limine* be denied.

Respectfully submitted,
AARON MCCROY, Plaintiff

By: s/Thomas F. Londrigan
THOMAS F. LONDRIGAN, Bar No. 1686542
Attorney for Plaintiff
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Post Office Box 399
Springfield, IL 62705
Telephone: (217) 544-9823
tom@lprpc.com

## Certificate of Service

The hereby certify that on October 23, 2007, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification to such filing to the following;

Ms. Theresa Powell
Heyl, Royster, Voelker & Allen
National City Center, Ste. 575
1 North Old State Capitol Plaza
PO Box 1687
Springfield, IL 62705-1687

Lisa Madigan, Illinois Attorney General
Attn: Kelly Choate, A.A.G. &
Julie L. Morgan. A.A.G.
500 South Second Street
Springfield, IL 62706

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Aaron McCroy,#N51882
Receiving Cell 15
P. O. Box 900
Ina, IL 62846

                By: s/Thomas F. Londrigan
                THOMAS F. LONDRIGAN, Bar No. 1686542
                Attorney for Plaintiff
                LONDRIGAN, POTTER & RANDLE, P.C.
                1227 South Seventh Street
                Post Office Box 399
                Springfield, IL 62705
                Telephone: (217) 544-9823
                tom@lprpc.com