## Page 1

U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

AARON McCROY,

  Plaintiff,

vs.                              Case No. 02-3171

THE ILLINOIS DEPARTMENT
OF CORRECTIONS, et al.,

  Defendants.

Deposition of DR. STEPHEN KWEDAR, taken at the instance of the Defendants, on September 11, 2006 scheduled for the hour of 11:00 a.m., at 1227 South Seventh Street, Springfield, Illinois, before Donna M. Dodd, Certified Shorthand Reporter and Notary Public, pursuant to the attached stipulation.

GOLEMBECK REPORTING SERVICE
Connie S. Golembeck, Owner
(217) 523-8244
(217) 632-8244

COPY

## Page 2

APPEARANCES:

THOMAS LONDRIGAN
Londrigan, Potter & Randle, P.C.
Attorneys at Law
1227 South Seventh Street
Springfield, Illinois 62703

  Appeared on behalf of the Plaintiff,

THERESA M. POWELL
Heyl, Royster, Voelker & Allen
Attorneys at Law
One North Old State Capitol Plaza, Fifth Floor
Springfield, Illinois 62701

  Appeared on behalf of Defendant, Wexford Health Sources.

KELLY CHOATE
Assistant Attorney General
Attorney at Law
500 South Second Street
Springfield, Illinois 62701

  Appeared on behalf of Defendant, IL Department of Corrections.

CARL J. TENNEY
Hughes, Hill & Tenney, LLC
Attorney at Law
236 North Water Street P.O. Box 560
Decatur Illinois 62525

  Appeared on behalf of Defendant, Dr. Anderson.

EXHIBIT C

## Page 3

I N D E X

|   | | PAGE |
|---|---|---|
| Direct Examination by Ms. Powell | | 5 |
| Cross Examination by Mr. Tenney | | 82 |
| Examination by Ms. Choate | | 109 |
| Redirect Examination by Ms. Powell | | 120 |
| Examination by Mr. Londrigan | | 121 |
| Further Examination by Ms. Choate | | 131 |

| EXHIBITS | MARKED |
|---|---|
| Defendant's Exhibit 1 | 16 |
| Defendant's Exhibit 2 | 60 |
| Defendant's Exhibit 3 | 82 |
| Defendant's Exhibit 4 | 84 |
| Defendant's Exhibit 5 | 94 |

## Page 4

S T I P U L A T I O N

It is stipulated and agreed, by and between the parties hereto, through their attorneys, that the deposition of DR. STEPHEN KWEDAR, may be taken before Donna M. Dodd, a Certified Shorthand Reporter, upon oral interrogatories, on September 11, 2006 at the instance of the Defendants, scheduled for the hour of 11:00 a.m. at 1227 S. Seventh, Springfield, Illinois.

That the oral interrogatories and the answers of the witness may be taken down in shorthand by the Reporter and afterwards transcribed.

That any requirement as to the reading over and signing of the deposition by the witness or the filing of the same are not expressly waived.

That all objections are hereby reserved except as to the form of the question which is waived unless specifically noted.

That the deposition or any part thereof may be used for any purpose for which depositions are competent, by any of the parties hereto, without foundation proof.

That any party hereto may be furnished copies of deposition at his or her own expense.

**121**

1  A. No, I do not.
2  Q. And if they refused, you don't know why
3  they refused?
4  A. No.
5  Q. And you're not aware of any other
6  specifics as to why a physician may not have seen
7  Mr. McCroy again, right?
8  A. No. The price of medicine has changed
9  since I was there.
10  Q. Okay. And you would agree that a
11  physician has the right not to see a particular
12  patient if they choose to, right?
13  A. Right, certainly.
14     MS. POWELL: That's all I have. Thanks.
15            EXAMINATION
16  BY MR. LONDRIGAN:
17  Q. Based on the information that I've been
18  able to provide you, do you have any idea or
19  conclusion or opinion who is responsible on behalf
20  of Wexford, Department of Corrections, to
21  reassigning this inmate/patient from community to
22  community, ophthalmologist to ophthalmologist over
23  the past six years?
24  A. No. I have no idea. That does seem sort

**122**

1  of strange to me, that he's been in a whole bunch.
2  Maybe this is standard operating procedures, but it
3  seems to me that he's been in at least four or
4  five, maybe more institutions and I don't
5  understand why.
6  Q. Is it important in the treatment of a rare
7  eye, such as Keratoconus, for there to be a
8  continuity as far as that treatment is concerned
9  with a primary ophthalmologist?
10  A. Or optometrist. I would think that, yes.
11  I would think there needs to be continuity of care,
12  because as you alluded to, this is a progressive
13  disease, and how do you know if it's -- if a tree
14  has grown if you haven't seen the tree, you know,
15  three or four months before? You know, if this is
16  the first time you've seen the tree, you don't know
17  if it's grown.
18     MS. POWELL: I'm --
19     THE DEPONENT: I'm sorry.
20     MS. POWELL: I want to object to both the
21  question and the answer as both, neither of that
22  information has been previously provided in your
23  disclosures. So with respect to any questions
24  you're going to ask --

**123**

1     THE DEPONENT: Wait a second. Counselor,
2  I don't want to be argumentative.
3     MS. POWELL: I'm just making legal
4  objections. You can ask him all the questions
5  you'd like, but just for the record, I'm going to
6  object to any information --
7     MR. LONDRIGAN: She might tell me
8  something that I don't know. Go ahead.
9     MS. POWELL: I'm just going to object to
10  any information that has not been previously
11  disclosed in Exhibit 1 as it pertains to this case.
12     MR. LONDRIGAN: Well, I object to
13  information not being previously disclosed, so it
14  could be communicated to me and to this witness.
15  BY MR. LONDRIGAN:
16  Q. As you sit there today, do you know who,
17  either alone or in combination with somebody else,
18  either for Wexford or the Illinois Department of
19  Corrections, that made the decision, based upon
20  your review of these limited records, Doctor Kass's
21  report, and also the treating ophthalmologist, that
22  it was appropriate, based upon the conditions at
23  that time, for this prisoner/patient to be
24  transferred into the general population and

**124**

1  assigned, not just one cellmate, but several
2  different cellmates?
3     MS. POWELL: Okay. Wait a second. Same
4  objection, no foundation, leading, something else,
5  wait a second, compound question.
6  BY MR. LONDRIGAN:
7  Q. All right. I'm not sure you understand or
8  need to understand her objection.
9     But based upon your training as an
10  ophthalmologist and your understanding of the
11  condition that presented itself to employees of
12  Wexford and the Illinois Department of Corrections,
13  do you see any medical indications why this
14  particular patient should be assigned into general
15  population and assigned several different
16  cellmates?
17     MS. POWELL: Same objection, leading,
18  compound, not previously disclosed, and no
19  foundation. You can answer, Doctor.
20  BY MR. LONDRIGAN:
21  Q. If you can remember that question, go
22  ahead and answer it.
23  A. Let me answer the cellmates, multiple
24  cellmates. If we're talking in the postop period,

**125**

and we're talking a release from the infirmary, I don't think that should have been done.

If you're talking in the preop period when, in the nineties, earlier part of the nineties, I have no opinion on that. I don't think that would have influenced his outcome.

The fact that he was put in many, many prisons and has seen many, many different ophthalmologists and optometrists, I do think it is detrimental to his care. I do think you need continuity of care.

I don't think it necessarily had to be one ophthalmologist or one optometrist, but I certainly don't think it ought to have been 15 or 20 or whatever vast number there is portrayed in this chart or record.

I think several would have been -- would have been appropriate, and I think they need to keep coming back and it doesn't happen to this guy.

Q. More importantly, based on the information that I've been able to provide you and that you've shared with these attorneys present at this table, can you determine as you sit there today who made

**126**

these decisions?

A. Absolutely not.

Q. Can you determine as you sit there today who made the decision to continue him on the Maxitrol in derogation of the prescribed medication that was given him by one of his many treating ophthalmologists?

A. No, I cannot.

Q. What would you need to see so that we collectively could make that determination?

A. Some records. But, you know, Tom, part of the problem I've got is, I don't know who did what.

And, you know, I'm looking at this, I've read this twice, and I read this with a pretty critical mind, you know, and I just -- it's really hard to tell, you know, who is responsible.

When I say who did what, I'm talking about as far as moved him from one prison population to another or moved him from one prison to another, you know.

Q. Assuming that at sometime in the undefined future that Aaron McCroy is released from prison and sent into the general population, either to his family or elsewhere, do you have an opinion whether

**127**

or not he's currently disabled from gainful employment?

A. Yeah. You know, yeah, he is. No question about it. He's -- I present -- what I did, I did something here that I'd like to share with you guys so that you understand why I really got involved in this.

What I did is, I took Mike Kass's refraction and I did the opposite. Refraction is what you wear for glasses.

MS. POWELL: I object to our answer to the extent that it's nonresponsive to the question. He asked you whether or not the patient was disabled and you're talking about something from Doctor Kass.

MR. LONDRIGAN: Hold on.

THE DEPONENT: If you could let me.

MR. LONDRIGAN: Responsiveness to the answer, the question.

My objection is, you have to have some objection to the substance of the answer of it being inadmissible. I think this is needed by way of clarification and I want to hear his answer. Go ahead and give it.

**128**

THE DEPONENT: Okay. This is why he needs a contact.

What I've done is, I've taken Mike Kass's numbers and done the opposite, that would mean that what Mike Kass found, that would correct this. And I've added this Saran Wrap, because in Keratoconus, a stigmatism is irregular and you got these little strings and things that go across, and I put a little bit on here, because he's probably got a little cataract in that eye, and I want you to look through this, each one of you, and hold it right here so it doesn't fall apart, and just see, close one eye and just see what his vision is like. Close your good eye and just peek through that and see what his vision is like. That's his uncorrected vision. You got to hold it up right next to your eye.

Yeah, that's good, and just hold it up and take a look. This is why, yeah, it's terrible.

Just go ahead and do that. I know you don't want to do it, counselor. I'm sorry.

MS. POWELL: I'm sure I can't see through plastic anyway and can't give testimony.

THE DEPONENT: This is what his corrected