**E-FILED**
Thursday, 25 October, 2007  04:21:43 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON MCCROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02-CV-3171 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, ROGER E. | ) | |
| WALKER, JR., (in his official | ) | |
| capacity only), DENNIS HOCKADAY, | ) | |
| KEVIN WINTERS, SANDRA FUNK, | ) | |
| DEBORAH FUQUA, LIEUTENANT BRYON | ) | |
| LAW,  KENNETH KELLERMAN, JULIUS | ) | |
| FLAGG, all in their official and | ) | |
| individual capacities, WEXFORD | ) | |
| HEALTH SOURCES, Inc., | ) | |
| Dr. LOWELL BROWN, MD., | ) | |
| Dr. HUGHES LOCHARD, MD., and | ) | |
| RHONDA MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

## PRETRIAL ORDER

This matter having come before the court at a pre-trial conference held

pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.1; and

Thomas Londrigan and Doug Quivey having appeared as counsel for the

Plaintiff, Aaron McCroy; Assistant Attorney General Kelly Choate having appeared

as counsel for the Defendants, Illinois Department of Corrections (IDOC), Dennis

Hockaday, Kevin Winters, Sandra Funk, Deborah Fuqua, Byron Law, Kenneth

Kellerman, and Julius Flagg; and, Theresa Powell having appeared as counsel for

Defendants, Wexford Health Sources, Inc., Lowell Brown, M.D., Hughes Lochard,

M.D., and Rhonda Mills; the following action was taken:

## I.  <u>NATURE AND JURISDICTION</u>

This is an 42 U.S.C. §1983 action predicated upon alleged violations of the First and Eighth Amendments of the United States Constitution and also an action asserting violations of the Americans With Disabilities Act (ADA) and the Rehabilitation Act (RA).   The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§1331 and 1343.

## II.  <u>JOINT STATEMENT</u>

A.     JURISDICTION

It is uncontested that the Court has personal jurisdiction over all of the parties and subject matter jurisdiction over all of the claims.

Defendants dispute the jurisdiction of this Court over Defendant IDOC and any defendant in his or her official capacity for alleged constitutional violations. Defendants dispute the jurisdiction of this Court over any defendant except the Department of Corrections on the ADA or RA claims.  Defendants deny there is any ongoing violation that would create an exception to the Eleventh Amendment for official capacity suits seeking injunctive relief.

B.     UNCONTESTED ISSUES OF FACT

1.     At all relevant times, Plaintiff Aaron McCroy is and has been an inmate committed to the custody of Defendant Illinois Department of Corrections.

2.     Defendant Illinois Department of Corrections is an agency of the State of Illinois

and a public entity within the meaning of the Americans With Disabilities Act and is a covered entity pursuant to the Rehabilitation Act.

3.  Defendant Roger E. Walker, Jr. is sued in his official capacity as the Director of the Illinois Department of Corrections. He has been the Director of the Illinois Department of Corrections since June 3, 2003.

4.  Defendant Dennis Hockaday was employed by the Illinois Department of Corrections as Warden at the Western Illinois Correctional Center prior to Defendant, Winters.

5.  Defendant Kevin Winters was employed by the Illinois Department of Corrections as the Assistant Warden of Operations at Western Illinois Correctional Center from 2000 to 2002. He was employed as Warden of Western Illinois Correctional Center from December, 2002 through October, 2004.

6.  Defendant Sandra Funk was employed by the Illinois Department of Corrections as the Assistant Warden of Programs at Western Illinois Correctional Center from August of 2002 to March of 2005.

7.  Defendant Deborah Fuqua was employed by the Illinois Department of Corrections as the Health Care Unit Administrator at Western Illinois Correctional Center during Plaintiff's incarceration.

8.  Defendant Law was employed by the Illinois Department of Corrections as a Correctional Lieutenant at Western Illinois Correctional Center at all relevant times.

9.  Defendant Kellerman was employed by the Illinois Department of Corrections as a Correctional Officer at Western Illinois Correctional Center at all relevant times.

10. Defendant Julius Flagg was employed by the Illinois Department of Corrections as the Facility ADA Coordinator and Acting Warden for Pinckneyville during the time Plaintiff was incarcerated at the Pinckneyville Correctional Center.

11. Dr. William Elyea was employed by the Illinois Department of Corrections as Medical Director during the time Plaintiff was incarcerated at WICC and at all relevant times thereafter.

12. Defendant Wexford Health Sources, Inc. ("Wexford"), is a Florida corporation

doing business in Illinois, which at all relevant times contracted with Defendant IDOC to provide health care services for inmates at WICC, Menard, Pinckneyville and Big Muddy.

13.    Defendant Dr. Lowell Brown is the medical Director at the Western Illinois Correctional Center. He has served in that capacity since January 15, 2004. He is currently employed by Wexford.

14.    Defendant Dr. Lochard is a Wexford employee who served as the on call Medical Director at the Western Illinois Correctional Center from September of 2003 to January 14, 2004.

15.    Defendant Rhonda Mills is a Nurse Practitioner who currently works for the Quincy Medical Group. From January 2000 until July of 2005, Defendant Mills worked as a Nurse Practitioner at the Western Illinois Correctional Center.

16.    Dr. Cleveland Rayford was a Regional Medical Director for Wexford during part of the time Plaintiff was incarcerated at the Western Illinois Correctional Center.

17.    Dr. David Anderson was an optometrist contracted by Wexford to provide optometry care at the Western Illinois Correctional Center during part of the time Plaintiff was incarcerated at the Western Illinois Correctional Center.

18.    On September 9, 1993, Plaintiff was diagnosed as having Keratoconus in both eyes.

19.    At all relevant times, all Defendants were acting under color of law.

20.    At all relevant times, IDOC received federal funds.

C.  CONTESTED ISSUES OF FACT

COUNT I - First Amendment Retaliation

1.    Whether one or more of Defendants Walker, Wexford, Hockaday, Winters, Funk, and/or Fuqua acted intentionally, either individually or in

4

combination, to delay Plaintiff receiving a left corneal transplant.

2.      Whether one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills acted intentionally, either individually or in combination, prior to or on June 8, 2004 to have Plaintiff moved from the WICC infirmary to a cell in general population.

3.      Whether one or more of Defendants Walker, Winters, and/or Funk acted intentionally to allow an inmate just released from segregation for fighting/intimidation to be placed in the same cell with Plaintiff.

4.      Whether one or more of Defendants Walker, Hockday, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills acted intentionally, either individually or in combination, to impede the implementation of the medical recommendations of Plaintiff's treating physicians as it relates Plaintiff's eye treatment to include contact lens fittings.

5.      Whether one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills acted intentionally, either individually or in combination, to deny Plaintiff access to programs, activities, and privileges while he was housed in the infirmary at WICC to the same extent said programs, activities, and privileges were provided to non-disabled inmates housed in general population at WICC.

6.      Whether one or more of Defendants Walker, Wexford, Winters, Funk,

Fuqua, Brown, Lochard, and/or Mills acted intentionally, either individually or in combination, to impose on Plaintiff unwarranted restrictions on his confinement.

7.     Whether Plaintiff filing a lawsuit, grievances, and otherwise complaining about the terms and conditions of his confinement was a reason, alone or with other reasons, that one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, and/or Mills relied upon when they acted intentionally, either individually or in combination, to delay Plaintiff receiving a left corneal transplant, or that moved one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, or Mills towards their decision to act intentionally to delay Plaintiff receiving a left corneal transplant.

8.     Whether Plaintiff filing a lawsuit, grievances, and otherwise complaining about the terms and conditions of his confinement was a reason, alone or with other reasons, that one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, or Mills relied upon when they acted intentionally, either individually or in combination, prior to or on June 8, 2004 to have Plaintiff moved from the WICC infirmary to a cell in general population, or that moved one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown,  Lochard, and/or Mills towards their decision to act intentionally prior to or on June 8, 2004 to have Plaintiff moved from the WICC infirmary to a cell in general population.

9.     Whether Plaintiff filing a lawsuit, grievances, and otherwise complaining about the terms and conditions of his confinement was a reason, alone or with other

6

reasons, that one or more of Defendants Walker, Winters, and/or Funk relied upon when they acted intentionally to allow an inmate just released from segregation for fighting/intimidation to be placed in the same cell with Plaintiff, or that moved one or more of Defendants Walker, Winters, and/or Funk towards their decision to act intentionally to allow an inmate just released from segregation for fighting/intimidation to be placed in the same cell with Plaintiff.

10.  Whether Plaintiff filing a lawsuit, grievances, and otherwise complaining about the terms and conditions of his confinement was a reason, alone or with other reasons, that one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills relied upon when they acted intentionally to impede the implementation of the medical recommendations of Plaintiff's treating physicians as it relates Plaintiff's eye treatment to include contact lens fittings, or that moved one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills towards their decision to act intentionally to impede the implementation of the medical recommendations of Plaintiff's treating physicians as it relates Plaintiff's eye treatment to include contact lens fittings

11.  Whether Plaintiff filing a lawsuit, grievances, and otherwise complaining about the terms and conditions of his confinement was a reason, alone or with other reasons, that one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills relied upon when they acted intentionally to deny

Plaintiff access to programs, activities, and privileges while he was housed in the infirmary at WICC to the same extent said programs, activities, and privileges were provided to non-disabled inmates housed in general population, or that moved one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills towards their decision to act intentionally to deny Plaintiff access to programs and privileges while he was housed in the infirmary at WICC to the same extent said programs and privileges were provided to non-disabled inmates housed in general population.

12.     Whether Plaintiff filing a lawsuit, grievances, and otherwise complaining about the terms and conditions of his confinement was a reason, alone or with other reasons, that one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills relied upon when they acted intentionally to impose on Plaintiff unwarranted restrictions on his confinement, or that moved one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills towards their decision to act intentionally to impose on Plaintiff unwarranted restrictions on his confinement.

13.  Whether Plaintiff suffered damages resulting from the alleged delay in transplant surgery.

14.     Whether Plaintiff suffered damages resulting from being moved from the WICC infirmary on June 8, 2004 to a cell in the general population.

8

15.     Whether Plaintiff suffered damages resulting from being housed with an inmate just released from segregation for fighting/intimidation.

16.     Whether Plaintiff suffered damages resulting from Defendants' allegedly impeding the implementation of the medical recommendations of Plaintiff's treating physicians as it relates Plaintiff's eye treatment to include contact lens fittings.

17.     Whether Plaintiff suffered damage resulting from allegedly being denied access to programs, activities, and privileges while he was housed in the infirmary at WICC to the same extent said programs, activities, and privileges were provided to non-disabled inmates housed in general population at WICC.

18.     Whether Plaintiff suffered damage resulting from allegedly having unwarranted restrictions on his confinement imposed on him.

19.     Whether there were other reasons which would have led one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, and/or Mills, either individually or in combination, to delay Plaintiff's left corneal transplant surgery, even if Plaintiff had not filed a lawsuit, grievances, and otherwise complained about the terms and conditions of his confinement.

21.     Whether there were other reasons which would have led one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills, either individually or in combination, to act intentionally prior to or on June 8, 2004 to have Plaintiff moved from the WICC infirmary to a cell in general population, even

9

if Plaintiff had not filed a lawsuit, grievances, and otherwise complained about the terms and conditions of his confinement.

22.    Whether there were other reasons which would have led one or more of Defendants Walker, Winters, and/or Funk, either individually or in combination, to act intentionally to allow an inmate just released from segregation for fighting/intimidation to be placed in the same cell with Plaintiff, even if Plaintiff had not filed a lawsuit, grievances, and otherwise complained about the terms and conditions of his confinement.

23.    Whether there were other reasons which would have led one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills, either individually or in combination, to act intentionally to  impede the implementation of the medical recommendations of Plaintiff's treating physicians as it relates Plaintiff's eye treatment to include contact lens fittings.

24.    Whether there were other reasons which would have led one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills, either individually or in combination, to act intentionally to deny Plaintiff access to programs and privileges while he was housed in the infirmary at WICC to the same extent said programs and privileges were  provided to non-disabled inmates housed in general population, even if Plaintiff had not filed a lawsuit, grievances, and otherwise complained about the terms and conditions of his confinement.

25.     Whether there were other reasons which would have led one or more of Defendants Walker, Wexford, Winters, Funk, Fuqua, Brown, Lochard, and/or Mills, either individually or in combination, to act intentionally to impose on Plaintiff unwarranted restrictions on his confinement, even if Plaintiff had not filed a lawsuit, grievances, and otherwise complained about the terms and conditions of his confinement.

26.     Whether Wexford's policy makers encouraged or condoned the misconduct of subordinate employees related to retaliation against Plaintiff.

27.     Whether the defendants took any action against Plaintiff because he exercised his right to express protected speech.

28.     If any of the defendants took an action against Plaintiff because of the protected speech, would the action have been taken regardless of Plaintiff's exercise of protected speech?

29.     Did Plaintiff suffer any damages as a result of any actions taken by any defendants in retaliation for Plaintiff's exercising his right to express protected speech.

30.     Whether the defendants placed Plaintiff in a cell with Durham.

31.     Whether the defendants placed Plaintiff in a cell with Durham because of his protected speech.

32.     Whether the defendants denied or delayed Plaintiff's medical care.

33.     Whether the defendants denied or delayed Plaintiff's medical care

11

because of his protected speech.

34.     Whether the defendants denied Plaintiff reasonable accommodations for his disability.

35.     Whether the defendants denied Plaintiff reasonable accommodations for his disability because of his protected speech.

36.     Whether the defendants took any other action against Plaintiff because of his protected speech.

37.     If any of the defendants took any of the actions described above, would the actions have been taken regardless of whether Plaintiff engaged in protected speech.

38.     Whether Plaintiff suffered any damages as a result of any actions taken by any defendants in retaliation for Plaintiff's protected speech.

COUNT II ADA & RA RETALIATION

39.     Whether Plaintiff had a disability or was regarded by Defendant IDOC as having a disability.

40.     Whether Plaintiff attempted via grievances or otherwise to exercise his rights as a disabled inmate.

41.     Whether Defendant IDOC delayed Plaintiff receiving a left corneal transplant surgery because he exercised his rights as a disabled inmate.

12

42.    Whether Defendant IDOC moved Plaintiff from the infirmary to general population on June 8, 2004 because he exercised his rights as a disabled inmate.

43.    Whether Defendant IDOC placed an inmate just released from segregation for fighting/intimidation because Plaintiff exercised his rights as a disabled inmate.

44.    Whether Defendant IDOC impeded the implementation of the medical recommendations of Plaintiff's treating physicians as it relates Plaintiff's eye treatment to include contact lens fittings because Plaintiff exercised his rights as a disabled inmate.

45.    Whether Defendant IDOC denied Plaintiff access to programs, activities, and privileges while he was housed in the infirmary at WICC to the same extent said programs, activities, and privileges were provided to non-disabled inmates housed in general population at WICC because Plaintiff exercised his rights as a disabled inmate.

46.    Whether Defendant IDOC imposed unwarranted restrictions on his confinement because Plaintiff exercised his rights as a disabled inmate.

47.    Whether Defendant IDOC denied Plaintiff placement in an ADA cell for part of the time he was housed at Pickneyville because Plaintiff exercised his rights as a disabled inmate.

48    Whether Defendant suffered damages as a result of being denied placement in an ADA cell for part of the time he was housed at Pickneyville.

13

49.    Whether Plaintiff suffered pain as a result of not being housed in an ADA cell.

50.    Whether Defendant IDOC would have delayed Plaintiff receiving a left corneal transplant surgery even if Plaintiff had not exercised his rights as a disabled inmate.

51.    Whether Defendant IDOC would have moved Plaintiff from the WICC infirmary to general population on June 8, 2004 even if Plaintiff had not exercised his rights as a disabled inmate.

52.    Whether Defendant IDOC would have placed an inmate just released from segregation for fighting/intimidation with Plaintiff even if Plaintiff had not exercised his rights as a disabled inmate.

53.    Whether Defendant IDOC would have impeded the implementation of the medical recommendations of Plaintiff's treating physicians as it relates Plaintiff's eye treatment to include contact lens fittings even if Plaintiff had not exercised his rights as a disabled inmate.

54.    Whether Defendant IDOC would have denied Plaintiff access to programs, activities, and privileges while he was housed in the infirmary at WICC to the same extent said programs, activities, and privileges were provided to non-disabled inmates housed in general population at WICC even if Plaintiff had not exercised his rights as a disabled inmate.

55.    Whether Defendant IDOC would have imposed unwarranted restrictions on Plaintiff's confinement even if Plaintiff had not exercised his rights as a disabled inmate.

56.    Whether Defendant IDOC would have denied Plaintiff placement in an ADA cell for part of the time he was housed at Pickneyville even if Plaintiff would not have exercised his rights as a disabled inmate.

57.    Whether Plaintiff had a disability under the ADA or Rehabilitation Acts.

58.    Whether Plaintiff was denied access to programs at Western Illinois Correctional Center or Pinckneyville Correctional Center available to non-disabled inmates because of his disability.

59.    Whether Plaintiff was otherwise qualified for the program he alleges was denied.

60.    Whether the defendants unreasonably denied Plaintiff accommodations that would have allowed him to participate in these programs.

COUNT III  CONDITIONS OF CONFINEMENT

61.    Whether between June 8, 2004 and September 23, 2004 Plaintiff was incarcerated under conditions that posed a substantial risk of serious harm to his health and safety.

62.    Whether one or more of Defendants Walker, Winter, Funk, Fuqua, Wexford, Brown, Lochard, and/or Mills was deliberately indifferent to Plaintiff's

15

health and safety.

63.    Whether Defendant Wexford's policymakers encouraged and/or condoned the misconduct of subordinate employees relating to the serious risk of harm to Plaintiff between June 8, 2004 and September 23, 2004.

64.    Whether Plaintiff's conditions of confinement posed a substantial risk of serious harm to Plaintiff's health and safety.

65.    Did any Defendant cause any condition of confinement that posed a substantial risk of series harm to Plaintiff's health and safety?

66.    Did Plaintiff suffer any injury as a result of any condition of confinement that posed a substantial risk of series harm to Plaintiff's health and safety created by a Defendant?

COUNT III  FAILURE TO PROTECT

67.    Whether Inmate Durham struck Plaintiff in the eye on June 8, 2004.

68.    Whether Defendants Law and/or Kellerman were deliberately indifferent to the substantial risk of Durham striking Plaintiff.

69.    Whether as a result of the attack Plaintiff was harmed.

70.    Whether being celled with Durham represented a substantial risk of serious harm to Plaintiff?

71.    Whether any of the defendants made the decision to cell Plaintiff with Durham.

16

72.     Whether any of the defendants had a subjective knowledge that Plaintiff

was at substantial risk of serious harm from Durham.

73.     Whether Plaintiff suffered a serious physical injury as a result

of being celled with Durham.

COUNT IV -          DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED

74.     Whether one or more of Defendants Walker, Hockaday, Winters,

Funk, Fuqua, Flagg, Wexford, Wexford, Brown, Lochard, and/or Mills were

deliberately indifferent to Plaintiff's serious medical need.

75.     Whether the conduct of one or more of Defendants Walker, Hockaday,

Winters, Funk, Fuqua, Flagg, Wexford, Brown, Lochard and/or Mills caused harm to

Plaintiff.

76.     Whether Defendant Wexford's policymakers encouraged and/or

condoned the misconduct of subordinate employees relating to Plaintiff's medical

needs.

77.     Whether Plaintiff suffered from a serious medical need at the time of any

complained of encounter with a Defendant?

78.     Whether any Defendant was deliberately indifferent to any serious

medical need that may have been presented to them by the Plaintiff?

79.     Whether Plaintiff suffered an injury as the result of any deliberate

indifference to a serious medical need?

80.    Whether Plaintiff had a serious medical need related to his eye condition?

81.    If yes, whether the defendants prevented Plaintiff from being evaluated and treated by a physician?

82.    Whether a physician diagnosed a course of treatment?

83.    Whether the defendants prevented Plaintiff from receiving a diagnosed course of treatment despite knowing a physician had determined the treatment was necessary to treat a serious medical need?

84.    Whether the Plaintiff suffered a serious physician injury as the result of treatment being denied or delayed?

COUNT V - ADA & REHABILITATION ACT

85.    Whether Plaintiff had a disability or was regarded by Defendant IDOC as having a disability.

86.    Whether Defendant IDOC discriminated against Plaintiff because of his disability in one or more of the following ways: (1) delayed him receiving a left corneal; (2) moved him from the infirmary to general population on June 8, 2004; (3) placed an inmate just released from segregation for fighting/intimidation with him; (4) impeded the implementation of the medical recommendations of his treating physicians as it relates to his eye treatment to include contact lens fittings; (5) denied

him access to programs, activities, and privileges while he was housed in the infirmary at WICC to the same extent said programs, activities, and privileges were provided to non-disabled inmates housed in general population at WICC; (6) imposed unwarranted restrictions on his confinement; and/or (7) denied him placement in an ADA cell for part of the time he was housed at Pickneyville.

87.    Whether Plaintiff suffered damage as a result of being discriminated against because he was disabled.

88.    The nature and extent of Plaintiff's compensatory damages directly resulting from one or more of the Defendants' wrongful acts to include: future lost earnings capacity; disability and loss of a normal life; physical pain and suffering; and emotional pain and suffering.

89.    Whether the conduct of one or more of the Defendants towards Plaintiff was malicious or in reckless disregard of his rights.

90.    If Plaintiff is a prevailing party, how much is he entitled to for reasonable attorney fees and costs.

91.    Whether Plaintiff had a disability under the ADA or Rehabilitation Acts.

92.    Whether Plaintiff was denied access to programs at Western Illinois Correctional Center or Pinckneyville Correctional Center available to non-disabled inmates because of his disability.

93.    Whether Plaintiff was otherwise qualified for the program he alleges

19

was denied.

94.    Whether the defendants unreasonably denied Plaintiff accommodations that would have allowed him to participate in these programs.

OTHER ISSUES:

95.    Whether any of the defendants' actions were motivated by evil intent or reckless disregard for Plaintiff's constitutional rights such that punitive damages are available.

96.    Whether any Defendant acted with reckless or callous indifference to the Plaintiff's rights to warrant punitive damages?

D.    CONTESTED ISSUES OF LAW

1.    Whether any Defendant is entitled to qualified immunity?

2.    Whether Wexford, a corporate entity, may be sued for retaliation?

3.    Whether Wexford may be added as a Defendant to Plaintiff's claims for retaliation in the Final Pretrial Order even though no such claim is identified in Plaintiff's Third Amended Complaint.

4.    Whether Wexford may be added as a party in the Final Pretrial Order to Plaintiffs Claims for Conditions of Confinement when no such claim is identified in Plaintiff's Third Amended Complaint

5.    Whether Wexford may be added to Plaintiff's claim for Deliberate

Indifference when no such cause of action is identified in Plaintiff's Third Amended Complaint.

6.    Whether Defendants Wexford, Mills, Brown and Lochard may be sued for deliberate indifference to the health and safety of plaintiff when no such claim is identified in Plaintiff's Third Amended Complaint.

7.    Whether any of the Defendants acted in retaliation to the exercise of Plaintiff's First Amended right to express protected speech.

8.    Whether Plaintiff suffered from a serious medical need at the time of his encounters with each of the Defendants.

9.    Whether an incurable disease such as keratoconous creates a persistent serious medical need regardless of the amount or the timing of the treatment provided to Plaintiff.

10.    Whether corneal transplant surgery is a medically necessary procedure in treating keratoconous.

11.    Did the timing of the corneal transplant cause any injury to the plaintiff?

12.    Does corneal transplant surgery guarantee increased visual acuity for the patient receiving such surgery?

13.    Could any medical treatment halt the progression of plaintiff's keratoconous in either eye?

14.    Whether plaintiff suffered an injury resulting from the deliberate

21

indifference of any defendant to any serious medical need of the plaintiff.

15.    What is a "program" under the ADA or Rehabilitation Act?

16.    Whether the case against Walker in his official capacity and the Department of Corrections for violations of the Constitution are barred by the Eleventh Amendment.

**17.**    Whether punitive damages are available under the Americans With Disabilities Act and/or the Rehabilitation Act.

E.    JURY DEMAND

Defendants have requested trial by jury.

### III. PLAINTIFF'S STATEMENT

A.    ITEMIZED STATEMENT OF DAMAGES

Aaron McCroy seeks the following damages as a result of his injuries and disability caused by Defendants:

The Present Value of Medical Care and Supplies

McCroy will require continued monitoring and contact lens fitting, possibly including a corneal transplant for his right eye after his release from custody later this year. In addition, based upon his age and disability, Plaintiff will be unable to care for himself.

The Present Value of Wages, Salary, Profits and Earning Capacity

At the time of Plaintiff's estimated release from custody, he will be legally blind

and permanently disabled, 48 years old with a life expectancy of 27.0 more years. (*See* National Vital Statistics Reports, Vol. 54, No. 14, April 19, 2006.)

U.S. Department of Labor's, Bloomington-Normal, IL, National Compensation Survey dated April, 2006 establishes that the mean hourly earnings for a private industry worker is $16.39 with a mean weekly hours of 34.3. These figures compute to $562.18/week earnings and if the worker was to work 50 weeks out of the year, computes to yearly earnings of $28,109. If Plaintiff were able to work for his estimated 27 remaining years, his lost earnings would be $758,943.

Personal Injury

The physical, mental and emotional pain and suffering, disability and loss of normal life already experienced and reasonably certain to be experience in the future.

Punitive Damages

The purpose of punitive damages are to punish a defendant for conduct and to serve as an example or warning to others not to engage in similar conduct in the future. If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages should be in an amount sufficient to fulfill the purposes that I have described to you.

Attorney Fees

If Plaintiff is a prevailing party, to be determined after trial.

## IV.  WAIVER OF CLAIMS OR DEFENSES

(OR JURY DEMAND)

(If nothing is waived leave this section out.)

## V.  EXHIBITS ATTACHED

A.    Stipulation of Uncontested facts and issues of law (signed by all parties).

B.    Plaintiff's Witness List.

C.    Defendants' Witness List (for each defendant).

D.    Plaintiff's Exhibit List.

E.    Defendants' Exhibit List (for each defendant).

F.    Joint Exhibit List.

G.    Proposed Jury Instructions (Joint)

H.    Plaintiff's Proposed Instructions (only if objections by defendant).

I.    Defendants' Proposed Instructions (only if objections by plaintiff).

## VI.  GENERAL ADDITIONAL

The following additional action was taken:

[Recite amendments to pleadings, additional agreements of the parties on the qualifications of expert witnesses or any other subject, disposition of motions at the conference, etc., if necessary.  If no such action was taken, leave this paragraph out of the Order.]

IT IS UNDERSTOOD BY THE PARTIES THAT:

The plaintiff is limited to one (1) expert witnesses whose names and qualifications have been disclosed to the defendants.  The defendants have not retained any expert witnesses.

Any Trial Briefs or Motions *in limine* shall be submitted no later than fourteen (14) days prior to the commencement of the trial.

A party may supplement a list of witnesses or exhibits only upon good cause shown in a motion filed an served upon the other parties prior to trial; except that, upon the development of testimony fairly shown to be unexpected, any party may, with leave of court, call such contrary witnesses or use such exhibits as may be necessary to counter the unexpected evidence, although not previously listed, and without prior notice of any party.

It is mutually estimated that the length of trial will not exceed ___ full days. The case will be listed on the trial calendar to be tried when reached.

This pre-trial order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice.  Such modification may be made either on motion of counsel for any party or on the Court's own motion.

Any additional proposed jury instructions shall be submitted to the Court within five days before the commencement of the trial, but there is reserved to counsel for the respective parties the right to submit supplemental proposals for instructions during the course of the trial or at the conclusion of the evidence on matters that

could not reasonably have been anticipated.

IT IS SO ORDERED.


HAROLD A. BAKER
JUDGE


ENTERED:    OCTOBER 25, 2007

APPROVED AS TO FORM AND SUBSTANCE:


s/Douglas J. Quivey
Attorney for Plaintiff,
Aaron McCroy

s/Thomas F. Londrigan
Attorney for Plaintiff,
Aaron McCroy

s/ Kelly Choate
Attorney for Defendants,
IDOC, Dennis Hockaday, Kevin Winters,
Sandra Funk, Deborah Fuqua, Byron Law,
Kenneth Kellerman, and Julius Flagg;

s/ Theresa Powell
Attorney for Defendants,
Wexford Health Sources, Inc., Lowell Brown, M.D.,
Hughes Lochard, M.D., and Rhonda Mills

ADDENDUM A

    1.  Whether the ADA and/or Rehabilitation Act confer rights to a disabled person to seek redress of grievances outside of the First Amendment to the Constitution.

    2.  What constitutes, "exercising right" as a disabled person?

    3.  Is there a basis under the law to hold the Department of Corrections liable under the ADA and/or Rehabilitation Act for retaliating against plaintiff for plaintiff's exercising his right as a disabled person?