05415-N3293
TMP/ej

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON McCROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-3171 |
| | ) | |
| THE ILLINOIS DEPARTMENT OF CORRECTIONS, | ) | |
| ROGER E. WALKER, JR. (in his official capacity only), | ) | |
| DENNIS HOCKADAY, KEVIN WINTERS, SANDRA | ) | |
| FUNK, DEBRAH FUQUA, LIEUTENANT BYRON | ) | |
| LAW, KENNETH KELLERMAN, JULIUS FLAGG, | ) | |
| (all in their official and individual capacities), WEXFORD | ) | |
| HEALTH SOURCES, INC., DR. LOWELL BROWN, | ) | |
| M.D., DR. HUGHES LOCHARD, M.D., and | ) | |
| RHONDA MILLS, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RENEWED MOTION FOR JUDGMENT OF A MATTER OF LAW,
OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC. and LOWELL BROWN, M.D., by their attorney, THERESA M. POWELL of HEYL, ROYSTER, VOELKER & ALLEN, and for their Memorandum of Law in Support of their Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial pursuant to Federal Rules of Civil Procedure 50(b) and 59, state:

**I. INTRODUCTION**

The Plaintiff in this case filed a cause of action against numerous Defendants, including the undersigned Defendants, Wexford Health Sources, Inc.(hereinafter referred to as "Wexford") and Lowell Brown, M.D. A jury verdict was returned against Wexford with respect to an Eighth Amendment claim, as well as against Dr. Brown for both a First Amendment and Eighth Amendment claim. The pretrial order that was entered by the parties and the Court identified certain claims

HEYL ROYSTER
VOELKER
& ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

against the undersigned Defendants. The pretrial order does contain causes of action against Wexford for both retaliation and Eighth Amendment claims. The jury found in favor of Wexford with respect to the retaliation claim, and therefore, Defendant's motion makes no reference to that claim. This memorandum therefore addresses only the Eighth Amendment claim against Wexford.

Defendant Wexford asserts that no reasonable jury could find against Wexford on the Plaintiff's claims under the Eighth Amendment as there was no evidence to support the existence of a custom, policy, or practice that constituted deliberate indifference to a serious medical need. In addition, there was no evidence to establish that any employee of Wexford was following a written or implied custom, policy, and practice which constituted deliberate indifference to a serious medical need.

With respect to Dr. Brown, the final pretrial order includes Dr. Brown in claims for both retaliation and claims under the Eighth Amendment with respect to conditions of confinement, as well as deliberate indifference to a serious medical need. The final pretrial order makes no reference to Dr. Brown on Plaintiff's claim of failure to protect. However, the Court's jury instruction includes Dr. Brown in Plaintiff's claim of failure to protect. Defendant Brown also asserts that no reasonable jury could have found against him on the claims of deliberate indifference to a serious medical need or on the claim of retaliation as there was no evidence with respect to subjective knowledge of Plaintiff's exercise of his First Amendment rights, nor was there evidence that Dr. Brown's actions would have been any different had the Plaintiff failed to exercise his First Amendment rights. In addition, Defendants assert there was insufficient evidence for a reasonable jury to find against Dr. Brown with respect to the claims of deliberate indifference to a serious medical need as the only evidence presented during the trial with respect to Dr. Brown related to placement and housing issues

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

2

05415-N3293
TMP/ej

of the Plaintiff, which are insufficient as a matter of law to constitute deliberate indifference. Accordingly, Defendants file this Memorandum of Law in Support of their Renewed Motion for Judgment as a Matter of Law after the verdict, and/or in the alternative, request a new trial.

## II. ARGUMENT

**A. No Reasonable Jury Could Have Found Against Wexford on Plaintiff's Claims Under the Eighth Amendment.**

    **1. The Court Was in Error When it Refused Defendants' Jury Instructions Regarding the Scope of Wexford's Duty.**

In order for the jury to find against Wexford, the Plaintiff was required to establish that Wexford had a policy, custom, or practice which constituted deliberate indifference to a serious medical need which violated the Plaintiff's Eight Amendment rights. The only evidence introduced during the case as it pertained to Wexford was that Wexford denied Plaintiff's request for a corneal transplant on May 15, 2002 after a recommendation for a corneal transplant had been made by an outside specialist. The evidence in the case established that Wexford denied the request for a corneal transplant on the grounds that such a procedure was not covered by of its contract with the State. The Court denied Defendant Wexford's jury instruction (Medical Defendants' Instructions 10, 11, and 12) explaining that Wexford's obligation to provide medical care was limited by the terms of its contract. Defendants argue that this was reversible error.

    **2. No Reasonable Jury Could Have Found Against Wexford on Plaintiff's Eighth Amendment Claim as There Was No Verifying Medical Evidence to Establish That the Plaintiff Suffered an Injury as a Result of the Delay in Receiving the Corneal Transplant after the Initial Denial.**

The evidence in this case presented to the jury established that Wexford denied Plaintiff's initial request for a corneal transplant on May 15, 2002. The Plaintiff was seen by Dr. Feder, a corneal specialist, on November 20, 2002, at which time the transplant surgery was scheduled for

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

3

05415-N3293
TMP/ej

January 6, 2003. According to the testimony of Dr. Zeh, the Plaintiff's subsequent treating corneal specialist, Mr. McCroy did not suffer from any of the conditions which might be caused by the delay of a surgery in providing a corneal transplant. See pages 52, 53, and 54 of Dr. Zeh's deposition, filed as Document No. 444.) Specifically, Dr. Zeh testified that the risks of delaying a corneal transplant surgery included perforation, vascularization, and infection. Dr. Zeh testified that Mr. McCroy did not suffer from these conditions as a result of the delay. In fact, Dr. Zeh also testified on page 51 of his deposition that they could have waited longer to do the corneal transplant and that under certain circumstances, he would have recommended putting off the corneal transplant if the patient were going to be getting out of prison sometime in the very near future. (Zeh Deposition, p. 52.)

The evidence in the case established at best that a delay was created due to the initial denial of the request for a corneal transplant. "An inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996)(quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)).

The Court rejected the Defendants' jury instructions (Medical Defendants' Instructions 8 and 9) which referenced this law and noted that these instructions were argumentative. Defendants assert that this was error on the part of the Court, both in refusing the instruction and in its characterization of the law as taken directly from the case. Accordingly, Defendants request that the Court enter judgment in favor of Wexford and against the Plaintiff, or in the alternative, grant its request for a new trial.

Moreover, it should be noted that there was no legally sufficient evidentiary basis for a reasonable jury to find that Wexford had a policy of acting with deliberate indifference toward the

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

4

05415-N3293
TMP/ej

Plaintiff. Without evidence of such a policy, custom, or practice, Wexford is entitled to judgment as a matter of law. See <u>Monell v. Dept. of Social Services of the City of New York</u>, 436 U.S. 658, 691 (1978); <u>Jackson v. Ill. Medi-Car, Inc.</u>, 300 F.3d 760, 766 (7th Cir. 2002).

  **3.**   **There Is No Respondeat Superior Liability for Causes of Action Filed under § 1983.**

The Plaintiff argued that certain individuals were employed by Wexford and that they took certain actions. The jury may have inappropriately inferred that Wexford was responsible for an action of one or more of its employees because the Court refused Defendants' instruction (Medical Defendants' Instruction 13) advising the jury that there is no respondeat superior liability for such claims. See <u>Monell v. Dept. of Social Services of the City of New York</u>, 436 U.S. 6758, 691 (1978); <u>Jackson v. Ill. Medi-Car, Inc.</u>, 300 F.3d 760, 766 (7th Cir. 2002). Defendant Wexford argues that the refusal of this instruction was error and may have resulted in a verdict against it. Because there is no legally sufficient evidentiary basis for the jury to find that Wexford had a custom, policy, or practice of deliberate indifference, Defendants can only assume that the jury relied upon an improper basis in finding against Wexford. Accordingly, Defendants pray that this Court will enter judgment as a matter of law in favor of Wexford, or in the alternative, grant a new trial on this issue.

**B.**   **Judgment as a Matter of Law Should Be Granted in Favor for Dr. Lowell Brown Because There Is No Legally Sufficient Evidentiary Basis for a Reasonable Jury to Find That Dr. Brown Retaliated Against the Plaintiff.**

  **1.**   **Plaintiff Introduced No Evidence to Establish That Dr. Brown Retaliated Against the Plaintiff.**

In order to prove a retaliation claim, the Plaintiff must prove (1) he engaged in protective conduct and (2) he was retaliated against for engaging in this protective conduct. <u>DeWalt v. Carter</u>, 224 F.3d 607, 618 (7th Cir. 1999) *citing* <u>Mt. Healthy City School Dist. Board of Education v. Doyle</u>,

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

5

05415-N3293
TMP/ej

429 U.S. 274, 283-84, 97 S.Ct. 568 (1977). Even if the Plaintiff proved these elements, this is insufficient if Defendants can show the result would still be the same absent a retaliatory motive. <u>Mt. Healthy City School Dist. Board of Education v. Doyle</u>, 429 U.S. at 287. It is not enough for the Plaintiff to merely state retaliation played a part in the Defendant's actions. <u>Babcock v. White</u>, 102 F.3d 267, 275 (7th Cir. 1996).

In this case, the Plaintiff introduced evidence of grievances over the objection of the Defendants in an attempt to infer that Dr. Brown was aware of the grievances and acted in response to the grievances. Plaintiff introduced no evidence to establish that Dr. Brown was actually aware of the fact that the Plaintiff had filed grievances or exercised his First Amendment rights prior to June 8, 2004. In fact, Plaintiff argued that the June 7, 2004 grievance filed by the Plaintiff was the motivating factor of Dr. Brown's entry on June 8, 2004, which resulted in Plaintiff being transferred from the infirmary to the general population. The evidence in the case, however, from Counselor Karen Wear, established that the Western Illinois Correctional Center has a procedure in place with respect to processing said grievances. This testimony did not establish that Dr. Brown would have received this grievance before the entry was made in the record suggesting that Mr. McCroy had no further need for medical detention. In addition, there was no evidence to indicate that Dr. Brown would have done anything different had the grievance not been filed. There was simply no evidence that Dr. Brown's motivation for making the entry on June 8, 2004 was in any way related to the fact that the Plaintiff had filed a grievance on June 7, 2004, or on any other date. Instead, the evidence shows just the opposite. The undisputed evidence shows that there was no medical need for the Plaintiff to remain a patient in the infirmary occupying a bed that would otherwise be available or ready for sick and injured patients who did need it. Indeed, after his eye surgery, the Plaintiff had

HEYL ROYSTER
VOELKER
& ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

6

05415-N3293
TMP/ej

previously been discharged from the infirmary, and had been housed in both segregation and general population without incident. Accordingly, Defendants pray that this Court enter judgment in favor of Dr. Brown and against the Plaintiff. Moreover, the mere fact that Plaintiff was moved did not cause harm to the Plaintiff. The harm which befell the Plaintiff was the result of an intentional act by a third party. There was no evidence to suggest that Dr. Brown was aware or actually believed that the Plaintiff was at a specific and impending risk of substantial harm due to his discharge from the infirmary. Accordingly, Defendants request that the Court enter judgment in favor of the Defendant and against the Plaintiff as no reasonable jury could have found in favor of the Plaintiff and against Dr. Brown on this issue.

**C.  Judgment as a Matter of Law Should Be Granted in Favor for Dr. Lowell Brown Because There Is No Legally Sufficient Evidentiary Basis for a Reasonable Jury to Find That Dr. Brown Subjected The Plaintiff to Cruel and Unusual Punishment.**

**1.  Judgment as a Matter of Law Should Be Granted in Favor of Dr. Brown on the Plaintiff's Eighth Amendment Claim of Cruel and Unusual Punishment as There Was No Legally Sufficient Evidentiary Basis for a Jury to Find That Dr. Brown's Act of Discharging the Plaintiff from the Infirmary Was Punishment.**

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992). The Plaintiff, an inmate incarcerated in the Illinois Department of Corrections, claims that Dr. Brown violated his Eighth Amendment right to be free from the infliction of cruel and unusual punishment.

For purposes of determining tort liability under § 1983, "punishment" has both an objective and subjective component. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992). The objective component is whether the acts or practices alleged to constitute cruel and unusual punishment are such as would be deemed cruel and unusual punishment if prescribed in a state or federal statute as the lawful punishment for a particular offense. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir.

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

7

05415-N3293
TMP/ej

1992). The subjective component of unconstitutional "punishment" is the intent of the Defendant involved in the acts or practices alleged to constitute cruel and unusual punishment. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992). "*Actual* knowledge of *impending* harm *easily* preventable" is the minimum intent required. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) (emphasis in original). A prison official's failure to act in such circumstances suggests that the official actually wants the prisoner to suffer the harm. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992). The subjective component is lacking and the suit fails, however, if the official does not know of the impending harm or cannot do anything about it. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992).

Here, the Plaintiff's evidence fails to demonstrate either the objective or subjective component required to demonstrate a violation by Dr. Brown of Plaintiff's right to be free from cruel and unusual punishment. The Plaintiff's evidence against Dr. Brown is that Dr. Brown discharged the Plaintiff from the infirmary, because there was no medical reason for him to remain there as a patient. The objective component for a claim of cruel and unusual punishment is lacking, because the act of discharging a patient from the infirmary, when there was no medical reason to keep him there as a patient, is not an act that would be deemed cruel and unusual punishment if prescribed in a state or federal statute as the lawful punishment for a particular offense. Indeed, the Plaintiff had previously been released from the infirmary to segregation and had later been housed in general population without incident after his eye surgery and before Dr. Brown released him from the infirmary the second time.

The Plaintiff's evidence also fails to demonstrate the subjective component required for a claim of cruel and unusual punishment. First, the subjective component is lacking and the suit fails,

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

8

05415-N3293
TMP/ej

because there is no evidence that there was a medical need for the plaintiff to be remain a patient in the infirmary occupying a bed that would otherwise be available and ready for sick and injured patients who did need it. Second, the subjective component is lacking and the suit fails, because there is no evidence that Dr. Brown knew of impending harm to the Plaintiff in the form of an attack from another offender, if the Plaintiff was again discharged from the infirmary. Third, the subjective component is also lacking and the suit fails, because there is (1) no evidence that Dr. Brown could do anything about the Plaintiff's classification as general population, protective custody, or segregation; (2) no evidence that Dr. Brown could do anything about whether the Plaintiff was housed in a single or double cell; and (3) no evidence that Dr. Brown could do anything about who the Plaintiff was celled with. While the jury obviously felt sorry for the Plaintiff, the Eighth Amendment to the United States Constitution was not intended as a mechanism for imposing strict liability on prison doctors to compensate offenders who suffer misfortunes while serving out the sentences imposed on them for their offenses against society.

**2. Judgment as a Matter of Law Should Be Granted in Favor of Dr. Brown on the Plaintiff's Eighth Amendment Claim of Deliberate Indifference to a Serious Medical Need as There Was No Legally Sufficient Evidentiary Basis for a Jury to Find That Dr. Brown Was Deliberately Indifferent to Any Serious Medical Need of the Plaintiff.**

First, Plaintiff argued that Dr. Brown was deliberately indifferent to a serious medical need when he made an entry in the medical records on June 8, 2004 which stated "No further need for medical detention" which arguably allowed the Plaintiff to be transferred from the infirmary to the general population. Plaintiff argued that Dr. Brown's order, in and of itself, constituted deliberate indifference as he believed it was a contrast to prior entries made in the medical records which suggested that Dr. Zeh, the outside treating physician, had recommended that the plaintiff not be

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

9

05415-N3293
TMP/ej

housed in the general population to avoid injury to his eye. Defendants assert that the housing and cell placement of an inmate at the Western Illinois Correctional Center, or any other correctional center, is not medical treatment and therefore should not be actionable under a cause of action for deliberate indifference to a serious medical need.

Moreover, after his eye surgery, the Plaintiff was previously released from the infirmary and housed in both segregation and general population without incident. Dr. Brown did not believe that releasing the Plaintiff from the infirmary – because there was no medical reason for him to be there, and he was occupying a bed that would otherwise be available and ready for sick and injured patients who did need it – posed any greater risk to the Plaintiff than when he previously, after his eye surgery, resided without incident among other offenders in general population. Indeed, the Plaintiff acknowledged that he himself decided to "take his chances" instead of refusing his housing assignment with the fellow offender with whom he later had an altercation..

In order to establish a cause of action to deliberate indifference to a serious medical need, the Plaintiff must first prove that the Plaintiff suffered from a serious medical need. A serious medical need is one which a layperson could see requires treatment or one for which a physician has prescribed a specific course of care. Farmer v. Brennan, 511 U.S. 825 (1994). In order to prove a cause of action for deliberate indifference to a serious medical need, the Plaintiff must show that the physician or other defendant was both aware of a fact from which an inference could be drawn that a substantial risk of harm exists, and he must actually draw the inference. Higgins v. Correctional Medical Service, 178 F.3d 508, 511 (7th Cir. 1999). The exercise by a physician of his professional judgment does not constitute deliberate indifference. Youngber v. Romeo, 457 U.S. 307, 322-323 (1982).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

10

05415-N3293
TMP/ej

Medical decisions such as whether one course of treatment is preferable to another are beyond the Eighth Amendment's purview. The Eighth Amendment is not a vehicle for bringing claims of medical malpractice. Snipes v, DeTella, 95 F.3d 586, 590 (7th Cir. 1996). Deliberate indifference also requires that the Defendant either intended to harm the Plaintiff or knew of a risk of harm so significant that an intent to harm could be inferred from a refusal to provide medical care. See Smith-Bey v. Hospital Administrator, 841 F.2d 751, 759 (7th Cir. 1988).

The Plaintiff introduced evidence against Dr. Brown that Dr. Brown released the Plaintiff from the infirmary into the general population. This is not a basis for a cause of action for deliberate indifference as the housing of an inmate should not be encompassed within a cause of action for deliberate indifference to a serious medical need. There was no evidence of any medical need for the Plaintiff to remain as a patient in the infirmary, occupying a bed that would otherwise be available and ready for sick and injured patients who did need it. At best, the Plaintiff presented evidence that the he should have been housed by security officials somewhere other than where they did. Nonetheless, evidence that it would have been preferable for security to have housed Plaintiff somewhere other than the general population, to have let Plaintiff have a single cell, or to have chosen a different cellmate for Plaintiff, is **not** evidence of a medical need for him to occupy a bed in the infirmary that would otherwise be available for a sick or injured patient who actually did need it. No reasonable jury could find Dr. Brown liable for not keeping the Plaintiff in an infirmary bed that he did not need on the off-chance that security officials might not do their job and protect him from an attack from another offender, simply because Plaintiff's underlying medical condition made him more susceptible to harm if he was attacked by another inmate.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

It should be noted that Dr. Brown did not begin providing care and treatment to the Plaintiff until January of 2004. It should also be noted that the evidence introduced at trial established that the Plaintiff was transferred out of the Western Illinois Correctional Center in January of 2005. Therefore, the dates relevant to Dr. Brown's care and treatment can only be between January of 2004 and January 2005. Between those dates, the Plaintiff's medical needs did change. From January of 2004 through September 23, 2004, the Plaintiff's medical care with respect to his left eye concerned follow-up treatment subsequent to the corneal transplant provided on February 3, 2003. There was no testimony introduced during the trial to establish that any care and treatment provided by Dr. Brown constituted deliberate indifference. In addition, there was no evidence to suggest that any medical need of the Plaintiff went unaddressed by Dr. Brown when presented to him, nor that Plaintiff suffered any injury during these dates as a result of any care and treatment provided to the Plaintiff by Dr. Brown.

The only testimony and evidence presented in the case as it pertains to Dr. Brown was with reference to his entry of June 8, 2004, which suggested that Dr. Brown discharged the Plaintiff from the infirmary. Again, this is insufficient to establish deliberate indifference to a serious medical need as housing an inmate is not within the purview of the medical staff within a correctional institution. There was no evidence to indicate that Dr. Brown was aware or had any involvement in determining where or with whom Mr. McCroy would be housed were he not in the infirmary. In addition, the Plaintiff's theory against Dr. Brown was simply that Dr. Zeh, an outside physician, had recommended that the Plaintiff be kept in a place where he would not have contact with others to avoid his eye getting poked out. Again, this is a difference of opinion among medical personnel regarding an issue that is not medical. Moreover, "mere differences of opinion among medical personnel regarding a

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

12

05415-N3293
TMP/ej

patient's appropriate treatment do not give rise to deliberate indifference." <u>Snipes v. DeTella</u>, 95 F.3d 586, 591 (7th Cir. 1996). Whether one course of treatment is preferable to another is beyond the scope of the Eighth Amendment. <u>Id</u>. More importantly, a recommendation by Dr. Zeh that Plaintiff be kept in a place where he would not have contact with others is not equivalent to a serious medical need for Dr. Brown to indefinitely maintain one of the infirmary beds for the Plaintiff, who had previously been outside the infirmary without incident after his eye surgery. In other words, Dr. Brown's action in discharging the Plaintiff from the infirmary was in no way inconsistent with Dr. Zeh's recommendation that the Plaintiff be kept where he would not have contact with others. Plaintiff, however, opted to "take his chances" and to stay in a cell where he had contact with other offenders. Defendant argues that housing and placement of an inmate are not even treatment issues and therefore should not be the basis of a cause of action for deliberate indifference to a serious medical need. Accordingly, Defendants pray that this Court will enter judgment in favor of Dr. Brown and against the Plaintiff. In the alternative, Defendants request a new trial on the above issues.

  **3.  Judgment as a Matter of Law Should Be Grated in Favor of Dr. Brown Because There Is No Legally Sufficient Evidentiary Basis for a Reasonable Jury to Find That Dr. Brown Failed to Protect the Plaintiff.**

First, the Court should not have allowed a cause of action for failure to protect against Dr. Brown as it was not contained in the final pretrial order.

The final pretrial order entered in this case contained no claim against Dr. Brown for failure to protect. The final pretrial order only contained a claim for failure to protect against Defendants Law and Kellerman.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

13

05415-N3293
TMP/ej

A final pretrial order shall control the subsequent course of an action unless modified by a subsequent order or agreement of the parties or by consent of the parties. Defendants did not consent that such a cause of action should have been included in the Plaintiff's claim as Defendant Brown believes his Motion for Summary Judgment should have been granted on this issue as there were no genuine issues of material fact regarding the elements for such a claim. As pretrial orders supersede the pleadings (Wilson v. Kelkhoff, 86 F.3d 1438, 1442 (7th Cir. 1996)), this claim should not have been included in the cause of action against Dr. Brown. Accordingly, Defendant is entitled to judgment as a matter of law or a new trial in the alternative.

Assuming that a failure to protect claim is appropriate against Dr. Brown, Defendant is entitled to judgment as a matter of law as there is no evidentiary basis for a reasonable jury to have found against Dr. Brown on this claim. A plaintiff may bring a cause of action under the Eighth Amendment for failure to protect as prison officials do have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, Defendant has found no cases which would indicate that such a duty may be or ever has been extended to a physician or any other healthcare provider who provides care and treatment to an inmate within the confines of a prison setting. Defendant has found no case law which would require a physician or any other healthcare provider to keep an inmate in the infirmary because the inmate/patient suffers from a medical condition which could result in substantial harm or serious aggravation of that condition should the inmate/patient become involved in an altercation. The Eighth Amendment is violated **only** (*emphasis added*) when an inmate is attacked by another inmate **if** (*emphasis added*) "deliberate indifference by prison officials effectively condones the attack by allowing it to happen . . . " Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996). Deliberate indifference is comparable to criminal

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

14

05415-N3293
TMP/ej

recklessness, and is shown by something approaching a total unconcern for one's welfare in the face of serious risks, or a conscious culpable refusal to prevent harm. Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991). Negligence does not satisfy a deliberate indifference standard. Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994). It is not enough to show that a prison official merely failed to act reasonably. Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995).

Deliberate indifference can be inferred **only** (*emphasis added*) where a defendant knows there is a strong likelihood rather than a mere possibility that violence will occur. Watts v. Laurent, 77 F.2d 168, 172 (7th Cir. 1985). Prison officials cannot be expected to eliminate the possibility of all dangers. McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991). "Prisons are dangerous places. Thus the right to reasonable protection does not include the right to protection from random acts." McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir. 1991) "Some level of [danger] is inevitable no matter what guards do."

In order to substantiate a claim for failure to protect, the Plaintiff must prove that prison officials were aware of a specific, impending and substantial threat to his safety "often by showing that he complained to prison officials about a specific threat to his safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996).

In this case, the Plaintiff must prove the Dr. Brown had knowledge that there was a substantial risk that Inmate Durham (the one who is alleged to have attacked the Plaintiff) was threatening harm to Mr. McCroy, and yet failed to take action. Sanville v. McCaughtry, 266 F.3d 724, 733-34 (7th Cir. 2001).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

Plaintiff has presented no evidence to substantiate a cause of action against Dr. Brown for failure to protect as there was no evidence to indicate that Dr. Brown ever was even aware that the Plaintiff was ever housed with Inmate Durham. In fact, the evidence at trial established that Mr. McCroy was released from the healthcare unit on either June 8 or June 9, 2004. Mr. McCroy had a two different cellmates before being housed with Inmate Brandon Durham. There was no evidence to suggest that Dr. Brown was ever made aware of the identities of any of the cellmates of Mr. McCroy. There was no evidence to indicate that Dr. Brown had any knowledge regarding the propensities for violence of Inmate Durham, the criminal backgrounds of either Mr. Durham or Mr. McCroy, or that Dr. Brown believed Inmate Durham was likely to be involved in an altercation or fight or assault involving another inmate. There was no evidence presented to establish that more than a mere possibility of violence existed in the general population at the Western Illinois Correctional Center. In fact, the evidence presented by the Plaintiff established that there was one incidence of violence in the infirmary involving an inmate and a guard, and another incidence of violence involving two inmates in the general population. Beyond that, there was no evidence of the knowledge of violence within the Western Illinois Correctional Center.

In fact, the argument made by the Plaintiff was simply that Dr. Zeh, a physician who had been treating the Plaintiff for his post-operative care, recommended that the patient be placed somewhere that would not make it more likely that he would be susceptible to deliberate or accidental trauma. The evidence at trial was that Dr. Brown believed that Dr. Zeh's expectations of safety were unrealistic. Dr. Brown made an entry in the medical records on June 8, 2004 indicating that there was "no medical need for further detention." There is no dispute that Mr. McCroy suffered a serious and substantial injury as a result of his altercation with Brandon Durham, which occurred on September

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

16

05415-N3293
TMP/ej

23, 2004. Defendants do not dispute that the loss of Mr. McCroy's eye was a severe and substantial injury.

Defendant Brown contends, however, that the Court erroneously allowed the Plaintiff to argue that Dr. Brown was required to keep the Plaintiff away from all other people, especially other people incarcerated at the Western Illinois Correctional Center who had a documented history of violence, despite the fact that there was no evidence that Dr. Brown was aware of which inmate(s) may or may not have a history of violence. Essentially, Plaintiff is arguing that because the Plaintiff was at risk of substantial harm if he became involved in an altercation, Defendant Brown was required to keep Mr. McCroy in the infirmary and away from other inmates who could inflict such harm upon him. This is a perversion of the law. Essentially, the Plaintiff is arguing that **any** inmate who suffers from a medical condition which could be seriously aggravated or result in substantial harm if the patient/inmate were involved in an altercation, must be kept in the healthcare unit and away from other inmates since it is presumed that violence can or could occur within the confines of a correctional facility. Taken in this context, an inmate with a heart condition must be kept away from all inmates because he could suffer from a heart attack or other serious heart problems should he become involved in an altercation. Likewise, an inmate with an autoimmune disease such as HIV must be kept away from all other people and isolated because he could die or be at risk of serious infection should he catch a cold from another inmate as everyone is aware that colds are common and the risk is great to such individuals. Similarly, a plaintiff could argue that because HIV is most certainly deadly, all inmates with HIV must be kept away from all other inmates who are not HIV positive because should an altercation occur and blood spill from both inmates, the uninfected inmate would most certainly suffer a substantial and serious harm should his blood come in contact with the

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

17

05415-N3293
TMP/ej

infected individual. The same would be true for any inmate who is hepatitis C positive or any other disease that may be communicable through bodily fluids that might be exchanged during a fight or from living in "close quarters with another inmate."

Essentially, Defendant Brown was found to be liable for the loss of the Plaintiff's eye because there was no question that Mr. McCroy would suffer a substantial and serious harm **if** (*emphasis added*) he became involved in a fight wherein his eye was struck by another inmate. This, however, is not the law. The law requires that the Plaintiff prove that Defendant Brown had knowledge that there was a strong likelihood rather than a mere possibility that violence would occur and that this violence was specific, impending, and a substantial threat to the Plaintiff's safety which was made known to Dr. Brown or some other prison official before the violence occurred. Because the Plaintiff introduced no such evidence, Defendant is entitled to judgment as a matter of law.

By allowing such a verdict to stand, the Court would make medical staff an insurer of safety for all inmates at risk of a substantial injury due to the nature of their varying medical conditions should they become involved in an altercation within the correctional facility. It would be hard to imagine a scenario wherein a physician could deny that an inmate who suffers from any serious medical condition would not be at risk of substantial harm were he to be involved in an altercation. In fact, under Plaintiff's theory, all inmates who are elderly, suffer from arthritis, suffer from ulcers, suffer from aneurysms, or any other medical condition would have to be placed in the healthcare unit or somewhere within the correctional system in their own cells and kept away from other inmates because death or serious injury is sure to result should that person become involved in an altercation with another inmate. This is not the law, nor what the law intends.

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

Accordingly, Defendant Brown prays that this Court enter judgment in his favor and against the Plaintiff, or in the alternative, award Defendant Brown a new trial that does not reference risks that were not made known to Defendant Brown. Again, the Plaintiff only proved that the Plaintiff was at risk of substantial harm should he become injured. The Plaintiff presented no evidence to indicate that an altercation was likely to occur, nor was there any evidence for a reasonable jury to conclude that Dr. Brown was aware that there was a strong likelihood that violence would occur. This was Plaintiff's burden to prove and he failed to do so.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC. and LOWELL BROWN, M.D., pray that this Court will enter judgment in their favor and against the Plaintiff. In the alternative, Defendants pray that this Court will grant Defendants' request for a new trial for the reasons set forth herein.

          Respectfully submitted,

          WEXFORD HEALTH SOURCES, INC. and LOWELL BROWN, M.D., Defendants,

          HEYL, ROYSTER, VOELKER & ALLEN, Attorneys for Defendants,

BY:   /s/Theresa M. Powell
        Theresa M. Powell, #6230402
        HEYL, ROYSTER, VOELKER & ALLEN
        Suite 575, National City Center
        P. O. Box 1687
        Springfield, IL 62705
        Phone: (217) 522-8822
        Fax:   (217) 523-3902
        E-mail:tpowell@hrva.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2007, I electronically filed **Memorandum of Law in Support of Defendants' Renewed Motion for Judgment of a Matter of Law, or in the**

HEYL ROYSTER VOELKER & ALLEN
Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-N3293
TMP/ej

**Alternative, Motion for New Trial** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

> Douglas J. Quivey
> doug@lprpc.com
>
> Thomas F. Londrigan
> tom@lprpc.com
>
> Kelly R. Choate
> kchoate@atg.state.il.us
>
> Julie L. Morgan
> jlmorgan@atg.state.il.us
>
> Alexandra de Saint Phalle
> alex@lprpc.com

and I hereby certify that on November 19, 2007, I mailed by United States Postal Service, the document(s) to the following non-registered participants:

> None

/s/Theresa M. Powell
Theresa M. Powell, #6230402
HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, National City Center
P. O. Box 1687
Springfield, IL  62705
Phone: (217) 522-8822
Fax:    (217) 523-3902
E-mail:tpowell@hrva.com

HEYL ROYSTER VOELKER & ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822