1    A.    Enzyme cleaners can be bought over the
2    counter at Walmart so I am familiar with them.
3    Q.    Kelly Powell asked you -- excuse me, Kelly
4    Choate asked you a question about the University of
5    Illinois Referral, did this patient -- was he ever sent
6    over to the University of Illinois, if you know?
7    A.    I don't know.
8         MR. LONDRIGAN:  That's all I have.  Thank
9    you.
10        THE COURT:  Anything else, please, of the
11   witness?
12        MS. CHOATE:  I don't have anything.
13        MS. POWELL:  No, Your Honor.  Thank you.
14        THE COURT:  You may step down, Miss Fuqua.
15   Call another witness.
16        MR. LONDRIGAN:  Dr. Brown.
17        LOWELL BROWN, WITNESS SWORN
18             DIRECT EXAMINATION
19             BY MR. LONDRIGAN:
20   Q.    Your Honor, at this time I would precede
21   the testimony with the admissions of party opponents.
22        THE COURT:  Very well.  These matters that
23   you are about to be read to, jurors, are statements under
24   oath by the witness who is a defendant, a party opponent
25   and you may proceed.

```
 1              MS. CHOATE:  Your Honor, I would just renew
 2   our objection that was taken outside of the hearing of the
 3   jury about the limitation of the admissions as to any
 4   other party but Dr. Brown.
 5              THE COURT:  Well, this is his testimony
 6   himself.  Right?  So they are his admissions.
 7              MR. LONDRIGAN:  On March 8th of this year
 8   Dr. Lowell Brown testified under oath as follows:
 9              "Question:  You make that decision?
10              Answer: Yes.
11              Question.  You made that decision?
12              Answer:  And, of course, it was in
13   conjunction and discussion with the nurse administrator
14   that placed Mrs. Fuqua and others.
15              Do you know we talk about things?
16              Question:  There is a transcription in the
17   records that a request was made of his treating
18   ophthalmologist to place him in the general population and
19   he said no he didn't want him poked in the eye.  Did you
20   ever review that before this deposition today?
21              Answer.  Yes.  I know all about that.
22              Question.  Did you call this treating
23   physician back when you exercised your medical judgment to
24   have this patient transferred into the general population?
25              Answer.  No.
```

93

```
 1                Question:  Why not?
 2                Answer:  I determined that an opinion or
 3   recommendation was based on probably unrealistic
 4   expectations and playing it safe.  He wasn't on the scene.
 5   He doesn't know entirely what's going on here and I
 6   decided that I knew better in view of everything that was
 7   going on, and he was a previous ophthalmologist at any
 8   rate.
 9                Question:  Did you communicate at all with
10   the Medical Director for the Department of Corrections?
11                Answer:  Do you mean like Dr. Elyea?
12                Question:  Yes.
13                Answer:  I don't know that this case
14   reached his desk.
15                Question:  Well, you certainly didn't call
16   and ask for his opinion, did you?
17                Answer:  No, I don't believe so.
18                Question:  Who did you consult when you
19   made the decision to transfer him to the general
20   population?
21                Answer:  I don't know that I spoke
22   specifically to an ophthalmologist about my decision.
23                Question:  Well, what was done from a
24   medical standpoint to make sure that when this patient
25   went into the general population that he wouldn't be put
```

1   together with a known violent cell mate who had previously
2   been in segregation for fighting and that had a history of
3   violence?
4           Answer: Well, there is a -- there is an
5   action that security performs under the heading of
6   placement where they are supposed to consider the
7   variables involved in how people get put in certain cells.
8   And I presumed that this process took place when he went
9   from the infirmary to the population.
10          Question: Why do you presume that?
11          Answer: I expect it is written somewhere.
12          Question: You just assumed that that's
13  something that security would be doing to make sure this
14  patient wasn't put into a cell with a violent cell mate?
15          Answer: Well, I have had reputable people
16  tell me that that's what happened so it just isn't a mere
17  assumption.
18          Question: Tell me a couple of those
19  reputable people that told you that?
20          Answer: This is Debbie Fuqua the Health
21  Care Administrator.
22          Question: Anybody else?
23          Answer: I don't remember any other
24  incidents, but I remember she told me that it's a specific
25  action that is performed or should be performed.

```
 1                 (Finished reading.)
 2          Q.    Dr. Brown, before we begin this session,
 3   are there any changes or redactions or different opinions
 4   that you now hold that are not expressed in what I just
 5   read to the jury?
 6                MS. POWELL:  Objection.  Form of the
 7   question.  That's not a proper question for the witness,
 8   Your Honor.
 9                THE COURT:  Overruled.  He asked him if he
10   wants to change anything.
11          Q.    Would you like to change anything now
12   before this?
13          A.    We will leave it as is.
14          Q.    Tell us a little bit about your medical
15   experience, and, in particular, reference to treating
16   people who have diseases of the eye?
17          A.    Well, my training begins after four years
18   of medical school with a rotating internship at the county
19   hospital in San Jose, California, which was at that time
20   considered the second best internship in the country.  And
21   we saw just about everything.  It was surgery, pediatrics,
22   obstetrics, all phases of medicine.  And some of that
23   included work with the eyes.  Both medical and some
24   surgical type treatment.
25                Somewhat the same thing occurred over the
```

```
 1                THE COURT:  Page 36, Bryon Law.  Any
 2   objection?
 3                MR. QUIVEY:  No objection.
 4                MS. CHOATE:  No objection, Your Honor.
 5                THE COURT:  Page 37, Kenny Kellerman?
 6                MR. QUIVEY:  No objection.
 7                MS CHOATE:  No objection.
 8                THE COURT:  Page 38, Julius Flagg.  Did we
 9   spell his name right?
10                MR. QUIVEY:  No objection.
11                MS. CHOATE:  No objection.
12                THE COURT:  Now turning to Wexford.  39
13   Wexford?
14                MS. POWELL:  No objection.
15                MR. QUIVEY:  No objection.
16                THE COURT:  IDOC.  Now, here I am going to
17   have to put in a retaliation claim against the IDOC proved
18   his ADA retaliation claim against the IDOC in conjunction.
19   This is where the Fourteenth Amendment has to come in in
20   conjunction with the Fourteenth Amendment right of equal
21   protection of the law.
22                All right.  With that amendment, has the
23   plaintiff proved his ADA retaliation claim against the
24   IDOC in conjunction with the Fourteenth Amendment right of
25   equal protection of the law, yes or no?
```

1    MR. QUIVEY: Your Honor, I believe that
2 same language can also be added to the second proposition.
3    THE COURT: I agree. Any objection by the
4 plaintiff?
5    MR. QUIVEY: No, sir.
6    THE COURT: All right. Defendants?
7    MS. CHOATE: The defendant IDOC has an
8 objection to that as stated previously. The Department
9 doesn't believe that the ADA supports a retaliation claim.
10 That claim is covered under the First Amendment and we
11 would object to the extent that it includes the
12 retaliation claim.
13    THE COURT: The ADA specifically talks
14 about retaliation because of a disability. So there is
15 retaliation under the ADA and the objection is overruled.
16    Miss Powell, that doesn't apply to you that
17 instruction.
18    All right. Now, Lowell Brown, page 41,
19 plaintiffs.
20    MR. QUIVEY: Your Honor, I believe the
21 language about the ADA claims as it relates to Defendant
22 Brown --
23    THE COURT: It should come out. We missed
24 it. Any objection? That's stricken. Miss Powell, on 41,
25 any objection with the first two inquiries about the First

1    and Eighth Amendment?

2                MS. POWELL:  No, Your Honor, that's fine.

3                THE COURT:  Hughes Lochard, and we have to
4    take out the ADA as to him, too?

5                MS. POWELL:  Right.

6                MR. QUIVEY:  With that change, no, sir.

7                THE COURT:  And the defendants with ADA
8    taking out, I hear no objection.  And the same thing,
9    Rhonda Mills, we have to take the ADA claim out from her.

10

11               All right.  Now, then turn to page 44,
12   which is the form of verdict.  If they have found
13   liability on any one of the plaintiff's claims, they are
14   to assess compensatory damages and punitive damages, if
15   any, as follows:

16               That should go in there.  We assess
17   punitive damages, if any as follows:  So we accent the
18   fact that punitive damages are really discretionary.

19               Any objection, plaintiffs?

20               MR. QUIVEY:  No, sir.

21               THE COURT:  It has to go 41 and 45.

22               MS CHOATE:  44.

23               THE COURT:  I am going to see 41 and 45
24   because we have got to get them to sign that, too.  I want
25   to get that on one sheet of paper.  I will make that come

1  up on one sheet of paper.

2        We have to change that. That didn't get
3  done in the big rush. IDOC and Wexford are not --

4        MS. POWELL: And Wexford needs to be
5  stricken from page 44.

6        THE COURT: Say that again, please.

7        MS. POWELL: Wexford should be stricken on
8  44 and then added on 45.

9        THE COURT: You are absolutely right. I
10 think Susan was in such a hurry to run home that she
11 missed that.

12       Any objection to the form now as amended?

13       MR. QUIVEY: No, sir.

14       MS. CHOATE: Defendants object.

15       THE COURT: Except that you object because
16 there is no basis for punitives.

17       MS. CHOATE: Obviously there is no basis
18 for punitives, but you have stated that on Page 45 so I
19 don't have an objection to that. They misspelled Bryon
20 Law's name. It's B-R-Y.

21       My objection to this if you find against
22 the plaintiff and for the plaintiff against any of the
23 defendants on any of the plaintiff's claim, I think that
24 is confusing when you say that all these defendants
25 connect in the ADA claim.

1          I would ask that that be read -- more
2 properly read against any defendant on the First and/or
3 Eighth Amendment claims. Because those are the only
4 claims left as to any defendant.
5          Is that correct? Individual defendants?
6 The only punitives can go to a First or Eighth Amendment
7 claim. That would be clearer. They think this employee
8 violated the ADA. You are saying you can't find
9 punitives on Page 45 against IDOC itself. I think it's
10 confusing when the state actors can act --
11          THE COURT: Punitive damages are not
12 allowable under the ADA.
13          MS. CHOATE: The defendants individually
14 aren't in under the ADA. That's my point. The first
15 sentence of this form says, "If you find in favor of the
16 plaintiff and against any defendant on any of the
17 plaintiff's claims, which arguably would include the ADA,
18 I think it would be clearer to say on any of the
19 plaintiff's claims under the First and/or Eighth
20 Amendment.
21          THE COURT: If they found in favor of all
22 of the individual defendants and only against IDOC, they
23 should proceed to address compensatory damages, which is
24 what this instruction says. Any of the defendants.
25 Overruled. Miss Powell.

1           MS. POWELL: I just have some additional
2   jury instructions.
3           THE COURT: All right.
4           Bring them to the Clerk and read the
5   numbers into the record.
6           MS. POWELL: The Defendants' Instruction, I
7   will say Medical Defendants' 1.
8           THE COURT: All defendants win?
9           MS. POWELL: A physician's exercise of his
10  professional judgment does not constitute deliberate
11  indifference. Youngberg v. Romeo, 457 U.S. 307, 1982.
12          THE COURT: It begs the question whether
13  they exercise professional judgment. Refused. It's
14  argumentative.
15          MS. POWELL: Medical Defendants'
16  Instruction Number 2, an inmate's disagreement or
17  dissatisfaction with the method of treatment does not
18  constitute deliberate indifference within the meaning of
19  the Eighth Amendment to the U.S. Constitution. Snipes v.
20  DeTella, 95 F.3d 586, 59 is.
21          THE COURT: I think it's inapplicable the
22  way this case has been presented. Here let me see it. I
23  am not going to have you read all of that stuff into the
24  record.
25          MS. CHOATE: The defendants would join in

1  proffering those along with Miss Powell. The IDCC
2  defendants.
3              THE COURT: Show the first two she laid
4  down are refused.
5              Okay. Defendants 13 is refused as -- it's
6  adequately covered in the court's instructions and it
7  becomes argumentative.
8              The same with 3. It is refused.
9              And 4 is adequately covered. It states
10 negligence is not a basis for liability.
11             5 is also refused as argumentative. You
12 can argue all of these things.
13             6, prisoners dissatisfaction with the
14 doctor is refused.
15             Inattention to a serious medical, it has to
16 be a serious one -- the instructions tell it had has to be
17 a serious medical need. Refused. This is 7.
18             8, not every delay is indifferent. That's
19 argumentative. It's refused.
20             9 is refused. That's inaccurate in this
21 case.
22             10, no, that's an argumentative
23 instruction, too, it's refused.
24             Now, you have got more.
25             MS. CHOATE: I do. Hand them up.

1      THE COURT:  Hand them up.  We need to get a
2  rubberstamp that says "refused."  Defendants' 3 is
3  refused.  20 is refused.  These are all restatements of
4  what are already covered by the court's instructions.
5      23 is refused.
6      I didn't hear any evidence about failing to
7  comply with an administrative rule in this case.
8      MS. CHOATE:  We put in the part of the
9  Administrative Code that talks about organ transplants, so
10 whether they failed or didn't do it or did do it.
11     THE COURT:  24 is refused.  25 is an
12 argumentative vague instruction at my discretion.
13     Okay.  Now, we have got all of the
14 instructions that have been tendered now.
15     Now, plaintiffs.  I said -- that ostrich
16 instruction that you tendered plaintiff's 40 is already
17 included in the court's charge.  And the plaintiff's
18 tendered 40 is refused.  Plaintiff's Instruction 51 -- and
19 51 just states he has a right to medical treatment and
20 then it makes some sort of argumentative remark about who
21 is going to pay.  That's refused.
22     All right.  Now, we have got all of the
23 instructions in.  And the record should show that it's
24 three minutes to 5.  And I quit at 5.
25     MS. POWELL:  Your Honor, may we get a

1   chance to make sure all of the corrections were made
2   before you read them tomorrow just in case?
3           THE COURT:  Tomorrow morning you will have
4   in your hand the court's final draft of the charge to the
5   jury.
6           MS. POWELL:  Great.  Thank you.
7           THE COURT:  Before the arguments.
8           MS. POWELL:  Just in case.
9           THE COURT:  There is no reason.  You are
10  entitled to that and I will certainly provide it to you.
11          MR. LONDRIGAN:  Will you instruct before or
12  after argument?
13          THE COURT:  I may do both.
14          MS. CHOATE:  Oh, not all of them.
15          THE COURT:  The rules now provide that.
16          (Off record discussion.  Court recesses for
17  the day.)
18
19
20
21
22
23
24
25