**E-FILED**
Thursday, 26 June, 2008  09:06:48 AM
Clerk, U.S. District Court, ILCD

## ADMIRAL INSURANCE COMPANY

A STOCK COMPANY

(herein called "the Company")



**COMMERCIAL GENERAL LIABILITY POLICY**

INCLUDING LONG - TERM HEALTHCARE
PROFESSIONAL LIABILITY
DECLARATIONS

Policy No.: __A01NH14186__

**60 DAYS NOC**

Replacing: __A00NH11836__

Named Insured and Mailing Address

WEXFORD HEALTH SERVICES, INC.
381 MANSFIELD AVENUE, SUITE 205
PITTSBURGH, PA 15220

Producer's Name and Address

CRUMP INS SERV OF ATLANTA INC
9040 ROSWELL ROAD, SUITE 350
ATLANTA, GA   30350

Producer Code:  0402A   Commission:   15.00%

POLICY PERIOD: From __10/01/2001__ to __10/01/2002__ at 12:01 A.M. Standard Time at the address of the Named Insured as stated herein

In consideration of the payment of premium, in reliance upon the statements herein or attached hereto, and subject to all of the terms of this policy, the Company agrees with the Named Insured as follows:

Item I:    Named Insured's Business :    HEALTH SERVICES TO PRISONS AND JAILS

Item II:    Coverages:

    A-   Commerical General Liability - Bodily Injury .Property Damage Liability

| | | |
|---|---|---|
| Each Occurrence | $ | 3,000,000 |
| Products/Completed Operations Aggregate | $ | INCLUDED |
| General Aggregate Limit (Other than Products/ Completed Operations) | $ | 10,000,000 |
| Fire Damage - Any One Fire | $ | 50,000 |

    B-   Personal and Advertising Injury Liability

| | | |
|---|---|---|
| Each Occurrence | $ | INCLUDED |

    C-   Medical Payments

| | | |
|---|---|---|
| Any One Person | $ | EXCLUDED |

    D-   Long - Term Healthcare Facilities Professional Liability

| | | |
|---|---|---|
| Each Medical Incident | $ | 3,000,000 |
| Aggregate | $ | 10,000,000 |

Item III:    Deductible:  (Refer to Endorsement No. (01))

Item IV:    Premium:

Item V:    Endorsements:    REFER TO SCHEDULE OF FORMS



EXHIBIT

A

This policy is not binding unless sealed and countersigned by ADMIRAL INSURANCE COMPANY or its Authorized Representative.

Countersigned On: _____ 02/11/2002 _____

    At: _____ Duluth Georgia _____

By: _James S. Carey_
Authorized Representative

# NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply:

a. Under any Liability Coverage, to bodily injury or property damage:

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. Under any Medical Payments Coverage, or under any Supplemental Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishings by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. As used in this Exclusion:

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or byproduct material;

(3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means: (a) any nuclear reactor; (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste; (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (e) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

## SERVICE OF SUIT
### (Not Applicable In Delaware and New Jersey)

It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company, at the request of the Insured (or Reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon Daniel A. MacDonald, Senior Vice President of Admiral Insurance Company, 1255 Caldwell Road, P.O. Box 5725, Cherry Hill, New Jersey 08034-3220, or his designee, and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and the Company hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Company has caused this Certificate to be signed by its President and Secretary, but this Certificate shall not be valid unless countersigned on the declarations page by a duly authorized representative of the Company.

*[signatures]*    *James S. Carey*

Secretary             President

# SCHEDULE OF FORMS

**Named Insured:**  WEXFORD HEALTH SERVICES, INC.       **POLICY NO.:**  A01NH14186

| FORM NUMBER | End. # | TITLE |
|---|---|---|
| AI 00 18 03 98 | | SCHEDULE OF FORMS |
| CG 00 01 10 01 | | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| IL 00 17 11 98 | | COMMON POLICY CONDITIONS |
| AE 07 43 06 98 | | LONG-TERM HEALTHCARE FACILITIES PROFESSIONAL LIABILITY COVERAGE FORM |
| AE 07 46 06 98 | 01 | DEDUCTIBLE LIABILITY ENDORSEMENT |
| AE 05 66 02 93 | 02 | LEAD EXCLUSION (ABSOLUTE) |
| AI 08 37 09 01 | 03 | MICROORGANISMS, BIOLOGICAL ORGANISMS OR ORGANIC CONTAMINANTS EXCLUSION (PROFESSIONAL BROAD FORM) |
| CG 21 47 07 98 | 04 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| AE 00 05 09 94 | 05 | ENDORSEMENT |
| AE 00 05 09 94 | 06 | ENDORSEMENT |
| IL 02 46 09 96 | 07 | PENNSYLVANIA CHANGES— CANCELLATION AND NONRENEWAL |
| AE 07 07 01 98 | 08 | PENNSYLVANIA AMENDATORY ENDORSEMENT |
| AE 02 05 02 93 | 09 | RADON GAS EXCLUSION |
| AE 00 05 09 94 | 10 | ENDORSEMENT |
| AE 00 05 09 94 | 11 | ENDORSEMENT |
| AE 00 05 09 94 | 12 | ENDORSEMENT |
| AE 00 05 09 94 | 13 | ENDORSEMENT |
| AE 00 05 09 94 | 14 | ENDORSEMENT |

AI 00 18 03 98

Company Copy

| FORM NUMBER | End. # | TITLE |
|---|---|---|
| AD 66 69 02 95 | 15 | SUPPLEMENTARY PAYMENTS INCLUDED WITHIN THE LIMIT OF LIABILITY |
| AD 66 42 05 99 | 16 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| AE 07 21 09 98 | 17 | MINIMUM RETAINED PREMIUM |

AI 00 18 03 98

Company Copy

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

©ISO Properties, Inc., 2000

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

    ©ISO Properties, Inc., 2000

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

©ISO Properties, Inc., 2000

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

03/13/2002 09:18 FAX 770 418 8597    ADMIRAL INSURANCE    → ADMIRAL CLAIMS    ⌐015

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1)Power cranes, shovels, loaders, diggers or drills; or

 (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

 e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

 (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

 (2) Cherry pickers and similar devices used to raise or lower workers;

 f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

 (1) Equipment designed primarily for:

  (a) Snow removal;

  (b) Road maintenance, but not construction or resurfacing; or

  (c) Street cleaning;

 (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

 (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

 a. False arrest, detention or imprisonment;

 b. Malicious prosecution;

 c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

 d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

 e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

 f. The use of another's advertising idea in your "advertisement"; or

 g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

 a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

 (1) Products that are still in your physical possession; or

 (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

  (a) When all of the work called for in your contract has been completed.

  (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

  (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

 b. Does not include "bodily injury" or "property damage" arising out of:

 (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

 (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

 (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

 a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# LONG-TERM HEALTHCARE FACILITIES PROFESSIONAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS.

## I COVERAGE D - LONG TERM HEALTHCARE FACILITIES PROFESSIONAL LIABILITY

### 1. INSURING AGREEMENT

We will pay those sums that the "insured" becomes legally obligated to pay as damages because of "bodily injury" to which this insurance applies, caused by a "medical incident" occurring in the course of performing professional services for your long-term healthcare facility. The "medical incident" must occur during the policy period.

We shall have the right and duty to defend any "suit" against the "insured" seeking damages because of such "bodily injury" even if any of the allegations of the "suit" are groundless, false or fraudulent. We may make such investigation and settlement of any claim or "suit" as we deem expedient. We shall not be obligated to pay any claim or judgement or to defend any "suit" after the applicable limit of our liability has been exhausted by payment of judgments or settlements as described in LIMITS OF INSURANCE (Section III).

### 2. EXCLUSIONS

This insurance does not apply:

(a) to "bodily Injury" to any employee of the "insured" arising out of and in the course of that person's employment by the "insured";

(b) to any obligation for which the "insured" or any carrier acting as insurer may be held liable under any workers' compensation, unemployment compensation, or disability benefits law or under any similar law;

(c) to liability of an "insured", if an individual physician, surgeon or dentists for their acts, errors or omissions arising out of a "medical incident"; except as when coverage is provided under II. WHO IS AN INSURED (e);

(d) to "bodily injury" arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, trailer, watercraft or aircraft;

(e) to any claim arising out of, or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of any "Insured," or arising out of willful violation of any penal statute or ordinance;

(f) to any claim arising out of discrimination by the "insured" including but not limited to age, color, race, sex, creed, national origin, or marital status;

(g) to any claim made by or against any business enterprise not named in the Declarations:

(1) which is wholly or partly owned by any "insured"; or

(2) which wholly or partly owns any "insured"; or

(3) which is a parent, subsidiary, affiliated or sister company of any "insured"; or

(4) which controls, operates or manages any "insured"; or

(5) in which any "insured" is a partner, employee, officer, director, sole proprietor, stockholder or trustee; or to any claim made against any "insured" solely because an "insured" is a partner, employee, officer, director, sole proprietor, stockholder or trustee for any person or legal entity named in the Declarations;

(h) to any claim based upon the insolvency or bankruptcy of any person, firm or organization.

(i) to any claim arising out of or resulting from either sexual abuse or licentious, immoral or sexual behavior intended to lead to, or culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, or omission by, the "insured", his employees, patrons or any causes whatsoever;

(j) to any claim arising out of, contributed to, by, or resulting from, directly or indirectly:

(1) any infection caused by the transmission, testing or failure to test for the presence of any one or more of the following viruses including any counseling related thereto:

    (a) Human immunodeficiency Virus, and variations thereof;

    (b) Human T. Lymphotrophic Virus, and variations thereof;

    (c) Lymphadenopathy Associated Virus;

(2) the transmission of Acquired immune Deficiency Syndrome (AIDS) or any AIDS like condition caused as a result of the "named insured's" professional services.

## II   WHO IS AN INSURED

Each of the following is an "insured" under this Insurance to the extent set forth below:

    (a) the "named insured";

    (b) if the "named insured" is designated in the declarations as a partnership, any partner thereof, but only with respect to that partner's liability as such;

    (c) if the "named insured" is designated in the declarations as other than an individual or partnership, any executive officer, long term care facility administrator, stockholder or member of the board of directors, trustees or governors of the "named insured" while acting within the scope of that person's duties as such;

    (d) employees, including "leased" and/or "temporary workers", nursing home administrators, medical director, students and volunteers of the "named insured" only while acting within the scope of their duties for or on behalf of the "named insured";

    (e) individual physician, surgeon & dentist while acting on behalf of the "named insured" in the sole capacity of a medical director, long term healthcare administrator, executive officer, stockholder or member of the board of directors, trustees or governors.

## III   LIMITS OF INSURANCE

Regardless of the number of "insureds" under this insurance or of the number of claims made or "suits" brought, our liability is limited as follows:

The total liability we have for all damages because of all injuries to which this insurance applies shall not exceed the limits of insurance as stated in the declarations as aggregate.

Subject to the above provisions with respect to aggregate, the total liability we have for all damages because of all injuries arising out of any one "medical incident" shall not exceed the limits of insurance as stated in the declarations as applicable to each "medical incident".

## IV   COVERAGE TERRITORY

"Coverage territory" means:

    (a) the United States of America (including its territories and possessions), Puerto Rico and Canada;

    (b) international waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in (a) above; or

    (c) all parts of the world if:

        (1) the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in (a). above or in a settlement we agree to.

## V   DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of this policy):

"Bodily injury" means "bodily injury", sickness or disease sustained by any person that occurs during the policy period, including death at any time resulting therefrom;

"Insured" means any person or organization qualifying as an "insured" in the WHO IS AN INSURED provision. The insurance afforded applies separately to each "insured" against whom claim is made or "suit" is brought, except with respect to the limits of our liability.

"Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

"Medical Incident" means any negligent act, error or omission in the furnishing of professional services to any person, including:

    (a) the furnishing of health care services including the furnishing of food, beverages, medications or appliances in connection with such services and the postmortem handling of human bodies; or,

    (b) the services of any persons as members of a formal accreditation, standards review or similar professional board or committee of the named "insured" or as a person charged with executing the directives of such board or committee; or,

    (c) any professional services performed by barbers or beauticians employed by the "named insured"; or,

    (d) any incidental counseling services undertaken by social workers or ordained clergy members, on behalf of the "named insured".

Any such negligent act, error or omission, together with all related acts, errors or omissions in the furnishing of such services to any one person, shall be considered one "medical incident".

"Named insured" means the person or organization named in the Declarations of this policy.

"Suit" means a civil proceeding in which damages because of "bodily injury", to which this insurance applies are alleged. "Suit" includes:

a. an arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

b. any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

"Temporary worker" means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

## VI SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we investigate or settle, or any "suit" against an "insured" we defend:

(a) all expenses we incur.

(b) the cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

(c) all reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

(d) all costs taxed against the "insured" in the "suit".

(e) prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(f) all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## VII CONDITIONS

1. **Bankruptcy.**
   Bankruptcy or insolvency of the "insured" or of the "insured's"'s estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Medical Incident, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of a "medical incident" which may result in a claim. To the extent possible, notice should include:

      (1) how, when and where the "medical incident" took place;

      (2) the names and addresses of any injured persons and witnesses; and

      (3) the nature and location of any injury or damage arising out of the "medical incident".

   b. If a claim is made or "suit" is brought against any "insured" you must:

      (1) immediately record the specifics of the claim or "suit" and the date received; and

      (2) notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved "insured" must:

      (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) authorize us to obtain records and other information;

      (3) cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

   d. No "insured" will, except at that "insured's"'s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

   a. to join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

   b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured" and the claimant or the claimant's legal representative.

3:02/13/2002 09:17 FAX 770 418 8527   ADMIRAL INSURANCE   → ADMIRAL CLAIMS   ☒023

### 4. Other Insurance.

If other valid and collectible insurance is available to the "insured" for a loss we cover our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

#### b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent.

When this insurance is excess, we will have no duty to defend the "insured" against any "suit" if any other insurer has a duty to defend the "insured" against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's"'s rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the LIMITS OF INSURANCE shown in the Declarations of this Coverage Part.

#### c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit.

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first "named insured". If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first "named insured".

c. The first "named insured" must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations.

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds.

Except with respect to the limits of insurance, and any rights or duties specifically assigned in this Coverage Part to the first "named insured", this insurance applies:

a. as if each "named insured" were the only Named Insured; and

b. separately to each "insured" against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us.

If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew.

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Policy Number: A01NH14186

AE 07 46 06 98

Number: 01

Effective Date: 10/01/2001

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount of Deductible |
|---|---|
| **Coverage A & B** Bodily Injury Liability and/or Property Damage Liability Combined | $ 50,000 Per Occurrence |
| **Coverage D** Long-Term Healthcare Facility Professional Liability | $ 50,000 Each Medical Incident |

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and/or Property Damage Liability and Long-Term Healthcare Facility Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. Your deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **EACH MEDICAL INCIDENT.** If the deductible amount indicated in the Schedule above is on each "medical incident", that deductible applies as follows:

   a. Under Long Term Healthcare Facility Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   as the result of any one "medical incident".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

2. **PER OCCURRENCE** If the deductible amount indicated in the Schedule above is on a "per occurrence", that deductible amount applies as follows:

   a. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit" or "medical incident".

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

AE 07 46 06 98

Page 1 of 1

Policy Number: A01NH14186

Number: 02

AE 05 66 02 93

Effective Date: 10/01/2001

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LEAD EXCLUSION
# (ABSOLUTE)

It is agreed that the insurance afforded by this policy does not apply to any claim including but not limited to bodily injury, personal injury, mental anguish or property damage, for past, present or future claims arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for, lead or products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this policy does not apply to any liability including expenses for:

(1) The costs of clean up or removal of lead or products and materials containing lead; or

(2) The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of lead or products and material containing lead; or

(3) The cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

(4) The cost of compliance with any law or regulation regarding lead.

It is further agreed that for any claim made or suit brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of such claims.

AE 05 66 02 93

03/13/2002 09:18 FAX 770 418 9597  ADMIRAL INSURANCE  → ADMIRAL CLAIMS  ☑026

Policy Number: A01NH14186

AI 08 37 09 01

Number: 03

Effective Date: 10/01/2001

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MICROORGANISMS, BIOLOGICAL ORGANISMS OR ORGANIC CONTAMINANTS EXCLUSION (PROFESSIONAL BROAD FORM)

This insurance does not apply to any alleged negligent act or error or omission in professional services rendered, or which should have been rendered, by an Insured, or by any person or entity for whose acts the Named Insured is legally liable for:

(1) Any "claim" arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, allergens, infectious agents, wet or dry rot or rust, or materials of any kind containing them at any time, regardless of the cause of growth, proliferation or secretion.

Or:

(2) Any loss, cost or expense of any kind arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

(b) Request, demand, order by or on behalf of a governmental authority for testing, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any "claim" to which this endorsement applies.

AI 08 37 09 01

Policy Number: A01NH14186

**CG 21 47 07 98**

Number: 04

Effective Date: 10/01/2001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

  (1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

  (1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1    ☐

| INSURING COMPANY | **ADMIRAL INSURANCE COMPANY** (herein called "the Company") | | | ENDORSEMENT | |
|---|---|---|---|---|---|
| | | NO. | 05 | **TO POLICY NO.** | A01NH14186 |
| | | | | **EFFECTIVE DATE**     10/01/2001 | |
| NAMED INSURED | WEXFORD HEALTH SERVICES, INC. | ADDITIONAL INSURED ENDORSEMENT | | | |
| | | Page 1 of 1 | | | |

1. WHO IS AN INSURED (Section II) is amended to include any person(s) or organization(s) for whom you have agreed in a written contract to provide insurance, but only for damages:

   a. Which are covered by this insurance; and
   b. Which you have agreed to provide in such contract.

2. The limits of insurance afforded to such person(s) or organization(s) will be:

   a. The minimum limits of insurance which you agreed to provide, or
   b. The limits of insurance of this policy whichever is less.

AE 00 05 09 94

**Company Copy**

| INSURING COMPANY | **ADMIRAL INSURANCE COMPANY** (herein called "the Company") | | **ENDORSEMENT** | | | |
|---|---|---|---|---|---|---|
| | | NO. | 06 | **TO POLICY NO.** | A01NH14186 | |
| | | | **EFFECTIVE DATE** | 10/01/2001 | | |

| NAMED INSURED | WEXFORD HEALTH SERVICES, INC. | NAMED INSURED AND OPERATIONS ENDORSEMENT |
|---|---|---|
| | | **Page 1 of 1** |

In consideration of the premium charged, it is hereby agreed that the following are additional Named Insured and Description of Operations:

Wexford Health Sources, Inc. - provides health care services to prisons and jails.

The Bantry Group Corporation - provides all management services exclusively to Wexford, Longford and Galway.

Longford Health Sources, Inc. - provides chemical dependency services to hospitals/clinics and correctional facilities.

Galway Technologies, Inc. - develops and markets software products designed to help classify offenders.

but only as respects liability arising out of the operations of the Named Insured.

AE 00 05 09 94

Company Copy

Policy Number: A01NH14186

IL 02 46 09 96

Number: 07

Effective Date: 10/01/2001

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES—
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

\*   This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A.  The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1.  The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2.  **Cancellation Of Policies In Effect For Less Than 60 Days**

    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3.  **Cancellation Of Policies In Effect For 60 Days Or More**

    If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    a.  You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

    b.  You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of

cancellation will be mailed at least 15 days before the effective date of cancellation.

    c.  A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    d.  Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in - force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    e.  Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    f.  Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts mate-

Copyright, Insurance Services office, Inc., 1996

rial to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. Nonrenewal

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. Increase Of Premium

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

Policy Number: A01NH14186

AE 07 07 01 98

Number: 08

Effective Date: 10/01/2001

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA AMENDATORY ENDORSEMENT

It is understood and agreed that the "Service of Suit" clause, if any, in the policy to which this Endorsement is attached is hereby deleted and the following substituted therefore:

SERVICE OF SUIT - Pennsylvania

It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company, at the request of the Insured (or Reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon Daniel A. MacDonald, Senior Vice President, Claims Manager of Admiral Insurance Co., 1255 Caldwell Road, P.O. Box 5725, Cherry Hill, New Jersey 08034-3220, or his designee, and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and the Company hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Policy Number: A01NH14186

AE 02 05 02 93

Number: 09

Effective Date: 10/01/2001

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RADON GAS EXCLUSION

In consideration of the premium charged, it is agreed that the insurance provided by this policy does not apply to any and all liability for any claims or claims expense arising out of the failure to detect or to advise of the presence of radon gas or for any radiation damages resulting therefrom.

It is further agreed that for any claim made or suit brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of such claims.

AE 02 05 02 93

03/13/2002 09:10 FAX 770 418 9597    ADMIRAL INSURANCE    → ADMIRAL CLAIMS    ✍ 034

| INSURING COMPANY | ADMIRAL INSURANCE COMPANY<br>(herein called "the Company") | | ENDORSEMENT |
|---|---|---|---|
| | | NO.    10 | TO POLICY NO.    A01NH14186 |
| | | | EFFECTIVE DATE    10/01/2001 |
| NAMED INSURED | WEXFORD HEALTH SERVICES, INC. | | AMENDATORY ENDORSEMENT |
| | | | Page 1 of 1 |

In consideration of the premium charged, it is hereby agreed that the form AE 07 43 06 98, LONG TERM HEALTHCARE FACILITIES PROFESSIONAL LIABILITY COVERAGE FORM, section V. DEFINITIONS, is amended to include the following:

(e) mental health services and drug, alcohol counseling services to prison systems.

It is further agreed that item (c) under 2. EXCLUSIONS on form AE 07 43 06 98 is deleted from this policy and replaced with Endorsement No. 14.

It is further agreed that item (j) under 2. EXCLUSIONS on form AE 07 43 06 98 is deleted from this policy in its entirety.

It is further agreed that under section V. DEFINITIONS on form AD 66 42 03 95, Endorsement No. 08, EMPLOYEE BENEFITS LIABILITY COVERAGE, the Retroactive Date is 10/01/1997.

AE 00 05 09 94

Company Copy

| INSURING COMPANY | **ADMIRAL INSURANCE COMPANY** (herein called "the Company") | | | **ENDORSEMENT** | |
|---|---|---|---|---|---|
| | | NO. | 11 | **TO POLICY NO.** | A01NH14186 |
| | | | | **EFFECTIVE DATE** | 10/01/2001 |
| NAMED INSURED | WEXFORD HEALTH SERVICES, INC. | | AMENDATORY ENDORSEMENT | | |
| | | | **Page 1 of 1** | | |

In consideration of the premium charged, it is hereby agreed that the definition of "Medical Incident" is amended to include the following:

(E) those services or activites performed by the Insureds for entities other than the entity Insureds or additional persons or organizations in the administration & management of healthcare, limited to handling, utilization management, case management, per review activities performed by a professional review board or committee, selecting & disease management, quality assurance & management activites.

It is agreed per item (E) above limit will be $1,000,000/$1,000,000 sublimit. The inclusion hereon $1,000,000/$1,000,000 sublimit shall not operate to increase the Company's Limit of Liability as shown in Item II of the Declarations.

It is further agreed, that the Deductible is $50,000 per claim including expense.

ALL OTHER PROVISIONS AND STIPULATIONS REMAIN UNCHANGED.

AE 00 05 09 94

03/13/2002 09:18 FAX 770 418 9597    ADMIRAL INSURANCE    → ADMIRAL CLAIMS    ☐036

| INSURING COMPANY | **ADMIRAL INSURANCE COMPANY**<br>(herein called "the Company") | | | **ENDORSEMENT** | |
|---|---|---|---|---|---|
| | | NO. | 12 | **TO POLICY NO.** | A01NH14186 |
| | | | | **EFFECTIVE DATE** | 10/01/2001 |
| NAMED INSURED | WEXFORD HEALTH SERVICES, INC. | | AMENDMENT OF INSURED | | |
| | | | Page 1 of 1 | | |

In consideration of the premium charged, it is agreed that Items (a), (b) and (c) under II. Persons Insured of the Long-Term Healthcare Facilities Professional Liability Insurance Coverage Part, are amended to read as follows:

(a)  The named insured as designated in the declarations, and any principal, partner, officer, director, employee, or volunteer worker of the named insured, while acting within the scope of their duties as such. However, this insurance shall apply to liability of an Insured, if an individual physician, surgeon or dentist, for his personal acts or errors or omissions of a professional nature while employed or contracted as a physician, surgeon or dentist unless separate coverage is in force and applicable;

(b)  If the named insured is designated in the declarations as a partnership, any partner or member thereof, but only with respect to his liability as such.  However, this insurance shall apply to liability of an Insured, if an individual physician, surgeon or dentist, for his personal acts or errors or omissions of a professional nature while employed or contracted as a physician, surgeon or dentist unless separate coverage is in force and applicable;

(c)  If the named insured is designated in the declarations as other than an individual or partnership, any executive officer, stockholder or member of the board of trustees, directors or governors of the named insured while acting within the scope of his duties as such.  However, this insurance shall apply to liability of an Insured, if an individual physician, surgeon or dentist, for his personal acts or errors or omissions of a professional nature while employed or contracted as a physician, surgeon or dentist unless separate coverage is in force and applicable.

It is further agreed that for any claim made or suit brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of such claims.

AE 00 05 09 94

| INSURING COMPANY | **ADMIRAL INSURANCE COMPANY** (herein called "the Company") | | ENDORSEMENT |
|---|---|---|---|
| | | NO. 13 | **TO POLICY NO.** A01NH14186 |
| | | | **EFFECTIVE DATE** 10/01/2001 |
| NAMED INSURED | WEXFORD HEALTH SERVICES, INC. | | AMENDATORY ENDORSEMENT |
| | | | **Page 1 of 1** |

In consideration of the premium charged, it is hereby agreed that ITEM II COVERAGES as shown on the Declaration page of this policy is amended to include the following:

E- Policy Aggregate for all Locations combined    $20,000,000

ALL OTHER PROVISIONS AND STIPULATIONS REMAIN UNCHANGED

AE 00 05 09 94

Company Copy

| INSURING COMPANY | **ADMIRAL INSURANCE COMPANY** (herein called "the Company") | **ENDORSEMENT** |
|---|---|---|

|  |  | **NO.** 14 | **TO POLICY NO.** A01NH14186 |
|---|---|---|---|

**EFFECTIVE DATE** 10/01/2001

| NAMED INSURED | WEXFORD HEALTH SERVICES, INC. | AMENDATORY ENDORSEMENT |
|---|---|---|

Page 1 of 1

This endorsement modifies insurance provided under the following:
LONG-TERM HEALTHCARE FACILITIES PROFESSIONAL LIABILITY
COVERAGE FORM

Section III – Limits of Insurance Paragraph is amended as follows:

1. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under COVERAGE C;
   b. Damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";
   c. Damages under COVERAGE B; and
   d. Supplementary Payments.

2. The Products-Completed Operations Aggregate Limit is the most we will pay under COVERAGE A for damages including Supplementary Payments, because of "bodily injury" and "property damage" included in the "products-completed operations hazard"

3. Subject to 1. above the Personal and Advertising Injury Limit is the most we will pay under COVERAGE B for the sum of all damages, including Supplementary Payments, because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4. Subject to 1. and 2. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under COVERAGE A; and
   b. Medical expenses under COVERAGE C; and
   c. Supplementary Payments
      because of all "bodily injury" and "property damage" arising out of any one "occurrence".

AE 00 05 09 94

**Company Copy**

03/13/2002 09:19 FAX 770 418 9597     ADMIRAL INSURANCE      → ADMIRAL CLAIMS     ☒039

Policy Number: A01NH14186

AD 66 69 02 95

Number: 15

Effective Date: 10/01/2001

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SUPPLEMENTARY PAYMENTS INCLUDED WITHIN THE LIMIT OF LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section III - Limits of Insurance Paragraphs 2, 3, 4 & 5 are amended as follows:

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under COVERAGE C;

   b. Damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   c. Damages under COVERAGE B; and

   d. Supplementary Payments.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under COVERAGE A for damages, including Supplementary Payments, because of "bodily injury" and "property damage" included in the "products-completed operations hazard"

4. Subject to 2. above the Personal and Advertising Injury Limit is the most we will pay under COVERAGE B for the sum of all damages, including Supplementary Payments, because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under COVERAGE A; and

   b. Medical expenses under COVERAGE C; and

   c. Supplementary Payments

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

Policy: A01NH14186

**AD 66 42 05 99**

Number: 16

Effective Date: 10/01/2001

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE
# CLAIMS MADE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

1. Limits of Liability

   $  1,000,000          each claim

   $  1,000,000          aggregate

2. Deductible

   $  15,000             each claim

3. Premium    $  INCLUDED          Numbers of Employees    N/A

## I. COVERAGES

1. Insuring Agreement

   We will pay those sums which you become legally ob-
   ligated to pay as damages sustained by any employee,
   former employee, prospective employee or the benefi-
   ciaries or legal representatives thereof caused by your
   negligent act, error or omission or any other person for
   whose acts you are legally liable in the "administra-
   tion" of your "Employee Benefits Programs" in the
   "policy territory". No other obligation or liability to
   pay sums or perform acts or services is covered unless
   explicitly provided for under SUPPLEMENTARY
   PAYMENTS.

   We will have the right and duty to defend any suit
   seeking damages, except,

   (a) the amount we will pay for damages is limited as
       described in SECTION III-LIMITS OF INSUR-
       ANCE;

   (b) we may, at our discretion, investigate any negli-
       gent act, error or omission and settle any claim or
       suit that may result, and

   (c) our right and duty to defend ends when the appli-
       cable limit of insurance has been used up in the
       payment of judgments or settlements.

This insurance applies to damages only if a claim for
damages is first made against you during the policy pe-
riod. If during this policy period you become aware of
any occurrences or circumstances which might result in
a claim or claims under this insurance and notice
thereof is given to us as soon as practicable in accor-
dance with Section IV, Conditions 2 of the policy, it is
agreed that any subsequent claim arising out of such
occurrences or circumstances, whether made during or
after the expiration of this endorsement period, shall be
treated as a claim made during this endorsement pe-
riod.

A claim by a person or organization seeking damages
will be deemed to have been made when notice of such
claim is received and recorded by you or by us, which-
ever comes first.

All claims for damages to the same person will be
deemed to have been made at the time the first of those
claims is made against you.

2. Exclusions

   This insurance does not apply to:

   (a) Damages arising out of a negligent act, error or
       omission which:

       (1) occurred prior to the policy period; and

       (2) you knew or should have known might result
           in a claim;

AD 66 42 05 99

Page 1 of 3

(b) damages due to any dishonest, fraudulent, criminal or malicious act;

(c) damages due to libel, slander, discrimination, humiliation, emotional distress, harassment, or termination from employment;

(d) to injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

(e) to any loss or claim arising out of failure of performance of any contract by an insurer;

(f) your failure to comply with any law concerning workers' compensation, unemployment insurance, social security or disability benefits;

(g) any claim based upon;

   (1) failure of stock or other investments to perform as represented by you;

   (2) advice given by you to an employee to participate or not to participate in stock subscription plans;

   (3) the investment or non-investment of funds.

## II. WHO IS AN INSURED

1. If you are designated in the Declarations as:

   (a) an individual, the person so designated but only with respect to the conduct of a business of which you are the sole proprietor, and your spouse with respect to the conduct of such a business;

   (b) a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to their liability as such;

   (c) other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director, or stockholder thereof while acting within the scope of their duties as such;

2. Each of the following is also an insured:

   (a) any of your employees authorized to act in the administration of your "Employee Benefits Programs", while acting within the scope of their duties in connection therewith; provided that the insurance shall not apply to any person included as a fiduciary under the Employee Retirement Income Security Act of 1974, including any amendments and regulations relating thereto, while acting in their capacity as such.

This insurance does not apply to loss arising out of the conduct of any partnership or joint venture in which you are a partner or member which is not designated in the policy as a "Named Insured".

## III. LIMITS OF LIABILITY

The limit of liability stated in the Schedule of this endorsement as applicable to "each claim" is the limit of your liability for all damages included in each claim to which this insurance applies; provided that the term "each claim" includes all claims because of any loss or losses sustained by any one employee or former employee and the estate, heirs, legal representatives, beneficiaries or assigns of such employee or former employee, as the result of any act, error or omission or combination of related acts, errors or omissions.

Subject to the foregoing provisions respecting the limit of liability for "each claim", the limit of liability stated in the Schedule as "aggregate" is the total limit of our liability for all damages because of all losses under this insurance.

The inclusion of this endorsement shall not increase our Limits of Liability as stated in the policy.

## IV. ADDITIONAL CONDITIONS

All of the conditions of the policy apply except, as respects the insurance provided by this endorsement:

(a) Premium:

The premium stated in this endorsement is an estimated premium only. Upon termination of each annual period of this policy, you, on request, will furnish us with a statement of personnel changes, and the earned premiums shall be computed on the average number of employees at the beginning and end of such period. If the earned premium thus computed exceeds the estimated advance premium, you will pay the excess to us; if less, we will return to you the unearned portion subject to the Minimum Premium for this insurance.

(b) Your Duties in the event of Negligent Act, Error or Omission, Claim or Suit:

If any claim is made against you or if you learn of any occurrences or circumstances which might result in a claim hereunder, written notice shall be given by you as soon as practicable in accordance with the requirements of Condition 2 of the policy.

(c) The following Condition is added:

The Deductible amount shown in the Schedule of this endorsement shall apply to all payments (damages or supplementary payments) under this coverage. The terms and conditions of the Liability Deductible Endorsement attached to this policy apply to the Deductible for this coverage.

## V. DEFINITIONS

When used in reference to this insurance:

"Employee Benefit Programs" means any of the following employee benefit plans and programs maintained for the benefit of your employees or former employees:

(a) group life insurance, group accident and health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance and travel, savings or vacation plans; and

(b) any other employee benefit plan or program added to your "Employee Benefits Program" after the effective date of this endorsement provided that written notice is given to us within 30 days of the effective date thereof and provided further that such addition is endorsed on this policy.

"Administration" means:

(a) providing interpretations and giving counsel to your employees regarding your "Employee Benefits Programs";

(b) handling records in connection with your "Employee Benefits Programs";

(c) the enrollment, termination or cancellation of employees under your "Employee Benefits Programs",

"Policy Territory" means the United States of America, its territories or possessions, or Canada.

AD 66 42 05 99

Policy Number: A01NH14186

AE 07 21 09 98

Number: 17

Effective Date: 10/01/2001

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINIMUM RETAINED PREMIUM

It is agreed that in the event of cancellation of this policy by the Insured as specified herein, return premium shall be computed at .90 of the pro rata unearned policy premium (or minimum premium if applicable) subject however to a retention by the Company of not less than 25% of the premium shown on the declarations or renewal certificate.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the form.

It is further agreed that return premium may be allowed on a pro rate basis if cancelled for non payment, subject however to retention by the Company of the minimum as shown above.

AE 07 21 09 98